IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA (WESTERN DIVISION)

| | |
|---|---|
| JEFFERSON GRIFFIN, *Plaintiff*, v. NORTH CAROLINA STATE BOARD OF ELECTIONS, *Defendant*, and ALLISON RIGGS et al., *Intervenor-Defendants*. | No. 5:24-cv-00731-M-RJ |
| NORTH CAROLINA DEMOCRATIC PARTY, *Plaintiff*, v. NORTH CAROLINA STATE BOARD OF ELECTIONS et al., *Defendants*. | No. 5:24-cv-00699-M-KS |
| CARRIE CONLEY et al., *Plaintiffs*, v. ALAN HIRSCH et al., *Defendants*. | No. 5:25-cv-00193-M-RJ |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>JUSTICE RIGGS' MOTION FOR STAY AND INJUNCTION PENDING APPEAL</u>**

*Immediate Relief Requested*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 3

LEGAL STANDARD ..................................................................................................................... 8

ARGUMENT .................................................................................................................................. 9

    I. The Court Should Enter a Stay and Injunction Pending Appeal ....................................... 9

        A. Justice Riggs is Likely to Prevail on the Merits ............................................................ 9

            i. Retroactive Disenfranchisement Violates the Due Process Clause ....................... 9

            ii. Arbitrary Disenfranchisement Violates the Equal Protection Clause ................. 10

            iii. Implementing the State-Law Remedy Before the Federal-Law Issues Are
                 Resolved Would Frustrate the Fourth Circuit's Mandate .................................. 13

        B. The Other Three Factors Support a Stay and Injunction Pending Appeal ................ 14

    II. Alternatively, the Court Should Enter a Temporary, Administrative Stay and
        Injunction to Allow the Fourth Circuit to Consider Justice Riggs' Motion ..................... 16

CONCLUSION ............................................................................................................................. 16

Intervenor-Defendant Allison Riggs moves under Federal Rule of Civil Procedure 62 for a stay and injunction pending appeal that maintains, during the pendency of Justice Riggs' appeal to the Fourth Circuit, the status quo by prohibiting the parties from taking any action to enforce or effectuate the North Carolina Court of Appeals' opinion, *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724 (N.C. Ct. App. Apr. 4, 2025), as modified by the North Carolina Supreme Court in its April 11 special order. If the Court declines to enter that relief, Justice Riggs requests that the Court grant a temporary stay and injunction to preserve the status quo while Justice Riggs moves the Fourth Circuit for a stay and injunction pending appeal.[1]

**INTRODUCTION**

In February 2025, the Fourth Circuit directed this Court "to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." ECF No. 30 at 11. Those state court proceedings are now resolved, and the reserved federal issues—including threatened violations of the Due Process and Equal Protection Clauses—remain.

On April 14, 2025, the Supreme Court of North Carolina issued its decision in this dispute. Without merits briefing or oral argument, the Supreme Court held that, as a matter of North Carolina law, active-duty military personnel and other North Carolinians living abroad had to provide photo identification in November 2024 when casting their ballots for Associate Justice. This ruling applies to votes cast in only one of North Carolina's one hundred counties, and it applies even though North Carolina law was clear at the time that these voters were "not required to submit a photocopy of acceptable photo identification." 8 N.C. Admin. Code 17.0109(d).

---

[1] The grounds for this Motion are substantially the same as the grounds for Justice Riggs' Emergency Motion for Injunction and Motion for Status Conference, ECF No. 37. As such, Justice Riggs restates those grounds here with limited updates and modifications.

Months after an election was conducted, the Supreme Court further held unconstitutional a state statute indicating that North Carolinians living abroad who inherited their residence from their parents were eligible to vote for Associate Justice. The Supreme Court also adopted a modified version of the North Carolina Court of Appeals' novel "cure" process for targeted military and overseas voters, under which their votes will be thrown out five months after the election unless they provide the State Board with a copy of their identification within thirty days. Finally, the Supreme Court dissolved a temporary stay preventing that remedy from going into effect.

The case is now back in federal court to consider whether Judge Griffin's protests, as construed and limited under state law by the North Carolina courts, comply with federal law. They do not. Judge Griffin's effort to change the election rules after the votes have been cast violates the Due Process Clause. And Judge Griffin's selective targeting of military and overseas voters violates the Equal Protection Clause. These and other federal-law issues remain unresolved because—in accordance with the Fourth Circuit's mandate and this Court's remand order—Justice Riggs (and the State Board) reserved them for this Court.

Despite these federal issues remaining unresolved, and in response to Justice Riggs' Emergency Motion for Injunction and Motion for Status Conference, ECF No. 37, this Court has ordered the State Board to proceed in accordance with the North Carolina Court of Appeals' opinion, as modified. Justice Riggs is pursuing an appeal to the Fourth Circuit from that order.

This Court should maintain the status quo during that appeal by entering a stay and injunction that prohibits the parties—including Judge Griffin and the State Board—from taking any step to enforce or effectuate the state-law decision while Justice Riggs' appeal is pending. Any such efforts would be inconsistent with the U.S. Constitution and the Fourth Circuit's mandate, and they would impose irreparable harm on Justice Riggs and the voters.

## BACKGROUND

The final canvassed results of the November 2024 general election showed that Justice Riggs received 734 more votes than did Judge Griffin in the race for Associate Justice. *See* ECF No. 1-4 at 11 (State Board Decision and Order). Judge Griffin filed over three hundred election protests seeking to overturn that result. Relevant here, Judge Griffin challenged (1) 1,409 ballots "cast by military or overseas citizens under Article 21A of Chapter 163, when those ballots were not accompanied by a photocopy of a photo ID or ID Exception Form"; and (2) 266 ballots "cast by overseas citizens who have not resided in North Carolina but whose parents or legal guardians were eligible North Carolina voters before leaving the United States." *Id.* at 12.

For the challenge to military and overseas ballots, Judge Griffin sought information from six counties, brought a timely protest only to 1,409 ballots cast in Guilford County, and later sought to add challenges to ballots cast in Durham, Forsyth, and Buncombe Counties. *See* Judge Griffin's Br. Supp. Pet. Writ. Prohibition at 66 n.15, *Griffin v. N.C. State Bd. of Elections*, No. 320P24, 2025 WL 284665 (N.C. filed Jan. 14, 2025); *see also* ECF No. 1-4 at 12 n.2 (noting Judge Griffin's effort to supplement his protests with "filings submitted after the deadline" and declining to "determine whether such supplementations are allowable").

On December 13, 2024, the State Board served its Decision and Order dismissing Judge Griffin's protests. Judge Griffin then made a series of filings in North Carolina court seeking to reverse that Decision and Order. Those filings included three petitions for judicial review, which the State Board removed to this Court under 28 U.S.C. §§ 1331, 1441(a), 1443(2) and 1367(a). *See* ECF No. 1 (Notice of Removal). The State Board explained in its removal notice that Judge Griffin's protests are inconsistent with a host of federal statutes and the Fourteenth Amendment to the U.S. Constitution. *See generally id.*

On January 6, 2025, this Court "sua sponte remand[ed] this matter to the Superior Court for Wake County." ECF No. 24. The State Board appealed, *see* ECF No. 26, and the Fourth Circuit granted Justice Riggs' motion to intervene in this action, *see* Order, *Griffin v. N.C. State Bd. of Elections*, No. 25-1020 (4th Cir. Jan. 28, 2025) (ECF No. 19).

On February 4, 2025, the Fourth Circuit entered an unpublished opinion affirming in part and modifying in part this Court's remand order. *See* ECF No. 30. The Fourth Circuit directed this Court "to modify its order to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." *Id*. at 11 (citing *England v. Med. Exam'rs.*, 375 U.S. 411 (1964)).

Two days later, Justice Riggs filed in Wake County Superior Court a Notice of Fourth Circuit Opinion and *England* Reservation. Justice Riggs made this reservation to "preserve her right to return to federal court for the resolution of federal issues" and explained that she "intends, should the state courts hold against her on questions of state law, to return to the Eastern District of North Carolina for disposition of her federal contentions." ECF No. 39-2 ¶¶ 7, 8. This Court later implemented the Fourth Circuit's mandate by modifying its remand order to retain jurisdiction over those federal issues. *See* ECF No. 35.

On February 7, 2025, the Wake County Superior Court affirmed the State Board's Order and Decision dismissing Judge Griffin's protests. *See Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *3 (N.C. Ct. App. Apr. 4, 2025).

On April 4, 2025, a divided panel of the Court of Appeals of North Carolina reversed. The majority held in relevant part that the two categories of ballots still at issue—the targeted ballots cast by military and overseas citizens and the ballots cast by overseas citizens who have not lived

4

in North Carolina—were not legally cast. *See id.* at *15. The Court of Appeals ordered the State Board to allow the military and overseas voters fifteen business days to "cure their failure to abide by the photo ID requirement." *Id.*

Judge Hampson dissented, arguing (among other things) that "equitable principles demand we do not change the rules of an election midstream or after votes are tallied to disenfranchise qualified North Carolina voters" and "fundamental principles of equal protection demand these absentee and early votes be counted in this election." *Id.* at *16 (Hampson, J., dissenting). Judge Hampson also emphasized the practical effect of the court's decision on North Carolina voters:

> What of voters who have died since election day? Their votes should count. What of servicemembers abroad sacrificing their lives and safety in remote locations unable to jump through the judicial hoops the majority now puts in their way? Their votes should count. What of overseas voters who only learned of this process second-hand due to lack of any service? Their votes should count. What of voters in every county of this State who may have moved, have not learned of this proceeding, or are sick, immobile, elderly, transient, away on extended business travel, traveling on school breaks with their children, or are simply overwhelmed by the unrelenting attack on their voting rights? Their votes should count. They did everything they were required to do. Their votes were accepted as valid votes on election day and through the canvassing process. Make no mistake: should the majority's decision be implemented, the impact will be to disenfranchise North Carolina voters even though they were eligible to vote on election day.

*Id.* at *42 (Hampson, J., dissenting).

The Court of Appeals entered its opinion on Friday, April 4, and directed that its mandate issue on Monday, April 7. *See id.* at *15 (majority opinion). On Sunday, April 6, Justice Riggs and the State Board petitioned the Supreme Court of North Carolina for discretionary review and a stay pending appeal. The Supreme Court granted that temporary stay on April 7. *See Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1025107, at *1 (N.C. Apr. 7, 2025).

On Friday, April 11, the Supreme Court issued a six-page special order (1) granting the petitions for discretionary review "for the limited purpose of expanding the period to cure

5

deficiencies arising from lack of photo identification or its equivalent from fifteen business days to thirty calendar days after the mailing of notice," (2) denying the petitions for discretionary review in all other respects relevant to this Motion; and (3) dissolving "the temporary stay issued 7 April 2025." *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025).[2]

Justices Earls and Dietz each issued separate opinions concurring in part and dissenting in part. Justice Earls' separate opinion is thirty-nine pages long. Justice Earls criticizes the majority's decision retroactively to invalidate legally cast votes, arguing that it undermines democratic principles and sets a dangerous precedent. Justice Earls highlights state-law concerns about due process violations, unequal treatment of voters, and the lack of proper deliberation in the Supreme Court's decision-making process. Justice Earls also emphasizes that the Supreme Court's decision unfairly targets military and overseas voters who "registered in Guilford County"—"or maybe one of three or four other counties that vote heavily Democratic, the [majority's] special order is not clear." *Id*. at *3 (Earls, J., concurring in part in the result only, dissenting in part). Justice Earls confines her analysis to "state law issues" and does not address "the obvious conflicts with federal law including the principles relied upon in *Bush v. Gore*, 531 U.S. 98 (2000)" because the parties "expressly asserted *England* reservations of rights so that their federal law defenses may be adjudicated by federal court" *Id*. at *4 n.2.

For his part, Justice Dietz writes that he was "wrong" to expect that "our state courts surely would embrace the universally accepted principle that courts cannot change election outcomes by

---

[2] The Supreme Court also "allow[ed] the petitions for discretionary review for the limited purpose of reversing the decision of the Court of Appeals" regarding "more than 60,000 challenged voters for whom [Judge Griffin] asserts that registrations were accepted without obtaining statutorily required information." 2025 WL 1090903, at *1. This third category of challenges is not at issue in this Motion.

retroactively rewriting the law." *Id*. at *17 (Dietz, J., concurring in part and dissenting in part). "The Court of Appeals has since issued an opinion that gets key state law issues wrong, may implicate a host of federal law issues, and invites all the mischief [Justice Dietz] imagined in the early days of this case." *Id*. Justice Deitz emphasizes that this case "cries out" for "a decisive rejection of this sort of *post hoc* judicial tampering in election results." *Id*. Regardless of whether "the federal courts ultimately reverse the Court of Appeals decision because of a conflict with UOCAVA, or *Bush v. Gore*, or whatever else," Justice Deitz writes, "the door is open for losing candidates to try this sort of post-election meddling in state court in the future." *Id*. at *18.

On Friday, April 11—the same day that the North Carolina Supreme Court issued its special order—Justice Riggs moved in this Court for a preliminary injunction under Federal Rule of Civil Procedure 65 and an injunction under the All Writs Act that prohibits the parties from taking any action to enforce or effectuate the North Carolina Court of Appeals' opinion, as modified by the North Carolina Supreme Court, while this Court considers the federal issues in this case. *See* ECF No. 37. The next day, Saturday, April 12, this Court entered a Text Order granting in part (and denying in part) Justice Riggs' motion:

> This matter comes before the court on Intervenor-Defendant Allison Riggs' emergency motion for injunction and motion for status conference [DE 37]. Pursuant to the court's authority under the All Writs Act, the motion is GRANTED IN PART. Defendant North Carolina State Board of Elections is ORDERED to proceed in accordance with the North Carolina Court of Appeals opinion, Griffin v. N.C. State Bd. of Elections, No. COA25-181, 2025 WL 1021724 (N.C. Ct. App. Apr. 4, 2025), as modified by the North Carolina Supreme Court in its April 11 Order, but SHALL NOT certify the results of the election, pending further order of this court. Further, the court adopts the following briefing schedule to facilitate prompt resolution of this matter: each party may file an opening brief addressing the remaining federal issues no later than April 21, 2025. Response briefs shall be due no later than April 25, 2025. Replies shall be due April 28, 2025. Unless the court finds that oral argument will aid the decisional process, it intends to rule on the papers as soon as practicable. Entered by Chief Judge Richard E. Myers II on 4/12/2025.

On Monday, April 14, Justice Riggs filed a Notice of Appeal from that Text Order. *See* ECF No. 44. Shortly thereafter, this Court consolidated this action (No. 5:24-cv-00731-M-RJ) with two others (Nos. 5:24-cv-00699-M-KS and No. 5:25-cv-00193-M-RJ) and directed that all "future pleadings, motions, and other documents shall be filed with a triple caption and filed on the docket in case number 5:24-CV-00731-M." Justice Riggs now moves for a stay and injunction pending appeal.

## LEGAL STANDARD

"While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d).

Four factors guide the Court's decision whether to grant a stay or injunction pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also White v. United States Env't Prot. Agency*, No. 2:24-CV-00013-BO, 2024 WL 3894240, at *1 (E.D.N.C. Aug. 20, 2024) ("The standard for an injunction pending appeal is the same as the standard for a preliminary injunction."). These "four factors should be balanced; thus, for example, if the balance of harms tips heavily enough in the stay applicant's favor then the showing of likelihood of success need not be as strong, and vice versa." 16A Catherine T. Struve, *Federal Practice & Procedure* § 3954 (5th ed. 2025) (footnotes omitted).

# ARGUMENT

## I. The Court Should Enter a Stay and Injunction Pending Appeal

The Court should maintain the status quo while Justice Riggs pursues her appeal to the Fourth Circuit. Justice Riggs is likely to prevail on the merits of her argument that the relief outlined by the North Carolina courts and ordered by this Court violates both the U.S. Constitution and the Fourth Circuit's mandate. The remaining three factors likewise favor a stay and injunction pending appeal to protect constitutional rights, avoid confusion, and ensure federal-court review before any state-law remedy is put into effect.

### A. Justice Riggs is Likely to Prevail on the Merits

#### i. Retroactive Disenfranchisement Violates the Due Process Clause

As a matter of federal constitutional law, it "is settled that if the election process reaches the point of 'patent and fundamental unfairness,' the due process clause may be violated." *Hendon v. N.C. State Bd. Elections,* 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)); *see also Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995).

Patent and fundamental unfairness exists—and "a court will strike down an election on substantive due process grounds"—if "two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d 1218, 1226–27 (9th Cir. 1998). Those elements are satisfied when, for example, "the losing candidate contest[s] the validity of the absentee ballots" cast in accordance with officially sponsored election procedure. *Lecky v. Virginia State Bd. Elections*, 285 F. Supp. 3d 908, 916 (E.D. Va. 2018). Even if that procedure turns out to have been flawed in hindsight, a "state's retroactive invalidation" of those absentee ballots "violate[s] the voters' rights under the fourteenth amendment." *Burns*, 570 F.2d at 1070.

9

Case 5:24-cv-00731-M-RJ    Document 48    Filed 04/14/25    Page 11 of 18

The two remaining categories of protests brought by Judge Griffin seek retroactive invalidation of ballots cast in compliance with the law. When military and overseas voters cast their ballots in November 2024, the North Carolina Administrative Code was clear that these voters were "*not* required to submit a photocopy of acceptable photo identification." 8 N.C. Admin. Code 17.0109(d) (emphasis added). And when the children of North Carolinians living overseas cast their ballots, the North Carolina statutes "plainly allow[ed] such individuals to vote in North Carolina." *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *37 (N.C. Ct. App. Apr. 4, 2025) (Hampson, J., dissenting).

Now, five months after the election, the North Carolina appellate courts have changed both sets of rules. Those state-law decisions may be binding in North Carolina moving forward, but they cannot apply retroactively regardless of whether such retroactive invalidation is "legal or illegal as a matter of state law." *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668, 674 (1963). As a matter of federal law, the voters were entitled to rely on the law in effect when they cast their ballots.

The U.S. Constitution prohibits the North Carolina courts from ordering the State Board to discard—or to threaten to discard—ballots cast in compliance with existing law. Yet this Court's Text Order not only permits this state-law remedy to go into effect; it requires the State Board to implement that remedy before this Court or the Fourth Circuit have considered the remaining federal-law issues. Justice Riggs is likely to prevail on appeal in her argument that this Court erred by permitting and directing the State Board to proceed before federal review of the reserved federal-law issues.

### ii. Arbitrary Disenfranchisement Violates the Equal Protection Clause

"Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98,

104–05 (2000) (per curiam) (citing *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966)). The North Carolina Court of Appeals' opinion would, if implemented, violate this equal protection principle by burdening and threatening to disenfranchise the military and overseas voters who happened to cast their ballot in a county that Judge Griffin targeted.

Judge Griffin attempted to challenge military and overseas voters in, at most, only six of North Carolina's one hundred counties. Judge Griffin brought a timely protest only to the military and overseas ballots cast in Guilford County, and he later attempted to expand his protest to include Durham, Forsyth, and Buncombe Counties. This selective targeting of military and overseas voters has no constitutionally permissible justification. Only one potential basis for choosing those counties appears in the record: they "are each counties which [Judge Griffin] lost by significant margins." *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *41 n.23 (N.C. Ct. App. Apr. 4, 2025) (Hampson, J., dissenting). Regardless of intent, Judge Griffin's protests violate the Equal Protection Clause by creating a "preferred class of voters"—those voters who happened to cast a ballot in a county that Judge Griffin chose not to target. *Gray v. Sanders*, 372 U.S. 368, 379–80 (1963) ("The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications.").

The North Carolina Court of Appeals' "cure" process for these military and overseas voters will also lead inevitably to the different treatment of identical voters based on arbitrary circumstances. An election procedure violates the Equal Protection Clause when "identically situated ballots" will be counted or invalidated "based on random chance." *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 49 (S.D.N.Y. 2020); *see also Bryanton v. Johnson*, 902 F. Supp. 2d 983, 997 (E.D. Mich. 2012) ("inconsistent administration" of citizenship question). Yet this Court has ordered the State Board to implement a process by which the targeted voters will

have their ballots count only if a series of conditions are met *five months after the election*, when voters are no longer paying attention or expecting to be contacted by election officials regarding their votes: (1) the voter must still be alive; (2) the voter must receive notice of their duty to cure; (3) the voter must be able to cure within a 30-day window; (4) the voter must be willing to take time out of their day to cure; and (5) the voter must choose to cure (and not, for example, have changed their mind in the intervening months about their preference for Associate Justice). None of these conditions has anything to do with the voters' eligibility to cast a ballot in November 2024; they are arbitrary distinctions created by a retroactive change in the election rules.

Courts routinely reject this type of disparate treatment of ballots. The Southern District of New York rejected a ballot-counting process dependent on the delivery date of the ballot when the question of "[w]hether an individual's vote will be counted . . . may depend in part on something completely arbitrary"—there, the voter's "place of residence and by extension, the mailbox or post office where they dropped off their ballot." *Gallagher*, 477 F. Supp. 3d at 47. This "voting process where arbitrary factors lead the state to valuing one person's vote over that of another" is the "kind of process specifically prohibited by the Supreme Court." *Id*. at 48 (citing *Bush*, 531 U.S. at 104–05); *see also Richardson v. Trump*, 496 F. Supp. 3d 165, 183–87 (D.D.C. 2020) (finding likelihood of success on claim that challenged "policy changes infringe upon [plaintiffs'] constitutional right to vote and violate the Equal Protection Clause"); *Vote Forward v. DeJoy*, 490 F. Supp. 3d 110, 125–28 (D.D.C. 2020) (same); *Doe v. Walker*, 746 F. Supp. 2d 667, 679–80 (D. Md. 2010) ("By imposing a deadline which does not allow sufficient time for absent uniformed services and overseas voters to receive, fill out, and return their absentee ballots, the state imposes a severe burden on absent uniformed services and overseas voters' fundamental right to vote.").

Justice Riggs respectfully submits that she is likely to prevail on appeal in her argument that selective targeting of military and overseas voters violates the Equal Protection Clause. Justice Earls' comments in partial dissent now apply with equal force to this Court's Text Order directing the State Board to proceed: "as a result of the action taken by this Court in this matter, the vote of an overseas or military voter who is registered in Wake County and who voted pursuant to the laws applicable at the time is counted," but "the vote of an overseas or military voter who is registered in Guilford County is presumed to be fraudulent and will not count unless that voter provides proof of their identity within thirty business days." *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025) (Earls, J., concurring in part in the result only, dissenting in part). It is "impossible" to explain how that distinction "is fair, just, or consistent with fundamental legal principles." *Id*.

### iii. Implementing the State-Law Remedy Before the Federal-Law Issues Are Resolved Would Frustrate the Fourth Circuit's Mandate

The U.S. Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

A stay and injunction pending appeal are necessary and appropriate here to effectuate and prevent frustration of the Fourth Circuit's mandate and this Court's order on remand. The Fourth Circuit directed this Court "to modify its order to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." ECF No. 30 at 11. Justice Riggs then made an *England* reservation to protect her right to return to federal court, *see* ECF No. 39-2, and this Court

13

Case 5:24-cv-00731-M-RJ    Document 48    Filed 04/14/25    Page 15 of 18

modified its remand order to make clear that it retained jurisdiction over the federal-law issues, *see* ECF No. 35.

Those federal-law issues remain unresolved, but this Court's Text Order permits—and directs—the State Board to proceed under state law anyway. Justice Riggs respectfully submits that she is likely to prevail on appeal in her argument that this Text Order is inconsistent with the Fourth Circuit's mandate—which ensured the "federal forum for certain federal civil rights claims" that 28 U.S.C. § 1443 "guarantees," *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 141 S. Ct. 1532, 1536 (2021)—and this Court's order implementing that mandate.

After all, the North Carolina courts had jurisdiction to proceed with this dispute only because this Court, having obtained jurisdiction, remanded it to the Wake County Superior Court. The Fourth Circuit's mandate means that both judicial systems have been exercising jurisdiction over the same dispute—the North Carolina courts with respect to the state-law issues, and this Court with respect to the federal-law issues. But now, this Court's Text Order threatens to upset that balance by permitting (and requiring) the State Board to begin implementing that state-law remedy before this Court has considered the federal-law issues that it and Justice Riggs expressly reserved for the federal courts.

### B. The Other Three Factors Support a Stay and Injunction Pending Appeal

The threatened violations of the Due Process and Equal Protection Clauses justify a stay and injunction pending appeal because the "prospect of an unconstitutional enforcement 'supplies the necessary irreparable injury.'" *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992)); *see also League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("Courts routinely deem restrictions on fundamental voting rights irreparable injury."). Federal courts across the country consistently allow candidates for office to assert *per se* irreparable harm based

on constitutional violations resulting from improper election challenges. *See, e.g.*, *Moore v. Circosta*, 494 F. Supp. 3d 289, 321 (M.D.N.C. 2020); *Jones v. United States Postal Serv.*, 488 F. Supp. 3d 103, 109, 139–40 (S.D.N.Y. 2020); *Gallagher*, 477 F. Supp. 3d at 26, 41–42; *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 799, 803 (S.D. Ohio 2012).

The balance of the equities and public interest also favor a stay and injunction pending appeal. "Surely, upholding constitutional rights serves the public interest," *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003), especially when, as here, the threatened constitutional violation would erode public confidence in North Carolina's elections. In *Moore v. Circosta*, the Eastern District of North Carolina recognized that the balance of equities favored injunctive relief against a "material[] chang[e]" in "the electoral process in the middle of an election" because that change would have undermined public confidence in the integrity of the electoral process and created confusion. No. 5:20-CV-507-D, 2020 WL 5880129, at *7 (E.D.N.C. Oct. 3, 2020). The *Moore* court entered a "temporary restraining order to maintain the status quo" so that it could assess the case on a fuller record. *Id.*[3]

Justice Riggs requests a stay and injunction pending appeal to maintain the status quo for similar reasons. The parallel state and federal actions here arise from the same petitions for judicial review of the State Board's December 2024 Decision and Order dismissing Judge Griffin's protests. Before that Decision and Order may be reversed or modified, the Fourth Circuit must have an opportunity to consider the federal constitutional issues—as well as the various underlying issues subject to Justice Riggs' *England* reservation—before the cure process and discarding of ballots commences. Judge Griffin, on the other hand, will merely remain in the same position he

---

[3] The *Moore* court also ordered that "[n]o bond is required." *Moore*, 2020 WL 5880129, at *9. No security on appeal would likewise be appropriate here.

was in before the state court proceedings began—contesting an election that has already been over for months, and his position will not suffer for giving the Fourth Circuit time to ensure the proper result is reached.

## II. Alternatively, the Court Should Enter a Temporary, Administrative Stay and Injunction to Allow the Fourth Circuit to Consider Justice Riggs' Motion

If the Court denies Justice Riggs' request for a stay and injunction pending appeal, the Court should enter an administrative stay and injunction that preserves the status quo while Justice Riggs moves the Fourth Circuit for that stay and injunction. This temporary relief would remain in force only as long as the Fourth Circuit is considering Justice Riggs' motion, and it would ensure that the Fourth Circuit has time to review that motion without emergency briefing.

## CONCLUSION

The Court should enter a stay and injunction pending appeal that prohibits the parties from taking any action to enforce or effectuate the North Carolina Court of Appeals' opinion, as modified by the North Carolina Supreme Court, while the Fourth Circuit considers the federal issues in this case.

Dated: April 14, 2025

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Samuel B. Hartzell
Raymond M. Bennett
N.C. State Bar No. 36341
Samuel B. Hartzell
N.C. State Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-2112
ray.bennett@wbd-us.com
sam.hartzell@wbd-us.com

*Counsel for Intervenor-Defendant Allison Riggs*