UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JUDGE JEFFERSON GRIFFIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>　　　　Defendant,<br><br>　　　　and<br><br>ALLISON RIGGS, et al.,<br><br>　　　　Intervenor-Defendants. | **STATE BOARD'S NOTICE OF REMEDIAL EFFORTS IN RESPONSE TO THE COURT'S APRIL 12, 2025 TEXT ONLY ORDER**<br><br>**Case No. 5:24-cv-00731-M** |
| NORTH CAROLINA DEMOCRATIC PARTY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>　　　　Defendants. | **Case No. 5:24-cv-00699-M** |
| CARRIE CONLEY, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALAN HIRSCH, et al,<br><br>　　　　Defendants. | **Case No. 5:25-cv-00193-M** |

1

Defendant the North Carolina State Board of Elections respectfully submits this notice in response to this Court's April 12, 2025 order directing the Board to inform "the court of the scope of its remedial efforts, including the number of potentially affected voters and the counties in which those voters cast ballots." The State Board is aware of pending appeals concerning this Court's decision to require the State Board to implement the North Carolina state courts' orders while refraining from certifying any result of the election at issue in this case. Various parties argue that further remedial steps to execute the state courts' orders may, in and of themselves, implicate federal constitutional questions. However, pursuant to this Court's April 12 and April 15, 2025 orders, the State Board summarizes how it intends to approach this administrative remedial process unless and until directed to do otherwise by court order. The State Board will promptly report any substantive modifications to this Court or another court with jurisdiction at the time.

## I. Identification of Affected Voters.

Pursuant to the North Carolina Court of Appeals Order, as modified by the North Carolina Supreme Court, the first step the State and county boards must take is to identify the challenged voters in the two categories of protests that remain.[1]

For Plaintiff Judge Griffin's protests concerning absentee ballots cast by military and overseas voters who did not submit a copy of a photo ID or an exception form with their ballots, these protests affect potentially up to 1,409 voters in Guilford County.[2]

---

[1] Certain of the voters referenced in Plaintiff's protests appear to have been listed several times. The figures below may therefore count the same voter multiple times. In addition, certain voters appear to be included within both categories of protests. These voters will receive both forms of notice.

[2] As indicated in the State Board's initial decision, only the Guilford County protest was complete by the deadline to file an election protest under state law.

2

In order to ensure each of the voters challenged are accurately identified as falling within this category, the Board intends to instruct the Guilford County Board of Elections to assemble and review the documentation submitted with the absentee ballots cast by each of these 1,409 voters, to confirm that these voters did not submit a copy of a photo ID or an exception form with their absentee ballots.[3] For those who did submit a photo ID or exception form when they voted, they will necessarily not fall within the category challenged and no further action will be required with respect to these voters. For those who did not submit such documentation, the Board will instruct the county board to provide notice to these voters as described below.

For Plaintiff's protests concerning absentee ballots cast by overseas voters who possibly checked the fourth box on question 1 of their federal Voter Registration and Absentee Ballot Request / Federal Post Card Application ("FPCA")[4] form that states, "I am a U.S. citizen living outside the country, I have never lived in the United States," these protests potentially affect up to 266 voters in fifty-three counties.[5]

---

[3] While the majority of military and overseas voters utilized the online portal to submit their absentee ballots in the election, some submitted ballots via email, mail, or fax. Because the online portal is not currently configured to accept attachments, only the voters within these latter subcategories may have submitted additional documentation, even though not required at the time.

[4] *See* FPCA Form, https://tinyurl.com/4rxkjvsx, last visited April 15, 2025.

[5] Alamance (one voter), Alleghany (one voter), Ashe (two voters), Avery (one voter), Brunswick (one voter), Buncombe (nine voters), Burke (two voters), Cabarrus (three voters), Caldwell (one voter), Carteret (two voters), Catawba (three voters), Cleveland (one voter), Columbus (one voter), Cumberland (six voters), Currituck (one voter), Dare (one voter), Davie (one voter), Duplin (one voter), Durham (twenty-three voters), Edgecombe (one voter), Forsyth (fifteen voters), Gaston (one voter), Guilford (fifteen voters), Halifax (one voter), Harnett (one voter), Henderson (seven voters), Iredell (seven voters), Jackson (one voter), Johnston (one voter), Lee (one voter), Lenoir (one voter), Lincoln (four voters), Madison (two voters), Mecklenburg (twenty-seven voters), Moore (eight voters), Nash (one voter), New Hanover (eight voters), Onslow (three voters), Orange (thirty-seven voters), Pender (one voter), Person (one voter), Pitt (two voters), Randolph (one voter), Robeson (one voter), Rutherford (one voter), Scotland (one

First, in order to ensure each of the voters challenged are accurately identified as falling within this category,[6] the Board intends to instruct the county boards for these fifty-three counties to assemble and review the FPCA forms submitted by these 266 voters to confirm that they did check the fourth box on the form.

Next, the county boards will review the voter's registration record and voter history record to ensure that the voter in question does not have a record of registering previously or voting previously under a claim of residency in the county. A prior registration form would show that the voter attested, under penalty of perjury, to an in-county residence in the past.[7] A record of voting in-person or using the absentee voting procedures under Article 20 of Chapter 163 would similarly show that the challenged voter attested, under penalty of perjury, to having resided within the county during a prior election. In either case, such records would demonstrate that these voters do not fit within the category of "never residents" under the order of the Court of Appeals. If such records exist, voters thus will be removed from the list of affected voters.

---

voter), Swain (one voter), Union (three voters), Vance (one voter), Wake (thirty-nine voters), Warren (one voter), Watauga (seven voters), and Wilson (three voters).

[6] Recent news reports and a sample internal review of the voter history of these voters indicates that some have resided in the state previously. *See* Bryan Anderson, *Longtime N.C. Voters May Have Their Ballots Wrongfully Tossed in Supreme Court Race*, The Assembly (Apr. 13, 2025), https://tinyurl.com/mpadw2zw; Judd Legum et al., *North Carolina Supreme Court throws out hundreds of ballots based on flawed data*, Popular Information (Apr. 15, 2025), https://tinyurl.com/y2wf44be; Paige Masten, *NC Supreme Court's ruling in Griffin case has some big, glaring problems*, The Charlotte Observer (Apr. 15, 2025, 10:18 AM), https://tinyurl.com/hnfzanjb. It is suspected that these voters were either incorrectly identified as never residents or inadvertently indicated that they never lived in the United States. Thus, these steps are necessary to ensure that the State Board is in compliance with the Court of Appeals order directing the State and county boards to identify the voters who it ruled are not eligible to vote under state law for failure to satisfy a residency requirement.

[7] *See* North Carolina Voter Registration Application Form, https://tinyurl.com/jjcnk9bc, last visited April 15, 2025.

Finally, for those that remain after the first two identification steps, the Board will instruct the county boards to inform these voters via a mailing (and, if possible, by email and telephone) that their votes were protested and North Carolina courts have ordered the State Board to discount their vote cast in the 2024 general election for North Carolina Supreme Court Associate Justice because state records indicate they informed the State that they never resided in North Carolina when they submitted their absentee ballot request form in the 2024 general election. The mailing will also inform the voter that this litigation is ongoing and that the voter's obligations may therefore be subject to change. In order to ensure these challenged voters were properly identified and are afforded due process as part of this identification, these voters will then be provided thirty days from the date of the mailing to submit a sworn affidavit stating that they have resided in the county and identifying their prior residence address. A template affidavit will be included with the mailing. Any such voters who provide the affidavit of in-state residence do not belong in this category and their votes will not be identified for removal.[8]

## II. Notice to Affected Voters.

For challenged voters whose votes were challenged for having voted as overseas or military voters without meeting the photo ID requirement, the State Board will direct the county boards to prepare notices to these voters via a mailing (and, if possible, by email and telephone) about their need to submit a copy of their photo identification, or an affidavit referred to as a Photo ID Exception Form. For ease of administration, this mailing concerning the photo ID

---

[8] Under normal state election protest procedures, a voter challenged under an election protest would be guaranteed notice and an evidentiary hearing to contest the allegations of ineligibility in the protest. *See* N.C. Gen. Stat. § 163-182.10(b)–(c). The Court of Appeals order does not appear to permit this statutory process to play out. However, the State Board interprets the order's direction for the county board to "identify the votes from 'Never Residents'" to afford any such challenged voters an opportunity to demonstrate to the county board that their votes should not be so identified, because they are not, in fact, "Never Residents."

requirement will be sent to voters at the same time as the other mailing referenced above. A blank exception form will be included with this mailing, which is included with all absentee ballot packages and is part of the standard cure process for civilian absentee voters who need to cure a deficiency with their photo identification documentation.

These voters will specifically be notified that North Carolina state courts have ordered the State Board provide them notice that their vote cast in the 2024 general election for North Carolina Supreme Court Associate Justice will only count if, within thirty days of the date that the mailing referenced above was sent, these voters submit a copied photo ID or exception form. The mailing will also inform the voter that this litigation is ongoing and the voter's obligations are subject to change. Voters will be informed that copied IDs or exception forms can be submitted by mail, fax, or submitted electronically via an online portal or email.

The State Board has begun work with the vendor that maintains its online portal for processing military and overseas ballots to create a means by which voters may securely submit copies of photo IDs and exception forms online. So as to ensure as orderly a process as possible, and to avoid confusion, the State Board will not instruct the county boards to send out the notice to these voters until this portal is ready. The State Board anticipates the portal to be ready within a week of entering into a contract. Also, to avoid confusion regarding the deadline for a voter to respond, the State Board will instruct the county boards to send out all notices on the same date, so that all challenged voters will have to respond within the same thirty-day period.

### III.    Identifying Ballots With Votes That May Be Discounted.

For challenged overseas and military voters who voted without providing an ID or claiming an exception and who now submit a photo ID or exception form, the county board will

6

proceed under 08 N.C. Admin. Code 17 .0109 for the review of such photo ID documentation.[9] For any challenged military or overseas voters who, within thirty days of the notice being sent, fails to provide any photo ID documentation or who provides documentation that is not acceptable under 08 N.C. Admin. Code 17 .0109, the State Board will instruct the county board to retrieve their ballots for further action consistent with an order from this Court or another court with jurisdiction.

For challenged overseas voters who are identified as having never resided in North Carolina, the State Board will instruct the county board to retrieve their ballots for further action consistent with an order from this Court or another court with jurisdiction.

Until this Court or another court with jurisdiction directs the State Board to change the vote count after having identified the ballots as described above, the State Board will direct the county boards not to ascertain or discount the votes of any such ballots, and to not reveal to anyone how any such ballots were voted.

Should this Court require further information, the State Board stands ready to provide it upon request.

Respectfully submitted, this 15th day of April, 2025.

Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
TSteed@ncdoj.gov
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758

*Counsel for the State Board*

---

[9] With the exception of paragraph (d) of the Rule, as the Court of Appeals has now determined that provision is invalid.