# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| CARRIE CONLEY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ALAN HIRSCH, et al.<br><br>Defendants. | Case Nos.　5:25-cv-00193-M<br>5:24-cv-00731-M (lead)<br>5:24-cv-00699-M |

## SECOND DECLARATION OF HAYDEN JOHNSON, ESQ.

I, Hayden Johnson, declare as follows:

1.　　I am an attorney at Protect Democracy Project and am one of the attorneys representing Plaintiffs. I submit this declaration in support of Plaintiffs' Brief filed April 21, 2025. The facts stated herein are based upon my review of the files that are attached.

2.　　On February 11, 2025, I retrieved a pdf copy of the March 27, 2024 North Carolina Rules Review Commission Meeting Minutes indicating unanimous approval of North Carolina State Board of Elections (NCSBE) rule codified 08 NCAC 17.0109(d). That adopted permanent rule, effective April 1, 2024, states that there is an "exception for military and overseas voters" who are "**casting a ballot pursuant to … Article 21A, Part 1 is not required to submit a photocopy of acceptable photo identification**" (emphasis added). A true and correct copy of the March 27, 2024 Meeting Minutes is attached as Exhibit A and available online at https://perma.cc/HN9K-AZ8H.

1

3.     On February 11, 2025, I retrieved a pdf copy of the Joint Legislative Oversight Committee on General Government March 2024 Meeting Agenda (Mar. 26, 2024), which contains no mention of 08 NCAC 17.0109. Based on the Joint Legislative Oversight Committee on General Government's website, there were no further meetings in 2024. A true and correct copy of the March 2024 Meeting Agenda is attached as Exhibit B and available online on the webpage at https://perma.cc/BRR9-TGF4.

4.     On February 11, 2025, I retrieved a pdf copy via a webpage printout of the NCSBE's "FAQ: Voter ID" website containing the answer to the inquiry "Is photo ID required for military and overseas voters (aka, UOCAVA voters)?" The stated response is: "**No. Photo ID is not required for military or overseas voters who vote using special absentee voting procedures that federal law makes available for such voters. Find more information at Military and Overseas Voting**" (emphasis added). A true and correct copy of the webpage is attached as Exhibit C and available online at https://perma.cc/26VJ-X4GZ.

5.     On February 11, 2025, I retrieved a pdf copy via a webpage printout of the September 19, 2024 NCSBE website press release titled "In NC, Absentee Voting Begins Friday for the 2024 General Election."  The press release states that "Absentee voters, **with the exception of military and overseas citizen voters,** must provide a photocopy of an acceptable form of photo ID when they return their ballot or fill out and return the Photo ID Exception Form that comes with the ballot materials" (emphasis added). A true and correct copy of the webpage is attached as Exhibit D and available online at https://perma.cc/WVL8-HUF5.

6.     On April 4, 2025, I retrieved a pdf copy via a webpage printout of the February 7, 2025 NC Newsline article titled "NC overseas voters were told they didn't need photo ID. Now their votes are in jeopardy." In the article, overseas voter Aidan Hunt explains: "The State Board

of Elections explicitly represented to me at the time of submitting my Federal Post Card Application, at the time of returning my UOCAVA Ballot, and at all times through the election and canvass that submission of a photo ID or photocopy thereof was NOT required for UOCAVA voters." A true and correct copy of the webpage is attached as Exhibit E and available online at https://perma.cc/PWH2-MQCA.

7.      On April 6, 2025, I retrieved a pdf copy, via the Republican National Committee's "Protect the Vote" website, of Exhibit A of the Complaint filed on October 2, 2024 in *Kivett v. NCSBE*, Case No. 24CV031557-910 (Wake Cnty. Sup. Ct. 2024), containing email communications from September 5, 2024, by NCSBE Counsel Paul Cox to county election officials in which he states: "Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. See GS 163- 166.12(f)(3)." A true and correct copy of Exhibit A of the *Kivett* Complaint is attached as Exhibit F and available online (starting page 24 of the pdf) at https://perma.cc/3L8X-SU53.

8.      On April 6, 2025, I retrieved a pdf copy, via the RNC's "Protect the Vote" website, of Exhibit B of the Complaint filed on October 2, 2024 in the *Kivett v. NCSBE*, Case No. 24CV031557-910 (Wake Cnty. Sup. Ct. 2024), containing email communications from August 25, 2024, by NCSBE Executive Director Karen Brinson Bell to state and county election officials, in which she states:

> For civilian voters, if a number does not validate, state law requires the voter to
>
> provide an alternative form of ID before they vote for the first time. UOCAVA
>
> voters are expressly exempt from this requirement by state statute and have been
>
> for nearly 20 years. GS 163- 166.12(f)(3). When a military or overseas citizen

3

voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot.

A true and correct copy of Exhibit B of the *Kivett* Complaint is attached as Exhibit G and available online (starting page 26 of the pdf) at https://perma.cc/3L8X-SU53.

9. On February 11, 2025, I retrieved a pdf copy via a webpage printout of the NCSBE website page displaying the "11/05/2024 Official General Election Results - Statewide" for "NC Supreme Court Associate Justice Seat 06." The "Contest Details" report a total of 2,770,412 ballots for Allison Riggs and 2,769,678 ballots for Jefferson Griffin. A true and correct copy of the webpage is attached as Exhibit H and available online at bit.ly/3PA7R6P.

10. On April 5, 2025, I retrieved a copy of the NCSBE decision and order rejecting the election protests for *In re Election Protests of Jefferson Griffin, Ashlee Adams, Frank Sossamon, and Stacie McGinn,* N.C. State Bd. Elections (Dec. 13, 2024). A true and correct copy is attached as Exhibit I and available online at https://perma.cc/V24M-PUPH.

11. On February 11, 2025, I retrieved a pdf copy via a webpage printout of the December 10, 2024 NCSBE website press release titled "State Board Will Not Order Full Recount in NC Supreme Court Contest." A true and correct copy of the webpage is attached as Exhibit J and available online at https://perma.cc/86D3-2KYU.

12. On April 4, 2025, I retrieved a pdf copy via webpage printout of the website (https://www.nc.gop/griffin_protest) that recipients of the Griffin postcard would navigate to if they followed the QR code on the postcard. It contains the approximately 333 individual pdfs voters would have to navigate to try to learn more information about whether they are protested, by whom, and on what basis. The website is not static. A true and correct copy of the webpage as it existed at the time voters received the Griffin postcard in November 2024, using the web

archives "wayback machine," is attached as Exhibit K and available online at https://web.archive.org/web/20241129185534/www.nc.gop/griffin_protest.

13. On April 11, 2025, I retrieved a pdf copy via webpage printout of the North Carolina state rules page on the Federal Voting Assistance Program website. It contains the instructions for the Federal Write-in Absentee Ballot that overseas voters could use to vote in all elections. It lacks any instruction or opportunity to provide a photocopy of a voter ID when the person votes using the Federal Write-in Absentee Ballot. The "Important information" section of this webpage also lists questions and answers for UOCAVA voters, including "I am an American citizen, but I have never lived in the U.S., can I vote in this state?" The listed answer to this question is "A U.S. citizen who has never resided in the U.S., and has a parent or legal guardian who was last domiciled in North Carolina, is eligible to vote in North Carolina." A true and correct copy of the webpage is attached as Exhibit L and available online at https://perma.cc/3N7X-DXEM.

14. On April 12, 2025, I retrieved a pdf copy, via the State Court Report website, of Jefferson Griffin's Petition for Writ of Prohibition filed on December 18, 2024 in the *Griffin v. North Carolina Board of Elections*, Case No. 320P24 (N.C. 2024). A true and correct copy of the Petition is attached as Exhibit M and available online at https://perma.cc/3D74-DYZA.

15. On April 12, 2025, I retrieved a pdf copy via webpage printout of the Forsyth County Board of Elections website titled "10 Facts About NC's Photo ID Requirement for Voting." The webpage states that "**Photo ID is not required for military or overseas voters who vote using special absentee voting procedures that federal law makes available for such voters**" (emphasis added). A true and correct copy of the webpage is attached as Exhibit N and available online at https://perma.cc/F6DM-NBZB.

5

16. On April 12, 2025, I retrieved a pdf copy via webpage printout, using the web archives "wayback machine" of the Guilford County Board of Elections website containing voting information for "Military and Overseas Citizens" as it instructed voters on May 11, 2024. The webpage sets out the two absentee voting processes separately, one for overseas and military voters and one for domestic civilian voters. It states that a photocopy of voter ID is required only for domestic civilian absentee. The website also shows the online transmission option for overseas voters, called the UOCAVA portal. A true and correct copy of the webpage is attached as Exhibit O and available online at https://web.archive.org/web/20240511204556/https://www.guilfordcountync.gov/our-county/board-of-elections/absentee-voting-information/military-and-overseas-citizens.

17. On April 12, 2025, I retrieved a pdf copy via webpage printout of the Buncombe County Board of Elections website that lists separate instructions for domestic civilian absentee voters and the distinct overseas and military absentee voters. The webpage states, when describing the process for domestic civilian voters, that "Voters who vote by mail must include a photocopy of an acceptable ID when returning their ballot, or they may complete an ID Exception Form." No such guidance is provided for overseas and military voters. A true and correct copy of the webpage is attached as Exhibit P and available online at https://perma.cc/5XRL-B59N.

18. On April 12, 2025, I retrieved a pdf copy of the "Absentee Voting Quick Guide" accessible on the Forsyth County Board of Elections website. The guide separately details absentee voting instructions for overseas citizens and for civilians. A photo ID requirement is listed for domestic civilian absentee voters but appears nowhere in the instructions for overseas

and military voters. A true and correct copy of the webpage is attached as Exhibit Q and available online at https://perma.cc/8EC2-L6YW.

19.     On April 13, 2025, I retrieved a pdf copy of the Forsyth County Board of Elections "Media Guide" accessible on the Forsyth County Board of Elections website. The guide states that "Active duty military members, their dependents, and U.S. citizens living abroad may request an absentee ballot the same way as other registered voters. They may also apply to register and vote through special programs for military and overseas voters. Military and overseas voters may register and vote through the Federal Postcard Application (FPCA) or the Federal Write-in Absentee Ballot (FWAB)." A true and correct copy of the Media Guide is attached as Exhibit R and available online (starting page 26 of the pdf) at https://perma.cc/XN3C-SPX2.

20.     On April 13, 2025, I retrieved a pdf copy via a webpage printout of the NCSBE webpage titled "Detailed Instructions to Vote by Mail."  This guidance informed domestic civilian absentee voters to "Place a copy of an eligible photo ID in the clear sleeve on the back of your ballot envelope." UMOVA voters received no such instructions. A true and correct copy of the webpage is attached as Exhibit S and available online at https://perma.cc/8XDS-KDFJ.

21.     On February 11, 2025, I retrieved a pdf copy via the NCSBE website of the Federal Write-In Absentee Ballot and attached voting instructions. There are no instructions regarding a photo ID requirement. A true and correct copy of the webpage is attached as Exhibit T and available online at https://perma.cc/FKL4-ZLCH.

22.     On April 10, 2025, I retrieved a pdf copy via the NCSBE website of the temporary rule exempting military and overseas absentee voters from the voter ID law. It is

Docusign Envelope ID: 0E816925-83AF-44B6-A955-231BFA1C6F7D

codified as Temporary Rule 08 N.C. Admin. Code 17.0109 (2019). A true and correct copy of the webpage is attached as Exhibit U and available online at https://perma.cc/4D7A-K2LJ.

23.    On April 18, 2025, I retrieved a pdf copy via the NCSBE website of an instruction to county officials titled "Numbered Memo 2021-03: Absentee Container-Return Envelope Deficiencies." It was last updated January 19, 2024. The memo specifies that, for domestic *civilian* absentee voters, there is a "clear sleeve on the ballot envelope used for including the photo ID documentation." There is no such instruction for military and overseas voters. A true and correct copy of the Numbered Memo is attached as Exhibit V and available online at https://perma.cc/SFB8-DRGV.

24.    On April 18, 2025, I retrieved a pdf copy of the submission an overseas voter, Aidan Hunt (as described *supra* ¶6), provided to the NCSBE as a brief against Griffin's protest of his vote. A true and correct copy of the submission is attached as Exhibit W and available online at https://perma.cc/BH75-YBE7.

25.    On April 21, 2025, I retrieved a pdf copy via the Guilford County Board of Elections website of a page titled "Photo ID Information." For specific details on use of photo ID for voting, the Guilford County website directs voters to the NCSBE Voter ID Overview webpage. That NCSBE webpage states, "Military and overseas voters casting ballots under special provisions for these voters are not required to submit a photocopy of their ID or an ID Exception Form when returning their ballot. See Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109(d))." A true and correct copy of the Guildford County webpage is attached as Exhibit X and available online at https://perma.cc/EB6J-94VF. A true and correct copy of the NCSBE Voter ID Overview webpage is attached as Exhibit Y and is also available online at https://perma.cc/E3VZ-8S2H.

26.     On April 21, 2025, I retrieved a pdf copy via the Durham County Board of Elections website of a page titled "Voter ID." The page states that "All details related to photo identification in North Carolina can be found on the Voter ID page created by the State Board of Elections! To access all the details on the NC voter photo identification requirements, click the links below." The Durham County website directs voters to the NCSBE Voter ID Overview webpage. That NCSBE webpage states, "Military and overseas voters casting ballots under special provisions for these voters are not required to submit a photocopy of their ID or an ID Exception Form when returning their ballot. See Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109(d))." A true and correct copy of the Durham County webpage is attached as Exhibit Z and available online at https://www.dcovotes.dconc.gov/voters/voter-id. A true and correct copy of the NCSBE Voter ID Overview webpage is attached as Exhibit Y.

27.     On April 21, 2025, I retrieved a pdf copy via the Durham County Board of Elections website of a page titled "Absentee Voting." In the "Frequently Asked Questions" section of the page, the question "Is ID required for absentee by-mail voting?" is answered by the following: "Yes. *Civilian* absentee voters are required to submit a photocopy of acceptable photo ID or an ID Exception Form along with their by-mail ballot. Click here for more information on photo ID for absentee-by-mail voters" (emphasis added). The link included in that response directs voters to the NCSBE Voter ID Overview webpage, which further clarifies that "Military and overseas voters casting ballots under special provisions for these voters are not required to submit a photocopy of their ID or an ID Exception Form when returning their ballot. See Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109(d))." A true and correct copy of the Durham County webpage is attached as Exhibit AA and available online at https://www.dcovotes.dconc.gov/voters/voting/absentee-voting#:~:text=Is%20ID%20required,by

%2Dmail%20voters. A true and correct copy of the NCSBE Voter ID Overview webpage is attached as Exhibit Y.

28.    On April 21, 2025, I retrieved a pdf copy via the Buncombe County website of a news item titled "Everything You Need to Know About Voting in the 2024 General Election in Buncombe County." The page states "Below you will find information from the State Board of Elections on what IDs will be accepted, how to get a photo ID, how to vote without a photo ID, and more." The Buncombe County website directs voters to the NCSBE page titled "10 Facts About NC's Photo ID Requirement for Voting," which states that "Photo ID is not required for military or overseas voters who vote using special absentee voting procedures that federal law makes available for such voters."  A true and correct copy of the Buncombe County webpage is attached as Exhibit BB and available online at https://perma.cc/U59T-Q4WM. A true and correct copy of the NCSBE "10 Facts About NC's Photo ID Requirement for Voting" webpage is attached as Exhibit N.

29.    On April 21, 2025, I retrieved a pdf copy via the Cumberland County Board of Elections website of a page titled "Voter Guide." The page states that "Details related to photo identification can be found on the Voter ID page on the NC State Board of Elections website. To access all details on NC voter photo identification requirements, click on the links below." The Cumberland County website directs voters to the NCSBE Voter ID Overview webpage. That NCSBE webpage states, "Military and overseas voters casting ballots under special provisions for these voters are not required to submit a photocopy of their ID or an ID Exception Form when returning their ballot. See Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109(d))." A true and correct copy of the Cumberland County webpage is attached as Exhibit

Docusign Envelope ID: 0E816925-83AF-44B6-A955-231BFA1C6F7D

CC and available online at https://perma.cc/KE2F-Q39R. A true and correct copy of the NCSBE Voter ID Overview webpage is attached as Exhibit Y.

30. On April 21, 2025, I retrieved a pdf copy via the New Hanover County Board of Elections website of a page titled "Absentee Voting." The page states that "For more information about Voter ID in North Carolina visit the North Carolina State Board of Elections Voter ID webpage (link)." The New Hanover County website directs voters to the NCSBE Voter ID Overview webpage. That NCSBE webpage states, "Military and overseas voters casting ballots under special provisions for these voters are not required to submit a photocopy of their ID or an ID Exception Form when returning their ballot. See Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109(d))." A true and correct copy of the New Hanover County webpage is attached as Exhibit DD and available online at https://perma.cc/D25E-67KF. A true and correct copy of the NCSBE Voter ID Overview webpage is attached as Exhibit Y.

31. On April 1, 2025, I retrieved a copy of the pdf "N.C. Absentee & Early Voting Statistics for the 2024 General Election Data Sources: Numbers through 20 days after Election Day Published 11/26/2024; Ballots cast through 11/25/2024" from the NCSBE website. It provides an initial breakdown of mail ballots cast by type in the 2024 election. A true and correct copy of the NCSBE's webpage is attached as Exhibit EE and available online at https://perma.cc/5DEV-58TY.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of April, 2025, in Colorado.

Docusign Envelope ID: 0E816925-83AF-44B6-A955-231BFA1C6F7D

Signed by:

*Hayden Johnson*

Hayden Johnson
Protect Democracy Project
2020 Pennsylvania Ave. NW, #163
Washington, DC 20006
hayden.johnson@protectdemocracy.org
(202) 870-3210

# EXHIBIT A

The Rules Review Commission met on Wednesday, March 27, 2024, in the Commission Room at 1711 New Hope Church Road, Raleigh, North Carolina, and via WebEx.

Commissioners Wayne R. Boyles III, Jeanette Doran, Jeff Hyde, Bill Nelson, Randy Overton, and Jake Parker were present in the Commission Room. Commissioners Barbara Jackson and Jay Hemphill were present via WebEx.

Staff member Alexander Burgos, Commission Counsel Seth Ascher, Brian Liebman, Bill Peaslee, and Travis Wiggs were present in the room.

The meeting was called to order at 10:00 a.m. with Chair Doran presiding.

The Chair read the notice required by G.S. 138A-15(e) and reminded the Commission members that they have a duty to avoid conflicts of interest and the appearance of conflicts of interest.

The Chair notified the Commissioners that the following item on the agenda would be taken up out of order at the end of the agenda: Permanent rules from the Office of State Budget and Management.

## APPROVAL OF MINUTES
The Chair asked for any discussion, comments, or corrections concerning the minutes of the February 28, 2024, meeting. There were none and the minutes were approved as distributed.

Upon the call of the Chair, the minutes were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

## FOLLOW UP MATTERS
### Office of State Budget and Management
Upon the call of the Chair, 09 NCAC 03M .0202 was approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

### Criminal Justice Education and Training Standards Commission
12 NCAC 09F .0103, .0104, and .0105 – The Commission objected to these Rules at the February special meeting. No action was required by the Commission.

### Board of Examiners in Optometry
21 NCAC 42D .0102 - At the January 2024 meeting, the Commission found that the revised rule satisfied the RRC's objection at the November 2023 meeting; however, it also determined that the revised rule was a substantial change and will need to be published and reviewed pursuant to G.S. 150B-21.2(g). This Rule will remain on the agenda until it is published. No action was required by the Commission.

**Board of Examiners for Engineers and Surveyors**
**21 NCAC 56 .0502 -** The Commission extended the period of review for this Rule at the February meeting. No action was required by the Commission.

**Building Code Council**
2024 North Carolina Energy Conservation Code - The Commission extended the period of review for this Rule at the February meeting. No action was required by the Commission.

**Building Code Council**
2024 North Carolina Fuel Gas Code - The Commission extended the period of review for this Rule at the February meeting. No action was required by the Commission.

**Building Code Council**
2024 North Carolina Mechanical Code - 2024 North Carolina Energy Conservation Code - The Commission extended the period of review for this Rule at the February meeting. No action was required by the Commission.

## LOG OF FILINGS (PERMANENT RULES)
**State Board of Elections**
Upon the call of the Chair, 08 NCAC 04 .0401, .0402; 17 .0101, .0102, .0103, .0105, .0106, and .0109 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None. The Commission noted a typographical error in 08 NCAC 04 .0401 and the revised rule was corrected following the meeting.

Paul Cox, the rulemaking coordinator for the agency, addressed the Commission.

**Medical Care Commission**
Upon the call of the Chair, 10A NCAC 13L .0301, .0302; 13P .0101, .0102, .0201, .0207, .0216, .0217, .0218, .0221, .0224, .0301, .0401, .0402, .0403, .0404, .0407, .0410, .0502, .0503, .0512, .0601, .0602, .0904, .0905, .1505 and .1507 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Home Inspector Licensure Board**
Upon the call of the Chair, the Commission voted to extend the period of review for 11 NCAC 08 .1101, .1103, .1105, .1107, .1109, .1110, and .1116 by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Commission for Public Health**
Upon the call of the Chair, 15A NCAC 18A .1001, .1002, .1003, .1004, .1006, .1007, .1008, .1009, .1011, .1012, .1014, .1017, .1018, .1019, .1020, .1021, .1022, .1027, .1601, .1602, .1603, .1604, .1605, .1606, .1607, .1608, .1609, .1610, .1611, .1612, .1613, .1614, .1615, .1616, .1617, .1618, .1619, .1620, .1621, .2518, and .2539 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Board of Architecture and Registered Interior Designers**
Upon the call of the Chair, 21 NCAC 02 .0108, .0201, .0203, .0206, .0210, .0213, .0214, .0215, .0302, .0303, .0306, .0307, and .0606 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in

the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Board of Certified Public Accountant Examiners**
Upon the call of the Chair, 21 NCAC 08F .0105 and .0401 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Board of Chiropractic Examiners**
Upon the call of the Chair, 21 NCAC 10 .0218 was approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

21 NCAC 10 .0208 was withdrawn at the request of the agency. No action was required by the Commission.

**Board of Dental Examiners**
21 NCAC 16H .0104 was withdrawn at the request of the agency. No action was required by the Commission.

**Interpreter and Transliterator Licensing Board**
Upon the call of the Chair, 21 NCAC 25 .0501, .0502, .0503, and .0505 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Board of Landscape Architects**
Upon the call of the Chair, 21 NCAC 26 .0105 was approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Board of Funeral Service**
Upon the call of the Chair, 21 NCAC 34B .0208, .0211, and .0213 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Board of Podiatry Examiners**
Upon the call of the Chair, 21 NCAC 52 .0208, and .0613 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**LOG OF FILINGS (TEMPORARY RULES)**
**Coastal Resources Commission**
15A NCAC 07H .0507, .0508, .0509; 07I .0702; 07J .0203, .0204, .0206, .0207, .0208; 07M .0401, .0402, .0403, .0701, .0703, .0704, and .1101 – The Chair announced that these Rules will be taken up at a Special Meeting of the RRC on April 8, 2024, at 10:00 am. No action was taken on these.

**State Board of Education**
Upon the call of the Chair, a motion to approve 16 NCAC 06C .0372, .0601, .0602, .0603, .0604, .0605, .0606, .0607, and .0608 failed by roll call vote, ayes 1, noes 7 as follows. Voting in the affirmative: Wayne R. Boyles, III – 1. Voting in the negative: Jeanette Doran, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7.

Upon the call of the Chair, the Commission voted to approve 16 NCAC 06C .0372, .0601, .0603, .0604, .0605, .0606, .0607, and .0608, and to object to 16 NCAC 06C .0602 for failure to meet the standard in G.S. 150B-21.9(a)(2) as articulated in staff's opinion, by roll-call vote, ayes 8, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jeanette Doran, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 8. Voting in the negative: None.

Ryan Collins, the Rulemaking Coordinator for the agency, addressed the Commission.

**State Board of Education**
Upon the call of the Chair, 16 NCAC 06E .0201, .0204, .0205, .0206, .0207, .0208, .0209, .0210, and .0215 were approved by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**Existing Rule Review**
The Commission voted to exempt subchapters from the decennial review beginning in 2024: 18 NCAC 07B, 07C, 07D, 07E, 07F, 07I, and 07K, and extend the periodic review deadline for 18 NCAC 07J to June 2025 by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

**COMMISSION BUSINESS**
Staff made a brief presentation to the Commission about potential RRC rule changes.

At 11:11 a.m., upon a motion by Chair Doran and a second by Commissioner Jackson, the Commission voted to call the public meeting of the Rules Review Commission into recess and enter into a closed session pursuant to G.S. 143-318.11(a)(1) to review and approve the general account of the February 28, 2024 closed session which may be withheld from public inspection pursuant to G.S. 143-318.10(e) and to consult with counsel regarding CRC v. RRC pursuant to G.S. 143.11(a)(3), by roll-call vote, ayes 7, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jay Hemphill, Jeff Hyde, Barbara Jackson, Bill Nelson, Randy Overton, and Jake Parker – 7. Voting in the negative: None.

Commissioners Barbara Jackson and Jay Hemphill did not return to the regular meeting following the closed session.

At 11:38 a.m., upon a motion by the Chair and a second by Commissioner Boyles, the Commission voted to come out of closed session and reconvene the public meeting of the Rules Review Commission by roll-call vote, ayes 5, noes 0 as follows: Voting in the affirmative: Wayne R. Boyles III, Jeff Hyde, Bill Nelson, Randy Overton, and Jake Parker – 5. Voting in the negative: None.

The meeting was adjourned at 11:40 a.m.

The next regularly scheduled meeting of the Commission is Tuesday, April 30, 2024, at 10:00 a.m.

_____

Alexander Burgos, Paralegal

_____

Minutes approved by the Rules Review Commission:
Jeanette Doran, Chair

Rules Review Commission
Meeting
Please **Print** Legibly

| Name | Agency |
|------|--------|
| Ben Busch | AG's office |
| Erin Cleary | AG's office |
| Paul Barth | GRNC |
| John Gagnon | OSBM |
| Rhonda Allen | NCCCIA/Armed Angels Training |
| ANN ELMORE | NC SOS |
| W Doole | |
| CHRIS MILLIS | NCHBA |
| Hyrum Hemingway | NC DOT |
| Catherine Lee | BFS & NCBA |
| Tom Mitchell | NC OEMS |
| Wally Ainsworth | NC OEMS |
| Buck Winslow | SBoard of CPA Examiners |
| TAYLOR CORPENING | DHHR |
| Cathe Sears | NC Brd Arch + R(T) |
| David Rittlinger | NC OSFM |
| Ryan Collins | NC St. Bd. of Educ |
| Paul Cox | NC St. Bd. of Election |
| ADAM STEELE | '' |
| Julie Ventaloro | NC OSBM |
| Virginia Niehaus | NCDHHS DPH |

Rules Review Commission
Meeting
Please **Print** Legibly

| Name | Agency |
|------|--------|
| Jeff Slax | Bd. of LA |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**Rules Review Commission Meeting March 27, 2024**
**Via WebEx**

| Name | Agency |
|------|--------|
| Elizabeth Hawley | Treasurer |
| Christopher Ventaloro | DEQ |
| Emily Jones | DOT |
| Angela Willis | DEQ |
| Karen Holder | DOI |
| Mike Hejduk | DOI |
| Dana McGhee | OAH |
| Ashley Snyder | OAH |
| Clifton Dowell | stateaffairs.com |
| Zac Patterson | |
| Hayworth, Anna | Agriculture |
| Nadine Pfeiffer | |
| Tracey Dranttel | |
| Liz Rasheed | |
| Ann Webb | commoncause.org |
| Harry Katt | |
| Shazia Keller | DHHS |
| Ellen Roeber | PT BOARD |
| Terry Chappell | DHHS |
| Barbara Geiger | NCBOLA |
| Helen Landi | |
| Larry Michael | DHHS |
| Adrianne Spoto | |
| Bruce Garner | SOS |
| Laura Rowe | Treasurer |
| Misty Piekaar | dhhs.nc.gov |
| Reed Fountain | |
| Jean Kirk | ncfootandankle.org |
| Harry Katt | |
| Elizabeth Pope | NCSW BOARD |
| Zac Patterson | |
| Chad Gambill | |
| Jon Fowlkes | DHHS |
| Wes Tripp | NCBELS |
| Dauna Bartley | Brockerlawfirm.com |
| Heather Misenheimer | DHHS |
| Shane Smith | DHHS |

| | |
|---|---|
| Nathan Childs | DOJ |
| Mary Lucasse | CRC |
| Dilcy Burton | DOI |
| Ian Clark | DHHS |
| Harvey Morse | wecancarry.com |
| Tracy Steadman | NCBRE |

# EXHIBIT B

# JOINT LEGISLATIVE OVERSIGHT COMMITTEE ON GENERAL GOVERNMENT

Non Standing Committee



Search: | document name or text within... |

? Help

📂 March 26 CFWYI, OSBM, OSHR

📄 1_JLOC_GenGov_March_26_Agenda.pdf

📄 2_DOA_Update_on_CFWYI_2024-03-26.pdf

📄 3_OSBM_Update_for_JLOC-Gen-Gov_2024-03-26.pdf

📄 4_OSHR_Updates_2024-03-22.pdf

📄 5_DOA_JLOC_GenGov_Follow_Up_Questions_March_26.pdf



# JOINT LEGISLATIVE OVERSIGHT COMMITTEE ON GENERAL GOVERNMENT

## 2023-2024 Legislative Session

**Chairs**
Rep. George G. Cleveland
Rep. Dennis Riddell
Sen. W. Ted Alexander

**Vice-Chairs**
Rep. Mark Brody
Sen. Dean Proctor

**Members**
Rep. Carolyn G. Logan
Rep. Howard Penny, Jr.
Rep. Joseph Pike
Sen. Mary Wills Bode
Sen. Carl Ford
Sen. Rachel Hunt
Sen. Steve Jarvis

AGENDA

LEGISLATIVE OFFICE BUILDING, ROOM 544
March 26, 2024
1:00 PM

I. **Welcome and Introductions**
*Rep. Cleveland, presiding*

II. **Update on the Council for Women and Youth Involvement (CFWYI) Grant Programs**
*Danielle Carman, Executive Director, CFWYI*
*Charnessa Ridley, Deputy Director, CFWYI*

III. **Updates from the Office of State Budget and Management (OSBM) on Evidence-based Policy-making and Directed Grants**
*Kristin Walker, State Budget Director*

IV. **Presentation on Phase 2 of the Human Capital Resource Management (HCM) Project**
*Barbara Gibson, Director, Office of State Human Resources (OSHR)*
*Chryste Hofer, CIO, OSHR*
*Lockhart Taylor, Director of Government Relations, OSHR*

# EXHIBIT C

An official website of the State of North Carolina  How you know ⌄

ⓘ  State Government websites value user privacy. To learn more,
    view our full privacy policy (https://www.nc.gov/privacy).

🔒  Secure websites use HTTPS certificates. A lock icon or https:// means you've safely connected to the
    official website.

Find answers to questions about North Carolina's voter ID requirement, including acceptable ID types, how to get a free ID, voting procedures, and exceptions.

# Frequently Asked Questions (FAQ)

### Can I get an ID from the county board of elections during the early voting period?

Yes. County boards will be issuing voter photo IDs during early voting. They cannot issue IDs between the last day of early voting and Election Day, however.

### Can a poll worker reject my photo ID because my appearance has changed since my photo was taken?

Election workers are looking to see if the photo on the ID "reasonably resembles" the voter. Election workers will be trained to understand that appearances may change over time. If the election worker checking the voter in does not believe the photo reasonably resembles the voter, the voter will still be allowed to vote a regular ballot unless the judges of election at the polling place unanimously agree that the photo does not bear a reasonable resemblance to the voter, in which case the voter will be allowed to vote a provisional ballot.

### If I forgot ID, can I go get it and return to vote?

Yes. If a voter does not provide ID, instead of voting with an ID Exception Form or voting with a provision ballot and later returning with ID, the voter may simply decide not to request a ballot at that time, go get an ID, and then return to vote. Once a voter accepts a ballot, however, they may not return to vote.

## What student and public employee IDs are approved for voting? 

The State Board of Elections has approved 100 student and employee identification cards across the state for use in the 2023 municipal elections and 2024 primary and general elections in North Carolina. View the list at [Student and Public Employee IDs Approved for Voting (/voting/voter-id/student-and-public-employee-ids-approved-voting)](/voting/voter-id/student-and-public-employee-ids-approved-voting). In the coming months, the State Board will announce additional ID application periods for the 2024 elections.

## Will my ballot be counted if I properly fill out an ID Exception Form? 

Yes. A ballot from an eligible, registered voter with a properly completed ID Exception Form must be counted. Such a ballot may only be rejected if the bipartisan county board of elections unanimously decides that the voter provided false information on the form.

## Is photo ID required for military and overseas voters (aka, UOCAVA voters)?

No. Photo ID is not required for military or overseas voters who vote using special absentee voting procedures that federal law makes available for such voters. Find more information at [Military and Overseas Voting (/node/27)](/node/27).

## Where can I read the photo ID laws? 

The photo ID laws are found in the following statutes and rules:

- [Voter photo identification cards (N.C.G.S. § 163-82.8A) (https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-82.8A.html)](https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-82.8A.html)
- [Requirement for photo identification to vote in person (N.C.G.S. § 163-166.16) (https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-166.16.html)](https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-166.16.html)
- [Approval of student identification cards for voting identification (N.C.G.S. § 163-166.17) (https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-166.17.html)](https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-166.17.html)
- [Approval of employee identification cards for voting identification (N.C.G.S. § 163-166.18) (https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-166.18.html)](https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-166.18.html)
- [Simultaneous issuance of absentee ballots with application (N.C.G.S. § 163-230.1(f1) and (g)) (https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-230.1.html)](https://ncleg.gov/EnactedLegislation/Statutes/HTML/BySection/Chapter_163/GS_163-230.1.html)
- [Verification of Photo Identification During In-Person Voting (08 NCAC 17 .0101) (http://reports.oah.state.nc.us/ncac/title%2008%20-%20elections/chapter%2017%20-%20photo%20identification/08%20ncac%2017%20.0101.html)](http://reports.oah.state.nc.us/ncac/title%2008%20-%20elections/chapter%2017%20-%20photo%20identification/08%20ncac%2017%20.0101.html)
- [Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109) (http://reports.oah.state.nc.us/ncac/title%2008%20-%20elections/chapter%2017%20-%20photo%20identification/08%20ncac%2017%20.0109.html)](http://reports.oah.state.nc.us/ncac/title%2008%20-%20elections/chapter%2017%20-%20photo%20identification/08%20ncac%2017%20.0109.html)

# Related Content

- [Student and Public Employee IDs Approved for Voting (/voting/voter-id/student-and-public-employee-ids-approved-voting)](/voting/voter-id/student-and-public-employee-ids-approved-voting)

- [Military and Overseas Voting](/voting/military-and-overseas-voting)

# EXHIBIT D

ⓘ  State Government websites value user privacy. To learn more,
view our full privacy policy (https://www.nc.gov/privacy).

🔒  Secure websites use HTTPS certificates. A lock icon or https:// means you've safely connected to the official website.

# In NC, Absentee Voting Begins Friday for the 2024 General Election

## On Friday, absentee ballots will be sent to military voters and citizens living outside the United States who requested them.

RALEIGH, N.C.

Absentee ballots will be sent on Friday to military voters and citizens living outside the United States who requested them, marking the official start of the 2024 general election in North Carolina.

Following a court decision two weeks ago requiring 2.9 million prepared ballots to be reprinted, the 100 county boards of elections, with the help of State Board staff and printing vendors, succeeded in printing new ballots ahead of the Sept. 21 federal deadline to send ballots to voters through the Uniformed and Overseas Citizens Absentee Voting Act (https://www.fvap.gov/info/laws/uocava) (UOCAVA).

Meanwhile, State Board staff worked to ensure all 2,347 ballot styles across the state will be available through the NC Absentee Ballot Portal (https://votebymail.ncsbe.gov/app/home). A ballot style refers to a unique combination of contests on a ballot based on voters' addresses and which contests they are eligible to vote in. Through the secure portal, any registered voter in North Carolina

can request an absentee ballot. Military and overseas citizen voters can also receive and return their ballot electronically through the portal.

On Tuesday, Sept. 24, county boards of elections (https://vt.ncsbe.gov/BOEInfo/) will begin mailing absentee ballots to all other voters who requested them for the Nov. 5 election. Ballots will be mailed through the U.S. Postal Service, and voters may not get them until several days after they are mailed.

County boards were prepared to send absentee ballots out on Sept. 6, the deadline for absentee ballots to be sent under state law. However, rulings by the N.C. Court of Appeals and N.C. Supreme Court required election officials to remove the We The People party line from the presidential contest on the ballot, including the party's presidential nominee, Robert F. Kennedy Jr., and vice-presidential nominee, Nicole Shanahan.

As a result, election officials had to code, design, proof, and print new ballots without the We The People party line.

**"The hard work of State Board staff, county board staff, and our printing vendors ensured that we could meet the federal deadline and start voting,"** said Karen Brinson Bell, executive director of the NC State Board of Elections. **"North Carolina voters, please take it from here."**

Statewide through Thursday morning, about 193,700 voters had requested absentee ballots, including nearly 16,000 military and overseas voters. For up-to-date data on absentee ballot requests, see the Daily Absentee Request Reports Folder (https://dl.ncsbe.gov/?prefix=Press/2024%20General/NC%20Absentee%20Ballot%20Requests%20for%202024%20General/).

# 10 Tips for Voters About Absentee Voting

1. Any registered voter in North Carolina can vote by mail. The easiest way to request an absentee ballot is through the NC Absentee Ballot Portal (https://votebymail.ncsbe.gov/app/home). For more information on absentee voting, see Vote By Mail (/voting/vote-mail). Also see Detailed Instructions to Vote By Mail (/voting/vote-mail/detailed-instructions-vote-mail).

2. The deadline to request an absentee ballot is 5 p.m. Tuesday, Oct. 29. However, election officials recommend requesting and returning your ballot sooner to ensure it can be completed and received by the county board of elections (/voting/vote-mail/detailed-instructions-vote-mail) by the return deadline. If you've already submitted an absentee ballot request for this election, you do not need to submit another one. (*For military and overseas citizen voters only, the request deadline is 5 p.m. Nov. 4, the day before Election Day.*)

3. Completed absentee ballots must be *received* by the voter's county board of elections (/voting/vote-mail/detailed-instructions-vote-mail) by 7:30 p.m. on Election Day – Nov. 5. (*For military and overseas citizen voters only, the receipt deadline is is 7:30 p.m. on Election Day for voters who return their ballot electronically, and 5 p.m. Nov. 14 by mail.*)

4. Sample ballots are now available through the State Board's Voter Search (https://vt.ncsbe.gov/RegLkup/) tool.

5. If you have questions about your absentee ballot, contact your county board of elections (https://vt.ncsbe.gov/BOEInfo/).

6. Absentee voters, with the exception of military and overseas citizen voters, must provide a photocopy of an acceptable form of photo ID when they return their ballot or fill out and return the Photo ID Exception Form that comes with the ballot materials.

7. Absentee voters can track their ballot using BallotTrax (https://northcarolina.ballottrax.net/voter/), starting Sept. 24.

8. Non-UOCAVA voters can return their ballot by mailing it or returning it in person to their county board of elections (https://vt.ncsbe.gov/BOEInfo/) or to any early voting site during the early voting period — Oct. 17 through Nov. 2. See Early Voting Sites Search (https://vt.ncsbe.gov/EVSite/).

9. The cost to return an absentee ballot by mail through the U.S. Postal Service has increased to $1.77, or three "Forever" stamps.

10. If you request a ballot by mail but do not return it, you can still vote in person during the early voting period (Oct. 17 through Nov. 2) or on Election Day. Simply discard your absentee ballot.

**Related Topics:**

- Early voting (/press-release-terms/early-voting)
- Required by law (/press-release-terms/required-law)
- Vote by mail (/press-release-terms/vote-mail)
- Voter ID information (/press-release-terms/voter-id-information)

## CONTACT

### Patrick Gannon

✉ patrick.gannon@ncsbe.gov (mailto:patrick.gannon@ncsbe.gov)

# EXHIBIT E

COURTS, JUSTICE    ELECTION 2024    STATE, LOCAL GOVT.    VOTING

## NC overseas voters were told they didn't need photo ID. Now their votes are in jeopardy.

BY: **LYNN BONNER** - FEBRUARY 7, 2025   5:30 AM



📷 Republican state Supreme Court candidate Jefferson Griffin continues to pursue litigation in hopes of overturning the results of the November election he lost to incumbent Justice Allison Riggs. (File photos)

Felix Soto looked forward to voting in his first general election last year and made plans to cast a ballot from Costa Rica while on a UNC fellowship.

He decided to mail his ballot back to the Guilford County Board of Elections rather than submit it electronically.

He'd heard about heated conservative opposition to everything other than in-person voting, and wanted to avoid having his ballot being caught up in any conflicts. "This online portal seems like something they wouldn't like," he said.

Soto mailed a copy of his passport photo page with his ballot.

There was a problem with the first ballot, Soto said in an interview, so he had to submit another. He didn't send the passport copy a second time, he said, because the elections office said it wasn't necessary.

Soto is now on a list with more than 5,500 military and overseas absentee voters whose choices to fill a North Carolina Supreme Court seat may be erased. The Republican candidate for the seat, Appeals Court Judge Jefferson Griffin, wants to throw out those votes and more than 60,000 others he says were illegally cast.

"I wanted to make doubly sure that my ballot wasn't contested," Soto said. "Then to still have it be contested is like a slap in the face. I tried so hard, and still…"

Griffin believes rejecting these ballots will lift him to victory over incumbent Democratic Justice Allison Riggs, who leads by 734 votes.

After the Board of Elections dismissed his protest, Griffin asked the state Supreme Court to order the votes thrown out. Of the more than 60,000 he's contesting, his lawyers suggested the justices look first to tossing military and civilian overseas absentee votes because photo ID is not included with those ballots. He has challenged overseas and military ballots only from four of the state's most Democratic counties.

The Supreme Court told Griffin he had to take the normal route for an appeal and start at Wake Superior Court. A court hearing on Griffin's lawsuit is scheduled to begin Friday.

## Photo ID was not required of overseas and military absentee voters

The state Board of Elections' rules do not require military voters and citizens living overseas to submit photo ID with their absentee ballots.

Of the multiple protests Griffin brought to the Board of Elections in December, the only protest the bipartisan board voted unanimously to dismiss was his protest over the issue of photo ID for military and overseas voters.

Griffin's lawyers said in a recent brief filed in Wake County Superior Court that the state Board of Elections was wrong to

exempt military and overseas voters from the photo ID requirement.

"In the Supreme Court contest, 5,509 such ballots were unlawfully cast," the brief says. "Judge Griffin anticipates that, if these unlawful ballots are excluded, he will win the election."

Most absentee and in-person voters must show an acceptable photo ID. If they don't have one, they must fill out a form saying why.

The state Republican Party, which is supporting Griffin, summed up its argument in a Facebook post this week.

"We The People put Photo ID in the North Carolina Constitution. The General Assembly put Photo ID into law. No ID? No Vote. It's That Simple."

North Carolina's state solicitor general, in a court brief, refuted the argument that the board was wrong to exempt absentee military and overseas voters. Requiring IDs probably would have violated the U.S. Constitution, the brief says.

Absentee voting by service members and citizens overseas is governed by a 2011 state law the legislature passed unanimously, the brief said. That law allows those voters to use special procedures to register to vote, request a ballot, and submit a ballot, the brief said. These procedures don't require voters to submit ID with their absentee ballots.

The state law mirrors the federal Uniformed and Overseas Citizens Absentee Voting Act, or UOCAVA.

"The Board concluded that imposing an identification requirement on voters covered by UOCAVA that is inconsistent with federal law would likely violate the Supremacy Clause of the U.S. Constitution," the brief said.

Voters said it's wrong to claim they should have compiled with a rule that didn't exist.

"I think it's pretty obvious that you can't change the rules after the election," said Aidan Hunt, who voted while traveling in Asia.

"You can't tell people explicitly there's no need to submit it, then penalize people for not submitting it," he said in an interview this week.

Hunt used the electronic portal to vote. He doesn't remember if there was even a way to send a copy of an ID.

"As best as I can recall, there's no function to upload random stuff going through that portal. There wasn't any place designated for an ID," he said. "It's not like an email message where you can just put whatever in there."

Hunt submitted his own brief when Griffin filed his protests with the Board of Elections.

"The State Board of Elections explicitly represented to me at the time of submitting my Federal Post Card Application, at the time of returning my UOCAVA Ballot, and at all times through the election and canvass that submission of a photo ID or photocopy thereof was NOT required for UOCAVA voters. Upon information and belief, the same is true for all affected Party Voters," he wrote.

He said in the interview that he knew the Board of Elections was going to hear from a lot of lawyers, and he wanted them to hear from a voter.

"I just wanted to make a point that citizens are reading this and are watching what the government's doing and they will be held accountable," Hunt said. "I wanted a citizen's name on the record."

He told them: "Let us make no mistake that discarding the ballots of citizens eligible to vote is the death penalty for democracy. Unlike a protest of disqualified voters, this protest aims to destroy the voices of North Carolinians unequivocally eligible to vote by law due to an alleged requirement that could not have been known to them at the time of voting."

## Some overseas voters didn't receive required notices

In the months since Griffin filed his protests, some who voted in person and whose ballots Griffin is challenging said they never received the postcards the state GOP was required to send notifying them of the potential challenges. The same is true of overseas voters.

Soto said he didn't know until his mother plugged his name into an online search tool.

Kathryn Spann, who moved to Spain last year from Durham, didn't know her vote was being challenged until a reporter contacted her

this week. Spann is a former lawyer turned cheesemaker who co-owned Prodigal Farm in Durham.

In an interview, Spann said she's been following Griffin's case, but never received an NC GOP postcard. Griffin is challenging her husband's ballot too.

Spann's sister is living in the Durham house where Spann lived before moving to Spain. No postcard arrived at that address. And she never received any notice in Spain.

"The idea that after the fact and selectively, not equally across the state, a sitting judge would choose to attack the established electoral system is repugnant," she said.

"Had I received basic and timely notice, I feel that I could have plugged into the attorneys filing the amicus brief or working with Democrats Abroad."

In 2008, Spann ran in a down-ballot race for Durham County Soil and Water District Supervisor.

"I've always been, perhaps not surprisingly, focused on doing research on all races, not just the top of the ticket," she said.

In October, she wrote on Facebook about her experience submitting an online ballot. She shared a link for overseas voter registration and encouraged people to vote the entire ballot.

"Our democracy depends on all of us informing ourselves on races up and down the ballot," she wrote.

**REPUBLISH**

*Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our website. AP and Getty images may not be republished. Please see our republishing guidelines for use of any other photos and graphics.*



## LYNN BONNER 

Investigative Reporter Lynn Bonner covers the state legislature and politics, as well as elections, the state budget, public and mental health, safety net programs and issues of racial equality.

NC Newsline is part of States Newsroom, the nation's largest state-focused nonprofit news organization.

**MORE FROM AUTHOR**

## MORE FROM OUR NEWSROOM



**Appeals court rules in favor of GOP Supreme Court candidate Griffin's election challenge**

BY **LYNN BONNER**

4/4/2025



**GOP judge's voter challenge is a reflection of his past embrace of Confederate symbols, critics say**

BY **LYNN BONNER**

3/28/2025

## STORIES AND VOICES THAT MATTER

DEMOCRACY TOOLKIT



NC Newsline is a Raleigh-based nonpartisan, nonprofit newsroom dedicated to fearless reporting and hard-hitting commentary that shines a light on injustice, holds public officials accountable, and helps improve the quality of life throughout North Carolina.

We're part of States Newsroom, the nation's largest state-focused nonprofit news organization.

DEIJ Policy | Ethics Policy | Privacy Policy



Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our website. (See full republishing guidelines.)

   

© NC Newsline, 2025

v1.78.1

**STATES NEWSROOM**

**FAIR. FEARLESS. FREE.**

# EXHIBIT F

**From:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 5:39 PM
**To:** Holland, Parker <Thomas.Holland@ncsbe.gov>
**Subject:** RE: PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

This is a follow up from the previous email by General Counsel Paul Cox. We have notified the impacted counties individually of those FPCA or FWABS processed without an identification number. Please follow the guidance below for any UOCAVA Requests for new registrants. If you have any questions, please feel free to reach out.

Best Regards,

**Parker Holland, CERA**
**Elections Administration Manager**
O: (919) 814-0727
M: (919) 480-9855



**From:** Cox, Paul <paul.cox@ncsbe.gov>
**Sent:** Wednesday, September 4, 2024 1:01 PM
**To:** SBOE_Grp - Legal <Legal@ncsbe.gov>
**Subject:** PLEASE READ: UOCAVA Requests for new registrants

Directors (via BCC):

I'm writing to clarify the requirement for identification numbers for new registrants who register via FPCA or FWAB. I addressed this briefly in the Huddle chat last Wednesday, but we've gotten some additional questions. So we wanted to be clear about the proper procedures, since UOCAVA ballots start going out Friday.

**If a person is registering for the first time using an FPCA or FWAB, the requirement to provide driver's license/DMV number or, if they don't have it, last four of their social security number, applies to these voters—just like for all other new registrants.** This requirement in HAVA applies to all new registrants, whether they are civilian or UOCAVA registrants. *See* 52 USC 21083(a)(5)(A)(i).

These new registrants were included in the State Board's decision last December to require new registrations going forward to include one of these numbers, unless the registrant affirms that they don't have either number. We regret if that was not clear.

We are going to have our IT department run a list of **new** FPCA/FWAB registrants since the State Board's order was released in December 2023, to flag any that may have been processed without one of these numbers, and we'll share that data with your office for review and action. The list should not be very long, since most FPCA/FWAB voters come through the portal, and the portal doesn't allow a UOCAVA voter to submit their request without including one of these numbers.

**In the meantime, please review your pending FPCAs before ballot transmission on Friday, to ensure that they included one of these numbers**. Be sure to include that number when you enter data into VoterScan. If the record doesn't result in a database match, the FPCA (registration and ballot request) must still be processed. Unlike civilian voters, North Carolina law expressly exempts UOCAVA voters from the requirement to provide HAVA ID if the number fails to match across agency databases. *See* GS 163-166.12(f)(3).

If any new FPCA/FWAB registrant did not include DL/DMV number or last four of their SSN as of December 14, 2023, and they do not state in writing that they lack these numbers, you will need to reach out to the registrant to obtain one of these numbers before processing their registration/ballot request. Please email the voter the attached letter requesting this information. If you do not have an email address for the voter, contact the voter by any other means you have available to obtain the information. Should the letter be returned, you will need to scan in the letter as VOTER CHANGE/UPDATE DOCUMENT in the web scanning app.  If the voter does not return the request for information the FPCA request will need to be spoiled. Please include in the comments "Spoiled-ID not provided." Spoiling a ballot will need to occur before ballots go out on Friday, for any pending requests that did not include one of the required numbers.

Best regards,

**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

# EXHIBIT G



From: "Bell, Karen B" <Karen.Bell@ncsbe.gov>
Sent: Sunday, August 25, 2024 5:04pm
To: "lrevelle@reagan.com" <lrevelle@reagan.com>
Cc: "SBOE_Grp - Legal" <Legal@ncsbe.gov>, "Gannon, Patrick" <Patrick.Gannon@ncsbe.gov>
Subject: Your recent letter

Ms. Rebuck, (bcc: State Board Members and county election directors)

We write to express concern about a letter that you wrote that was forwarded to us by the elections director in another county, who received it from a state legislator asking her to respond. Your letter has been forwarded to a wide audience, and unfortunately, it contains false and misleading statements, and partisan remarks.

We are forwarding your letter and our response to the five members of the State Board of Elections and to all county directors so they can respond as necessary if they receive inquiries. This has required State Board staff to spend our limited resources drafting this letter and researching and providing the facts.

We are always available to county board members with questions or concerns about election administration, and we hope that in the future you will reach out to us should you need clarification to avoid the potential spread of false or misleading information, which undermines our common goals of administering elections according to the law and promoting confidence in our elections.

Please see our responses in red to your italicized statements below. We are happy to answer any questions you have about them.

*"I am a member of the Henderson County Board of Elections and have served on the Board for over 6 years. I am frankly very discouraged about the upcoming election. I want to strongly state my belief that if you do not intervene immediately either legislatively or legally, we are going to lose NC to the Dems in November which will likely mean we lose the country. The responsibility will be yours, one way or the other."*

Given the partisan statements in the above, we remind you of the requirements of Article 4A of Chapter 163 of the North Carolina General Statutes. Whether or not the statements violate these provisions, it undermines the public's confidence in the fair administration of elections if their elections officials are widely communicating their desire for a particular outcome in an election they oversee.

*"I am aware that Henderson County has recently received hundreds of new UNOCAVA (Overseas Civilian) applications." There is NO requirement to verify these people AND they do NOT have to provide ID when sending back their vote (by mail or email)."*

UOCAVA, which stands for Uniformed and Overseas Citizens Absentee Voting Act, is a federal law prescribing specific procedures for military and overseas citizens to be allowed to vote in federal elections. Our state has adopted laws under Article 21A of Chapter 163 to carry out these procedures. When military and overseas citizens register to vote under these procedures, they typically provide either their Social Security Number or driver's license on the prescribed federal form. When county officials input those values into the statewide database, the statewide database

automatically attempts to validate those numbers with the DMV and Social Security Administration. For civilian voters, if a number does not validate, state law requires the voter to provide an alternative form of ID before they vote for the first time. UOCAVA voters are expressly exempt from this requirement by state statute and have been for nearly 20 years. GS 163-166.12(f)(3).

When a military or overseas citizen voter submits their ballot, neither federal nor state law requires them to provide ID when returning their ballot.

*"I believe this is a concerted effort to turn Henderson County blue. However, I believe that if you check with other counties, you will see that the numbers have grown substantially in every county. I have heard numbers as high as 300,000 statewide so far. I believe that there is a statewide effort under way to undermine the election."*

Again, we caution you about statements favoring or opposing particular outcomes in the elections you oversee.

We spoke with the Henderson County director, and she confirmed on August 23 that Henderson had received fewer than 150 UOCAVA requests. In 2020, according to State Board data, Henderson County received 347 requests for absentee ballots from military and Henderson County voters living abroad at the time. So, the number of requests is not necessarily high in 2024 as you suggest. Ballots go out in two weeks.

It is also possible that advocacy groups and others are encouraging military and overseas voters who are U.S. citizens to request their ballots. There is nothing wrong with that and, in fact, that activity protected by the First Amendment of the U.S. Constitution.

Until ballot styles are finalized, we do not know how many UOCAVA requests have come in statewide. However, the State Board has no evidence of a "statewide effort underway to undermine the election." If you have actual evidence of such, please provide it to the State Board or to the law enforcement agency of your choice. Otherwise, your statements are sensationalistic and inflammatory and will undermine voter confidence with no facts to back them up.

*"Additionally, Henderson County has received numerous new voter applications that do not have HAVA required information to register (missing Driver's License and/or last 4 of SS or those numbers were not validated). The State BOE has instructed Counties to go ahead a register them without verification."*

This is false. The State Board, both in emails and in a statewide Huddle training session, have instructed county boards as follows:

· If a new voter does not provide their driver's license number or last four digits of their Social Security number and does not check the box to indicate that they do not have either of these numbers, then the voter will not be registered and will be sent an incomplete letter seeking the missing information.

· If an applicant provides a driver's license number or last four of their Social Security number but that number does not validate, then their registration should be processed but they must be sent a "request for identification letter." If the voter subsequently provides the ID information, their

profile is updated. If they do not, they must provide an alternative ID proving their identity (so-called "HAVA ID") before voting, or vote provisionally. See GS 163-166.12(c). See the <u>Request for Identification Information letter</u>.

· If a new voter checks the box to indicate they do not have either identification number, then they will be sent a "request for identification" letter and be required to show a HAVA ID before they vote.

*"There have been over 10,000 voters registered state-wide in the last 3 months with unverified or no Dr License or last 4 of SS numbers and therefore HAVE NOT BEEN VERIFIED. So even though the information provided does not match (validated) the application is automatically approved. This is just common sense-the identity of the voter should be verified before entering them on the voter rolls. This is an open invitation for missing or unvalidated applications to be approved and entered into the system."*

See the note above about the additional verification requirement for voters whose ID numbers fail to validate.

Here's some additional important context. When a number does not match, SEIMS will not populate that field, so if we run a query in the database to see which registrations lack these identifiers, the query shows registrations where an identifier *was* provided but the number did not validate. To attempt to validate DLs or last-four SSNs, the SEIMS system sends a database query to DMV databases and the Social Security Administration databases, asking those databases to attempt to match specific information in records on both sides. It is not uncommon for a person's ID to fail validation. There are a number of benign reasons this can occur, and occur regularly, which has been well <u>documented</u>. The DMV/SSA requires exact field matching on name, DOB, DL/SSN so there is no current way to identify possible matches. Common reasons for validation failure are: misspelling of names, variation of names (Bob vs. Robert, maiden name vs. married name, varied designation of surnames for minority ethnicities, etc.), nickname or a missing suffix missing (Jr. or Sr.), inadvertent typos like missed numbers or transposed numbers in DL or last-four SSN, typos in birthdates, and situations where a registrant listed month/day/year in the wrong order on their registration form (there could be <u>national origin-based reasons</u> for this). Recognizing the faults in matching between distinct databases, the General Assembly enacted the provisions in GS 163-166.12(c) which allow a registrant whose DL or SSN did not match to provide HAVA ID either before or when first voting.

*"Another concern is preventing non-citizens from voting. Putting the matter on the ballot in November is too little, too late. The legislature passed SB 747 requiring clerks of superior court to provide lists of people who have been excused from jury duty indicating that they are not US citizens. However, according to the SBOE this will not take place until after the November election."*

This is false. The superior court clerks are (and have) provided such lists, and State Board staff is reviewing those and contacting any registered voters who are identified and for whom a state and federal database check does not show they have obtained citizenship. After nearly every county clerk submitted any records of jurors excused for non-citizenship, there were 9 registrants total identified through these checks statewide. While it is true that federal law (NVRA) prevents us from outright removing these records this close to a federal election, we are nonetheless going to

encourage any of these identified registrants to cancel their registration if they indeed lack citizenship. After the federal election, we can resume this program and conduct removals similar to how we process felon removals, rather than the notices and invitation to cancel registration which is as much as we can do and still comply with federal law.

*"You have allowed the SBOE to drag its feet (I believe on purpose) on all of these matters. This must be rectified if you want to win in November. I am not asking for anything that would be unfair to anyone, I just want the laws enforced to make it fair for everyone. Frankly, the county BOEs are nothing more than a rubber stamp and we have to sit there and vote to certify without any real ability to legally object. Again, the success or failure of this election in November is on you. I implore you to either fix this legislatively or in Court.*

*Best wishes in November, you will need it!"*

Again, we remind you of the prohibitions in the law on political activity by county board members.

We again invite you to contact us in the future to clear up your misunderstandings about election processes and the law.


Regards,


**Karen Brinson Bell, CERA, PMP**

Executive Director, NCSBE

(919) 814-0700 Main Line



EXHIBIT H

**Text Size:** A A

# 11/05/2024 OFFICIAL GENERAL ELECTION RESULTS - STATEWIDE

**NC SUPREME COURT ASSOCIATE JUSTICE SEAT 06 (VOTE FOR 1)**
100 of 100 Counties Completely Reported
2,658 of 2,658 Precincts Reporting

**NOTE:** For some counties, based on the way they prepare their ballots, precinct maps and data charts on this site include results of voters who cast ballots in those precincts on Election Day only. In those counties, votes of early voters, absentee-by-mail voters, and provisional voters are reported in separate "administrative" precincts. After the election, county boards of elections sort these ballots into the voters' precincts and report full precinct results through the "precinct sort." For precinct sort data, see Historical Election Results Data.

Questions about this site? Send an email to elections.sboe@ncsbe.gov.

| Contest Details | Results by Voting Method | Detailed Results |
|---|---|---|

| CHOICE | TOTAL | |
|---|---|---|
| Allison Riggs | 2,770,412 | ◯ |
| Jefferson G. Griffin | 2,769,678 | ◯ |
| Tie | | ◯ |
| Not Reported | | ◯ |
| Not Participating | | ◯ |



County: <Select a County> ⌄

# EXHIBIT I

STATE OF NORTH CAROLINA
WAKE COUNTY

BEFORE THE STATE BOARD OF ELECTIONS

|  |  |
|---|---|
| )<br>)<br>IN RE ELECTION PROTESTS OF )<br>JEFFERSON GRIFFIN, ASHLEE )<br>ADAMS, FRANK SOSSAMON, AND )<br>STACIE McGINN )<br>)<br>) | **DECISION AND ORDER** |

   At a public meeting held on December 11, 2024, the State Board of Elections ("State Board") considered election protests filed by four candidates in the 2024 General Election: Jefferson Griffin, a Republican candidate for associate justice of the Supreme Court of North Carolina; Ashlee Adams, a Republican candidate for N.C. Senate District 18; Stacie McGinn, a Republican candidate for N.C. Senate District 42; and Frank Sossamon, a Republican candidate for N.C. House District 32 (collectively, the "Protesters"). The Board consolidated the protests filed by these candidates for its decision, because they all involve the same sets of legal issues.

   Upon consideration of the protest materials submitted by the Protesters; the briefs submitted by the Protesters, opposing candidates, and other interested parties; the oral argument presented to the State Board by counsel for the candidates; and the matters upon which judicial notice was taken, the Board concluded that the protests did not substantially comply with the service requirements and did not establish probable cause to believe that a violation of election law or irregularity or misconduct occurred in the protested elections. The Board therefore dismisses these protests.

## I.       BACKGROUND

On November 19, 2024, the Protesters filed over 300 protests across the state challenging the apparent results of their elections. After the county boards of elections conducted recounts in all of these contests, the final canvassed results are as follows:

| CONTEST | CANDIDATE | PARTY | BALLOT COUNT | PERCENT |
|---|---|---|---|---|
| Supreme Court Associate Justice | Allison Riggs | DEM | 2,770,412 | 50.01% |
| | Jefferson G. Griffin | REP | 2,769,678 | 49.99% |
| NC Senate District 18 | Terence Everitt | DEM | 59,667 | 48.47% |
| | Ashlee Bryan Adams | REP | 59,539 | 48.36% |
| | Brad Hessel | LIB | 3,906 | 3.17% |
| NC Senate District 42 | Mrs. Woodson Bradley | DEM | 62,260 | 50.08% |
| | Stacie McGinn | REP | 62,051 | 49.92% |
| NC House District 32 | Bryan Cohn | DEM | 21,215 | 48.95% |
| | Frank Sossamon | REP | 20,987 | 48.42% |
| | Ryan Brown | LIB | 1,140 | 2.63% |

Protests were filed in almost every county in the state.[1] Those protests are based on six categories of allegations that certain general election voters' ballots were invalid. Those six categories and the number of voters challenged per category are:

---

[1] The legislative candidates filed protests in only those counties within the jurisdiction of their legislative contests.

1. Ballots cast by registered voters whose voter registration database records contain neither a driver's license number nor the last-four digits of a social security number—60,273 voters challenged;

2. Ballots cast by overseas citizens who have not resided in North Carolina but whose parents or legal guardians were eligible North Carolina voters before leaving the United States—266 voters challenged;

3. Ballots cast by military or overseas citizens under Article 21A of Chapter 163, when those ballots were not accompanied by a photocopy of a photo ID or ID Exception Form—1,409 voters challenged;[2]

4. Ballots cast by voters who were serving a felony sentence as of Election Day—240 voters challenged;

5. Ballots cast by voters who were deceased on Election Day—156 voters challenged; and

6. Ballots cast by voters who registration was denied or removed—572 voters challenged.[3]

Across all counties and among the four Protesters, the protests alleging the same category of allegedly ineligible voters are structured and pleaded in the same fashion. The only differences among county protests of the same category are the identities of the voters being

---

[2] Griffin has sought to add voters to the second and third protest categories in supplemental filings submitted after the deadline to file an election protest. *See* G.S. § 163-182.9(b)(4). Because the Board determines these protests are legally deficient, it need not determine whether such supplementations are allowable under the General Statutes and Administrative Code.

[3] Some challenged voters are included in multiple protests filed in the same county. For instance, voters removed after dying before Election Day may be in both the deceased and removed protests. Additionally, Griffin has withdrawn his protests in a few counties. Accordingly, while these last three types of protests together appear to total 968 voters, in actuality they involve a combined 817 voters.

3

challenged—i.e., only voters registered in the county receiving the protest are part of a protest that the county board received.

On Wednesday, November 20, 2024, the State Board held a meeting, noticed on an emergency basis under N.C.G.S. § 143-318.12, to consider whether to take jurisdiction over some of the protests, which the State Board may do under N.C.G.S. § 163-182.12. The Board voted unanimously to take jurisdiction over the first three categories of protests, which presented legal questions of statewide significance. The Board instructed the county boards of elections to retain jurisdiction to consider the remaining three categories of protests, which were focused on individual, fact-specific determinations of voter eligibility.

Currently, the last three categories of protests are at various stages in the election protest process, with some still pending with and yet to be finally decided by the county boards, some having been decided with no timely appeal, some that are subject to appeal, and some that have been withdrawn by the Protester.

This decision concerns the first three categories of election protests.

## II.    STANDARD OF DECISION

The State Board assumed jurisdiction over these protests pursuant to its authority under N.C.G.S. § 163-182.12, which states, in relevant part:

> The State Board of Elections may consider protests that were not filed in compliance with G.S. 163-182.9, may initiate and consider complaints on its own motion, may intervene and take jurisdiction over protests pending before a county board, and may take any other action necessary to assure that an election is determined without taint of fraud or corruption and without irregularities that may have changed the result of an election.

When a protest is filed with a county board, the county board must first hold a "preliminary consideration" meeting. N.C.G.S. § 163-182.10(a). At that meeting, before a protest

4

may advance to an evidentiary hearing on the allegations, the county board must first "determine whether the protest substantially complies with G.S. 163-182.9 and whether it establishes probable cause to believe that a violation of election law or irregularity or misconduct has occurred." *Id.* Only if a protest satisfies both of these requirements will it advance to an evidentiary hearing. *Id.*

The first preliminary consideration requirement considers whether the protest satisfied the filing requirements in N.C.G.S. § 163-182.9. These requirements include the deadline by which a protest must be filed, how the protest must be filed, and the use of the State Board's election protest form, which is promulgated in an administrative rule, 08 NCAC 02 .0111, pursuant to a statutory mandate for the State Board to "prescribe forms for filing protests." N.C.G.S. § 163-182.9.

The second preliminary consideration requirement considers whether the substance of the protest meets the pleading threshold to advance to a hearing—"whether it establishes probable cause to believe that a violation of election law or irregularity or misconduct has occurred." N.C.G.S. § 163-182.10(a)(1). This standard involves both legal and factual questions. Legally, the Board must decide whether the claims made in the protest are actionable via a protest as a matter of law—whether the allegations even amount to a violation, irregularity, or misconduct in the conduct of the election. If so, the Board must decide whether the factual allegations and evidence attached to the protest establish probable cause to believe that the alleged violation, irregularity, or misconduct actually occurred.

Probable cause is a commonsense, practical standard: Is the material submitted by the protester sufficient for a reasonable and prudent person to believe that election law violations, irregularities, or misconduct occurred in the conduct of the election. It does not mean that such a

5

belief is necessarily correct or more likely true than false. A probability of an irregularity in the conduct of the election is sufficient. *See Adams v. City of Raleigh*, 245 N.C. App. 330, 336–37, 782 S.E.2d 108, 113–14 (2016).

The General Statutes are not clear whether the State Board must conduct preliminary consideration, which is prescribed for county board protest procedures in N.C.G.S. § 163-182.10, when the State Board exercises jurisdiction over a protest in the first instance under N.C.G.S. § 163-182.12. Nonetheless, the State Board adopts this established preliminary consideration procedure with regard to these protests, in the interest of the efficient administration of justice.

## III.   ANALYSIS

The protests at issue were not served on affected voters in accordance with law. Additionally, each of the three categories of protests is legally deficient. The protests are therefore dismissed.

### A.  Service of Protests on Challenged Voters[4]

The Board first concludes that the Protesters failed to serve the registered voters they seek to challenge in their protests in a manner that would comply with the North Carolina Administrative Code and be consistent with the requirements of constitutional due process.

When a board of elections conducts its preliminary consideration of a protest filing, it is tasked with first determining "whether the protest substantially complies with G.S. 163-182.9." N.C.G.S. § 163-182.10(a)(1). That statute requires certain information to be contained within the protest filing (*i.e.*, identification of the protestor, the basis of the protest, and the remedy

_____

[4] A small number of the protests encompassed within this order may not have been timely filed under G.S. § 163-182.9(b)(4), including all of Adams's protests and the Griffin protests filed in Moore, Orange, and Richmond counties. Nonetheless, the Board does not need to decide whether they were timely or whether the Board would exercise its jurisdiction under G.S. § 163-182.12 to consider such untimely protests, as it is dismissing these protests for other reasons.

6

requested), while also stating the following: "The State Board of Elections shall prescribe forms for filing protests." N.C.G.S. § 163-182.9(c).

The State Board has promulgated such a form in the administrative code at 08 NCAC 02 .0111. This rule, which carries the force of law, makes clear the protestor's responsibilities in completing, filing, and serving the form. The Board promulgated this rule in 2020 under its specific statutory authority to do so under N.C.G.S. §§ 163-182.9(c) and 163-182.10(e), and under its general statutory authority for rulemaking under N.C.G.S. § 163-22(a).

Any voters whose right to vote is called into question by the protest are "affected parties" who must be served with copies of all protest filings, as follows:

> *You must serve copies of all filings* on every person with a direct stake in the outcome of this protest ("Affected Parties"). . . . *If a protest concerns the eligibility or ineligibility of particular voters, all such voters are Affected Parties and must be served.* Address information for registered voters is available from the county board of elections or using the Voter Lookup at www.ncsbe.gov.

08 NCAC 02 .0111 (emphasis added).

The rule provides the following instruction for how and when to serve the protest filings:

> *Materials may be served by personal delivery, transmittal through U.S. Mail or commercial carrier service to the Affected Party's mailing address of record on file with the county board of elections or the State Board, or by any other means affirmatively authorized by the Affected Party.* . . . Service must occur within one (1) business day of filing materials with the county board of elections. If service is by transmittal through the U.S. Mail or commercial carrier service, service will be complete when the properly addressed, postage-paid *parcel* is deposited into the care and custody of the U.S. Mail or commercial carrier service. It is [the protester's] responsibility to ensure service is made on all Affected Parties.

*Id.* (emphasis added).

The question at hand is whether the Protesters' method of service satisfies the requirement in 08 NCAC 02 .0111 to "serve" the voters with "copies of all filings."

7

*i. Method of service used by the Protesters*

The Protesters did not personally deliver physical copies of the filings to the voters or mail physical copies of the filings to the voters' address in their voter registration record. Instead, the Protesters mailed a postcard, with the sender identified as the North Carolina Republican Party, and this message: "your vote may be affected by one or more protests filed in relation to the 2024 General Election," and an instruction to scan a QR code[5] to view the protest filings. The postcard does not inform the voter that it is Griffin, Adams, McGinn, or Sossamon protesting, that they are challenging the voter's eligibility to vote, or include the text of the link that the QR code points to (https://www.nc.gop/griffin_protest). This means that the method of service used by Griffin requires a recipient to somehow know this postcard is intended to be a legal document, and to trust the card is not a scam[6] or junk mail. The voter must also have a smartphone and know how to scan a QR code.[7] There is no other way from the face of the postcard for the recipient voter to know what website to visit to obtain access to the information and materials necessary to know the nature of the proceeding and how the voter is affected by it.

---

[5] "QR codes (or Quick Response codes) are two-dimensional codes that you can scan with a smartphone. The code contains information, usually a site address, and once you scan it, the code connects you with a resource on the web." *Introduction to QR codes*, Digital.gov, available at https://digital.gov/resources/introduction-to-qr-codes/ (last visited December 9, 2024).

[6] While generally useful and increasingly more common, the federal government has made clear that there can be security issues with using QR codes, because "[c]ybercriminals can tamper with QR codes, replacing them altogether with QR code stickers or interfering with the link that's embedded in the code." *Introduction to QR codes*, Digital.gov (referring to guidance from the Federal Bureau of Investigations in 2022).

[7] *See Symbology Innovations, LLC v. Lego Sys.*, 158 F. Supp. 3d 916, 922 (E.D. Va. 2017) ("To access information stored in the QR code, a consumer must have a QR code reader application ("app") installed on the consumer's smart phone. When presented with a QR code, the consumer opens the app, which activates the smartphone's camera to scan the QR code. The app then processes the QR code, decodes its message, and uses the encoded URL to access the online content sought by the consumer." (citations omitted)).

8

If the voter has a smartphone and knows how to scan the QR code, then they will be taken to a website, on the browser app of their smartphone, hosted by the North Carolina Republican Party containing links to the hundreds of protests filed by all four of the Protesters.[8] Despite the postcard informing the voter to "check under the county in which you cast a ballot to see what protest may relate to you," only the Griffin protest is organized by county. The Adams protest filing links include names of counties that may clue in a voter that they must be registered to vote in that county to be subject to that particular protest, but the six McGinn protest filing links and five Sossamon protest filing links contain no such information. Again, the postcard does not inform the voter which candidate is challenging their eligibility, so a voter would need to review the Griffin, Adams, McGinn, and Sossamon protest filings to determine whether they are affected, and then choose from among the several categories of protests listed. All this must be done on the browser app of a voter's smartphone if they have one.

Once a voter has located which of the hundreds of protest filings linked on the website might include them, they must then peruse the filings, on their smartphone, to locate their name in printouts of spreadsheets attached to a protest filing. These attachments do not list voters alphabetically and, depending on the basis of the protest, may contain hundreds of names across numerous pages. Take for instance the Lee County protests filed by Griffin. The "Incomplete Voter" protest alone contains almost 200 voters' names across five pages,[9] with another 10

---

[8] Screenshots of the website as displayed on a smartphone are in Attachment A to this decision.

[9] A screenshot of the spreadsheet listing voters' names for this protest as displayed on a smartphone is in Attachment A to this decision.

voters challenged across three other protest filings.[10] A Lee County voter in receipt of Griffin's postcard would have to read through every line of text in the spreadsheets attached to these four protests to determine if their name is on one or more of the lists of voters challenged by Griffin, as well as the other protests listed on the website. And even if the voter finds their name, in most instances the only way to confirm the name listed refers to them would be to look up their NCID number or voter registration number (VRN) on their voter registration card (if they have ready access to it) or voter profile on the State Board's website.[11] This is because the only demographic information listed on the spreadsheet for most of the protests is the voter's name and those identifier numbers, which are only relevant for administrative election purposes and are generally not know by a voter. The face of the protest form likewise does not contain any challenged voter's demographic information.

  ii. *Compliance with the service requirements*

The method of service employed here does not comport with the plain text of the rule or the constitutional due-process requirements to serve an affected party.

**First**, a straightforward reading of the instructions in 08 NCAC 02 .0111 make it clear that the "materials" to be served through personal delivery or as a "parcel" in the mail are *physical* "copies of all filings."

This plain reading of the rule makes even more sense when considering how service is typically made in other contexts. For example, service of process on a natural person (*i.e.*, a

---

[10] Copies of all protests filed by Griffin, including those that may have been late or not actually received by a county, are available on the State Board's website at:
https://dl.ncsbe.gov/?prefix=Legal/Nov%202024%20Protests/Griffin/.

[11] Available at: https://vt.ncsbe.gov/RegLkup/.

10

person, not a corporation) in a civil lawsuit must be done by "*delivering a copy* of the summons and of the complaint" to person, or their agent, by "*leaving copies* thereof" at the person's home, by "*mailing a copy* of the summons and of the complaint" by certified mail or through a designated delivery service. N.C.G.S. § 1A-1, Rule 4(j)(1) (emphasis added). As another example, when documents other than the summons and complaint must be served directly on a party to a civil lawsuit, service must be done as provided in Rule 4, or by "*delivering a copy* to the party," which means physically "*handing it to* the party," or by "*mailing a copy* to the party at the party's last known address," or by email "if the party has consented to receive e-mail service in the case at a particular e-mail address, and a copy of the consent is filed with the court by any party." N.C.G.S. § 1A-1, Rule 5(b)(2) (emphasis added). There is no North Carolina statute or rule that authorizes service of a document to be made by directing a recipient to a website through a QR code located on a postcard mailed in lieu actually including the document required to be served. This is especially important here because the postcard never states clearly that the recipient's right to vote is being challenged.

**Second**, the method of service employed by the Protesters violates the constitutional due process rights of the affected voters.

Election protests are quasi-judicial proceedings. *Bouvier v. Porter*, 386 N.C. 1, 12, 900 S.E.2d 838, 848 (2024). When a board of elections proceeds in its quasi-judicial capacity, the due process rights of the participants must be protected. *See Rotruck v. Guilford Cty. Bd. of Elections*, 267 N.C. App. 260, 265, 833 S.E.2d 345, 349 (2019) (applying *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 265 S.E.2d 379 (1980), in reviewing a voter registration challenge heard before a county board of elections). This protection is particularly important when the election protest challenges the eligibility of voters to vote in the protested

11

contest, because a successful protest will mean the discarding of their votes. Voters have a constitutionally protected liberty interest in their right to vote. See *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 227 (M.D.N.C. 2020).

At a minimum, due process requires "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 656-57 (1950); *see McMillan v. Robeson Cty.*, 262 N.C. 413, 417, 137 S.E.2d 105, 108 (1964) (incorporating these procedural due process requirements through the "law of the land" and "due process of law" provisions of the North Carolina Constitution.). "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane*, 339 U.S. at 314, 70 S. Ct. at 657.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S. Ct. at 657 (cleaned up); see *In re Appeal of McElwee*, 304 N.C. 68, 81, 283 S.E.2d 115, 123 (1981) (applying *Mullane*). "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane*, 339 U.S. at 315, 70 S. Ct. at 657–58 (cleaned up).

12

The Protesters' chosen method of service is not reasonably calculated under the circumstances to inform the challenged voters as to what action is pending, nor does it provide enough information for the voters to determine what they can even do about it. Instead, the postcard with a QR code method can reasonably be described as a "mere gesture" at providing the voters with notice. After all, not every voter will even have a smartphone or the wherewithal for scanning the QR code, or be trusting enough of an unsolicited postcard mailing from a political party to even follow that QR code. And the wording of the postcard is so vague that it is unlikely to clearly inform the recipient that a legal proceeding has been filed against them. For those voters who happen to understand that the postcard is notifying them that a legal proceeding has been filed against them, and who are trusting and savvy enough to follow the QR code on their smartphone, they still have to engage in a needle-in-a-haystack effort to locate what has been alleged about them and by whom, and what is the authority underlying the legal proceeding which would perhaps give them an indication of how and whether they can respond. The method of service chosen here is substantially less likely to give the voters notice than any other customary alternatives.

As Griffin notes in his brief, the Supreme Court of North Carolina has observed that the election protest process is supposed to be "simple so that everyone, not just lawyers, can use it." *Bouvier v. Porter*, 386 N.C. 1, 4, 900 S.E.2d 838, 843 (2024).[12] The applicable rule is quite simple when it comes to service of the protest filings on affected parties. And following its direction would indeed ensure that the affected party receives adequate notice of the proceedings. Yet, instead of simply mailing to each voter a physical copy of the filing that is actually

---

[12] This notion should apply to not only the people bringing the protest, but obviously, for those who may have their votes stripped through the protest, as well.

13

applicable to the voter, the Protesters chose to have their political party send each of voters they have challenged on a journey that would likely leave many of the voters wishing they had a digital-age Lewis and Clark to lead the way. Accordingly, the Protesters have failed to meet this "elementary and fundamental requirement of due process" with their chosen method of service. *Mullane*, 339 U.S. at 314, 70 S. Ct. at 657.

In sum, the Protesters have failed to show substantial compliance with the requirement of 08 NCAC 02 .0111 to "serve" the voters they are challenging with "copies of all filings," and their decision to employ the postcard QR code method of service was not reasonably certain to inform the affected voters of the matter such that they could choose for themselves how to respond.

For these reasons, the State Board concludes, by a vote of 3 to 2, that the protests were not properly served on affected parties required to receive service of copies of the protest filings and therefore do not substantially comply with N.C.G.S. § 163-182.9. The Board will nonetheless address the remaining aspects of preliminary consideration review, because the General Statutes call for reviewing the protest for both procedural compliance and probable cause at the preliminary consideration stage. *See* N.C.G.S. § 163-182.10(a)(1) ("If the board determines that one *or both requirements* are not met, the board shall dismiss the protest." (emphasis added)).

### B. Alleged Incomplete Registrations

The protests regarding allegedly incomplete voter registration forms fail to establish probable cause that a violation, irregularity, or misconduct in the election, that is actionable via a post-election protest, has occurred.

14

The Protesters filed a series of protests across the state which challenged the eligibility of over 60,000 voters who cast ballots in the November 2024 general election and whose electronic voter registration database records displayed neither a driver's license number nor the last four digits of a social security number. The Protesters conclude that these voters never submitted either of these numbers when registering to vote. Accordingly, the Protesters request that these voters' ballots be removed from the official count, or, if the voters submit the missing information in some post-canvass information-gathering procedure yet to be devised, their vote may count.

### i. Factual basis for the protests

As an initial matter, the Protest filings include insufficient allegations and evidence to establish probable cause to believe that their challenged voters failed to provide one of these identification numbers on their voter registration application.

The Protesters and their affiant in support of their protest filings make the factual assumption that a list of voters who lack certain data in the voter registration database record never provided that data. As their affiant states, to produce their list, they requested a list of voters who "do not contain data in one or more of the following data fields: (1) Driver's License Number; or (2) Last Four Digits of Social Security Number." It requires a factual inference to then conclude that the absence of these data elements in a database means that a voter's registration application was incomplete when submitted. It would be an unwarranted inference, based on the language of our statutes and prior Board decisions on this issue.

First, a voter who submits a registration application without one of these identification numbers because they do not have one is nonetheless allowed to register to vote, despite their form lacking these numbers. *See* N.C.G.S. § 163-82.4(b) ("The State Board shall assign a unique

15

identifier number to an applicant for voter registration if the applicant has not been issued either a current and valid drivers license or a social security number."); *see also* 52 U.S.C. § 21083(a)(5)(ii) (similar).

Second, when a registrant provides one of these numbers but the number does not validate through a database match among different government databases, their voter registration database record will lack such a number. When a person submits a voter registration application with a driver's license number or the last four digits of a social security number, the county board must attempt to validate that number using N.C. Division of Motor Vehicles (NCDMV) and Social Security Administration databases. *See* N.C.G.S. § 163-82.12(6)–(9). If that number does not validate, then the person must be informed of that fact and offered an alternative means of confirming their identity before they first vote. *Id.* §§ 163-82.12(9), 163-166.12(d). They may do so by presenting a "current and valid photo identification," or a "copy of one of the following documents that shows the name and address of the voter: a current utility bill, bank statement, government check, paycheck, or other government document." *Id.* § 163-166.12(a), (d). Unvalidated identification numbers are not retained in a voter's registration record. *See In re: HAVA Complaint of Joanne Empie*, N.C. State Bd. of Elections, at 7 (Nov. 11, 2024) ("Once that happens, the database removes the unverified driver's license number or last four digits of a social security number from the electronic registration record, although the data is still retained elsewhere within the system.").[13]

---

[13] Available at https://s3.amazonaws.com/dl.ncsbe.gov/HAVA%20Administrative%20Complaints/2024-08-07%20Empie/ED%20Recommendation%20-%20HAVA%20Complaint%20Decision%20-%20Empie.pdf. The State Board takes judicial notice of its prior decisions on the issue of identification numbers on voter registration applications. Such notice was announced at the State

Accordingly, it would be an unwarranted inference to conclude that the lack of numbers in a voter registration database field for a driver's license number or last four digits of a social security number means that the person registered to vote without providing one of these numbers, despite having such a number. The Protesters offer no reason in their protest papers to conclude that any of the voters they are challenging fall outside these categories. The Protests therefore lack sufficient factual enhancement to establish probable cause to believe a violation of law, irregularity, or misconduct in the conduct of the election has occurred, even assuming what has been alleged is such a violation. N.C.G.S. § 163-182.10(a)(1).

### ii. Legal basis for the protests

Even assuming the facts alleged and the affidavit accompanying the protests established probable cause to believe some voters registered without providing their identification numbers and they actually possessed such numbers, the fact that these registered voters cast ballots is not a violation, irregularity, or misconduct in the conduct of the election, for the following reasons.

### a. Previous decisions foreclose these protests.

The legal requirement to require one of these identification numbers derives from federal law, and the complained-of issue has been remedied consistent with federal law.

No provision of North Carolina law clearly states that a county board may not process a registration application from a voter who does not provide one of these identification numbers. The General Statutes provide that the voter registration form must "request" this information. N.C.G.S. § 163-82.4(a). It requires an inference, based on the fact that specific other items are

_____

Board's December 11, 2024, meeting where the Board received argument from Protesters' and Respondents' counsel, and counsel were offered an opportunity to object to such notice. No objection was raised.

referred to as "optional" in the statute, to conclude that the absence of such "request[ed]" information on a voter registration application requires a county board to reject a person's registration application as a matter of state law, as the Protesters contend. They perhaps draw that inference from another subsection of the same statute, subsection (f), which states, "If the voter fails to complete any *required item* on the voter registration form but provides enough information on the form to enable the county board of elections to identify and contact the voter, the voter shall be notified of the omission and given the opportunity to complete the form at least by 5:00 P.M. on the day before the county canvass as set in G.S. 163-182.5(b)." (Emphasis added.) But it's a question-begging argument to assert that the "request[ed]" identification numbers identified in subsection (a) of this statute is a "required item" under subsection (f), simply because subsection (f) refers indiscriminately to a "required item" on the form.

To be sure, the State Board considers this a required item, not because of state law, but because of federal law. Since 2004,[14] the federal Help America Vote Act (HAVA) has prohibited a state from processing a voter registration application without one of these numbers, if the voter has one. 52 U.S.C. § 21083(a)(5)(A). But this Board and a federal court, examining this very issue prior to and during this election, determined that any previous failure to implement this federal requirement cannot be held against already-registered voters casting ballots in this election, as explained below.

After receiving a HAVA administrative complaint in 2023 seeking a similar remedy based on the alleged registration of voters who did not provide these numbers despite having them, this Board determined that retroactively requiring this information of registered voters was

---

[14] Or 2006, depending on a federal waiver. *See* 52 U.S.C. § 21083(d)(1).

18

a remedy not authorized by HAVA. *In re: HAVA Complaint of Carol Snow*, N.C. State Bd. of Elections, at 4 (Dec. 6, 2023).[15] In its determination, the Board noted that "the law's purpose of identifying the registrant upon initial registration is already accomplished because any voter who did not provide a driver's license number or the last four digits of a Social Security number would have had to provide additional documentation to prove their identity before being allowed to vote, by operation of the separate provision of HAVA . . . . In other words, no one who lacked this information when registering since the enactment of HAVA would have been allowed to vote without proving their identity consistent with HAVA." *Id.* at 4–5.

That separate provision of HAVA states that a new voter registration applicant must provide an alternative form of identification before or upon voting for the first time, if the state did not have a system complying with the requirement to collect a driver's license number or last four digits of a social security number. *See* 52 U.S.C. § 21083(b)(1)–(3). Those alternative forms of identification, as discussed already, include "a current and valid photo identification," or "a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter." *Id.* § 21083(b)(2)(A)(i)–(ii). North Carolina's election officials refer to these alternative forms of identification as "HAVA ID." As

---

[15] *Available at* https://s3.amazonaws.com/dl.ncsbe.gov/HAVA%20Administrative%20Complaints/2023-10-06%20Snow/NCSBE%20HAVA%20Complaint%20Decision%20-%20Snow.pdf. The motion that the Board unanimously adopted at this hearing stated, "the State Board resolve[s] the HAVA complaint filed by Carol Snow by determining that a violation of Section 303 of HAVA could occur as a result of the voter registration application form failing to require an applicant to provide an identification number or indicate that they do not possess such a number, and that the appropriate remedy is the implementation of staff's recommended changes to the voter registration application form and any related materials." *See* Minutes of Meeting, N.C. State Bd. of Elections (Nov. 28, 2023), *available at* https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/State_Board_Meeting_Minutes/2023%20SBOE%20Minutes/SBE%20Open%20Session%20Minutes%2011.28.23.pdf.

19

noted in this prior Board decision on the HAVA complaint, the boards of elections require voters without these numbers in their database record to provide HAVA ID before they can first cast a ballot. *In re: HAVA Complaint of Carol Snow* at 4–5.

Prior to the General Election, the Republican National Committee and North Carolina Republican Party filed a lawsuit seeking the same relief sought by Protesters here. The federal district court for the Eastern District of North Carolina acknowledged the legal flaw in awarding such relief in the instant election, given that there had been no meaningful opportunity for the voters at issue to address any potential deficiency far enough in advance of the election to comply with the law. The court noted that it was a meritorious contention that equitable principles "prohibit[] granting Plaintiffs relief in connection with the most recent election." Order at 4, *Repub. Nat'l Comm. v. N.C. State Bd. of Elections*, No. 5:24-cv-547 (Nov 22, 2024). The court further affirmed, when discussing the equitable doctrine of laches, that "Plaintiffs in this action are not going to obtain any relief in connection with the most recent election." *Id.*

Accordingly, to the extent there is a potential violation of HAVA involved in the registration of voters in the past, it was remedied consistent with a separate provision of HAVA, and a federal court has determined that no further remedy would be permissible for the current election.

> b.  *Protests cannot be used to remove ballots of eligible voters who did everything they were told to do to register.*

A violation, irregularity, or misconduct does not occur when a voter does everything the government requires of them to register, they possess the qualifications to vote, and they vote. Because the protests do not allege otherwise, they have failed to allege a protest that is actionable as a matter of law.

20

Assuming that the protests provide a sufficient basis to conclude that any of the challenged voters registered without providing an identification number and did not indicate that they lacked such numbers, the Protesters admit that it would not have been the voter's fault that they were able to nonetheless register. They explain, correctly, that for a number of years and spanning multiple Board administrations, the voter registration form in North Carolina did not fully inform voters that these identification numbers were required to be submitted with the form. As the State Board concluded when considering the aforementioned HAVA complaint, "a violation of [HAVA's requirement to gather these numbers during registration] could occur as a result of the current North Carolina voter registration application form failing to require an applicant to provide an identification number or indicate that they do not possess such a number." *In re: HAVA Complaint of Carol Snow*, N.C. State Bd. of Elections, at 4 (Dec. 6, 2023). The Board therefore ordered the form be changed in December 2023 and ordered that county boards be instructed that such numbers must be obtained before processing registrations going forward, unless the voter affirmed that they lacked these numbers. *Id.*

With regard to already-registered voters, the Board explained that any voters who were able to register without providing one of the identification numbers would have been required to use HAVA's alternative means of confirming their identity before voting: a current and valid photo identification, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter. *See id.* at 4–5 (citing to 52 U.S.C. § 21083(b)(2)(A)). Moreover, in all elections since April 2023, all such voters, whether they had provided an identification number at registration or presented an alternative form of ID when they first voted, have be asked to provide a valid photo ID under state law to prove their identity during every election. N.C.G.S. § 163-166.16.

21

Accordingly, at best, the Protesters' argument is that the voters they challenge did everything that was asked of them to prove their identity to register and vote, yet through an administrative error in the processing of registration forms, the boards of elections did not collect these voters' driver's license or last four digits of the social security number. Importantly, the Protesters do not allege that any of the challenged voters in this category lack the substantive qualifications to vote. This category of protests hinges only on alleged noncompliance with voter registration procedures. Under North Carolina law, however, this sort of challenge to an election is forbidden.

In a directly applicable case from the North Carolina Supreme Court, the court concluded that an error by election officials in the processing of voter registration cannot be used to discount a voter's ballot. *Woodall v. W. Wake Highway Com.*, 176 N.C. 377, 388, 97 S.E. 226, 231 (1918). There, registrars failed to administer an oath to voters, which was a legal prerequisite to registration. The court held,

> A vote received and deposited by the judges of the election is presumed to be a legal vote, although the voter may not actually have complied entirely with the requirements of the registration law; and it then devolves upon the party contesting to show that it was an illegal vote, and this cannot be shown by proving merely that the registration law had not been complied with.

*Id.* at 389, 97 S.E. at 232. The court further explained,

> Where a voter has registered, but the registration books show that he had not complied with all the minutiae of the registration law, his vote will not be rejected. Such legislation is not to be regarded as hostile to the free exercise of the right of franchise, and should receive such construction by the courts as will be conclusive as to a full and fair expression of the will of the qualified voters.

*Id.*

22

The Supreme Court reaffirmed the holding in *Woodall* decades later in *Overton v. Mayor & City Comm'rs of Hendersonville*, 253 N.C. 306, 316, 116 S.E.2d 808, 815 (1960). The court stated,

> [A] statute prescribing the powers and duties of registration officers should not be so construed as to make the right to vote by registered voters depend upon a strict observance of the registrars of all the minute directions of the statute in preparing the voting list, and thus render the constitutional right of suffrage liable to be defeated, without the fault of the elector, by fraud, caprice, ignorance, or negligence of the registrars.

*Id.* (quoting *Gibson v. Bd. of Comm'rs*, 163 N.C. 510, 513, 79 S.E. 976, 977 (1913)).

Counsel for the Protesters offered no response to this directly applicable legal authority on which they had notice prior to the argument on these protests, even despite a Board member's request during argument for the Protesters to rebut it.

Not only does North Carolina law forbid this type of election protest, federal law also forbids it because it would violate substantive due process protections under the U.S. Constitution.

In *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), election officials in Rhode Island, believing the issuance of absentee ballots in party primaries was authorized, and acting in accordance with a practice that had existed for about seven years in the case of primaries, advertised and issued those ballots for use in a party primary. *Id.* at 1067. After the primary, the losing candidate for the first time questioned the statutory and constitutional authority of the election officials to issue and count the ballots. *Id.* After being denied relief by the state elections board, the Rhode Island Supreme Court invalidated those absentee ballots and quashed the certificate of nomination, finding "there is no constitutional or statutory basis for allowing absentee and shut-in voters to cast their votes in a primary election." *Id.* at 1068. The prevailing

23

candidate then filed a lawsuit in federal court. The First Circuit found that the retroactive invalidation of the ballots cast constituted "broad-gauged unfairness" prohibited under substantive due process jurisprudence, because the "issuance of such ballots followed long-standing practice; and *in utilizing such ballots voters were doing no more than following the instructions of the officials charged with running the election*." *Id.* at 1075-76 (emphasis added).

The Fourth Circuit has adopted the Griffin framework as "settled" law. *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983); *see also Bennett v. Yoshina*, 140 F.3d 1218, 1226–27 (9th Cir. 1998) (adopting the *Griffin* framework and explaining, "a court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures.").

Here, the protests are premised on voters not supplying their driver's license or social security number when registering to vote, and the county boards of elections processing those forms. The grounds for the protest resulted from the State Board-produced voter registration form and past guidance from the State Board that would lead those counties to treat forms without such an identifier as requiring the voter to show a HAVA ID before voting rather than be considered incomplete. That is what the voters were informed to do to validly vote, and they relied on that information. Under these circumstances, to remove the ballots of any of these voters—whether automatically in resolution of the protest after hearing the evidence[16] or upon

---

[16] Even if the State Board agreed with the Protesters that should voters' ballots could be removed pursuant to the protest, before doing so, evidence would need to establish that each of these voters was actually registered after the effective date of HAVA without providing a driver's

some post-canvass notice procedure involving the voters, as the Protesters suggest would be permissible—would result in "the kind of 'broad-gauged unfairness' that renders an election patently and fundamentally unfair." *Lecky v. Va. State Bd. of Elections*, 285 F. Supp. 3d 908, 916 (E.D. Va. 2018). As Chief Judge Myers of the Federal District Court for the Eastern District of North Carolina stated during oral argument over this same class of voters, "We certainly can't be disenfranchising people who did what they were told to do who are eligible voters." Transcript at 64:7–9, Doc. 63, *Repub. Nat'l Comm. v. N.C. State Bd. of Elections*, No. 5:24-cv-547 (Oct. 20, 2024). Accordingly, regardless of whether state law permits this election protest to proceed, the federal constitution does not.

> c. *Removing these voters' ballots on this basis would violate the registration laws.*

To grant the Protesters the relief they request in these protests, moreover, would violate state and federal voter registration laws. Without question, these challenged voters are registered voters. State and federal statutes restrict the removal of voters from "the official list of eligible voters" in an election unless those voters do not meet the substantive qualifications to vote. 52 U.S.C. § 20507(a)(3); N.C.G.S. § 163-82.14(a).

---

license number or last four digits of their social security number on their voter registration application, if they had one. As noted in the previous section, voter records routinely lack these numbers for other permissible reasons. Any such evidentiary review would also need to factor in routine data entry errors where county workers do not enter all the data from a registration form into the database, situations when a voter supplied such a number in a previous application under a different registration record than the one challenged, and situations when a voter registered prior to the effective date of HAVA but a new registration was created for them that is not linked to that older registration, among other potential reasons that any of the challenged voters may have been registered consistent with HAVA but nonetheless their database record lacks these numbers.

25

Under state law, "[e]very person registered to vote by a county board of elections in accordance with this Article *shall remain registered* until: (1) The registrant requests in writing to the county board of elections to be removed from the list of registered voters; or (2) The registrant becomes disqualified through death, conviction of a felony, or removal out of the county; or (3) The county board of elections determines, through the procedure outlined in G.S. 163-82.14, that it can no longer confirm where the voter resides." N.C.G.S. § 163-82.1(c) (emphasis added). None of these provisions apply to permit the removal of the registrants challenged by the Protesters.

Under federal law, the National Voter Registration Act (NVRA), once a person is registered to vote, "a registrant may not be removed from the official list of eligible voters except" (A) at the request of the registrant; (B) by reason of criminal conviction or mental incapacity under state law; or (C) through list maintenance based on change of residency or death. 52 U.S.C. § 20507(a)(3), (a)(4), (c)(1). None of those reasons apply here. Another provision of the NVRA prohibits a state from conducting "any program" to "systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days of a federal election. *Id.* § 20507(c)(2).[17]

---

[17] It cannot reasonably be contended that removing voters under such a program from the list of voters eligible to cast a ballot in an election would be permissible if done immediately after an election and that removal is retroactive to the election. The result is the same—the voter has been removed from the "official list of eligible voters" in *that election* in a manner that occurred too late under federal law. 52 U.S.C. § 20507(a). The Protesters sought to draw a distinction at oral argument between a voter being on the list of eligible voters in an election and that voter having their ballot removed from the count in that election yet remaining on the list of eligible voters. To describe that attempted distinction is to prove its lack of logic. It would completely undermine the purpose of having a list of voters who are eligible to vote in an election if a voter is on that list yet the government removes their ballot. *See Majority Forward v. Ben Hill Cty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1368 (M.D. Ga. 2021) (rejecting this same argument as

26

A separate federal law, HAVA, requires that any maintenance of the voter lists by a state be "conducted in a manner that ensures that—(i) the name of each registered voter appears in the computerized list; [and] (ii) only voters who are not registered or who are not eligible to vote are removed from the computerized list." 52 U.S.C. § 21083(a)(2)(B). Like the reasons set forth in the NVRA, those reasons for removal do not apply here either, by Protesters own admission.

Our state law directs that we maintain the voter rolls in compliance with the NVRA, N.C.G.S. § 163-82.14(a1), and this provision of HAVA, *id.* § 163-82.11(c). In other words, North Carolina has what is called a "unified" registration system, meaning that we have the same rules for registration for voters in state and federal elections, and there is one eligible voter list for both types of elections. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390 (4th Cir. 2024).

Retroactively removing these voters from the list of voters eligible to cast a ballot in the election would violate all of these federal law provisions. Accordingly, this protest does not allege a violation, irregularity, or misconduct that is legally actionable via a post-election protest.

   *d. The protests contravene the intent of North Carolina law.*

This category of protests is also unlawful under state law because it would undermine the clear intent of the legislature with regard to how a voter may have their eligibility to vote challenged in an election.

The General Statutes provide that the only basis to discount a registered voter's ballot is to properly allege and prove that such a voter lacks the substantive qualifications to vote in the

---

drawing "a distinction without a difference" because "[t]he effect of not appearing on the list of electors is the same as not being eligible to vote").

27

election, the voter has already voted or is being impersonated, or the voter failed to follow the photo ID law. *See* N.C.G.S. ch. 163, art. 8 (governing voter challenges). The voter challenge statutes of Chapter 163 provide that the only valid bases to challenge the right of someone's ballot to count in a general election are:

- the voter is not a resident of voting jurisdiction,

- the voter is not 18 years of age (or will not be by Election Day),

- the voter is serving a felony sentence,

- the voter is dead,

- the voter is not a citizen of the United States,

- the voter is not who he or she represents himself or herself to be,

- the voter already voted,

- the voter does not present photo identification in accordance with N.C.G.S. § 163-166.16.

N.C.G.S. §§ 163-85(c), -87, -89(c). The Protesters allege none of these disqualifications among the voters they challenge.

For the State Board to permit an election protest to seek to disqualify voters' ballots on bases that are not permitted by the voter challenge statutes would violate the clear intent of state law. The General Assembly has specifically provided the specific substantive grounds for challenging the eligibility of voters in an election. Allowing an election protest to expand on those grounds would work an end-run around that law. *DTH Media Corp. v. Folt*, 374 N.C. 292, 300, 841 S.E.2d 251, 257 (2020) ("When multiple statutes address a single matter or subject, they must be construed together, *in pari materia*, to determine the legislature's intent."); *Cooper v. Berger*, 371 N.C. 799, 810, 822 S.E.2d 286, 296 (2018) ("Under the doctrine of *expressio*

28

*unius est exclusio alterius*, when a statute lists the situations to which it applies, it implies the exclusion of situations not contained in the list. . . . In other words, sometimes a provision is written (or a set of provisions are written) in such a way that a reasonable negative inference can and should be drawn.").

For all these reasons, the State Board concluded, by a vote of 3 to 2, that this category of protests does not establish probable cause to believe a violation of law, irregularity, or misconduct occurred in the conduct of the general election. N.C.G.S. § 163-182.10(a)(1).

### C.  U.S. Citizens Whose Parents Were North Carolina Residents but Who Have Never Resided in the United States

Next, the Board concludes that the protests regarding overseas-citizen voters who have never resided in the United States but whose parents resided in North Carolina before moving abroad fails to allege a violation, irregularity, or misconduct in the conduct of the election.

With regard to this category of protests, the Protesters are asking the State Board of Elections, an administrative agency, to ignore a statute of the General Assembly under the theory that the State Board should deem that statute unconstitutional. This, the Board cannot do.

In June 2011, the North Carolina General Assembly, while under the control of the Protesters' political party, unanimously adopted Session Law 2011-182, entitled "An Act to Adopt Provisions of the Uniform Military and Overseas Voters Act Promulgated by the National Conference of Commissioners on Uniform State Law, While Retaining Existing North Carolina Law More Beneficial to Those Voters."[18] The act referenced in the title of the session law is a federal law that extends certain absentee voting privileges to military members and their families

---

[18] https://www.ncleg.gov/Sessions/2011/Bills/House/PDF/H514v0.pdf.

29

and overseas citizens that are not available to civilians living in the United States. *See* 52 U.S.C. §§ 20301 – 20311.

Session Law 2011-182 specifically authorized U.S. citizens who have never lived in the United States to vote in North Carolina elections if they have a familial connection to this state. The session law enacted Article 21A of Chapter 163 of the General Statutes, or the Uniform Military and Overseas Voters Act. That Act allows "covered voters" to use unique procedures to register to vote, request an absentee ballot, and submit an absentee ballot, which are not available to civilian voters in the United States who may only vote absentee using procedures in Article 20 of Chapter 163. *See* N.C.G.S. §§ 163-258.6 through -258.15. Particularly relevant here, the Act defines "covered voters" to include the following:

> An overseas voter who was born outside the United States, is not described in sub-subdivision c. or d. of this subdivision, and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements, if:
>
> 1. The last place where a parent or legal guardian of the voter was, or under this Article would have been, eligible to vote before leaving the United States is within this State; and
>
> 2. The voter has not previously registered to vote in any other state.

*Id.* § 163-258.2(1)e.

The Act further reiterates the special procedures afforded such voters when it deems, for the purpose of voter registration, that the residence assigned to such voters shall be "the address of the last place of residence in this State of the parent or legal guardian of the voter. If that address is no longer a recognized residential address, the voter shall be assigned an address for voting purposes." *Id.* § 163-258.5. Such voters are authorized to use special forms, developed by

the United States Government for military and overseas-citizen voters, to register to vote and request an absentee ballot. *Id.* §§ 163-258.6, -258.7.

The Act is very clear that such voters are entitled to cast an absentee ballot under these procedures: "An application from a covered voter for a military-overseas ballot shall be considered a valid absentee ballot request for any election covered under G.S. 163-258.3 held during the calendar year in which the application was received." *Id.* § 163-258.8. The Act is also clear that a validly returned absentee ballot from such voters must be counted: "A valid military-overseas ballot cast in accordance with G.S. 163-258.10 shall be counted if it is delivered to the address that the appropriate State or local election office has specified by the end of business on the business day before the canvass conducted by the county board of elections held pursuant to G.S. 163-182.5 to determine the final official results." *Id.* § 163-258.12(a).

The foregoing statutes have been the law of North Carolina for thirteen years and have been faithfully implemented in 43 elections in this state since that time.[19]

In spite of the clear instructions from the General Assembly in the Act, the Protesters ask the State Board to invalidate the ballots of a specific category of "covered voters," thereby contravening the governing statutes. The State Board of Elections will not do this.

As an administrative agency, the State Board is bound to follow the law that governs it. The Protesters suggest that this law need not be followed because, in their view, it violates the North Carolina Constitution. The State Board does not have the authority to declare an act of the General Assembly to be unconstitutional and thereby ignore it. *In re Redmond*, 369 N.C. 490, 493, 797 S.E.2d 275, 277 (2017) ("[I]t is a well-settled rule that a statute's constitutionality shall

---

[19] See er.ncsbe.gov, showing in the "Election" dropdown menu each election that has occurred since the effective date of the Act, January 1, 2012.

be determined by the judiciary, not an administrative board." (internal quotations omitted)). Absent a judicial decision declaring the aforementioned laws unconstitutional, they are presumed to be valid and in compliance with the constitutional. *Hart v. State*, 368 N.C. 122, 126, 774 S.E.2d 281, 284 (2015).

Additionally, for the reasons discussed above regarding the identification number protests, even if it were later determined that these statutes are unconstitutional, it would violate the federal constitution's guarantee of substantive due process to apply such a newly announced rule of law to remove voters' ballots after an election, when those voters participated in the election in reliance on the established law at the time of the election to properly cast their ballots.

The State Board therefore concludes, by a vote of 3 to 2, that this category of protests does not allege a violation of law, irregularity, or misconduct in the conduct of the general election. N.C.G.S. § 163-182.10(a)(1).

### D. Military and Overseas Citizen Absentee Voters Who Did Not Send Photo ID

Finally, the Board concludes that the protests regarding military and overseas-citizen voters who did not include a photocopy of photo identification or an ID Exception Form with their absentee ballots fails to allege a violation, irregularity, or misconduct in the conduct of the general election.

As with the prior category of protests, the body of law that applies to the voters challenged in this category of protests is Article 21A of Chapter 163 of the General Statutes. That article comprehensively addresses the requirements for voting by absentee ballot for "covered persons." By contrast, the provisions of Article 20 comprehensively address the requirements for civilian absentee voting. The requirements of one article do not apply to the class of individuals subject to the other article, unless otherwise stated in statute.

32

To request a ballot under Article 21A, a covered voter must apply for an absentee ballot, which typically involves the submission of a standard federal form, a federal postcard application (FPCA) or a federal write-in absentee ballot (FWAB).[20] N.C.G.S. § 163-258.7. The State Board also makes the FPCA available through a secure online portal that covered voters may use to request and submit their absentee ballots. *Id.* §§ 163-258.4(c), -258.7(c), -258.9(b), -258.10. To confirm the voter's identity, the standard federal forms require the voter to provide their name, birthdate, and their driver's license number or social security number. The voter must also attest under penalty of perjury that the information on the forms "is true, accurate, and complete to the best of my knowledge." Additionally, Article 21A requires covered voters to complete a declaration where they "swear or affirm specific representations pertaining to the voter's identity, eligibility to vote, status as a covered voter, and timely and proper completion of an overseas-military ballot." *Id.* § 163-258.4(e); *see id.* § 163-258.13.

These are the sole provisions applying to the authentication of a covered voter who uses the provisions of Article 21A to vote by absentee ballot. Nowhere in Article 21A is there any reference to a covered voter supplying a photocopy of a photo ID with their absentee ballot. To remove any doubt about whether a separate authentication is required, a provision in Article 21A spells this out plainly: "An authentication, other than the declaration specified in G.S. 163-258.13 or the declaration on the federal postcard application and federal write-in absentee ballot, *is not required for execution of a document under this Article*. The declaration and any

---

[20] These forms are available at https://www.fvap.gov/eo/overview/materials/forms and are provided by the Federal Voting Assistance Program, which is an agency of the United States Department of Defense.

information in the declaration may be compared against information on file to ascertain the validity of the document." *Id.* § 163-258.17(a) (emphasis added).

The requirement to provide a photocopy of photo ID with an absentee ballot appears in Article 20 of Chapter 163, which governs civilian absentee voters residing in the United States. The relevant statute reads, "Each container-return envelope returned to the county board with application and voted ballots *under this section* shall be accompanied by a photocopy of identification described in G.S. 163-166.16(a) or an affidavit as described in G.S. 163-166.16(d)(1), (d)(2), or (d)(3)." *Id.* § 163-230.1(f1) (emphasis added). When the statute refers to "this section," it is referring to N.C.G.S. § 163-230.1, which is a statute that provides requirements for requesting and completing absentee ballots for civilian voters under Article 20. Recall that the requirements for covered voters to request and complete absentee ballots appear in a completely different article of Chapter 163, at sections 163-258.7 and 163-258.12 of Article 21A. In addition to requiring photo ID from civilian absentee voters, Article 20 also requires two witnesses or a notary to authenticate a civilian absentee voter. *Id.* § 163-231. Article 20 also requires a civilian absentee voter, when they request an absentee ballot, to complete a request form created by the State Board (not the federal government) that includes their personal information, their birth date, and either an NCDMV identification number or the last four digits of the voter's social security number. *Id.* § 163-230.2(a).

Additionally, the methods and deadlines for submitting absentee ballot requests and absentee ballots for civilian voters are completely distinct from such provisions for military and overseas-citizen voters. *Compare id.* §§ 163-230.2, -230.3, -231 (civilian), *with id.* §§ 163-258.7, -258.8, -258.10, -258.12 (military and overseas).

34

As the foregoing shows, by setting forth two distinct sets of comprehensive regulations for requesting and casting absentee ballots for two distinct classes of voters, and separating those comprehensive regulations in different statutory articles, the General Assembly clearly did not intend for the State Board to pick and choose laws from one article and apply those laws to persons subject to the other article, as the Protesters would have the State Board do.

To be sure, "covered voters" subject to Article 21A are expressly authorized to decline to use the absentee voting procedures of that article, and may choose instead to vote using the procedures applicable to civilian voters in Article 20. A covered voter "may apply for a military-overseas ballot using either the regular application provided by Article 20 of this Chapter or the federal postcard application." *Id.* § 163-258.7(a). This just reiterates the distinction between the two application methods. If a covered voter chooses to submit an "application provided by Article 20," that application is required to be "accompanied by" a photocopy of a photo ID. *Id.* § 163-230.1(f1). But the federal postcard application has no such requirement. Similarly, Article 21A "does not preclude a covered voter from voting an absentee ballot under Article 20 of this Chapter." *Id.* § 163-258.7(f). This express authorization to vote by either method further proves that the legislature intended these methods of voting to be governed by different bodies of law.

The crux of Protesters' argument that the provisions of Article 20 apply to voters using the provisions of Article 21A is language from a section of Article 20, section 163-239. That section is entitled, "Article 21A relating to absentee voting by military and overseas voters *not applicable*." (Emphasis added.) It states, "[e]xcept as otherwise provided therein, Article 21A of this Chapter shall not apply to or modify the provisions of this Article." *Id.* § 163-239. This language, and especially the title of the statute, prove the point that the legislature intended to establish two distinct absentee voting schemes for these distinct classes of voters. This provision

35

merely highlights that the special provisions applicable to military and overseas-citizen voters "shall not apply to or modify" the provisions of Article 20, which apply to all other voters. The clear intent is to remove any doubt that only voters subject to Article 21A may use the procedures in Article 21A to vote by absentee ballot.

Even if the State Board were to adopt the Protesters' reading of this statute and assume that Article 20 applied to covered voters, it would still do so "[e]xcept as otherwise provided [in Article 21A]." *Id.* And, as explained, when it comes to voter identification requirements, Article 21A provides otherwise. It states that "the voter's identity" is affirmed by a specific declaration applicable only to covered voters. *Id.* § 163-258.4(e). And it confirms that "[a]n authentication, other than the declaration specified in G.S. 163-258.13 or the declaration on the federal postcard application and federal write-in absentee ballot, *is not required for execution of a document under this Article.*" *Id.* § 163-258.17(a) (emphasis added). Accordingly, the statute the Protesters rely on for their argument actually undermines their reading of the law.

In recognition of the fact that Article 21A includes no requirement for covered voters to include a photocopy of their photo ID, the State Board has promulgated an administrative rule through permanent rulemaking that makes it clear that the county boards of elections may not impose the photo ID requirement on such voters. In a Rule entitled "Exception for Military and Overseas Voters," the Code provides that "A voter who is casting a ballot pursuant to G.S. 163, Article 21A, Part 1 is not required to submit a photocopy of acceptable photo identification under Paragraph (a) of this Rule or claim an exception under G.S. 163-166.16(d)." 08 NCAC 17

.0109(d). This Rule has been in effect, first as a temporary rule that became effective on August 1, 2023, and now as a permanent rule that became effective April 1, 2024.[21]

During the rulemaking process, none of the Protesters submitted comments on this Rule objecting to it. Nor did they seek to use administrative or judicial procedures to challenge the validity of this Rule prior to the election. The North Carolina Republican Party, which is participating in the prosecution of these protests, submitted thorough comments on this Rule but notably did *not* object to this aspect of the Rule, or seek to invalidate that aspect of the Rule using administrative or judicial procedures.[22] The Rule was approved unanimously by the Rules Review Commission,[23] an agency appointed by the leadership of the General Assembly that is required to object to rules proposed by an administrative agency if those rules exceed the authority of the agency to adopt them. G.S. § 150B-21.9(a)(1). This Rule is therefore directly applicable and enforceable.

Even if there was no such rule, it is questionable whether the State Board could have imposed a photo ID requirement on voters covered under the federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA).

Federal law, specifically 52 U.S.C. §§ 20301 – 20311, as implemented through Article 21A of Chapter 163, governs the process for a covered voter to request and submit a ballot. Specifically, under 52 U.S.C. § 20302(a)(3) and (4), a state is required to permit such voters to

---

[21] This particular language in the rule was also in its original codification as a temporary rule that became effective on August 23, 2019, after the photo ID law was originally enacted.

[22] Available starting on pg. 38 at the following location: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2024-02-15/Photo%20ID%20Rules/Photo%20ID%20comments%20submitted%20by%20email.pdf.

[23] See meeting minutes: https://www.oah.nc.gov/minutes-march-meeting-2024-signedpdf/open.

use the federal write-in absentee ballot (FWAB) to vote in general elections for federal office and use the federal postcard application (FPCA) as both a registration application and absentee ballot application. These federally prescribed forms and their instructions, like Article 21A of our general statutes, do not include a requirement for covered voters to include a photocopy of photo identification. In fact, a review of the Federal Voting Assistance Program's (FVAP) comprehensive 2024-2025 Voting Assistance Guide reveals no instruction from any state to its UOCAVA voters stating that they must comply with a photo ID requirement when requesting or voting their ballot.[24] FVAP is an agency of the U.S. Department of Defense that is tasked with administering the federal responsibilities of UOCAVA, *see* 52 U.S.C. § 20301, and the Guide provides UOCAVA voters with instructions on how to register to vote, request a ballot, and transmit their ballot back to their local election office, including the use of an FWAB. There are only two instances where "photo ID" is even mentioned, neither of which apply a photo ID requirement for the submission and counting of a UOCAVA voter's ballot.[25]

Under the Supremacy Clause of the federal Constitution, and even under our state constitution, an effort to place additional, state-level requirements on UOCAVA voters casting a ballot by methods ultimately provided and governed by federal law would be of questionable validity. U.S. Const. art. VI, cl. 2; *see* N.C. Const. art. I, § 5 ("Every citizen of this State owes paramount allegiance to the Constitution and government of the United States, and no law or

---

[24] The Guide is available at: https://www.fvap.gov/uploads/FVAP/States/eVAG.pdf.

[25] Indiana permits a voter to provide a copy of their photo ID rather than write their ID number or Social Security Number on their ballot request form, and only if doing so must that ID meet the state's photo ID law. Wisconsin informs "temporary overseas voters" that they must include a copy of a photo ID with their ballot because that state does not consider them to be an overseas voter.

ordinance of the State in contravention or subversion thereof can have any binding force."). Notably, FVAP has taken that view in the past, informing a state that applying a photo ID requirement to a UOCAVA voter using an FPCA "may likely be in conflict with federal statute."[26]

In sum, as this Board has determined through rulemaking, military and overseas-citizen voters are not subject to the requirement to provide a photocopy of their photo ID with their absentee ballot when voting under the provisions of Article 21A. This has been the clear, established law in North Carolina ever since the photo ID law was given effect in April 2023, through six separate elections. In accordance with this established law, no voters using the Article 21A processes were ever informed that they were required to provide photo ID with their absentee ballots.

For these reasons, as with the prior two categories of protests, even if it were later determined that the state photo ID requirement actually applies to these voters, it would violate the federal constitution's guarantee of substantive due process to apply such a newly announced rule of law to remove voters' ballots after an election, when those voters participated in the election in reliance on the established law at the time of the election to properly cast their ballots.

For these reasons, the State Board concludes, by a 5 to 0 vote, that this category of protests fails to allege a violation, irregularity, or misconduct in the conduct of the general election.

---

[26] FVAP's letter communicating this position is available at: https://www.fvap.gov/uploads/FVAP/EO/VaSEOLtrSB872_20170206_FINAL.pdf.

## IV.    CONCLUSION

When a person challenges the results of an election by alleging that certain voters cast ineligible ballots, our law requires that person to provide adequate notice to these voters. That was not done here. These protests therefore fail to substantially comply with the requirements to initiate a protest under N.C.G.S. § 163-182.9. Even if the voters challenged in these protests had received adequate notice, the grounds for these protests are legally invalid for the reasons outlined in this decision.

The protests are DISMISSED.

This 13th day of December, 2024.

_____
Alan Hirsch, Chair
STATE BOARD OF ELECTIONS





41



# Sossamon

**Sossamon Prostest 2**

**Sossamon Protest 3**

**Sossamon Protest 4**

**Sossamon Protest 5**

**Sossamon Protest 6**

# Griffin Protest

## Alamance

**FPCA**

**Deceased Voters**

**Amendment and Supplementation FPCA**
**Never Resident**

## Alexander

**Incomplete Reg Protest**

## Alleghany

**FPCA**



<u>CERTIFICATE OF SERVICE</u>

I, Paul Cox, General Counsel for the State Board of Elections, today caused the forgoing

document to be served on the following individuals via FedEx and email:

Craig D. Schauer
cschauer@dowlingfirm.com
Troy D. Shelton
tshelton@dowlingfirm.com
W. Michael Dowling
mike@dowlingfirm.com
DOWLING PLLC
3801 Lake Boone Trail
Suite 260
Raleigh, North Carolina 27607
*Counsel for Jefferson Griffin, Ashlee*
*Adams, and Stacie McGinn*

Philip R. Thomas
pthomas@chalmersadams.com
Chalmers, Adams, Backer &
Kaufman, PLLC
204 N Person St.
Raleigh, NC 27601
*Counsel for Jefferson Griffin*

Phillip J. Strach
phil.strach@nelsonmullins.com
Alyssa M. Riggins
alyssa.riggins@nelsonmullins.com
Cassie A. Holt
cassie.holt@nelsonmullins.com
Jordan A. Koonts
jordan.koonts@nelsonmullins.com
NELSON MULLINS RILEY &

SCARBOROUGH, LLP
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
*Counsel for Frank Sossamon*

Raymond M. Bennett
ray.bennett@wbd-us.com
Samuel B. Hartzell
sam.hartzell@wbd-us.com
Womble Bond Dickinson (US) LLP
555 Fayetteville Street
Suite 1100
Raleigh, NC 27601
*Counsel for Allison Riggs*

Shana L. Fulton
sfulton@brookspierce.com
William A. Robertson
wrobertsone@brookspierce.com
James W. Whalen
jwhalen@brookspierce.com
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capitol Center
Raleigh, NC 27601
*Counsel for Woodson Bradley,*
*Terence Everitt, and*
*Bryan Cohn*

This 13th day of December, 2024.

/s/ Paul Cox

43

# EXHIBIT J

An official website of the State of North Carolina **How you know** ⌄

ⓘ State Government websites value user privacy. To learn more, view our full privacy policy (https://www.nc.gov/privacy).

🔒 Secure websites use HTTPS certificates. A lock icon or https:// means you've safely connected to the official website.

# State Board Will Not Order Full Recount in NC Supreme Court Contest

## A partial hand recount resulted in additional votes for candidate Allison Riggs.

RALEIGH, N.C.

The State Board of Elections will not order a full hand recount of all ballots in the NC Supreme Court Associate Justice contest, after a partial recount resulted in additional votes for the leading candidate, Democrat Allison Riggs.

Riggs, who leads the contest by 734 votes after a statewide machine recount, picked up more votes than her opponent — Republican Jefferson G. Griffin — in the partial hand count. Riggs garnered 70 additional votes compared to 56 for Griffin in the hand count, which concluded today. The recounts were conducted by bipartisan teams in all 100 counties over the past week.

Under state law, for a full hand recount to be ordered, Griffin would have had to pick up at least 35 more votes than Riggs in the partial hand count of the ballots in 3% of the Election Day precincts and early voting sites in each county.

[Please see NC Supreme Court Partial Hand-to-Eye Recount Results (PDF) (https://s3.amazonaws.com/dl.ncsbe.gov/Press/2024%20General/NC_Supreme_Court_Recount_Audit_Report.pdf)]

Election administrators expect candidates to pick up votes in a hand recount because some voters do not properly mark their ballot, and as a result, the tabulator cannot read their selections. However, in hand-to-eye recount, humans can identify marks that

show which candidate the voter intended to select, as determined by bipartisan county board members, and count those ballots.

The partial hand-to-eye recount followed a full machine recount of the more than 5.5 million ballots cast in the Supreme Court contest. That recount showed Riggs with a 734-vote lead.

**"We once again owe our gratitude to the county boards of elections, and all of the workers who have made sure that ballots were counted accurately in this contest,"** said Karen Brinson Bell, executive director of the State Board of Elections. **"Recounts, especially hand recounts, are tedious, difficult work."**

## State Board to Hear Protests Wednesday

Meanwhile, the State Board will meet at 12:30 p.m. Wednesday to consider election protests filed by the Griffin campaign.

The meeting will be held in the board room of the third floor of the Dobbs Building, 430 N. Salisbury St., Raleigh, NC 27603. Any member of the public may attend, space permitting, and the meeting will be streamed online and by phone at the following locations.

- **Online:** Webex (https://ncgov.webex.com/ncgov/j.php?MTID=me90131a1bda8dc46551db2e4c2a66244) (Password: NCSBE)
- **By Phone:** Dial (415) 655-0003 (tel:+1-415-655-0003), enter access code 2436 916 8362#, passcode 62723#

Meeting materials will be posted as they are available to the State Board's meeting folder (https://dl.ncsbe.gov/?prefix=State_Board_Meeting_Docs/2024-12-11/).

## Related Topics:

- Election results (/press-release-terms/election-results)
- Laws/litigation

(/press-release-terms/lawslitigation)

**CONTACT**

**Patrick Gannon**

 patrick.gannon@ncsbe.gov
(mailto:patrick.gannon@ncsbe.gov)

# EXHIBIT K

# Election Protest 2024

For more information on when your County Board of Elections will hold a hearing on this matter, please visit the State Board of Elections' website link found **HERE (https://vt.ncsbe.gov/BOEInfo/)**

Note – the State Board of Elections has assumed jurisdiction over all protests in the following categories: FPCA, Incomplete Registration, and UOCAVA ID. You can find State Board meeting materials **here (https://dl.ncsbe.gov/index.html?prefix=State_Board_Meeting_Docs/).**

## Adams

**Not Registered Voters - Wake (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Wake-Adams-Not-Registered_Voters.pdf?1732291379)**

**Deceased Voters - Wake (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Wake-Adams-Deceased_Voters_w.aff.pdf?1732291379)**

**Felon Voters - Wake (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Wake-Adams-Felon_Voters_%28w_Aff%29.pdf?1732291379)**

**FPCA - Wake (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Wake-Adams-FPCA.pdf?1732291379)**

**Incomplete Voter Registration Information - Wake (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Wake-Adams-Incomplete_Voter_Registration_Information.pdf?1732291380)**

**Not Registered Voters - Granville (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Granville-Adams-Not-Registered_Voters_Protest.pdf?1732291379)**

**Deceased Voters - Granville (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Granville-Adams-Deceased_Voters_Protest.pdf?1732291379)**

**Incomplete Voter Registration Information - Granville (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Granville-Adams-Incomplete_Voter_Registration_Protest.pdf?1732291379)**

# McGinn

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Mecklenburg-McGinn-Felon_Voters.pdf?1732291922)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Mecklenburg-McGinn-FPCA_%281%29.pdf?1732291922)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Mecklenburg-McGinn-Not-Registered_Voters_-_w_atty_signature_%281%29.pdf?1732291922)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Mecklenburg-McGinn-Deceased_Voters.pdf?1732291922)**

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21504/attachments/original/Mecklenburg-McGinn-Incomplete_Voter_Registration_Information.pdf?1732291923)**

**McGinn Residency Protest Files (https://drive.google.com/drive/folders/1hvqwh-MFRdV5QrGPVbtpRZ7DjbYGjFQV)**

# Sossamon

**Sossamon Prostest 2 (https://assets.nationbuilder.com/ncgop/mailings/21563/attachments/original/Binder2_.pdf?1732325752)**

**Sossamon Protest 3 (https://assets.nationbuilder.com/ncgop/mailings/21563/attachments/original/Binder3_.pdf?1732325750)**

**Sossamon Protest 4 (https://assets.nationbuilder.com/ncgop/mailings/21563/attachments/original/Binder4_.pdf?1732325751)**

**Sossamon Protest 5 (https://assets.nationbuilder.com/ncgop/mailings/21563/attachments/original/Binder5_.pdf?1732325752)**

Sossamon Protest 6
(https://assets.nationbuilder.com/ncgop/mailings/21563/attachments/original/Binder6_.pdf?
1732325331)

# Griffin Protest

## Alamance

(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Alamance_-_Griffin_-
_FPCA_Protest.pdf?1732118457)FPCA
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Alamance_-_Griffin_-
_FPCA_Protest.pdf?1732118457)

### Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Alamance_-_Griffin_-
_Deceased_Voter_Protest.pdf?1732118456)

### Amendment and Supplementation FPCA Never Resident
(https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-
_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-
_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?
1733877076)

## Alexander

### Incomplete Reg Protest
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Alexander_-_Griffin_-
_Incomplete_Reg_Protest.pdf?1732118641)

## Alleghany

FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Alleghany_-
_Griffin_-_FPCA_Protest.pdf?1732118760)

### Incomplete Reg Protest
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Alleghany_-_Griffin_-
_Incomplete_Reg_Protest.pdf?1732118759)

### Amendment and Supplementation
(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-
_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-
_Alleghany_Burke_Cabarrus_Jackson_Lenoir_Polk.pdf?1733699911)

# Anson

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Anson_-_Griffin_-_Felon_Protest.pdf?1732118939)**

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Anson_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732118953)**

# Ashe

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Ashe_-_Griffin_-_Not_Reg_Protest.pdf?1732123878)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Ashe_-_Griffin_-_Deceased_Protest.pdf?1732123878)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Ashe_-_Griffin_-_FPCA_Protest.pdf?1732123878)**

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Ashe_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732123878)**

# Avery

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Avery_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732124550)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Avery_-_Griffin_-_FPCA_Protest.pdf?1732124550)**

# Beaufort

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Beaufort_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732124893)**

# Bertie

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bertie_-_Griffin_-_Deceased_Protest.pdf?1732124893)**

Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bertie_-_Griffin_-_Felon_Protest.pdf?1732124893)

Incomplete Voter Registration Inforamation (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bertie_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732124894)

Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bertie_-_Griffin_-_Not_Registered_Protest.pdf?1732124893)

## Bladen

Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bladen_-_Griffin_-_Felon_Protest.pdf?1732125410)

Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bladen_-_Griffin_-_Deceased_Voter_Protest.pdf?1732125411)

Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Bladen_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732125411)

## Brunswick

Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Brunswick_-_Griffin_-_Deceased_Protest.pdf?1732125699)

FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Brunswick_-_Griffin_-_FPCA_Protest.pdf?1732125700)

Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Brunswick_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732125700)

Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Brunswick_-_Griffin_-_Not_Registered_Protest.pdf?1732125699)

## Buncombe

UOCAVA ID (https://assets.nationbuilder.com/ncgop/mailings/21365/attachments/original/Buncombe_-_Griffin_-_UOCAVA_ID_Protest.pdf?1732117550)

FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Buncombe_-_Griffin_-_FPCA_Protest.pdf?1732125924)

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Buncombe_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732125925)**

**Supplementation of UOCAVA ID**
**(https://assets.nationbuilder.com/ncgop/mailings/21761/attachments/original/Buncombe_-_Amendment___Supplementation_of_UOCAVA_ID_Protest_with_Exhibit.pdf?1733105462)**

# Burke

**Not Registered (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Burke_-_Griffin_-_Not_Registered_Protest.pdf?1732126164)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Burke_-_Griffin_-_FPCA_Protest.pdf?1732126164)**

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Burke_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732126164)**

**Amendment and Supplementation**
**(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alleghany_Burke_Cabarrus_Jackson_Lenoir_Polk.pdf?1733699911)**

# Cabarrus

**Deceased Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cabarrus_-_Griffin_-_Deceased_Protest.pdf?1732126338)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cabarrus_-_Griffin_-_Felon_Protest.pdf?1732126338)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cabarrus_-_Griffin_-_FPCA_Protest.pdf?1732126339)**

**Amendment and Supplementation**
**(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alleghany_Burke_Cabarrus_Jackson_Lenoir_Polk.pdf?1733699911)**

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cabarrus_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732126339)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cabarrus_-_Griffin_-
_Not_Registered_Protest.pdf?1732126339)**

# Caldwell

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Caldwell_-
_Griffin_-_FPCA_Protest.pdf?1732127101)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Caldwell_-_Griffin_-
_Not_Registered_Protest.pdf?1732127100)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Caldwell_-
_Griffin_-_Felon_Protest.pdf?1732127100)**

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Caldwell_-_Griffin_-
_Incomplete_Registration_Protest.pdf?1732127101)**

# Camden

**Incomplete Voter Registration Infortmation
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Camden_-_Griffin_-
_Incomplete_Registration_Protest.pdf?1732127254)**

# Carteret

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Carteret_-
_Griffin_-_FPCA_Protest.pdf?1732127336)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Carteret_-_Griffin_-
_Not_Registered_Protest.pdf?1732127336)**

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Carteret_-_Griffin_-
_Incomplete_Registration_Protest.pdf?1732127336)**

# Caswell

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Caswell_-_Griffin_-
_Incomplete_Registration_Protest.pdf?1732127679)**

# Catawba

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Catawba_-_Griffin_-_Not_Registered_Protest.pdf?1732127679)**

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Catawba_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732127679)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Catawba_-_Griffin_-_FPCA_Protest.pdf?1732127680)**

**Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Catawba_-_Griffin_-_Deceased_Protest.pdf?1732127679)**

# Chatham

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Chatham_-_Griffin_-_Not_Registered_Protest.pdf?1732127967)**

**Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Chatham_-_Griffin_-_Deceased_Protest.pdf?1732127967)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Chatham_-_Griffin_-_Felon_Protest.pdf?1732127967)**

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Chatham_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732127967)**

**Amendment and Supplementation FPCA Never Resident
(https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?1733877076)**

# Cherokee

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cherokee_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732128098)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cherokee_-_Griffin_-_Felon_Protest.pdf?1732128098)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cherokee_-_Griffin_-_Not_Registered_Protest.pdf?1732128098)**

# Chowan

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Chowan_-_Griffin_-_Incomplete_Registration_Protest.pdf?1732128098)**

# Clay

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Clay_-_Griffin_-_incomplete_registration_protest.pdf?1732128098)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Clay_-_Griffin_-_Not_Registered_protest.pdf?1732128098)**

# Cleveland

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cleveland_-_Griffin_-_incomplete_registration_protest.pdf?1732128418)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cleveland_-_Griffin_-_Felon_Voters_Protest.pdf?1732128418)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/cleveland_-_griffin_-_FPCA.pdf?1732128417)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cleveland_-_Griffin_-_Not_registered_protest.pdf?1732128417)**

# Columbus

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Columbus_-_Griffin_-_incomplete_voter_reg_protest.pdf?1732128417)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Columbus_-_griffin_-_not_registered_voters_protest.pdf?1732128417)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Columbus_-_Griffin_-_FPCA_protest.pdf?1732128417)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Columbus_-_Griffin_-_Felon_Voters_protest.pdf?1732128417)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Columbus_-_Griffin_-_Deceased_voter_protest.pdf?1732128417)**

# Craven

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Craven_-_Griffin_-_deceased_voter_protest.pdf?1732128799)**

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Craven_-_Griffin_-_incomplete_voter_registration_protest.pdf?1732128799)**

**Not Registred Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Craven_-_Griffin_-_not_registered_voters_protest.pdf?1732128799)**

# Cumberland

**(https://assets.nationbuilder.com/ncgop/mailings/21365/attachments/original/Cumberland_-_griffin_-_UOCAVA.pdf?1732117550)UOCAVA ID (https://assets.nationbuilder.com/ncgop/mailings/21365/attachments/original/Cumberland_-_griffin_-_UOCAVA.pdf?1732117550)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cumberland_-_Griffin_-_FPCA_protest.pdf?1732130621)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cumberland_-_Griffin-_Felon_Voters_protest.pdf?1732130621)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cumberland-_Griffin_-_deceased_voter_protest.pdf?1732130621)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cumberland_-_Griffin_-_not_registered_voter_protest.pdf?1732130622)**

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Cumberland_-_Griffin_-_incomplete_voter_registration_protest.pdf?1732130621)**

# Currituck

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Currituck_-_Griffin_-_FPCA_protest.pdf?1732130799)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Currituck_-_Griffin_-_not_registered_protest.pdf?1732130798)**

**Incomplete Voter Regsitration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Currituck_-_Griffin_-_incomplete_registration_protest.pdf?1732130799)**

# Dare

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Dare_-_Griffin_-_FPCA_protest.pdf?1732130906)**

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Dare_-_Griffin_-_incomplete_voter_registration_protest.pdf?1732130906)**

# Davidson

**Not Registered Voter**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Davidson_-_Griffin_-_not_registered_protest.pdf?1732130905)**

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21366/attachments/original/Davidson_-_Griffin_-_incomplete_voter_registration_protest.pdf?1732130906)**

# Davie

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Davie_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732131151)**

**Not Registered Voter (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Davie_-_Griffin_-_Not_Registered_Protest.pdf?1732131150)**

**Deceased Voter (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Davie_-_Griffin_-_Deceased_Protest.pdf?1732131150)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Davie_-_Griffin_-_FCPA_Protest.pdf?1732131150)**

**Amendment and Supplementation FPCA Never Resident (https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Davie_-_Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_%2812-10-24%29.pdf?1733877362)**

# Duplin

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Duplin-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732131535)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Duplin-Griffin-FPCA_Protest.pdf?1732131535)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Duplin-Griffin-Felon_Protest.pdf?1732131535)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Duplin-Griffin-Deceased_Voters_Protest.pdf?1732131535)**

**Amendment and Supplementation FPCA Never Resident (https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?1733877076)**

# Durham

**UOCAVA ID (https://assets.nationbuilder.com/ncgop/mailings/21365/attachments/original/Durham-Griffin-UOCAVA_ID_Protest.pdf?1732117550)**

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Durham-Griffin-Incomplete_Voter_Registration_Information_Protest.pdf?1732131703)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Durham-Griffin-Deceased_Voters__Protest.pdf?1732131702)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Durham-Griffin-Felon_Protest.pdf?1732131702)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Durham-Griffin-Not-Registered_Voters_Protest.pdf?1732131702)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Durham-Griffin-FPCA_Protest.pdf?1732131704)**

**UOCAVA ID Protest (https://assets.nationbuilder.com/ncgop/mailings/21761/attachments/original/Durham_-_Amendment___Supplementation_of_UOCAVA_ID_Protest_with_Exhibit.pdf?1732631489)**

**Amendment and Supplementation of FPCA Never Residents Protest (https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Durham_Lee__Madison_Montgomery_Richmond_Transylvania_with_Exhibits.pdf?1733765575)**

# Edgecombe

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Edgecombe-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732131702)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Edgecombe-Griffin-FPCA_Protest.pdf?1732131702)**

# Forsyth

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Forsyth-Griffin-Not-Registered_Voters__Protest.pdf?1732131940)**

**UOCAVA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Forsyth-Griffin-UOCAVA_ID_Protest.pdf?1732131940)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Forsyth-Griffin-Not-Registered_Voters__Protest.pdf?1732131940)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Forsyth-Griffin-FPCA_Protest.pdf?1732131941)**

**UOCAVA ID Protest (https://assets.nationbuilder.com/ncgop/mailings/21761/attachments/original/Forsyth_-_Amendment___Supplementation_of_UOCAVA_ID_Protest_with_Exhibit.pdf?1732631487)**

# Franklin

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Franklin-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732132064)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Franklin-Griffin-Not-Registered_Voters_Protest.pdf?1732132064)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Franklin-Griffin-Deceased_Voters_Protest.pdf?1732132064)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Franklin-Griffin-Felon_Voter_Protest.pdf?1732132064)**

# Gaston

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gaston-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732132639)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gaston-Griffin-FPCA_Protest.pdf?1732132638)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gaston-Griffin-Felon_Voters_Protest.pdf?1732132638)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gaston-Griffin-Deceased_Voters_Protest.pdf?1732132638)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gaston-Griffin-Not-Registered_Voters_Protest.pdf?1732132776)**

# Gates

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gates-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732133063)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Gates-Griffin-Not-Registered_Voters_Protest.pdf?1732133062)**

# Graham

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Graham-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732133208)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Graham-Griffin-Deceased_Voters_Protest.pdf?1732133208)**

# Granville

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Granville-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732133473)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Granville-Griffin-Deceased_Voters_Protest.pdf?1732133473)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Granville-Griffin-Not-Registered_Voters_Protest.pdf?1732133475)**

# Greene

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Greene-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732133473)**

# Guilford

**UOCAVA ID (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Guilford_-_Griffin_-_UOCAVA_ID_Protest.pdf?1732133625)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Guilford_-_Griffin_-_FPCA_Protest.pdf?1732133627)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Guilford_-_Griffin_-_Felon_Protest.pdf?1732133627)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Guilford_-_Griffin_-_Deceased_Protest.pdf?1732133627)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Guilford_-_Griffin_-_Not_Registered_Protest.pdf?1732133627)**

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Guilford_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732133627)**

**Amendment and Supplementation FPCA Protest**
**(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Guilford_-_Amendment_And_Supplementation_FPCA_Protest_with_Exhibit.pdf?1733517077)**

# Halifax

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Halifax_-_Griffin_-_Incomplete_Voter_Reg_Protest.pdf?1732133829)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Halifax_-_Griffin_-_Felon_Protest.pdf?1732133829)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Halifax_-_Griffin_-_Deceased_Protest.pdf?1732133829)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Halifax_-_Griffin_-_FPCA_Protest.pdf?1732133829)**

**Not Registerd Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Halifax_-_Griffin_-_Not_Registered_Protest.pdf?1732133829)**

# Harnett

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Harnett_-_Griffin_-_Incomplete_Voter_Reg_Protest.pdf?1732134102)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Harnett_-_Griffin_-_Not_Registered_Protest.pdf?1732134102)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Harnett_-_Griffin_-_FPCA_Protest.pdf?1732134103)**

# Haywood

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Haywood_-_Griffin_-
_Incomplete_Reg_Protest.pdf?1732134222)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Haywood_-_Griffin_-
_Not_Registered_Protest.pdf?1732134221)**

# Henderson

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Henderson_-_Griffin_-
_Incomplete_Voter_Reg_Protest.pdf?1732134221)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Henderson_-_Griffin_-
_Not_Registered_Protest.pdf?1732134221)**

**Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Henderson_-_Griffin_-
_Deceased_Protest.pdf?1732134222)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Henderson_-
_Griffin_-_FPCA_Protest.pdf?1732134221)**

**Amendment and Supplementation FPCA Never Resident
(https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-
_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-
_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?
1733877076)**

# Hertford

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hertford_-_Griffin_-
_Incomplete_Voter_Reg_Protest.pdf?1732134892)**

**Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hertford_-_Griffin_-
_Deceased_Protest.pdf?1732134891)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hertford_-
_Griffin_-_Felon_Protest.pdf?1732134890)**

# Hoke

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hoke_-_Griffin_-_Incomplete_Voter_Reg_Protest.pdf?1732134893)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hoke_-_Griffin_-_Not_Registered_Protest.pdf?1732134890)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hoke_-_Griffin_-_Felon_Protest.pdf?1732134890)**

# Hyde

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Hyde_-_Griffin_-_Incomplete_Voter_Reg_Protest.pdf?1732135722)**

# Iredell

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Iredell_-_Griffin_-_Incomplete_Voter_Reg_Protest.pdf?1732135815)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Iredell_-_Griffin_-_Not_Registered_Protest.pdf?1732135815)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Iredell_-_Griffin_-_Felon_Protest.pdf?1732135815)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Iredell_-_Griffin_-_FCPA_Protest.pdf?1732135815)**

# Jackson

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Jackson_-_Griffin_-_Incomplete_Reg_Protest.pdf?1732135815)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Jackson_-_Griffin_-_FPCA_Protest.pdf?1732135817)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21398/attachments/original/Jackson_-_Griffin_-_Not_Registered_Protest.pdf?1732135815)**

**Amendment and Supplementation
(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alleghany_Burke_Cabarrus_Jackson_Lenoir_Polk.pdf?1733699911)**

# Johnston

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Not-Registered_Voters.pdf?1732141817)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Deceased_Voters_w.aff.pdf?1732141817)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732141817)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-FPCA.pdf?1732141817)**

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Incomplete_Voter_Registration_Information.pdf?1732141817)**

# Jones

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Jones-Griffin-Incomplete_Voter_Registration_Information.pdf?1732136185)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Jones-Griffin-Deceased_Voters_w.aff.pdf?1732136184)**

# Lee

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lee-Griffin-Incomplete_Voter_Registration_Information.pdf?1732136185)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lee-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732136184)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lee-Griffin-Deceased_Voters.pdf?1732136184)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lee-Griffin-Not-Registered_Voters.pdf?1732136184)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lee-Griffin-FPCA.pdf?1732136185)**

**Amendment and Supplementation of FPCA Never Residents Protest (https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Durham_Lee__Madison_Montgomery_Richmond_Transylvania_with_Exhibits.pdf?1733765575)**

# Lenoir

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lenoir-Griffin-Incomplete_Voter_Registration_Information.pdf?1732136426)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lenoir-Griffin-Felon_Voters.pdf?1732136426)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lenoir-Griffin-Deceased_Voters.pdf?1732136426)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lenoir-Griffin-FPCA.pdf?1732136426)**

**Amendment and Supplementation (https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alleghany_Burke_Cabarrus_Jackson_Lenoir_Polk.pdf?1733699911)**

# Lincoln

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lincoln-Griffin-Incomplete_Voter_Registration_Information.pdf?1732136579)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lincoln-Griffin-Not-Registered_Voters.pdf?1732136604)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Lincoln-Griffin-FPCA.pdf?1732136581)**

# Macon

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Macon-Griffin-
Incomplete_Voter_Registration_Information.pdf?1732136670)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Macon-Griffin-Not-
Registered_Voters.pdf?1732136670)**

**Amendment and Supplementation FPCA Never Resident
(https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-
_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-
_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?
1733877076)**

# Madison

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Madison-Griffin-
Incomplete_Voter_Registration_Information.pdf?1732136670)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Madison-Griffin-
FPCA.pdf?1732136670)**

**Amendment and Supplementation of FPCA Never Residents Protest
(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-
_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-
_Durham_Lee__Madison_Montgomery_Richmond_Transylvania_with_Exhibits.pdf?1733765575)**

# Martin

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-
Incomplete_Voter_Registration_Information_%281%29.pdf?1732142266)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-
Griffin-Felon_Voters_%28w_Aff%29_%282%29.pdf?1732142266)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-
Griffin-Deceased_Voters_w.aff_%282%29.pdf?1732142267)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Not-
Registered_Voters_%281%29.pdf?1732142266)**

# McDowell

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/McDowell-Griffin-Incomplete_Voter_Registration_Information_Protest.pdf?1732136787)**

# Mecklenburg

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mecklenburg-Griffin-Incomplete_Voter_Registration_Information.pdf?1732136788)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mecklenburg-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732136788)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mecklenburg-Griffin-Deceased_Voters_w.aff_%281%29.pdf?1732136942)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mecklenburg-Griffin-Not-Registered_Voters.pdf?1732136787)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mecklenburg-Griffin-FPCA.pdf?1732136787)**

# Mitchell

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mitchell-Griffin-Incomplete_Voter_Reg_Protest.pdf?1732137041)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mitchell-Griffin-Felon_Protest.pdf?1732137040)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mitchell-Griffin-Deceased_Protest.pdf?1732137040)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Mitchell-Griffin-Not-Registered_Voters_Protest.pdf?1732137040)**

# Montgomery

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Montgomery-Griffin-Incomplete_Voter_Reg._Protest.pdf?1732137040)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Montgomery-Griffin-Not-Reg._Protest.pdf?1732137040)**

**Amendment and Supplementation of FPCA Never Residents Protest (https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Durham_Lee__Madison_Montgomery_Richmond_Transalvania_with_Exhibits.pdf?1733765575)**

# Moore

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Moore-Griffin-Incomplete_Voter_Reg_Protest.pdf?1732137286)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Moore-Griffin-Felon_Protest.pdf?1732137285)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Moore-Griffin-Not_Registered_Protest.pdf?1732137285)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Moore-Griffin-FPCA_Protest.pdf?1732137286)**

# Nash

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Nash-Griffin-Incomplete_Voter_Reg_Protest.pdf?1732137353)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Nash-Griffin-Not-Reg._Voters_Protest.pdf?1732137353)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Nash-Griffin-FPCA_Protest.pdf?1732137353)**

# New Hanover

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/New_Hanover-Griffin-
Incomplete_Reg._Protest.pdf?1732137523)**

**Felon Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/New_Hanover-Griffin-
Felon_Protest.pdf?1732137522)**

**Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/New_Hanover-Griffin-
Deceased_Voter_Protest.pdf?1732137522)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/New_Hanover-Griffin-
Not-Reg._Voters.pdf?1732137522)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/New_Hanover-
Griffin-FPCA_Protest.pdf?1732137524)**

**UOCAVA ID
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/New_Hanover-Griffin-
UOCAVA_ID_Protest.pdf?1732137521)**

# Northampton

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Northampton-Griffin-
Incomplete_Voter_Reg._Protest.pdf?1732137614)**

**Deceased Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Northampton-Griffin-
Deceased_Voter_Protest.pdf?1732137614)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Northampton-Griffin-
Not_Reg._Voter_Protest.pdf?1732137614)**

# Onslow

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Onslow-Griffin-
Incomplete_Voter_Reg._Protest.pdf?1732137614)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Onslow-
Griffin-Deceased_Voters_Protest.pdf?1732137614)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Onslow-Griffin-
Not_Registered_Voters_Protest.pdf?1732137614)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Onslow-Griffin-
FPCA_Protest.pdf?1732137614)**

# Orange

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Orange-Griffin-
Incomplete_Voter_Registration_Protest.pdf?1732137846)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Orange-
Griffin-Felon_Voters_Protest.pdf?1732137845)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Orange-Griffin-
Not_Registered_Voters_Protest.pdf?1732137845)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Orange-Griffin-
FPCA_Protest.pdf?1732137845)**

# Pamlico

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pamlico-Griffin-
Incomplete_Voter_Registration_Protest.pdf?1732137845)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pamlico-Griffin-Not-
Registered_Voters_Protest.pdf?1732137846)**

# Pasquotank

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pasquotank-Griffin-
Incomplete_Voter_Registration.pdf?1732137958)**

# Pender

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pender-Griffin-
Incomplete_Registration_Protest.pdf?1732137958)**

Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pender-Griffin-Deceased_Voters_Protest.pdf?1732137957)

FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pender-Griffin-FPCA_Protest.pdf?1732137958)

# Perquimans

Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Perquimans-Griffin-Incomplete_Registration_Protest.pdf?1732137958)

Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Perquimans-Griffin-Not_Registered_Protest.pdf?1732137958)

# Person

Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Person-Griffin-Incomplete_Registration_Protest.pdf?1732138179)

Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Person-Griffin-Not_Registered_Protest.pdf?1732138178)

FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Person-Griffin-FCPA_Protest.pdf?1732138179)

# Pitt

Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pitt-Griffin-Incomplete_Registration_Protest.pdf?1732138179)

Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pitt-Griffin-Felon_Protest.pdf?1732138178)

Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pitt-Griffin-Not_Registered_Protest.pdf?1732138178)

FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Pitt-Griffin-FPCA_Protest.pdf?1732138179)

**Supplementation of FPCA Protest**
**(https://assets.nationbuilder.com/ncgop/mailings/21761/attachments/original/Pitt_-**
**_Amendment_And_Supplementation_of_FPCA_Protest_with_Exhibit.pdf?1733105527)**

# Polk

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Polk-Griffin-**
**Incomplete_Registration.pdf?1732138179)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Polk-Griffin-**
**Felon_Voters_Protest.pdf?1732138178)**

**Amendment and Supplementation**
**(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-**
**_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-**
**_Alleghany_Burke_Cabarrus_Jackson_Lenoir_Polk.pdf?1733699911)**

# Randolph

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Randolph-Griffin-**
**Incomplete_Registration_Protest.pdf?1732138562)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Randolph-Griffin-**
**Not_Registered_Protest.pdf?1732138562)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Randolph-Griffin-**
**FCPA_Protest.pdf?1732138562)**

# Richmond

**Incomplete Voter Registration Information**
**(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Richmond-Griffin-**
**Incomplete_Registration_Protest.pdf?1732138562)**

**Not Registered Voters**
**(https://assets.nationbuilder.com/ncgop/mailings/21431/attachments/original/Richmond-Griffin-**
**Not_Registered_Protest.pdf?1732138561)**

**Amendment and Supplementation of FPCA Never Residents Protest**
**(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-**
**_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-**
**_Durham_Lee__Madison_Montgomery_Richmond_Transylvania_with_Exhibits.pdf?1733765575)**

# Robeson

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Robeson-Griffin-Incomplete_Voter_Registration_Protest.pdf?1732138728)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Robeson-Griffin-Felon_Voters_Protest.pdf?1732138727)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Robeson-Griffin-Deceased_Voters_Protest.pdf?1732138727)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Robeson-Griffin-Not_Registered_Protest.pdf?1732138727)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Robeson-Griffin-FCPA_Protest.pdf?1732138728)**

# Rockingham

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rockingham-Griffin-Incomplete_Registration_Protest.pdf?1732138728)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rockingham-Griffin-Felon_Voters_Protest.pdf?1732138727)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rockingham-Griffin-Deceased_Voters_Protest.pdf?1732138727)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rockingham-Griffin-Not_Registered_Protest.pdf?1732138727)**

# Rowan

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rowan_-_Griffin_-_incomplete_voter_registration_protest.pdf?1732139068)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rowan_-_Griffin_-_Felon_Protest.pdf?1732139067)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rowan_-_Griffin_-_deceased_voter_protest.pdf?1732139067)**

# Rutherford

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rutherford-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139068)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rutherford-Griffin-Not-Registered_Voters.pdf?1732139067)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Rutherford-Griffin-FPCA.pdf?1732139068)**

# Sampson

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Sampson-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139068)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Sampson-Griffin-Felon_Voters.pdf?1732139067)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Sampson-Griffin-Deceased_Voters.pdf?1732139067)**

# Scotland

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Scotland-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139294)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Scotland-Griffin-Not-Registered_Voters.pdf?1732139292)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Scotland-Griffin-FPCA.pdf?1732139294)**

# Stanly

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Stanly-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139294)**

# Stokes

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Stokes-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139293)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Stokes-Griffin-Felon_Voters.pdf?1732139292)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Stokes-Griffin-Not-Registered_Voters.pdf?1732139292)**

# Surry

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Surry-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139293)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Surry-Griffin-Felon_Voters.pdf?1732139292)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Surry-Griffin-Not-Registered_Voters.pdf?1732139292)**

# Swain

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Swain-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139600)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Swain-Griffin-Not-Registered_Voters.pdf?1732139599)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Swain-Griffin-FPCA.pdf?1732139600)**

# Transylvania

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Transylvania-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139601)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Transylvania-Griffin-Not-Registered_Voters.pdf?1732139599)**

**Amendment and Supplementation of FPCA Never Residents Protest
(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Durham_Lee__Madison_Montgomery_Richmond_Transylvania_with_Exhibits.pdf?1733765575)**

# Tyrrell

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Tyrrell-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139600)**

# Union

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Union-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139860)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Union-Griffin-Felon_Voters.pdf?1732139859)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Union-Griffin-Not-Registered_Voters.pdf?1732139859)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Union-Griffin-FPCA.pdf?1732139860)**

**Amendment and Supplementation FPCA Protest
(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Union_-_Amendment_And_Supplementation_FPCA_Protest_with_Exhibit.pdf?1733517079)**

# Vance

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Vance-Griffin-Incomplete_Voter_Registration_Information.pdf?1732139860)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Vance-Griffin-Deceased_Voters_Protest.pdf?1732139859)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Vance-Protest-Griffin-FPCA_Protest.pdf?1732139861)**

# Wake

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wake-Griffin-Incomplete_Voter_Registration_Information.pdf?1732140285)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wake-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732140284)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wake-Griffin-Deceased_Voters_w.aff.pdf?1732140284)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wake-Griffin-Not-Registered_Voters?1732140284)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wake-Griffin-FPCA.pdf?1732140284)**

**Wake County Notice of Hearing (https://assets.nationbuilder.com/ncgop/mailings/21761/attachments/original/Wake_County_Notice_of_Hearing_and_Draft_Agenda.pdf?1733090520)**

**Supplementation of Felon Protest (https://assets.nationbuilder.com/ncgop/mailings/21761/attachments/original/Amendment_And_Supplementation_of_Felon_Voter_Protest_in_Wake_with_Exhibits.pdf?1733105527)**

# Warren

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Incomplete_Voter_Registration_Information.pdf?1732141817)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Felon_Voters_%28w_Aff%29_%281%29.pdf?1732141935)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-Not-Registered_Voters_%282%29.pdf?1732141935)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Protest-Griffin-FPCA_%281%29.pdf?1732141935)**

**Amendment and Supplementation FPCA Never Resident (https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?1733877076)**

# Washington

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Washington-Griffin-Incomplete_Voter_Registration_Information.pdf?1732140284)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Washington-Griffin-Deceased_Voters_w.aff.pdf?1732140284)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Washington-Griffin-Not-Registered_Voters.pdf?1732140284)**

# Watauga

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Watauga-Griffin-Incomplete_Voter_Registration_Information.pdf?1732140703)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Watauga-Griffin-Not-Registered_Voters.pdf?1732140702)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Watauga-Griffin-FPCA.pdf?1732140703)**

# Wayne

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wayne-Griffin-Incomplete_Voter_Registration_Information.pdf?1732140703)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wayne-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732140833)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wayne-Griffin-Deceased_Voters_w.aff.pdf?1732140833)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wayne-Griffin-Not-Registered_Voters.pdf?1732140702)**

**Amendment and Supplementation FPCA Never Resident
(https://assets.nationbuilder.com/ncgop/mailings/22586/attachments/original/Griffin_-_Amendment_and_Supplementation_FPCA_Never_Resident_Protest_-_Alamance_Chatham_Craven_Duplin_Henderson_Macon_Warren_Wayne_with_Exhibits.pdf?1733877076)**

# Wilkes

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilkes-Griffin-Incomplete_Voter_Registration_Information.pdf?1732140909)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilkes-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732140909)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilkes-Griffin-Deceased_Voters_w.aff.pdf?1732140909)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilkes-Griffin-Not-Registered_Voters.pdf?1732140909)**

# Wilson

**Incomplete Voter Registration Information
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilson-Griffin-Incomplete_Voter_Registration_Information_Protest.pdf?1732140909)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilson-Griffin-Felon_Voters_Protest.pdf?1732140909)**

**Not Registered Voters
(https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilson-Griffin-Not-Registered_Voters_Protest.pdf?1732140909)**

**FPCA (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Wilson-Griffin-FPCA_Protest.pdf?1732140909)**

**Amendment and Supplementation FPCA Protest
(https://assets.nationbuilder.com/ncgop/mailings/22190/attachments/original/Wilson_-_Amendment_And_Supplementation_FPCA_Protest_with_Exhibit.pdf?1733517075)**

# Yadkin

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Yadkin-Griffin-Incomplete_Voter_Registration_Information.pdf?1732141100)**

**Not Registered Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Yadkin-Griffin-Not-Registered_Voters.pdf?1732141194)**

# Yancey

**Incomplete Voter Registration Information (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Yancey-Griffin-Incomplete_Voter_Registration_Information.pdf?1732141099)**

**Felon Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Yancey-Griffin-Felon_Voters_%28w_Aff%29.pdf?1732141099)**

**Deceased Voters (https://assets.nationbuilder.com/ncgop/mailings/21434/attachments/original/Yancey-Griffin-Deceased_Voters_w.aff.pdf?1732141099)**

**(/)**

## Executive Committee Dues (/executive_committee_dues)

### STATE CONVENTION (/2025_NCGOP_STATE_CONVENTION)

**VOLUNTEER (/VOLUNTEER)**

DONATE (/DONATE)

## About (/about)

State Party Officers (/party_officers)

Republican National Leadership (/republican_national_leadership)

Online Store (/online_store)

Staff (/staff)

Plan of Organization (/plan_of_organization)

Party Platform (/party_platform)

Hall of Fame (/hall_of_fame)

Election Integrity (/protecttheballot)

Contact (/contact_2)

2023 Hall of Fame Winners (/2023_hall_of_fame_winners)

## Get Involved (/volunteer)

Join the Protect the Ballot Team (/electionintegrity)

Internships (/internships)

Volunteer (/volunteertoday)

## Groups (/groups)

District Parties (/district_parties)

Coalitions (/coalitions)

Republican Men (/ncfrm)

Poll Judge Responsibilities (/poll_judge_responsibilities)

Republican Women (/ncfrw)

Young Republicans (/ncfyr)

College Republicans (/ncfcr)

County Parties (/county_parties_2)

## Events (/events)

NCGOP Event Submissions (/event_submissions)

Go Red Training Series (/gored)

Calendar (/calendar)

2025 County Conventions (/2025_county_conventions)

2025 District Conventions (/2025_district_conventions)

## Voter Info (/voter_info)

Voter Lookup (/voter_lookup)

State Board of Elections (/state_board_of_elections)

Representation (/representation)

District Maps (/district_maps)

Elected Officials (/elected_officials)

Judicial Victory Fund (/jvf)

NC Senate Republican Caucus (/nc_senate_republican_caucus)

NC House Republican Caucus (/nc_house_republican_caucus)

Republican National Committee (/rnc)

National Republican Senatorial Committee (/nrsc)

National Republican Congressional Committee (/nrcc)

## News (/news_media)

Press Releases (/news)

Media (/media)

## Plan Committee (/plan_committee)

2024 - 2025 Plan of Organization Opinions (/2024_2025_plan_of_organization_opinions)

Minutes (/minutes)

DRAFT: Plan of Organization (/draft_plan_of_organization)

Plan of Organization Comments (/plan_of_organization_comments)

Organization Chart (/organization_chart)

Compensation of the State Chair Opinion (/compensation_of_the_state_chair_opinion_final)

📍 1506 Hillsborough St, Raleigh, NC 27605, United States (https://maps.google.com/maps?q=1506+Hillsborough+St%2C+Raleigh%2C+NC+27605%2C+United+States)

✉ info@ncgop.org (mailto:info@ncgop.org) 📞 919-828-6423 (tel:919-828-6423)

Search

🔍

2025 NCGOP State Convention (/2025_ncgop_state_convention)   RNC National Convention (/rnc_national_convention)
Calendar (/calendar)   NCGOP Event Submissions (/event_submissions)   Party Platform (/party_platform)
Plan of Organization (/plan_of_organization)   About (/about)   Privacy Policy (/privacy)   Contact (/contact)

PAID FOR BY THE NORTH CAROLINA REPUBLICAN PARTY
NOT AUTHORIZED BY ANY CANDIDATE OR CANDIDATE'S COMMITTEE

© North Carolina Republican Party 2025. All Rights Reserved.

Powered by **NationBuilder (https://nationbuilder.com/)** + **Nation Digital (https://www.nationdigital.io/)**

# EXHIBIT L

Thank you for printing our content at www.fvap.gov. Please check back to find out the latest information regarding absentee voting.



# North Carolina

www.ncsbe.gov/voting (https://www.ncsbe.gov/voting)

 Download PDF (/uploads/FVAP/States/north-carolina.pdf)

## Deadline Dates ⌄

| Upcoming Elections |
|---|
| No Federal Elections Scheduled |

**Please mail your voting materials early enough to account for mail delivery times. Check the recommended mailing dates section in Chapter 1 (/guide/chapter1) for details.**

## Important Information ⌄

## Important information

**What is UOCAVA?**

The *Uniformed and Overseas Citizens Absentee Voting Act* is commonly referred to as *UOCAVA*. *UOCAVA* citizens are U.S. citizens who are active members of the Uniformed Services, the Merchant Marine, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members and other U.S. citizens residing outside the United States. The law provides the legal basis for absentee voting requirements for federal offices.

**What is the Federal Post Card Application (FPCA)?**

The FPCA (Federal Standard Form 76) allows *UOCAVA* citizens to register to vote and request an absentee ballot. This form is also used to update your contact information.

**What is the Federal Write-In Absentee Ballot (FWAB)?**

The FWAB (Federal Standard Form 186) serves as an emergency backup ballot for *UOCAVA* citizens. If you do not receive your absentee ballot from your state in time to return it to your election official to participate in the election, use the FWAB.

**What is the Prepaid Mail Label 11- DoD?**

*Overseas Uniformed Service members* can use this label for general election absentee ballots. It provides free express mail service to your election official for general election absentee ballots. You can request to have a Prepaid Mail Label 11-DoD applied to your absentee ballot at Military Postal Office locations (APO/FPO). Keep part of the tracking label to track your absentee ballot through the U.S. Postal Service.

**What is a primary election?**

A primary election is an election held before the general election to determine the candidates that can be placed on the general election ballot.

**What is a runoff election?**

A runoff election is an election held if the state requires that a candidate receive a certain percentage of the votes in order to advance to a general election or take public office.

**I am an American citizen, but I have never lived in the U.S., can I vote in this state?**

A U.S. citizen who has never resided in the U.S., and has a parent or legal guardian who was last domiciled in North Carolina, is eligible to vote in North Carolina.

**I am a National Guardsman activated on state orders; does my state afford me UOCAVA privileges?**

Yes.

**How can I check the status of my ballot?**

You can check the status of your absentee ballot here:

https://www.ncsbe.gov/voting/voter-tools-and-forms (https://www.ncsbe.gov/voting/voter-tools-and-forms)

**Does my state have any online tools?**

You can see if your state has any online tools available here:

https://www.fvap.gov/north-carolina (https://www.fvap.gov/north-carolina)

## FPCA ⌄

# Registering and requesting your absentee ballot

Under federal law, the Federal Post Card Application (FPCA) temporarily registers you to vote and requests absentee ballots for a minimum of all federal elections in the current calendar year. Be sure to complete a new FPCA each year and every time your address changes.

## Complete the following sections of the FPCA

**Section 1**

Select the category that describes you..

Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.

Your date of birth is required.

You must provide your North Carolina-issued ID number **or** the last four digits of your Social Security Number. If you do not have any of these numbers you must enter in Section 6: "I do not have a Social Security Number or North Carolina-issued ID number."

### Section 2
Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence.

### Section 3
Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information.

### Section 4
Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FPCA. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number.

### Section 5
A. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax."

B. To vote in primary elections, you must enter the name of the party ballot you want to receive. Political party affiliation is not required if requesting an absentee ballot for general elections.

### Section 6
Provide any information that may assist your election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots.

### Section 7
Sign and date the form. No witness signature required.

## How and where to submit your FPCA

You can submit the FPCA by **mail, email,** or **fax** or use the **North Carolina Military and Overseas Absentee Ballot portal,** available at https://votebymail.ncsbe.gov/app/uocava.

Contact information can be found in the "Local Election Offices" section or online at FVAP.gov.

**Mail your FPCA:** Once your FPCA is complete, sign and date the form. Mail your FPCA directly to your election official.

**Email your FPCA:** Once your FPCA is complete, sign and date the form. Scan the signed FPCA into your computer. Be sure to also include the "Transmission Cover Sheet." Email this package directly to your election official.

**Fax your FPCA:** Once your FPCA is complete, sign and date the form. Fax your FPCA directly to your election official. Be sure to also include the "Transmission Cover Sheet."

To find out the status of your FPCA, contact your election official. Your election official will contact you if your FPCA is not accepted.

## Voted Ballot Return ⌄

## Voting your ballot

Once you receive your absentee ballot from your state it must be returned according to the deadlines and requirements in the "Federal Election Deadlines" chart. For special federal elections, visit FVAP.gov for specific deadlines.

You can submit the state absentee ballot by **mail, email, online\*,** or **fax**.

Contact information can be found in the "Local Election Offices" section.

*Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section.

**\*You can receive, mark, and return your absentee ballot online using the North Carolina Military and Overseas Absentee Ballot portal, available at https://votebymail.ncsbe.gov/app/uocava.**

## FWAB ⌄

## Haven't received your ballot? Use the Federal Write-In Absentee Ballot

The Federal Write-In Absentee Ballot (FWAB) can be used to register to vote. If you are using the FWAB to register to vote, it **must** be received by the registration deadline listed in the "Federal Election Deadlines" chart.

You can use the FWAB to vote in federal, state and local elections, including ballot measures.

Complete the following sections of the FWAB's voter information page

**Section 1**

Select the category that best describes you.

Enter your current name (Last, First). If you are registered under a different name, provide this information in the previous name area.

Your date of birth is required.

You must provide your North Carolina-issued ID number **or** the last four digits of your Social Security Number. If you do not have any of these numbers you must enter in Section 6: "I do not have a Social Security Number or North Carolina-issued ID number."

**Section 2**

Enter the complete street address of your voting residence where you are registering to vote and requesting an absentee ballot. You cannot use a post office box mailing address. If your address is a rural route, use Section 6 to describe the location of your voting residence.

**Section 3**

Enter your current mailing address, even if you are requesting your ballot by email or online, or fax. If you want your election materials sent to a different address or have a forwarding address, use the forwarding address space to provide this information.

**Section 4**

Your contact information is recommended so your election official can contact you if they need additional information from you in order to accept your FWAB. If you want to receive your absentee ballot by email or online, or fax, you must provide your email address or fax number.

**Section 5**

A. Check "Yes" if you would like to register to vote and/or request an absentee ballot, otherwise check "No."

B. Select your preferred method of receiving your absentee ballot. You can choose to receive your absentee ballot by "mail", "email or online", or "fax."

C. To vote in primary elections, you must enter the name of the party primary in which you are voting. Political party affiliation is not required if voting an absentee ballot in general elections.

**Section 6**

Provide any information that may assist the election official in accepting this form. You can use this space to designate particular elections or the period you wish to receive ballots.

**Section 7**

Sign and date the form. No witness signature required.

# Vote your FWAB

To vote, write in either a candidate's name or political party for each office. You are not required to make a selection for each and every contest.

## How and where to submit your FWAB

You can submit the FWAB by **mail, email,** or **fax.** Contact information can be found in the "Local Election Offices" section. or online at FVAP.gov.

**Mail your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fold along the dotted line and seal the completed "Official Backup Ballot", do not write on the "Official Ballot" envelope. Insert the sealed "Official Ballot" envelope and the "Voter Information" page into the mailing envelope and mail your FWAB directly to your election official.

*Overseas Uniformed Service members* can request to have the Prepaid Mail Label 11-DoD applied to the general election ballot. Additional information about this label can be found in the "Important Information" section or online at FVAP.gov.

**Email your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Scan the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end of Chapter 1 or online at FVAP.gov, into your computer. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet." Email this ballot package directly to your election official.

**Fax your FWAB:** Once your FWAB is complete, sign and date the "Voter Information" page. Fax the signed "Voter Information" page, the "Official Backup Ballot" and the "Transmission Cover Sheet", found at the end of Chapter 1 or online at FVAP.gov, directly to your election official. Be sure to also sign the secrecy waiver on the "Transmission Cover Sheet."

See the "Federal Election Deadlines" chart for the deadline for submitting the FWAB. If you receive the state absentee ballot after transmitting your voted FWAB, you may also vote and return the state absentee ballot. If both are received by the deadline, only the state absentee ballot will be counted.

## Election Offices ⌄

## Local election offices for county   Search Offices (/search-offices?state=33)

| County | Mailing Address |
|--------|-----------------|
| Alamance | Alamance County Board of Elections<br>PO Box 418<br>Graham, NC  27253<br>Phone: (336) 570-6755<br>Fax: (336) 570-6757<br>Email: Alamance.BOElections@alamance-nc.com (mailto:Alamance.BOElections@alamance-nc.com) |

# EXHIBIT M

No. 320P24

No. _____

*********************************************

JEFFERSON GRIFFIN,

        Petitioner,

    v.

NORTH CAROLINA BOARD OF
ELECTIONS,

        Respondent,

From the North Carolina
State Board of Elections

***********************************

**PETITION FOR WRIT OF PROHIBITION OF
THE HONORABLE JEFFERSON GRIFFIN**

**IMMEDIATE ACTION REQUESTED BEFORE
MONDAY, 23 DECEMBER 2024**

***********************************

# INDEX

TABLE OF CASES AND AUTHORITIES ..................................... v

SUMMARY OF REQUEST FOR RELIEF ...................................... 1

INTRODUCTION ............................................................... 2

STATEMENT OF THE FACTS ..................................................... 5

    A.    The Election Protests ................................... 5

    B.    Further Proceedings ................................... 8

MOTION FOR TEMPORARY STAY ............................................. 9

THE COURT'S POWER TO ISSUE THE WRIT OF PROHIBITION ............................................................... 14

I.    The Constitution Empowers the Court to Issue Writs to Inferior Tribunals. ............................................. 14

II.    The Standard for a Writ of Prohibition .................................. 17

ISSUES PRESENTED ....................................................... 18

REASONS WHY THE WRIT SHOULD ISSUE ........................... 18

I.    It's Unlawful to Count the Votes of People Who Did Not Lawfully Register to Vote. ............................................. 20

    A.    State law prohibits anyone from voting unless he has provided a drivers license or social security number when registering to vote.................. 20

    B.    The State Board admits that it broke the law. ............ 23

    C.    The unlawful registrations haven't been "cured." .................................................. 24

    D.    Judge Griffin's protests do not implicate federal election laws................................................. 27

II. The Boards of Election Cannot Count the Votes of
People Who Have Never Lived Here. ...................................31

    A.    The state constitution forbids counting the
votes of Never Residents. .............................................. 31

    B.    The residency clause is not preempted by the
federal constitution. ......................................................32

    C.    If UMOVA permits these votes to be counted,
it is unconstitutional as applied to these
circumstances. .............................................................34

    D.    This argument has no impact on votes cast for
federal elections, military voters, or North
Carolina residents living overseas...............................37

    E.    Residency isn't inheritable under the state
constitution's voter qualifications. .............................38

III. Overseas Voters Who Did Not Provide Photo
Identification Cannot Cast a Ballot in State Elections.......... 40

    A.    Article 21A, which governs overseas absentee
voters, incorporates Article 20's requirements
for absentee voters. ...................................................... 41

    B.    Nothing in Article 21A excuses overseas voters
from providing photo identification............................43

    C.    The fact that the Board issued a rule excusing
overseas voters from providing photo
identification does not immunize the Board's
decision from judicial review. .................................... 44

    D.    Federal law has no bearing on the photo-
identification requirement. .........................................46

IV. The State Board Manufactured Procedural Defects. ............47

    A.    The protests should not have been filed as voter
challenges...................................................................47

B.  The Board wrongly dismissed the protests for lack of service. ............................................... 49

C.  Judge Griffin timely filed his protests. ........................ 52

V.  No Other Federal Statute Bars the Protests. ........................ 54

A.  The Civil Rights Act does not impact the protests. ........................................................ 54

B.  The Voting Rights Act does not impact the protests. ........................................................ 55

VI.  The Protests Comport with Equal Protection and Substantive Due Process. ........................................ 56

A.  The *Anderson-Burdick* test. ........................................ 56

B.  The protests do not seek to impose severe limitations on voting. .................................... 57

C.  The laws at issue are tailored to compelling state interests. ........................................... 60

VII.  The Appropriate Remedy Is Discounting the Illegal Ballots. ..................................................... 62

A.  To succeed, Judge Griffin need only provide substantial evidence of an outcome-determinative violation of election law. ..................... 62

B.  Judge Griffin provided substantial evidence of outcome-determinative election-law violations. .......... 64

C.  The Board tried to cast doubts about its own data. ..................................................... 66

D.  The Court should order the ineligible votes discounted and the election results retabulated. ........ 68

REQUESTED RULINGS AND RELIEF ..................................... 70

CONCLUSION ........................................................ 71

VERIFICATION ............................................................................... 73

CERTIFICATE OF SERVICE ......................................................... 74

## TABLE OF CASES AND AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935) ................................................................ 51

*Adams v. N.C. Dep't of Nat. & Econ. Res.*,
295 N.C. 683, 249 S.E.2d 402 (1978) ..................................... 51

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ................................................................ 65

*Appeal of Ramseur*,
120 N.C. App. 521, 463 S.E.2d 254 (1995) ............................ 22

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) .................................................................... 13

*Askew v. City of Kinston*,
906 S.E.2d 500 (N.C. Ct. App. 2024) ..................................... 53

*Bayard v. Singleton*,
1 N.C. (Mart.) 5 (1787) .......................................................... 45

*Beaufort Cnty. Bd. of Educ. v. Beaufort Cnty. Bd. of Comm'rs*,
363 N.C. 500, 681 S.E.2d 278 (2009) ..................................... 20

*Bouvier v. Porter*,
279 N.C. App. 528, 865 S.E.2d 732 (2024) ............................ 54

*Bouvier v. Porter*,
386 N.C. 1, 900 S.E.2d 838 (2024) ................................. *passim*

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021) ................................................................ 64

*Broyles v. Texas*,
618 F. Supp. 2d 661 (S.D. Tex. 2009) .................................... 33

*Bush v. Gore*,
531 U.S. 98 (2000). ........................................................... 69, 78

*Cohoon v. Swain*,
216 N.C. 317, 5 S.E.2d 1 (1939) ...............................................12

*Colon-Marrero v. Velez*,
813 F.3d 1 (1st Cir. 2016) .........................................................13

*Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*,
376 N.C. 558, 853 S.E.2d 698 (2021) .....................................17

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008).........................................................*passim*

*Dobrovolny v. Nebraska*,
100 F. Supp. 2d 1012 (D. Neb. 2000) .....................................33

*Dunn v. Blumstein*,
405 U.S. 330 (1972)..........................................................*passim*

*EchoStar Commc'ns Corp. v. FCC*,
292 F.3d 749 (D.C. Cir. 2002) .................................................73

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008) ........................................*passim*

*Graham v. Nw. Bank*,
16 N.C. App. 287, 192 S.E.2d 109 (1972)...............................61

*Greene v. Charlotte Chem. Lab'ys, Inc.*,
254 N.C. 680, 120 S.E.2d 82 (1961)........................................19

*Harper v. Hall*,
379 N.C. 656, 865 S.E.2d 301 (2021). ....................................15

*Harper v. Hall*,
384 N.C. 292, 886 S.E.2d 393 (2023) .....................................71

*In re Arthur*,
291 N.C. 640, 231 S.E.2d 614 (1977)......................................41

*In re Chastain*,
No. 283A22-2, 2024 WL 5100940 (N.C. Dec. 13, 2024) ..... 42

*In re Election Protest of Fletcher*,
175 N.C. App. 755, 625 S.E.2d 564 (2006) ...........................12

*In re Protest of Whittacre*,
228 N.C. App. 58, 743 S.E.2d 68 (2013)...............................11

*James v. Bartlett*,
359 N.C. 260,607 S.E.2d 638 (2005) .....................................5

*Kinsey v. Garver*,
91 N.E.2d 54 (Ohio Com. Pl. 1950) ......................................23

*La. Public Service Comm'n v. FERC*,
20 F.4th 1 (D.C. Cir. 2021) ....................................................73

*Lackey v. Dept. of Human Resources*,
306 N.C. 231, 293 S.E.2d 171 (1982)................................ 73, 75

*Libertarian Party of N.C. v. State*,
365 N.C. 41, 707 S.E.2d 199 (2011)...................................... 64

*Lloyd v. Babb*,
296 N.C. 416, 251 S.E.2d 843 (1979) .............................. *passim*

*Mansfield v. McShurley*,
911 N.E.2d 581 (Ind. Ct. App. 2009) ....................................23

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ................................................ 46

*Mayo v. James*,
53 Va. (12 Gratt.) 17 (1855) ..................................................18

*Mid Continent Steel & Wire, Inc. v. United States*,
940 F.3d 662 (Fed. Cir. 2019)................................................73

*Moses v. State Highway Comm'n*,
261 N.C. 316, 134 S.E.2d 664 (1964)................................ 17, 19

*Mountain Retreat Ass'n v. Mt. Mitchell Dev. Co.*,
183 N.C. 43, 110 S.E. 524 (1922).........................................16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .................................................................59

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ............................................................... 70

*N.C. Bar & Tavern Ass'n v. Cooper*,
    901 S.E.2d 355 (N.C. Ct. App. 2024) ....................................53

*N.C. State Bd. of Educ. v. State*,
    371 N.C. 149, 814 S.E.2d 54 (2018) .......................................41

*N.C. State Conf. of NAACP v. Moore*,
    382 N.C. 129, 876 S.E.2d 513 (2022) .....................................14

*Orange Cnty. v. N.C. Dep't of Transp.*,
    46 N.C. App. 350, 265 S.E.2d 890 (1980) ............................ 68

*Overton v. Mayor & City Comm'rs of City of Hendersonville*,
    253 N.C. 306, 116 S.E.2d 808 (1960) .....................................67

*Park Terrace, Inc. v. Phoenix Indem. Co.*,
    243 N.C. 595, 91 S.E.2d 584 (1956) ...................................... 20

*Perloff v. Edington*,
    293 Ala. 277, 302 So. 2d 92 (1974) .........................................23

*Pettengill v. Putnam Cnty. R-1 Sch. Dist., Unionville, Mo.*,
    472 F.2d 121 (8th Cir. 1973) ................................................. 68

*Pollock v. Parnell*,
    126 N.C. App. 358, 484 S.E.2d 864 (1997) ...........................61

*Powell v. Power*,
    436 F.2d 84 (2d Cir. 1970) ...............................................63, 68

*Pree v. D.C. Bd. of Elections & Ethics*,
    645 A.2d 603 (D.C. 1994) .......................................................33

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ................................................................... 69

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ...................................................................77

*Singleton v. N.C. Dep't of Health & Hum. Servs.*,
    906 S.E.2d 806 (N.C. 2024) .....................................................43

*State v. Allen*,
    24 N.C. (2 Ired.) 183 (1841) ...................................................20

*State v. Butler*,
    356 N.C. 141, 567 S.E.2d 137 (2002)......................................72

*State v. Ellis*,
    361 N.C. 200, 639 S.E.2d 425 (2007) ..............................19, 20

*State v. Harris*,
    216 N.C. 746, 6 S.E.2d 854 (1940)..........................................52

*State v. Hunt*,
    357 N.C. 454, 591 S.E.2d 502 (2003) .....................................11

*State v. McElrath*,
    351 S.E.2d 557 (N.C. 1986) .....................................................11

*State v. Stanley*,
    288 N.C. 19, 215 S.E.2d 589 (1975) .......................................20

*State v. Taylor*,
    379 N.C. 589, 866 S.E.2d 740 (2021)......................................72

*State v. Whitaker*,
    114 N.C. 818, 19 S.E. 376 (1894) ......................................11, 16

*Storer v. Brown*,
    415 U.S. 724 (1974) .................................................................64

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) .................................................................65

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008).................................................................14

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ...................................................................52

*White v. Willett*,
    456 S.W.3d 810 (Ky. 2015) ................................................... 20

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ...................................................................52

*Woodall v. W. Wake Highway Comm'n*,
    176 N.C. 377, 97 S.E. 226 (1918) ...........................................67

**Statutes**

28 U.S.C. § 1443 ...........................................................................12

28 U.S.C. § 1447 ...........................................................................12

52 U.S.C. § 10101 .........................................................................54

52 U.S.C. § 10307 .........................................................................56

52 U.S.C. § 20302 ..................................................................37, 46

52 U.S.C. § 20501 ..................................................................11, 28

52 U.S.C. § 20507 ................................................................*passim*

52 U.S.C. § 21081 ................................................................*passim*

52 U.S.C. § 21083 ................................................................*passim*

N.C. Gen. Stat. § 163-54 .....................................................*passim*

N.C. Gen. Stat. § 163-82.1 ..................................................... 6, 21

N.C. Gen. Stat. § 163-82.3 ........................................................21

N.C. Gen. Stat. § 163-82.4 ..................................................*passim*

N.C. Gen. Stat. § 163-82.8 ........................................................51

N.C. Gen. Stat. § 163-82.11......................................................21

N.C. Gen. Stat. § 163-82.12 ....................................................... 25, 55

N.C. Gen. Stat. § 163-132.5G .......................................................43

N.C. Gen. Stat. § 163-166.12 ....................................................24, 25

N.C. Gen. Stat. § 163-166.16 ...............................................7, 26, 41

N.C. Gen. Stat. § 163-182.9 ..................................................... *passim*

N.C. Gen. Stat. § 163-182.10 ................................................... *passim*

N.C. Gen. Stat. § 163-182.12 ............................................................ 6

N.C. Gen. Stat. § 163-182.14 ................................................... *passim*

N.C. Gen. Stat. § 163-182.19 ....................................................63, 66

N.C. Gen. Stat. § 163-230.1 ..................................................7, 41, 42

N.C. Gen. Stat. § 163-231 ...................................................... *passim*

N.C. Gen. Stat. § 163-234 ..............................................................43

N.C. Gen. Stat. § 163-258.17 ....................................................43, 44

N.C. Gen. Stat. § 163-258.2 .................................................... *passim*

N.C. Gen. Stat. § 163-258.3 .............................................................34

N.C. Gen. Stat. § 163-258.4 .............................................................43

N.C. Gen. Stat. § 163-258.6 .............................................................34

N.C. Sess. Law 2003-226 ............................................................6, 21

N.C. Sess. Law 2011-182 ...........................................................34, 41

N.C. Sess. Law 2019-239 ...............................................................41

## Other Authorities

33 Charles A. Wright & Arthur R. Miller, *Federal Practice and
    Procedure* § 8306 (2d ed. Westlaw June 2024 update) ...........15

Canon 3, N.C. Canon of Judicial Ethics.............................................. 8

Guide to Judiciary Policy, Vol. 2B, Ch. 2, § 220, Ethics Advisory
    Opinion No. 58.......................................................................... 8

H.R. Rep. No. 107-329, pt. 1 (2001), 2001 WL 1579545 ................... 11

Raoul Berger, *Standing to Sue in Public Actions: Is It a Constitutional
    Requirement?*, 78 Yale L.J. 816 (1969) ..................................... 15

## Rules

8 N.C. Admin. Code § 02.0111 ........................................................ 49

8 N.C. Admin. Code § 17.0109 ........................................................ 44

N.C. R. App. P. 2 ............................................................................ 18

N.C. R. App. P. 22, Drafting Committee Note (1975) ...................... 15

N.C. R. App. P. 23 .......................................................................... 13

N.C. R. Civ. P. 42 ........................................................................... 37

## Constitutional Provisions

N.C. Const. art. I, § 10.................................................................... 62

N.C. Const. art. I, § 19.................................................................... 46

N.C. Const. art. IV, § 1 ............................................................ *passim*

N.C. Const. art. IV, § 12 .......................................................... *passim*

N.C. Const. art. VI, § 2............................................................. *passim*

N.C. Const. art. VI, § 3............................................................. *passim*

N.C. Const. of 1776, art. VIII .......................................................... 32

U.S. Const. art. I, § 4 ................................................................ 12, 28

No. _____

SUPREME COURT OF NORTH CAROLINA
**********************************************

JEFFERSON GRIFFIN,

        Petitioner,

    v.

NORTH CAROLINA BOARD OF
ELECTIONS,

        Respondent,

From the North Carolina
State Board of Elections

***********************************

**PETITION FOR WRIT OF PROHIBITION OF
THE HONORABLE JEFFERSON GRIFFIN**

**IMMEDIATE ACTION REQUESTED BEFORE
MONDAY, 23 DECEMBER 2024**

***********************************

TO THE HONORABLE SUPREME COURT OF NORTH CAROLINA:

The Honorable Jefferson Griffin respectfully petitions this Court to issue a writ of prohibition to stop the State Board of Elections from counting unlawful ballots cast in the 2024 general election. In addition, Judge Griffin also requests a temporary stay from the Court before Monday, 23 December 2024. That stay is necessary to enable the Court to consider and rule on Judge Griffin's petition for a writ of prohibition.

**SUMMARY OF REQUEST FOR RELIEF**

Judge Griffin first moves the Court to **immediately issue a temporary stay** of (1) the State Board's certification of the election for Seat 6 of the North Carolina Supreme

Court and (2) the requirement that Judge Griffin file a petition for judicial review within 10 days of service of the State Board's decision. As explained below, a temporary stay will protect this Court's jurisdiction to decide the questions of law that are raised in Judge Griffin's election protests—questions that our nation's system of federalism reserves for state courts, not federal courts.

Second, Judge Griffin asks the Court to exercise its power—as granted by the North Carolina Constitution—to supervise inferior tribunals, such as the State Board. Judge Griffin asks the Court to issue a writ of prohibition that prohibits the State Board from counting ballots cast in violation of North Carolina's statutes and constitution. As explained below, the State Board has continued to issue rulings and administer our elections in violation of North Carolina law, and the Board's lawlessness cannot be allowed to continue.

## INTRODUCTION

Judge Griffin seeks a writ of prohibition to stop the counting of unlawful ballots by the State Board of Elections. The State Board is an administrative agency that has knowingly broken the law and refused to do anything about it. Indeed, the Board has been breaking our election laws for decades. This lawlessness was brought to the Board's attention back in 2023, before the 2024 general election, but the Board refused to correct its errors. Now those chickens have come home to roost. In the 2024 general election, the Board's errors changed the outcome of the election for the open seat on this Court. When those errors were raised again in valid election protests, the Board then claimed that it was too late to fix its law-breaking.

At bottom, this case presents a fundamental question: who decides our election laws? Is it the people and their elected representatives, or the unelected bureaucrats sitting on the State Board of Elections? If the Board gets its way, then it is the real sovereign here. It can ignore the election statutes and constitutional provisions, while administering an election however it wants.

Judge Griffin, currently a judge of the North Carolina Court of Appeals and candidate for Seat 6 on the Supreme Court of North Carolina, seeks to restore the supremacy of the democratic process and the preeminence of the rule of law. He filed election protests across all North Carolina counties to challenge the State Board's lawless administration of his electoral contest. With this petition for a writ of prohibition, there are three types of election protests at issue.

First, the Board intends to count ballots that were cast by people who did not lawfully register to vote. Since 2004, state law has required voter applicants to provide their drivers license or social security number before lawfully registering to vote. However, the State Board chose to ignore this law for decades. Thus, approximately 60,000 people cast votes in the protested judicial race without providing that statutorily required information on their voter applications. These voters were not allowed to cast a ballot in this race because they were not " 'legally registered' to vote." *Bouvier v. Porter*, 386 N.C. 1, 4 n.2, 900 S.E.2d 838, 843 n.2 (2024) (quoting N.C. Gen. Stat. § 163-54).

Second, the State Board decided to count ballots cast by voters who have, by their own admission, never resided in North Carolina or anywhere else in the United States.

Since 1776, our state constitution has limited eligible voters in state races to bona fide North Carolina residents. *See id.* ("Certain categories of individuals are also categorically ineligible to vote, such as . . . nonresidents . . . ."). But ballots were accepted in the Supreme Court race from people who were born outside the United States and have never lived *anywhere* in the United States. Counting the votes of these "Never Residents" was illegal.

Third, the Board has accepted absentee ballots cast by people who failed to provide photo identification with their ballots. Thousands of overseas voters cast ballots without providing their photo identification. But state law requires all voters to provide photo identification to vote; overseas voters casting absentee ballots do not get special treatment. The Board likewise broke the law by counting these ballots.

In response to these protests, the State Board and the opposing candidate, Justice Allison Riggs, have claimed that Judge Griffin is seeking a retroactive change in the election laws. That flatly mischaracterizes the timeline. Our registration statutes required drivers license or social security numbers back in 2004. Our state constitution has imposed a residency requirement since 1776. And photo identification has been required for absentee voting since at least 2018. The laws that *should* have governed this election were, therefore, established long before this election. The State Board simply chose to break the law.

But the State Board of Elections is no super-legislature. It doesn't get to make up its own rules, disregard state statutes, or rewrite the state constitution. Rather, the Board was required to discount votes that were cast in violation of state law. Like this Court explained twenty years ago, in an identical situation, "[t]o permit unlawful votes to be counted along

with lawful ballots in contested elections effectively 'disenfranchises' those voters who cast legal ballots, at least where the counting of unlawful votes determines an election's outcome." *James v. Bartlett*, 359 N.C. 260, 270, 607 S.E.2d 638, 644 (2005).

Through its lawlessness, the State Board of Elections is attempting to change the outcome of this election. Such threatened misconduct should be prohibited. Given the public's interest in reaching finality on this contested race, and the lack of alternative remedies given the need for an expeditious and final determination, issuance of the writ of prohibition is a proper exercise of this Court's constitutional duty to supervise and control the exercise of judicial power in the state. N.C. Const. art. IV, § 12(1).

## STATEMENT OF THE FACTS

On Election Day, Judge Griffin maintained a sizeable lead over Justice Riggs. However, as ballots continued to trickle in over the next week, Justice Riggs took the lead. As of today, Justice Riggs leads by 734 votes.

### A.    The Election Protests

On 19 November 2024, Judge Griffin filed election protests in each of North Carolina's 100 counties.[1] In total, Judge Griffin filed six categories of election protests. However, only three categories of protests are relevant here. Those three relevant categories are described briefly below, as well as the likely impact of each on the outcome of the election.

---

**1**    Three candidates for the state legislature filed similar protests for their respective districts. Although the State Board rejected their protests on the same grounds, the appeal for state legislative candidates goes to the respective houses of the General Assembly for a final decision. N.C. Gen. Stat. § 163-182.14(c).

Election protests matter when they change the outcome of an election. *Bouvier*, 386 N.C. at 4, 900 S.E.2d at 843 (discussing N.C. Gen. Stat. § 163-182.12).

*Incomplete Voter Registrations*. Since 2004, the General Assembly has required someone registering to vote to provide his drivers license or last four digits of his social security number on his voter registration application. N.C. Sess. Law 2003-226, § 9 (codified as amended at N.C. Gen. Stat. § 163-82.4). However, until December 2023, the State Board of Elections chose not to enforce this law. And even when the Board admitted its decades of lawlessness, it refused to cure the improper registrations, and only began requiring the information from new registrants. In the race for Seat 6 of this Court, over 60,000 people cast ballots, even though they had never provided the statutorily required information to become lawful voter registrants. Under state law, unless someone is lawfully registered to vote, he cannot vote. N.C. Const. art. VI, § 3(1); N.C. Gen. Stat. § 163-82.1(a).

The form of the protests that Judge Griffin filed with the county boards is the same, except for attachments that identify particular voters in the county. A sample of the protest for incomplete voter registrations can be found at appendix pages 1745-1830, for Guilford County.

Judge Griffin anticipates that, if these unlawful ballots are excluded, then he will have won the contest.

*Never Residents*. Our state constitution limits voters for state offices to people who actually reside in North Carolina. N.C. Const. art. VI, § 2(1); *Bouvier*, 386 N.C. at 4 n.2, 900 S.E.2d at 843 n.2 (explaining that "nonresidents" are "categorically ineligible to vote"

for state offices). Nonetheless, the State Board allowed approximately 267 people to vote in the protested election who have never resided in North Carolina or anywhere else in the United States. These voters self-identified themselves as such, stating on a form "I am a U.S. citizen living outside the country, and I have never lived in the United States." Counting these ballots is unlawful. An example of this type of protest can be found in the appendix at pages 1729-1744.

It is unknown whether this category of election protests will affect the outcome of the election, standing alone. As it stands, fewer than 300 Never Residents voted in the election, and the current margin between the candidates is over 700 votes. Judge Griffin filed other categories of election protests that are currently making their way through the administrative process, including protests targeting deceased voters, felon voters, and voters who had their registrations denied. The impact on the outcome of the election from those other protests, which target considerably fewer voters, is presently unknown. These other protests only affect about 817 voters. App. 40 n.3.

*No Photo ID*. It's well known that photo identification is required for all voters, both those voting absentee ballots and those voting in person. N.C. Gen. Stat. § 163-230.1(a)(4), (b)(4), (e)(3), (f1) (absentee ballots); *id*. § 163-166.16(a) (in-person voting); N.C. Const. art. VI, §§ 2(4), 3(2) (same). Yet the State Board decided not to require photo identification for absentee ballots cast by voters who live overseas. State law, however, doesn't exempt overseas voters from the photo-identification requirement. An example of this type of protest can be found in the appendix at pages 1831-1878.

Thousands of such ballots were unlawfully cast in the election. Judge Griffin antici-pates that, if these unlawful ballots are excluded, he will win the election.

### B.    Further Proceedings

After Judge Griffin filed his protests, the State Board took over jurisdiction from the county boards for the three categories of protests just described. App. 1-2.

On 26 November 2024, Judge Griffin filed a motion to disqualify a Board member, Siobhan Millen, from participating in the Board's adjudication of his protests. App. 81-90. Siobhan Millen is married to Justice Riggs' lead attorney at Womble Bond Dickinson ("Womble"). Womble has been Justice Riggs' legal counsel both before and after Election Day. Pressley Millen is a partner at Womble; and, leading up to Election Day, he held him-self out as Justice Riggs' lead attorney. App. 93-94. Admittedly, Mr. Millen has disappeared from Justice Riggs' legal team. But the Millen family's ownership of a partnership share of Womble, App. 101, nonetheless disqualifies Ms. Millen from ruling on Judge Griffin's pro-tests. *See* Canon 3(C)-(D)(iii), N.C. Canon of Judicial Ethics; *see also* Guide to Judiciary Policy, Vol. 2B, Ch. 2, § 220, Ethics Advisory Opinion No. 58 (Disqualification When Rel-ative Is Employed by a Participating Law Firm). The State Board, however, refused to dis-qualify Ms. Millen and, instead, allowed her to be the deciding vote on many of two of the three categories of protests. App. 117-18.

Meanwhile, on 6 December 2024, the North Carolina Democratic Party (NCDP) preemptively filed a lawsuit inviting the federal courts to decide Judge Griffin's protests. The NCDP, acting as a surrogate for its nominee Justice Riggs, and purporting to act on

behalf of all voters in the state, filed a federal lawsuit against the individual members of the State Board of Elections. App. 131-56. The NCDP has brought four claims for relief. The complaint alleges (1) a violation of the National Voter Registration Act by removing voters from the voter rolls after an election; (2) a violation of procedural due process under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution because of risk of discounting illegally cast ballots; (3) a further violation of § 1983 and the fundamental right to vote; and (4) a violation of the Help America Vote Act by discounting unlawful ballots.

Because the NCDP chose not to name Judge Griffin as a party, he has moved to intervene in the NCDP's federal action. Otherwise, nothing has happened in the case. A copy of the current federal docket is included in the appendix. App. 157-61.

Back at the State Board, the parties filed briefs, and the State Board heard arguments on the protests on 11 December 2024. On 13 December 2024, the Board emailed the parties a copy of its final decision on these categories of protests. App. 38-77.

This decision consolidated the Board's treatment of a number of the protests. The decision is a final decision as to hundreds of protests. Although voluminous, the protests dismissed by the State Board's order are included in the appendix to this petition for completeness. App. 352-3902.

## MOTION FOR TEMPORARY STAY

Pursuant to Appellate Rule 23(e), Judge Griffin respectfully applies to the Court for a temporary stay. A petition for a writ of prohibition, like with supersedeas, is generally

paired with a temporary stay of inferior court proceedings. *State v. Whitaker*, 114 N.C. 818, 822, 19 S.E. 376, 377 (1894) ("When entertained, the usual course, unless prior notice of the petition has been given, is to issue a notice to the lower court to show cause why the writ should not issue, and to order a stay of proceedings in the meantime."); *State v. McElrath*, 351 S.E.2d 557 (N.C. 1986) (issuing temporary stay of proceedings pending this Court's consideration of the petition); *State v. Hunt*, 357 N.C. 454, 456, 591 S.E.2d 502, 503 (2003) (staying further proceedings).

A temporary stay is necessary here to perform two functions: (1) stay the issuance of a certificate of election by the State Board, and (2) stay the deadline for Judge Griffin to file a petition for judicial review in the superior court. Both stays are necessary for this Court to be able to exercise jurisdiction over the petition itself.

As to the first point, once the certificate of election issues, election protests, like those here, become moot. *In re Protest of Whittacre*, 228 N.C. App. 58, 59, 743 S.E.2d 68, 69 (2013) (dismissing appeal as moot because "[t]he declaration of election as contained in the certificate conclusively settles *prima facie* the right of the person so ascertained and declared to be elected to be inducted into, and exercise the duties of the office"(quoting *Cohoon v. Swain*, 216 N.C. 317, 319, 5 S.E.2d 1, 3 (1939))); *In re Election Protest of Fletcher*, 175 N.C. App. 755, 759, 625 S.E.2d 564, 567 (2006) (same). A temporary stay, therefore, preserves this Court's jurisdiction to decide the petition.

On the second point, absent a stay, Judge Griffin will have to file a petition in superior court within 10 days of service of the Board's final decision. N.C. Gen. Stat. § 163-

182.14(b). But the State Board and Justice Riggs have given every indication that, upon the filing of a petition for judicial review, they will try to strip state courts of jurisdiction to decide this case by improperly removing it to federal court. Judge Griffin's election protests raise only questions of state law. However, the State Board, following the argument of Justice Riggs, has injected various federal statutes into this case, even though those federal statutes, by their own terms, do not apply. The federal statutes on which they have relied in this action, as well as in Justice Riggs's duplicative federal action, are the Help America Vote Act (HAVA) and the National Voter Registration Act (NVRA).

As explained in more detail below, *infra* Argument §§ I.D, the State Board and Justice Riggs have repeatedly relied on HAVA and the NVRA to excuse the State Board's lawlessness. Yet each of these statutes state that they only apply to "an election for Federal office." 52 U.S.C. § 21081(a) (HAVA); *id.* § 21083(A)(1)(a)(viii) (HAVA); *James*, 359 N.C. at 268, 607 S.E.2d at 643 ("HAVA, ***which does not apply to state and local elections***, was initiated in the wake of allegations of irregularity and fraud in the 2000 presidential election." (emphasis added)); 52 U.S.C. § 20507(c)(2)(A) (NVRA); *id.* § 20501(b)(1)-(2) (NVRA).

Even setting aside the plain language, it's impossible for these federal laws to apply to this case. Congress enacted HAVA and the NVRA under the federal constitution's elections clause. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013) (NVRA); H.R. Rep. No. 107-329, pt. 1, at 57 (2001), 2001 WL 1579545 (explaining the constitutional authority for HAVA); *Colon-Marrero v. Velez*, 813 F.3d 1, 19 (1st Cir. 2016) (same). But

under the elections clause, Congress can only create rules for elections to federal office, not state office. *See* U.S. Const. Art. I, § 4, cl. 1; *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) (elections clause makes clear that states have "control over the election process for state offices").

Once Judge Griffin files his petition for judicial review in superior court from the State Board's dismissal of his election protests, the Board and Justice Riggs will remove the case to federal court. An eventual remand back to state court from federal court is inevitable because these federal statutes cannot apply to an election for state office. Nonetheless, it will take considerable time before a remand motion is briefed and ruled on, and then the Board and Justice Riggs are certain to delay the matter further by taking an appeal. *See* 28 U.S.C. § 1447(d) (permitting appeal of remand orders for cases removed under 28 U.S.C. § 1443(2)). It could be 2026 before those proceedings end and the case returns to state court. Although Justice Riggs would holdover in her office until her successor is determined, this Court has expressed grave concern about letting an improperly elected official exercise the duties of her office in cases of great public significance. *See N.C. State Conf. of NAACP v. Moore*, 382 N.C. 129, 165, 876 S.E.2d 513, 539 (2022).

By issuing a temporary stay of Judge Griffin's deadline to file his petition for judicial review, this can all be avoided. The Court that has the final say on questions of state law will be able to exercise its lawful jurisdiction without an illegitimate detour through federal court. Conversely, without a temporary stay that tolls the deadline for filing a petition for judicial review, Judge Griffin will have to file his petition by 23 December 2024 to have a

right to seek judicial review in state court of the dismissal of his election protests. N.C. Gen. Stat. § 163-182.14 (petition must be filed within 10 days' of service of Board's final decision). And then the Board and Justice Riggs will remove that petition to federal court. In fact, just a few months ago, the State Board used this same removal tactic to place a state lawsuit concerning the Board's incomplete-voter registrations in the hands of the federal courts. *See infra* Argument § I.D.3.

This Court can and has exercised its powers to change deadlines of this sort. For instance, in *Harper v. Hall* this Court changed the date of the state's primary elections from March to May as well as the candidate-filing deadline, and then stated that it had the power to make "other administrative adjustments" as well. 379 N.C. 656, 658, 865 S.E.2d 301, 302 (2021). The Court justified the exercise of these extraordinary powers by pointing to "the great public interest in the subject matter of these cases, the importance of the issues to the constitutional jurisprudence of this State, and the need for urgency in reaching a final resolution on the merits at the earliest possible opportunity." *Id.* Here, the need for this Court's intervention is at least as pressing.

For these reasons, Judge Griffin respectfully requests a temporary stay that (1) stays the issuance of a certificate of election by the State Board, and (2) stays the deadline for Judge Griffin to file a petition for judicial review in the superior court. Judge Griffin respectfully requests that this Court grant the temporary stay without awaiting a response, given the time-sensitive nature of the request. *See* N.C. R. App. P. 23(e).

## THE COURT'S POWER TO ISSUE THE WRIT OF PROHIBITION

This Court has the power to issue a writ of prohibition to stop the State Board from counting unlawful ballots. A writ of prohibition issues from this Court to an inferior tribunal to halt threatened, unlawful action, especially in matters of great public significance.

## I.  The Constitution Empowers the Court to Issue Writs to Inferior Tribunals.

This Court "may issue any remedial writs necessary to give it general supervision and control over the proceedings of the other courts." N.C. Const. art. IV, § 12(1). Those "other courts" include all kinds of judicial and quasi-judicial bodies. For example, this Court has explained that it may issue a writ of prohibition to "inferior courts" and quasi-judicial officers below the superior court, such as "probate court," "justices of the peace," and the clerk of superior court. *Whitaker*, 114 N.C. at 820-22, 19 S.E. at 376-77; *Mountain Retreat Ass'n v. Mt. Mitchell Dev. Co.*, 183 N.C. 43, 45, 110 S.E. 524, 525 (1922).

The writ also extends to administrative agencies. As this Court has explained, the Court's constitutional power and duty to control and supervise the exercise of judicial power in the state extends to issuing writs that "will aid State agencies in the performance of their duties." *Moses v. State Highway Comm'n*, 261 N.C. 316, 317, 134 S.E.2d 664, 665 (1964). The prerogative writs have historically been "used to regulate administrative agencies performing judicial functions." *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*,

376 N.C. 558, 568 n.11, 853 S.E.2d 698, 708 n.11 (2021) (citing Raoul Berger, *Standing to Sue in Public Actions: Is It a Constitutional Requirement?*, 78 Yale L.J. 816, 821-22 (1969)).[2]

This Court's power to issue such writs to quasi-judicial agencies is not an anomaly. Federal courts likewise have the power to issue writs to administrative agencies. The leading treatise on federal procedure, Wright and Miller, explains that the writ is a "tradition-bound technique for seeking judicial review of agency action. Courts may use this writ to enjoin a judicial or quasi-judicial action." 33 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8306 & n.14 (2d ed. Westlaw June 2024 update).

The writ of prohibition is unique. It is not a civil action, pitting parties against each other. Instead, "[i]t is, in effect, a proceeding between two courts—a superior and an inferior—and is the means whereby the superior exercises its due superintendence over the inferior, and keeps it within the limits and bounds of the jurisdiction prescribed to it by law." *Mayo v. James*, 53 Va. (12 Gratt.) 17, 23 (1855). For that reason, as this Court has explained, "[t]he main feature of the traditional form [of the writ] is the opportunity it provides for the affected judicial officer to participate directly. This feature may be important when the conduct drawn in question is alleged to contain elements of abuse of power, or to reflect a recurring pattern in similar cases." N.C. R. App. P. 22, Drafting Committee Note (1975), *reprinted at* 287 N.C. 671, 732.

---

**2**    This influential law review article explained that the writs of certiorari and prohibition were both used to control administrative agencies at common law. Berger, *supra*, at 821-22.

The writ falls within this Court's constitutional duty to supervise and control the exercise of judicial power by inferior tribunals. N.C. Const. art. IV, § 12(1). Because this Court's general supervisory powers spring from the state constitution, they can't be limited by statute. *State v. Ellis*, 361 N.C. 200, 639 S.E.2d 425 (2007).[3] This Court will use its constitutional supervisory powers in cases like this one. For instance, this Court will use its "general supervisory authority when necessary to promote the expeditious administration of justice, and may do so to consider questions which are not properly presented according to its rules." *Id.* at 205, 639 S.E.2d at 428. The Court will even exercise its supervisory power in the middle of a proceeding when "the parties desire an answer to a question which is fundamental in determining their rights, is also of public importance, and when decided will aid State agencies in the performance of their duties." *Moses*, 261 N.C. at 317, 134 S.E.2d at 665. Such immediate intervention is warranted so that a case of great public significance "may be tried on the correct theory below and unnecessary delay in the administration of justice be thereby prevented." *Greene v. Charlotte Chem. Lab'ys, Inc.*, 254 N.C. 680, 694, 120 S.E.2d 82, 91 (1961).

Although Judge Griffin believes the applicable law here is clear, the writ of prohibition will issue "to promptly resolve a novel issue of great import," even if the law was unclear when passed upon below. *Beaufort Cnty. Bd. of Educ. v. Beaufort Cnty. Bd. of Comm'rs*,

---

**3**    Which makes sense: "The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a co-ordinate department of the government." N.C. Const. art. IV, § 1.

363 N.C. 500, 506-07, 681 S.E.2d 278, 283 (2009). Indeed, the appellate courts "will not hesitate to exercise" this supervisory power when, as here, there is a need for "the expeditious administration of justice." *Park Terrace, Inc. v. Phoenix Indem. Co.*, 243 N.C. 595, 597, 91 S.E.2d 584, 586 (1956); *see also, e.g.*, *Ellis*, 361 N.C. at 205, 639 S.E.2d at428; *State v. Stanley*, 288 N.C. 19, 26, 215 S.E.2d 589, 594 (1975).

## II. The Standard for a Writ of Prohibition.

This Court has explained that a writ of prohibition is an appropriate remedy in any of three instances: "[1] to restrain other Courts either from proceeding in a matter not within their jurisdiction, or [2] from acting in a matter, whereof they have jurisdiction, by rules at variance with those which the law of the land prescribes, or [3] from proceeding therein after a manner which will defeat a legal right." *State v. Allen*, 24 N.C. (2 Ired.) 183, 188-89 (1841); *see also White v. Willett*, 456 S.W.3d 810, 812 (Ky. 2015) ("An appellate court has discretion to grant a writ where a trial court is proceeding within its jurisdiction upon a showing that the court is (1) acting or is about to act erroneously, (2) there exists no adequate remedy by appeal or otherwise, and (3) great injustice and irreparable injury will result if the petition is not granted.").

The State Board has acted under rules that violate the law of North Carolina, and in a way that will defeat the right of Judge Griffin and the public to an accurate counting of ballots. Under the state constitution and the General Assembly's enactments, the State Board was not permitted to count the votes of unlawful registrants, Never Residents, or voters who did not present photo identification. Yet the State Board has said that is exactly

what it plans to do. The Board has determined that it can ignore registration information mandated by the legislature. The Board is also giving state statutes an interpretation that plainly conflicts with the state constitution. And the Board says that it will follow its own administrative rules, despite their conflict with statutes.

When a state agency acts lawlessly on a matter of such great public importance, and when there is such need for judicial expediency, the only adequate remedy is in this Court, which holds the fullness of the judicial power. N.C. Const. art. IV. §§ 1, 12(1); *see also* N.C. R. App. P. 2 (this Court has the power to suspend the rules to "prevent manifest injustice to a party, or to expedite decision in the public interest").

## ISSUES PRESENTED

Whether the Court should issue a writ of prohibition, ordering the State Board of Elections not to count ballots from people who failed to complete their registrations, from Never Residents, and from overseas absentee voters who did not provide photo identification.

## REASONS WHY THE WRIT SHOULD ISSUE

The writ of prohibition should issue because the State Board intends to count unlawful ballots, and thereby change the outcome of the election.

The merits of each of the three categories of election protests are addressed below, as well as the grave errors committed by the State Board. All the issues presented in this petition are questions of law that are reviewed de novo. *See, e.g.*, *Appeal of Ramseur*, 120

N.C. App. 521, 523-24, 463 S.E.2d 254, 256 (1995). As the State Board agreed, these protests present "legal questions of statewide significance." App. 41.

After addressing the merits, the brief addresses the State Board's attempt to dismiss the protests, on alternative grounds, for procedural defaults. But it is easy to see that the Board had no justification for trying to disqualify Judge Griffin from challenging the election results. Judge Griffin's protests complied with all of the relevant procedural requirements.

Next, Justice Riggs raised a hodgepodge of federal laws that, she has argued, requires the State Board to count illegal ballots and declare her the winner of this race. But federal law has nothing to say about the issues in Judge Griffin's protests.

Finally, Judge Griffin addresses the objections of the State Board and Justice Riggs that, because the ballots of ineligible voters have already been counted, it's too late to do anything about it. While voting is a constitutional right, the U.S. Supreme Court has long explained that the right must be balanced with the State's duty to protect the integrity of elections.

Judge Griffin respectfully requests that the Court rule on each of the issues addressed in this brief. The candidates and the public have a vital interest in this election receiving finality as expeditiously as possible. *See, e.g.*, *Perloff v. Edington*, 293 Ala. 277, 281, 302 So. 2d 92, 96 (1974) ("The public has an interest in the speedy determination of election contests . . . ."); *Kinsey v. Garver*, 91 N.E.2d 54, 56 (Ohio Com. Pl. 1950) ("an interest in the public exists in the speedy determination of election results"); *Mansfield v.*

*McShurley*, 911 N.E.2d 581, 585 (Ind. Ct. App. 2009) ("The public has an interest in the speedy determination of controversies affecting elections . . . ."). By ruling on each of these issues, including issues of federal law, this Court can ensure finality across all litigation, for cases pending both in state and federal tribunals.

## I. It's Unlawful to Count the Votes of People Who Did Not Lawfully Register to Vote.

Before someone can vote for in a state race in North Carolina, he must be lawfully registered to vote. To lawfully register, a person must, by statute, provide his drivers license or social security numbers in his voter registration application. This information is used to verify the voter's residence and identity via government databases. But our election boards have been registering people to vote who never provided this statutorily required information for decades. The ballots cast by these improper registrants lack statutory authorization because no one can vote if he is improperly registered.

### A. State law prohibits anyone from voting unless he has provided a drivers license or social security number when registering to vote.

Under state law, a person must provide his drivers license or social security number at the time of registration before he can lawfully cast a ballot.

Before voting in an election, a person must lawfully register to vote. Under article VI of the state constitution, "[e]very person offering to vote shall be at the time legally registered as a voter as herein prescribed and in the manner provided by law." N.C. Const. art. VI, § 3(1). That's also true by statute: "No person shall be permitted to vote who has not been registered under" the state's registration statutes. *See* N.C. Gen. Stat. § 163-

82.1(a) (making registration a "prerequisite to voting"); *see also id.* § 163-54 ("Only such persons as are legally registered shall be entitled to vote in any primary or election held under this Chapter.").

The protests here involve people who were not legally registered to vote in a manner provided by law, section 163-82.4, because they failed to provide statutorily required application information. Since January 2004, state law has required voter registrants to provide their drivers license or social security number in their voter application. N.C. Sess. Law 2003-226, § 9 (amending N.C. Gen. Stat. § 163-82.4), § 22 (amendment effective 1 January 2004). This information is used with a statewide computer registration system to verify the voter's identity and important details about the voter. *See, e.g.*, N.C. Gen. Stat. § 163-82.11.

The State Board of Elections is required to create an application form for voter registration. *Id.* § 163-82.3(a). From 2004 onward, the General Assembly commanded that the form require an applicant to provide his "[d]rivers license number or, if the applicant does not have a drivers license number, the last four digits of the applicant's social security number." *Id.* § 163-82.4(a)(11). However, a board can accept an application without a drivers license or social security number only if the applicant "has *not been issued* either a current and valid drivers license or a social security number." *Id.* § 163-82.4(b) (emphasis added).

There's a statutory cure process for somebody who omits their drivers license and social security numbers, but the omissions raised in these protests have never been cured by this process. If a person has a drivers license or social security number, but fails to provide those numbers on their voter application, then the election board shall not allow the

person to vote unless the voter cures the deficient application before the county canvass deadline. *Id.* § 163-82.4(f). The statutory cure procedure applies to a voter who "fails to complete any required item on the voter registration form." *Id.* The board shall notify the voter of the omission and request completion of a corrected application before the county canvass. *Id.* Only if the required information is delivered by that time will the voter's ballot be counted. *Id.* ("If the correct information is provided to the county board of elections by at least 5:00 P.M. on the day before the county canvass, the board shall count any portion of the provisional official ballot that the voter is eligible to vote."). No state law, however, permits a board of elections to count a ballot for a person who never provided a drivers license or social security number on his voter registration form.

Mandating such information from voter registrants is not unique to North Carolina. For elections to federal offices, Congress, through HAVA, also requires the states to collect the drivers license or social security number from registrants. 52 U.S.C. § 21083(a)(5)(A)(i). If a person with a drivers license or social security card fails to provide those identifiers on a voter application form, then the application "may not be accepted or processed by a State." *Id.*

Although HAVA and federal law don't apply to elections for state offices—such as the election at issue here—this federal prerequisite to voting in federal elections corroborates the importance of collecting such information from would-be voters. In other words, the information required by the General Assembly is not some new law designed to burden voters but a decades-old feature of election law that protects the integrity of our elections.

**B.    The State Board admits that it broke the law.**

No one thinks that the State Board actually complied with the law. Instead, it's clear that the Board broke the law for twenty years.

Despite the clarity in the law since enactment in 2003, the State Board did not require voters to provide a drivers license or social security number when people registered to vote. Before December 2023, the voter application form appeared like this:



As this image reveals, the application did not tell registrants that these identifiers were required because it was not in red text. Yet this information is required. N.C. Gen. Stat. § 163-82.4(a)(11).

The Board admitted that it allowed voters to register in violation of the law when it entered an order on an administrative complaint from 2023 that raised the issue. In that order, the Board concluded that similar provisions of HAVA could be violated "as a result of the current North Carolina voter registration application form failing to require an applicant to provide an identification number or indicate that they do not possess such a number." Order at 4, *In re HAVA Complaint of Carol Snow* (N.C. State Bd. of Elections Dec. 6,

2023) [App. 165]. The Board ordered its staff to revise the form going forward.[4] *Id.* But the Board refused to remedy its past legal violations.

Now, however, the issue has caused irregularities in the protested election, and those irregularities are outcome dispositive.

### C.    The unlawful registrations haven't been "cured."

The State Board said nothing in its final decision to suggest it followed the law. Instead, the State Board sought to excuse its lawlessness by reimagining the election laws. The Board reasoned that any error by a voter was harmless because the people who did not properly register cured their defects by providing additional documents as allowed by state law. *See* App. 55-56. The Board's logic is rejected by the relevant statutes' plain language.

First, there is no state law permitting a "cure" by providing additional documents. The only state law to which the State Board could possibly cite would be subsections (a) and (b) of N.C. Gen. Stat. § 163-166.12.[5] Both of these provisions plainly require a person "who *has registered* to vote by mail" to provide additional documentation when they actually vote. N.C. Gen. Stat. § 163-166.12(a), (b) (emphasis added); *see Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1169 (11th Cir. 2008) (holding that HAVA's identical

---

4    In light of this order, the Board's counsel has advised county boards that they cannot register new voter applicants who fail to provide a drivers license or social security number and who also fail to "state in writing that they lack these numbers." Email of Paul Cox, N.C. State Bd. of Elections, to Directors of County Bds. of Election (Sept. 4, 2024) [App. 167-68].

5    Strangely, the State Board cited the provisions of HAVA—which govern federal elections, *e.g.*, 52 U.S.C. § 21081(a)—rather than the similar provisions found in North Carolina law—which govern this state election. *See* App. 55.

requirements "impos[e] additional restrictions on those individuals who registered by mail before they can vote either a regular or a provisional ballot"). Again, to be registered, a person must first provide a drivers license or social security number. *See* N.C. Gen. Stat. § 163-82.4(a)(11). A statute that places an additional obligation on a voter who is registered (by mail) cannot be a "cure" for somebody who failed to register properly.

Moreover, subsections (a) and (b) cannot be a cure for somebody who failed to provide a drivers license or social security number because the additional documentation required by these subsections is not a substitute for providing a drivers license or social security number. At the time of registration, the State Board is supposed to verify the identity of the registrant by matching the registrant's drivers license or social security number to other government databases. *See id.* § 163-82.12(6), (8), (9). And if the drivers license or social security numbers don't result in a match, the Board must take additional steps to verify the applicant's identity. *Id.* § 163-166.12(d). [6] In contrast, subsections (a) and (b) let a registered voter provide *any* of the following documents: current and valid photo identification, a current utility bill, bank statement, government check, paycheck, or other government document showing the voter's address. *Id.* § 163-166.12(a)-(b). The mere presentation of those documents is not the equivalent of an identity match with government databases. They are apples and oranges. The people who cast the ballots at issue here never

---

[6]     Subsection (d) can't carry the weight Justice Riggs wishes to put on it. It only applies to people who actually provided these digits when they registered to vote, and Judge Griffin is not challenging such voters—he's only challenging voters who never provided either number.

went through that verification procedure, and the fact that they might have provided additional documents when they voted does nothing to remedy the registration defect.

This is also why Justice Riggs was wrong to argue to the State Board that the unlawful registrants cured their registration defects when they presented a photo identification in 2024. *See generally id.* § 163-166.16. This theory fails for at least two reasons. First, although voter identification laws were in place in 2024, the laws allowed a plethora of alternative forms of photo identification (e.g., student, teacher, and tribal identification cards) and even permitted voters to provide *no identification at all* in certain circumstances. *See id.* § 163-166.16(a), (d). Second, photo identification guards against voter impersonation (i.e., an imposter claiming to be a person who is a registered voter); it does not guard against somebody registering by manufacturing a fake identity. Absent a drivers license or social security number, the State Board simply cannot verify the identity of somebody registering to vote. Photo identification requirements are not a substitute for providing a drivers license or social security number.[7]

Nor did the General Assembly provide that these provisions can cure an improper voter registration. The General Assembly has decided that there is precisely one way to cure an improper registration. *Id.* § 163-82.4(f). The individuals challenged by Judge

---

[7]  Indeed, even if a voter provided a drivers license when voting, *see id.* § 163-166.16(a)(1)(a), the poll worker simply looked at the picture and handed the voter a ballot. The poll worker certainly did not write down the drivers license number, turn the number over to the State Board, and wait for the State Board to perform a match against government databases.

Griffin did not use this statutory cure process. The State Board doesn't have the authority to reinvent state law to create its own "cure" procedures. It has a duty to follow state law, not make law.

### D.    Judge Griffin's protests do not implicate federal election laws.

The State Board plainly rejected Judge Griffin's interpretation of state laws and, therefore, dismissed his protests on that basis alone. However, as an alternative ground for the Board's outcome, the Board attempted to inject federal law—the Help America Vote Act (HAVA) and the National Voter Registration Act (NVRA)—into a state-law election issue. App. 54-57. But HAVA and the NVRA have nothing to do with this case.

#### 1.    HAVA has no bearing on state elections.

Judge Griffin has protested ballots cast in a *state election* by people who sought to register in violation of *state law*, as the above discussion showed. The State Board, however, attempts to rely on HAVA as justification for flouting state law. Invoking HAVA makes no sense here because HAVA does not apply to elections for state offices, as this Court has held. *James*, 359 N.C. at 268, 607 S.E.2d at 643 ("HAVA, ***which does not apply to state and local elections***, was initiated in the wake of allegations of irregularity and fraud in the 2000 presidential election." (emphasis added)). The plain language of HAVA leaves no doubt. The registration systems mandated by HAVA apply only to "an election for Federal office." 52 U.S.C. § 21081(a); *id.* § 21083(A)(1)(a)(viii). Thus, no one can claim a HAVA violation related to an election for state office. *James*, 359 N.C. at 268, 607 S.E.2d at 643. As in *James*, the issue is controlled by "state law." *Id.*

### 2.    The NVRA has no bearing on votes counted in state elections.

The State Board also reasons that, as an alternative basis for its ruling, the NVRA prohibits Judge Griffin's election protests. *See* App. 62-64. But the NVRA has nothing to do with this case because this federal law doesn't apply to elections for state offices, nor does it apply to election protests.

The NVRA, by its own terms, applies only to elections for federal offices and not elections to state offices. The stated purpose of the law is just to affect participation in "elections for Federal office." 52 U.S.C. § 20501(b)(1)-(2). Indeed, Congress enacted the NVRA under the federal constitution's elections clause, and that clause, by its own terms, only lets Congress regulate the "Times, Places, and Manner" of selecting Senators and Representatives to Congress. U.S. Const. art. I, § 4, cl. 1.[8]

That's equally true of the particular provision cited by the Board. In its order, the State Board explains that the NVRA "restricts the removal of voters from 'the official list of eligible voters' in an election." App. 62 (quoting 52 U.S.C. § 20507(a)(3)). The State Board knowingly omitted that these restrictions apply "to voter registration for elections

---

[8]    If the NVRA purported to regulate elections for state offices—which it doesn't—then it would exceed Congress's authority under the federal constitution's election clause. Many courts have therefore acknowledged the only reasonable conclusion from the text of the NVRA: it cannot apply when the argument is about an election to a state office. *See, e.g.*, *Dobrovolny v. Nebraska*, 100 F. Supp. 2d 1012, 1028 (D. Neb. 2000); *Broyles v. Texas*, 618 F. Supp. 2d 661, 691 (S.D. Tex. 2009), *aff'd*, 381 F. App'x 370 (5th Cir. 2010); *Pree v. D.C. Bd. of Elections & Ethics*, 645 A.2d 603, 605 (D.C. 1994). Thus, no one can complain about NVRA issues in a state election.

**for Federal office**." 52 U.S.C. § 20507(a) (emphasis added). Judge Griffin did not stand for election to a federal office.

Relying on the NVRA presents another threshold problem: the statute applies only to state efforts to remove voters from the voter rolls. 52 U.S.C. § 20507(a)(3), (c). But Judge Griffin has not requested in his protests for anyone to be removed from the voter rolls. Indeed, his election protest challenges only the outcome of *his* election—it doesn't even affect an ineligible voter's vote in *another* race in 2024 elections, much less cause that voter to be removed from the voter rolls.

As explained below, the function of an election protest is to challenge the results of an election, not to remove anyone from the voter rolls. *See infra* Argument § IV.A. By law, a successful election protest does not result in anyone being removed from the voter rolls. Instead, it results in inaccurate results being corrected, or vote being recounted. N.C. Gen. Stat. § 163-182.10(d)(2)(e)(1)-(2). As *Bouvier* explained, "[w]here the irregularity affects the accuracy of the election results, the county board of elections may order the ineligible ballots excluded from the vote total, and in some instances, may order a full recount." 386 N.C. at 4, 900 S.E.2d at 843.

> **3. The issues raised in Judge Griffin's protests have not been decided by the federal courts' rulings in the ongoing *RNC* case.**

To buttress its attempt to inject HAVA and the NVRA into a state-election dispute, the State Board sought to manufacture connections between Judge Griffin's protests and *Republican National Committee v. North Carolina State Board of Elections*, No. 5:24-cv-547

(E.D.N.C.) (the "*RNC* case"), which is a case pending in U.S. District Court for the Eastern District of North Carolina. *See* App. 57. The State Board reasoned that the federal courts in the *RNC* case have already resolved Judge Griffin's claims here. The Board is wrong.

Before the 2024 general election, the RNC filed a two-count complaint against the State Board in state court. Count one sought a writ of mandamus directing the State Board to comply with HAVA and its analogous state-law provision. Count two alleged that the State Board violated the equal protection clause of the North Carolina Constitution through violations of HAVA. The gravamen of RNC's request for relief was to remove certain ineligible voters from the voter rolls ahead of the election.

After the State Board and NCDP removed the case to federal court, the federal district court dismissed the first count on the grounds that the relevant statutes didn't provide for a private right of action. The district court then declined to exercise supplemental jurisdiction over the second count (the state constitutional claim) and remanded it to state court. The Fourth Circuit, though, reversed the district court's remand order, holding that the state constitutional claim contained an embedded federal question related to HAVA and the NVRA, over which the district court had jurisdiction. The case is still pending.

Critically, the *RNC* case, according to the Fourth Circuit, was about the interplay between federal and state law as they apply to the state's maintenance of voter rolls. The *RNC* case did not involve a request to correct a vote count in a state race based on a

violation of state law—which is what Judge Griffin does in this case. The rulings in the *RNC* case did not consider, much less adjudicate, any of the questions presented here.

## II. The Boards of Election Cannot Count the Votes of People Who Have Never Lived Here.

Although United States citizenship may be a birthright, the right to vote in North Carolina elections for state offices is not. Instead, it is a right granted only to those who reside here. Our state constitution restricts voting rights to people who reside in North Carolina "to preserve the basic conception of a political community." *Lloyd v. Babb*, 296 N.C. 416, 449, 251 S.E.2d 843, 864 (1979). That is why, just months ago, this Court confirmed that "nonresidents" are "categorically ineligible to vote" for state offices. *Bouvier*, 386 N.C. at 4 n.2, 900 S.E.2d at 843 n.2.

Yet people voted in the 2024 general election who, by their own admission, were born overseas and have never resided in North Carolina or anywhere else in the United States. These overseas voters are United States citizens, but they aren't residents of North Carolina who can vote for state contests. It's unlawful to count the votes of these Never Residents.

### A. The state constitution forbids counting the votes of Never Residents.

The North Carolina Constitution defines the political community for purposes of voting in our elections. No one can vote in a state election unless they meet the "qualifications" in article VI of the constitution. N.C. Const. art. VI, § 1. The constitution then sets out the first of the qualifications in the voter residency clause. Under that clause, to vote in

an election for a state office, a person must have "resided in the State of North Carolina for one year . . . next preceding an election." *Id.* § 2(1). This requirement is nothing new. In our original constitution, a person could vote for a legislator only in the county in which he "reside[d]." *See* N.C. Const. of 1776, art. VIII.

Despite the constitution's plain language, the election boards permitted people to vote in the general election who have never resided in North Carolina or anywhere else in the United States. The State Board, in response to a public records request, identified overseas voters who voted in the 2024 general election but who self-identified as having never lived in the United States. App. 1736-37 ¶¶ 10-13. The Board identified a list of voters who, the Board explained, checked a box on a federal post card application that stated, "I am a U.S. citizen living outside the country, and I have never lived in the United States." App. 1736-37, 1741 (sample FPCA).

Someone who has never lived in the United States has never resided in North Carolina. These people, therefore, were not qualified to vote in our state elections under the voter residency clause. Yet the State Board chose to count their votes anyway. That was unlawful.

### B. The residency clause is not preempted by the federal constitution.

Proponents of Never Resident voting have argued that our state constitution violates the federal constitution. But this broadside attack on the state constitution cannot prevail.

In *Dunn v. Blumstein*, the U.S. Supreme Court considered whether a one-year durational residency requirement, as a prerequisite to registering to vote, violated the equal

protection clause of the Fourteenth Amendment. 405 U.S. 330, 334 (1972). The Court held that a one-year residency requirement was too long to comply with the equal protection clause. *Id.* at 334. In so holding, the Court made clear that it was not ruling on whether Tennessee could "restrict the vote to bona fide Tennessee residents." *Id.* Indeed, the Court emphasized that its prior precedent had already established the constitutionality of "bona fide residence requirements." *See id.* at 343-44.

This Court has since considered the impact of *Dunn* on the residency requirement of our own state constitution and explained that *Dunn* drew a "careful distinction . . . between durational residence requirements and bona fide residence requirements." *Lloyd*, 296 N.C. at 439, 251 S.E.2d at 858. Therefore, "[a]ppropriately defined and [u]niformly applied bona fide residence requirements are permissible" under the federal constitution. *Id.* at 440, 251 S.E.2d at 859. And just a few months ago, this Court confirmed that "non-residents" are "categorically ineligible to vote" under the residency clause of the state constitution. *Bouvier*, 386 N.C. at 4 n.2, 900 S.E.2d at 843 n.2 (citing N.C. Const. art. VI, §§ 1-2).

As these cases show, *Dunn* does not invalidate the state constitution's bona fide residency requirement. The voters at issue with this protest have told the election boards that they have *never* resided in North Carolina or anywhere else in the United States. They've never been bona fide state residents. Therefore, counting the votes of Never Residents violates the North Carolina Constitution.

**C.** **If UMOVA permits these votes to be counted, it is unconstitutional as applied to these circumstances.**

The State Board turned to a state statute, UMOVA, to justify Never Resident voting. Of course, if the statute permits voting by those ineligible to vote under the constitution, it violates the constitution. UMOVA, therefore, should not be read to conflict with the state constitution.

In 2011, the General Assembly enacted the Uniform Military and Overseas Voters Act (UMOVA). N.C. Sess. Law 2011-182 (enacting N.C. Gen. Stat. §§ 163-258.1 to -258.20). As the name suggests, this bill was originally drafted by the Uniform Law Commission, which recommended its adoption among the states.

UMOVA lets a "covered voter" register to vote in various ways for elections for federal and state offices. *See* N.C. Gen. Stat. § 163-258.3 (defining elections covered by UMOVA); *id.* § 163-258.6 (setting out methods of registration). At issue is who counts as a "covered voter." The relevant definition is provided here in full:

(1) "Covered voter" means any of the following:

a. A uniformed-service voter or an overseas voter who is registered to vote in this State.

b. A uniformed-service voter defined in subdivision (7) of this section whose voting residence is in this State and who otherwise satisfies this State's voter eligibility requirements.

c. An overseas voter who, before leaving the United States, was last eligible to vote in this State and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

d. An overseas voter who, before leaving the United States, would have been last eligible to vote in this State had the voter then been of voting age and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements.

e. An overseas voter who was born outside the United States, is not described in sub-subdivision c. or d. of this subdivision, and, except for a State residency requirement, otherwise satisfies this State's voter eligibility requirements, if:

1. The last place where a parent or legal guardian of the voter was, or under this Article would have been, eligible to vote before leaving the United States is within this State; and

2. The voter has not previously registered to vote in any other state.

*Id.* § 163-258.2(1).

Judge Griffin is challenging ballots cast by overseas voters who identified themselves as United States citizens who have never resided in the United States. Such voters could only plausibly count as UMOVA "covered voters" under subsection (1)(e).

UMOVA doesn't define the phrase "State residency requirement" that such a voter needs to comply with. The term is not defined anywhere in the Act. As it stands, the phrase is ambiguous as to whether it means a durational residency requirement or a bona fide residency requirement. If the ambiguous phrase were interpreted to mean just a durational residency requirement, it's possible that UMOVA would, at least in some circumstances, be constitutional under the residency clause, as that clause is limited by *Dunn*. But if, on the other hand, the ambiguous clause were interpreted to let someone vote who has *never* been a resident, it would be unenforceable under the bona fide residency requirement of the state constitution.

The canon of constitutional avoidance requires the Court to interpret N.C. Gen. Stat. § 163-258.2(1)(e) as exempting overseas voters only from a durational residency requirement, and not a bona fide residency requirement. Only such an interpretation could save the statute from being invalidated. "[W]here one of two reasonable constructions will raise a serious constitutional question, the construction which avoids this question should be adopted." *N.C. State Bd. of Educ. v. State*, 371 N.C. 149, 160, 814 S.E.2d 54, 62 (2018) (quoting *In re Arthur*, 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977)).

Before the State Board, Judge Griffin asked the Board to apply the canon of constitutional avoidance to this subsection of UMOVA. But the State Board just misconstrued that as a request to find the provision unconstitutional. App. 66. The State Board held that it was incompetent to hold a state statute unconstitutional. App. 68-69. The Board then decided to opine on the constitutional question anyway, stating in one sentence that, if this subsubsection of UMOVA violated the state constitution, then the federal constitution's doctrine of substantive due process would reinstate the state law. App. 69. The theory appears to be that applying our state constitution to this election would be applying a "newly announced rule of law." App. 62. The Board, however, has confused the chronology. The residency requirement in the state constitution has existed and persisted since the Revolutionary War. UMOVA was enacted 235 years later. Not exactly a new rule of law.

Even setting aside the statute of constitutional avoidance, if the Court does not believe section 163-258.2(1)(e) is reasonably susceptible to Judge Griffin's proposed interpretation, then the Court should refuse to enforce the statute as it applies to Never Residents.

When "there is a conflict between a statute and the Constitution, this Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution, because the Constitution is the superior rule of law in that situation." *In re Chastain*, No. 283A22-2, 2024 WL 5100940, at *6 (N.C. Dec. 13, 2024) (Riggs, J.) [App. 128]. And the constitution is clear: only bona fide residents can vote for state offices.[9]

### D. This argument has no impact on votes cast for federal elections, military voters, or North Carolina residents living overseas.

To be clear, Judge Griffin is not challenging the votes of military voters, nor is he challenging any vote cast for federal contests.

Judge Griffin was not a candidate for federal office. And federal statutory law, which imposes duties on states for uniformed services voters and other overseas voters, applies only to "elections for Federal office." *See* 52 U.S.C. § 20302(a). Besides, it's highly unlikely the Never Residents includes servicemembers, because these are people who were born abroad and have never lived anywhere in the United States.[10]

---

9   This argument is not required to be decided by a three-judge panel in superior court. First, UMOVA can and should be interpreted not to permit Never Resident voting. Second, this is not a facial challenge to UMOVA but is at most an as-applied challenge. Even accepting the Board's interpretation of UMOVA, Judge Griffin is challenging only a small subset of UMOVA-covered voters, and he's not seeking relief "far beyond the particular circumstances" of this election protest. *Singleton v. N.C. Dep't of Health & Hum. Servs.*, 906 S.E.2d 806, 808 (N.C. 2024). Finally, an appellate petition never requires transfer. Transfer is appropriate only if the "complaint," "answer," or "responsive pleading" contains a facial challenge to a state statute. N.C. R. Civ. P. 42(b)(4). This filing is none of those things.

10  Because this case does not involve an election for a federal office, other provisions of the state constitution are not implicated. Article VI of the North Carolina Constitution lets the General Assembly reduce the residency requirement, but such short-

UMOVA also distinguishes between, on one hand, uniformed-service voters and overseas voters who have resided in this state, N.C. Gen. Stat. § 163-258.2(1)(a)-(d), and, on the other hand, overseas voters who were born abroad and have never resided in this state, *id.* § 163-258.2(1)(e). Judge Griffin has challenged the votes of this latter group *only*.

Anyway, a servicemember who previously resided in North Carolina but is deployed overseas does not lose his North Carolina residency. Unless a servicemember leaves the state and intends never to return, he remains a resident of the state. *See Lloyd*, 296 N.C. at 444, 251 S.E.2d at 861 (student who leaves for college becomes resident at the place of his college unless he intends to return to his former home after graduation). Unless the servicemember has "abandoned" his home in North Carolina, he remains a resident here for voting purposes. *Id.* at 449, 251 S.E.2d at 864. By contrast, the Never Residents never had a home in North Carolina that they could abandon.

### E. Residency isn't inheritable under the state constitution's voter qualifications.

Justice Riggs has argued that Never Residents inherit the residences of their parents. She analogizes to the law of domiciliary for infants. Yet the analogy crumbles upon inspection because infants can't vote. N.C. Const. art. VI, § 1 (voting rights limited to those at least "18 years of age"). Unlike an infant, an 18-year-old *chooses* where he resides. If he wishes to become a member of North Carolina's political community, he must decide, as

---

term residents can only vote for president and vice president. N.C. Const. art. VI, § 2(2).

an adult, to reside in North Carolina. Otherwise, he is not a member of our political community entitled to vote. There is no such thing as "birthright residency" for purposes of voting in our state.

Inherited voting rights also make no sense when applied to the circumstances of the Never Residents. Under Justice Riggs' theory, a child's residence or domicile is the same as his parents. But recall that the Never Residents were born abroad and have never lived in the United States. That means that the parents of the Never Residents have been abroad for all eighteen years of the Never Resident's childhood. But a person can only establish residency in a place in which they have actually lived. When the Never Resident turned 18, his residence was where his parents had set up their international abode. Wherever that was, it wasn't in North Carolina.

By its own terms, UMOVA doesn't care whether the Never Residents' parents set up a fixed habitation somewhere abroad. Instead, it ascribes to the parent a North Carolina residency, even when the parent has settled down in a foreign country eighteen years ago. *See* N.C. Gen. Stat. § 163-258.2(1)(e). Justice Riggs argues that this is constitutional because the legislature can ascribe a fictional residency to a person by statute. That is true when the residency matters for other statutory or common law purposes. But the legislature is powerless to rewrite the meaning of "residency" as it's set out in the North Carolina Constitution. The ratifiers of our constitution would not have imposed a residency requirement in our charter of government just so the legislature can override it. The word "residency" continues to carry the original public meaning that it has carried through our state's

history. To suggest that the legislature could ignore this meaning or change it by statute is an affront to judicial review. *Bayard v. Singleton*, 1 N.C. (Mart.) 5 (1787); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177-78 (1803).

*       *       *

The original public meaning of "residency" as used of voting rights in our constitution has always required the would-be voter to, at a minimum, live in North Carolina. That commonsense requirement of physical presence cannot be eliminated by statute. It is fundamental to the identity of our political community, and our constitution does not let the General Assembly change our community by granting voting rights to Never Residents. UMOVA doesn't do that because doing so would be unconstitutional.

If the Board counts the votes of people who have *never* been members of our political community, it will violate our state constitution. That harms not only Judge Griffin, but also the true members of our state's political community.

## III.  Overseas Voters Who Did Not Provide Photo Identification Cannot Cast a Ballot in State Elections.

The final category of protests before the State Board involved ballots cast by overseas voters more generally. State law requires these voters to submit photo identification along with their absentee ballots, just like all other voters. But the State Board decided to accept overseas absentee ballots without accompanying identification, in violation of state law.

### A. Article 21A, which governs overseas absentee voters, incorporates Article 20's requirements for absentee voters.

Subchapter VII of Chapter 163 of the General Statutes contains the requirements for all types of absentee-ballot voting in North Carolina. Article 20 of that subchapter sets out the general rules for absentee voting. *See* N.C. Gen. Stat. §§ 163-226 to -239. Article 21A (which is UMOVA) layers on additional rules for absentee voting by military and overseas voters. *See id.* §§ 163-258.1 to -258.31. The general absentee voting provisions of Article 20 apply to overseas absentee voting under Article 21A, and not vice versa. Section 163-239 states, "Except as otherwise provided therein, Article 21A of this Chapter [for overseas absentee voting] shall not apply to or modify the provisions of this Article [20]."

One of the key provisions of Article 20 is the requirement of photo identification for absentee voting. N.C. Gen. Stat. § 163-230.1(a)(4), (b)(4), (e)(3), (f1). These provisions equalize the burden of voting: both in-person voters and absentee voters must show photo identification to cast a ballot. *See id.* § 163-166.16(a) (requiring photo identification for in-person voting); N.C. Const. art. VI, §§ 2(4), 3(2) (same). The General Assembly first enacted UMOVA in 2011 to regulate absentee ballots cast by overseas voters. *See* N.C. Sess. Law 2011-182. The General Assembly then added legislation to require photo identification for absentee ballots. *See, e.g.*, N.C. Sess. Law 2019-239, § 1.2(b). When it did so, it did not exempt overseas voters. If our legislature intended to exempt overseas absentee voters from the photo identification requirement, it would have said so explicitly.

But overseas voters are not exempt from this equalization requirement and must provide photo identification to vote. All absentee ballots—cast under either Article 20 or Article 21A—must be transmitted to the relevant county board of elections by placing it in a "sealed container-return envelope." N.C. Gen. Stat. § 163-231(b)(1). This reference to a sealed container-return envelope applies expressly to absentee ballots cast under both Articles 20 and 21A. To understand what an overseas voter must put in the "sealed container-return envelope," the voter must look at the requirements under Article 20, since Article 21A does not answer the question. *See id.* §§ 163-258.1 to -258.31.

Article 20 is clear that the "sealed container-return envelope" exists, in part, to hold the photo identification of *all* absentee ballots. The container-return envelope must contain a valid photo identification: "Each container-return envelope returned to the county board with application and voted ballots under this section shall be accompanied by a photocopy of identification . . . ." *Id.* § 163-230.1(f1). The failure to include a photo identification in the container-return envelope is a curable deficiency, but only if the proper identification is received the day before the county canvass. *Id.* § 163-230.1(e). None of the challenged ballots were cured.

Even at a more general level, absentee ballots cast both within and without the United States (Article 20 and Article 21A absentee ballots) are generally treated alike and are all considered absentee ballots:

- "The county board shall report ballots cast during early voting under Part 5 of Article 14A of this Chapter separately from mail-in absentee ballots cast under Article 20 or 21A of this Chapter." *Id.* § 163-132.5G(a1)(4).

- "The sealed container-return envelope in which executed absentee ballots have been placed shall be transmitted to the county board of elections who issued those ballots as follows . . . All ballots issued under the provisions of this Article and Article 21A of this Chapter shall be transmitted by one of the following means . . . ." *Id.* § 163-231(b).

- The lawful procedure for counting absentee ballots cast under both Article 20 and Article 21A are set out in Article 20. *Id.* § 163-234.

**B.** **Nothing in Article 21A excuses overseas voters from providing photo identification.**

The State Board reasoned that Article 21A excused overseas voters from providing photo identification because section 163-258.17(b) established the exclusive means to authenticate the identity of the voter. App. 70-71. But subsection (b) says no such thing.

That subsection states that the lone "authentication" required "for *execution of a document*" for overseas voters are the declarations permitted for overseas voters. N.C. Gen. Stat. § 163-258.17(b) (emphasis added); *see id.* § 163-258.4 (describing declaration that acknowledges misstatements are grounds for perjury). Subsection (b) cannot exempt an overseas voter from the photo-identification requirement because photo identification is not the "authentication" of a document—it's the authentication of the voter's identity.

This conclusion is easily confirmed by looking at Article 20. Similar to section 163-258.17(b)'s authentication requirement, Article 20 also requires absentee ballots to be authenticated by notarization or a witness. *See id.* § 163-231. Notably, the photo identification requirement is an entirely separate requirement found in another statute within Article 20. *Id.* § 163-230.1. Why? Because photo identification is not an "authentication" of a document.

Justice Riggs argued to the Board that Article 21A prohibits a photo identification requirement because section 163-258.17(a) permits the counting of improper ballots cast by overseas voters if the ballots are missing "nonessential" information. *Id.* § 163-258.17(a). The statute gives examples of nonessential requirements that can be ignored: failing to use "paper or envelopes of a specified size or weight." *Id.* Photo identification is a material requirement; it isn't "nonessential." Anyone suggesting that photo identification is immaterial must have missed the last decade and a half of legislation, litigation, and constitutional amendments surrounding photo identification. Notably, the Board declined to adopt Justice Riggs' argument.

### C. The fact that the Board issued a rule excusing overseas voters from providing photo identification does not immunize the Board's decision from judicial review.

The State Board also defended its decision to excuse overseas voters from the photo-identification requirement on the grounds that the Board had already issued a rule saying so. App. 73-74 (citing 8 N.C. Admin. Code 17.0109(d)). But the General Assembly never delegated to the State Board the power to make the major policy decision of whether to

require photo identification from a class of voters. Photo identification was a decision made by the legislature (and even the voters, through a constitutional amendment).

Indeed, the delegation of such an important question would be unconstitutional. An administrative agency cannot be "asked to make important policy choices which might just as easily be made by the elected representatives in the legislature." *Adams v. N.C. Dep't of Nat. & Econ. Res.*, 295 N.C. 683, 697-98, 249 S.E.2d 402, 411 (1978). If such legislative power could be delegated, it would be "delegation running riot." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (administrative delegation held unconstitutional under non-delegation doctrine); *see also State v. Harris*, 216 N.C. 746, 6 S.E.2d 854, 860 (1940) (same).

As the Supreme Court of the United States has observed, when an administrative agency makes an extraordinary claim of authority with "political significance," that gives courts a "reason to hesitate" before concluding that the legislature meant to confer the claimed authority. *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). Under the major questions doctrine, courts recognize that the legislature does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (Scalia, J.). "[S]eparation of powers principles" caution against such unrestrained readings of administrative authority. *West Virginia*, 597 U.S. at 723.

There is no textual indication that the General Assembly ever intended for the State Board to decide whether to require photo identification for any kind of voter, much less

overseas voters. And even if there were some "colorable textual basis," *id.*, the major questions doctrine would caution the Court to interpret the statutes against a delegation.

The rule would also collapse under the state constitution. If voters are to be treated differently, there must be a rational basis for differential treatment. *See* N.C. Const. art. I, § 19 ("No person shall be denied the equal protection of the laws . . . ."); *Lloyd*, 296 N.C. at 439, 251 S.E.2d at 858 ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." (quoting *Dunn*, 405 U.S. at 336); *N.C. Bar & Tavern Ass'n v. Cooper*, 901 S.E.2d 355, 373 (N.C. Ct. App.), *review allowed*, 901 S.E.2d 232 (N.C. 2024); *Askew v. City of Kinston*, 906 S.E.2d 500, 507 (N.C. Ct. App. 2024). But there is no legitimate reason to impose a greater burden—photo identification—on those living in North Carolina than is imposed on those living abroad. There is no reason to think that the General Assembly intended that bizarre, differential treatment, which could violate the state constitution's equal protection clause.

**D.    Federal law has no bearing on the photo-identification requirement.**

Because state law offered by the State Board provides no refuge, the Board also sought to intertwine its reasoning with federal law, citing 52 U.S.C. § 20302. App. 74-76. But, as with HAVA and the NVRA, federal law has no application here. The statute on which the Board relies, by its own terms, only applies "elections for Federal office." *E.g.*, 52 U.S.C. § 20302(a)(1)-(3), (6)-(8), (b)(1), (c).

\*     \*     \*

Ultimately, it would make no sense to require photo identification for voters present in the United States, but not for overseas voters. The General Assembly did not require photo identification for one category of voter and not the other. Rather, *everyone* voting in a North Carolina election, whether voting in person or by any kind of absentee ballot, must submit a photo identification to vote.

Therefore, these absentee ballots, submitted under Article 21A, cannot be counted for the contests that are the subject of these election protests.

## IV. The State Board Manufactured Procedural Defects.

To reject Judge Griffin's protests, the State Board not only misconstrued North Carolina law, it also tried to disqualify the protests on procedural technicalities. It is clear, however, that Judge Griffin's protests complied with all relevant procedural requirements.

### A. The protests should not have been filed as voter challenges.

The Board reasoned that it should dismiss the protests because they were untimely voter challenges. App. 64-66. But the State Board had already rejected its own argument in 2016, and this Court said the same thing earlier this year.

In 2016, an election protest was filed by the Pat McCrory campaign in the governor's race, challenging the eligibility of certain voters to cast ballots in that election. *Bouvier*, 386 N.C. at 5-6, 900 S.E.2d at 843-44. McCrory's opponent, Roy Cooper, argued that the protests should be dismissed because they merely challenged the eligibility of certain voters, and therefore should have been brought as voter challenges instead. *See Bouvier v. Porter*,

279 N.C. App. 528, 542, 865 S.E.2d 732, 741-42, *rev'd in part and remanded,* 386 N.C. 1, 900 S.E.2d 838 (2024); *In re Consideration of Certain Legal Questions Affecting the Authentication of the 2016 General Election* (N.C. State Bd. of Elections Nov. 28, 2016) [App. 344-45].

The State Board rejected Cooper's argument. App. 334-45. In an order on Cooper's request to dismiss the protests, the Board explained that an election protest "must prove the occurrence of an outcome-determinative violation of election law, irregularity, or misconduct." App. 344 ¶ 3. Although an election protest "may not merely dispute the eligibility of a voter," an election protest may challenge a voter's eligibility if the "claims regarding the eligibility of certain voters" are presented "as evidence that an outcome-determinative violation of election law, irregularity, or misconduct has occurred." App. 345 ¶ 5. Thus, an election board may "discount a ballot cast by an unqualified voter" if an election protest shows "that ineligible voters participated in number sufficient to change the outcome of the election." App. 345 ¶ 7.

The McCrory election protest spun off collateral litigation that wound up at this Court as *Bouvier v. Porter*, 386 N.C. 1, 900 S.E.2d 838 (2024). One of the issues in *Bouvier* continued to be whether an election protest can challenge the eligibility of certain voters. The Court affirmed the logic of the Board's 2016 order, explaining that "an election protest may address any 'irregularity' or 'misconduct' in the election process, including the counting and tabulation of ballots cast by ineligible voters." *Id.* at 4, 900 S.E.2d at 843 (citations omitted). Such ineligible voters, who could be targeted by an election protest, include

"nonresidents," who are "categorically ineligible to vote." *Id.* at 4 n.2, 900 S.E.2d at 843 n.2. It also includes people who are not "'legally registered' to vote." *Id.* (quoting N.C. Gen. Stat. § 163-54).

The Board's final decision on Judge Griffin's protests made no effort to reconcile its reasoning with its prior 2016 order or *Bouvier*. It is but another example of the State Board ignoring the law and exercising power untethered to principle.

### B. The Board wrongly dismissed the protests for lack of service.

Before addressing the merits of the three categories of protests, the State Board alternatively dismissed Judge Griffin's protests because he did not properly serve the protests on affected voters. The State Board's ruling is wrong because (1) the Board does not have statutory authority to impose a service obligation on protestors and (2), even if it did, Judge Griffin's service satisfied the Board's service demands.

The State Board promulgated a protest template that includes a demand that protestors "must serve copies of all filings on every person with a direct stake in the outcome of this protest." 8 N.C. Admin. Code § 02.0111 (the protest-form template). The service can be accomplished by "transmittal through U.S. Mail" and has to "occur within one (1) business day" of filing a protest. *Id.*

First, there is no statutory authority for the Board to force protestors to serve copies of protests on affected parties. The State Board claims that it can compel protestors to serve parties because the Board has the power to "prescribe forms for filing protests." App. 43-44 (citing N.C. Gen. Stat. § 163-182.9(c)). But the power *to merely create a template* for a

protest does not include the power to burden protestors with providing notice to affected parties. That is especially so when the protest statutes explicitly burden someone else with the duty to provide notice to affected parties: the county boards. *See* N.C. Gen. Stat. § 163-182.10(b). The General Assembly never authorized the State Board to outsource the county boards' notice obligations to protestors and then penalize those protestors for failing to do the county boards' jobs for them. The Board acted beyond its authority in dismissing protests on service grounds.

Second, Judge Griffin nevertheless complied with the Board's service demand by mailing a postcard by U.S. First-Class Mail to over 60,000 voters at the voters' addresses of record. The postcard stated the following:

> * * * NOTICE * * *
>
> [[First Name]] [[Middle Name]] [[Last Name]], your vote may be affected by one of more protests filed in the 2024 general elections. Please scan this QR code to view the protests filings. Please check under the county in which you cast a ballot to see what protest may related to you…. For more information on when your County Board of Elections will hold a hearing on this matter, please visit the State Board of Elections' website link found on the Protest Cite (via the QR code).

App. 175 (Offerman Aff., Attach. 1).

The State Board criticized Judge Griffin's service efforts as "junk mail" because it was (1) a postcard that (2) didn't announce that the protests were "challenging the voter's eligibility" and (3) used a QR code to provide access to the filed materials. App. 45-51. The Board concluded that such postcards did not properly inform voters of the protests and provide them an opportunity to object. App. 49.

The Board's critique of Judge Griffin's service efforts is misplaced. First, the State Board cannot belittle postcards as "junk mail" when the Board itself routinely mails cards to voters. *See* N.C. Gen. Stat. § 163-82.8(c) (mailing of voter registration cards); *id.* § 163-82.14(d)(2) (confirming address by mailing cards). Second, the postcard states that "your vote may be affected by one of more protests" and instructs voters to contact their county boards for information on "a hearing on this matter." App. 175. The postcard, thus, notifies voters that their vote is being implicated by a legal proceeding and, appropriately, directs them to find more information on the proceeding. Finally, the Board's distrust of QR codes is belied by the Board's own use of QR codes in the "Voter Photo ID" mailers that it recently distributed across the state. *See* N.C. State Bd. of Elections, *Press Release: State Board Launches Photo ID Educational Campaign* (Feb. 13, 2024) [App. 346-49], *available at* https://www.ncsbe.gov/news/press-releases/2024/02/13/state-board-launches-photo-id-educational-campaign (visit the link "Voter Photo ID Mailer (PDF)").[11]

To be clear, the constitutional standard for notice is that it be "reasonably certain to inform those affected." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). The standard does not demand perfection. *See id.* at 319 ("We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are

---

[11]   The Board's press release boasted that its new voter ID "campaign is designed to *reach every corner of North Carolina*, including rural and urban areas, in as many ways as possible." *Id.* (emphasis added). The Board posted the "Voter Photo ID Mailer (PDF)" at https://s3.amazonaws.com/dl.ncsbe.gov/Voter%20ID/Voter-ID-Mailer.pdf. It is available in the appendix at pages 350-51.

justifiable."). Moreover, Judge Griffin served over 60,000 voters. The interests of each voter "is identical with that of a class" and, therefore, "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any sustained would inure to the benefit of all." *Id.* Given that Judge Griffin's service on 60,000 voters replicates the State Board's own methods of notifying voters, the Board had no grounds to claim his method of service was deficient.

### C. Judge Griffin timely filed his protests.

The Board mentions, in passing, that some of Judge Griffin's protests might have been untimely filed and, therefore, could be subject to dismissal. App. 6 n.4. This is baseless. The General Statutes are explicit that only "substantial compliance" is required with the filing deadlines for election protests; and Judge Griffin's protests substantially complied with the protest-filing deadline.

Section 163-182.9 sets forth the requirements of an election protest. In addition to a protest being in writing and containing certain information, the section sets forth deadlines for filing a protest. N.C. Gen. Stat. § 163-182.9(b). "If the protest concerns an irregularity other than vote counting or result tabulation, the protest shall be filed no later than 5:00 P.M. on the second business day after the county board has completed its canvass and declared the results." *Id.* § 163-182.9(b)(4)(c).

The next statute, section 163-182.10, then dictates an elections board's review of whether a protest complies with these requirements. Section 163-182.10 explicitly states that a board shall "determine whether the protest *substantially complies* with G.S. 163-182.9

and whether it establishes probable cause to believe that a violation of election law or irregularity or misconduct has occurred." *Id.* § 163-182.10(a)(1) (emphasis added). Therefore, for a protest to proceed to a review of its merits, the protest must substantially comply with the 5:00 P.M. filing deadline.

The affidavit of Kyle Offerman establishes that all of Judge Griffin's protests were submitted via email to the county board before the 5:00 P.M. deadline. App. 172 (Offerman Aff. ¶¶ 8-9). The possibility that some of these protests might have hit election officials' inboxes a few minutes after 5:00 P.M. is irrelevant. The protests would have nonetheless been filed in substantial compliance with the statutory filing deadline.

North Carolina courts have, for decades, explained what is required when a statute demands only substantial compliance with certain requirements. In such statutes, substantial means "[i]n a substantial manner, in substance, essentially. It does not mean an accurate or exact copy." *Graham v. Nw. Bank*, 16 N.C. App. 287, 291, 192 S.E.2d 109, 112 (1972) (cleaned up). In other words, substantial compliance with a requirement is something less than precise satisfaction of the requirement.

This standard of leniency is not uncommon. It also appears in litigation. For example, the North Carolina Court of Appeals applies a substantial compliance standard to the application of the appellate rules: "[T]his court has held that when a litigant exercises 'substantial compliance' with the appellate rules, the appeal may not be dismissed for a technical violation of the rules." *Pollock v. Parnell*, 126 N.C. App. 358, 362, 484 S.E.2d 864, 866

(1997). Thus, a substantial-compliance standard precludes a judicial body from dismissing a filing for mere failure to comply with the technical rules.

There is no doubt that a filing received by the board of elections within minutes of the deadline in section 163-182.9 is in "substantial compliance" with the deadline. The filing of a protest within minutes of a deadline would be "essentially" or "in substance" complying with the deadline, even if it is not technically complying with the deadline. Under section 163-182.10(a)(1), any such protest must, as a matter of law, be allowed to proceed to the merits.

## V.    No Other Federal Statute Bars the Protests.

Justice Riggs argued that additional federal statutes preclude Judge Griffin's protests from succeeding. The Board did not address these statutes because they are irrelevant to the protests at issue.

### A.    The Civil Rights Act does not impact the protests.

Justice Riggs argued to the State Board that the "materiality provision" of the federal Civil Rights Act of 1964 barred Judge Griffin's election protests based on ballots cast by people with incomplete voter registrations. But her argument has already been rejected by other courts.

The Civil Rights Act's materiality provision prohibits any "person acting under color of law" from denying an individual's vote due to an error or omission "if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). The Eleventh Circuit has already

determined that a drivers license or social security number is material in determining whether an individual is qualified by law to vote. *See Browning*, 522 F.3d at 1174 n.22 ("because Congress required the identification numbers [drivers license numbers or partial social security numbers] to be on voter registration applications, they are *per se* material under [the Civil Rights Act's materiality provision]").

Indeed, the materiality provision only applies to the provision of "trivial information" that serves no purpose other than "inducing voter-generated errors that could be used to justify rejecting applicants." *Id.* at 1173. The General Assembly has determined that some information on the voter application form is immaterial and can be lawfully omitted—like "race, ethnicity, gender, or telephone number." N.C. Gen. Stat. § 163-82.4(a). But drivers license and social security numbers are far from immaterial. The information at issue is used to validate the identity of the applicant. *Id.* § 163-82.12(8), (9). Thus, the Eleventh Circuit described such information as "per se" material under the Civil Rights Act. *Browning*, 522 F.3d at 1174 n.22. The court was skeptical that the government "would mandate the gathering of information—indeed, that it would make that a precondition for accepting registration application—that it also deems immaterial." *Id.* at 1174.

### B. The Voting Rights Act does not impact the protests.

At the State Board, Justice Riggs claimed that the Voting Rights Act of 1965 (VRA) prevents the State Board from enforcing the election laws identified in Judge Griffin's protests. That is wrong.

The Voting Rights Act prohibits refusing to count the vote of anyone "who is entitled to vote under any provision of this Act or is otherwise qualified to vote." 52 U.S.C. § 10307(a). Justice Riggs never pointed to any provision of the Act that the election protests purportedly violate. Indeed, the enforcement provision of the VRA exists just to enforce "the Act's comprehensive scheme to eliminate racial discrimination in the conduct of public elections." *Powell v. Power*, 436 F.2d 84, 86 (2d Cir. 1970). Absent racial discrimination, "the Act provides no remedy." *Id.* at 87. As the U.S. Supreme Court has recently explained, the VRA is Congress's effort to bring to "an end to the denial of the right to vote based on race." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 655 (2021). No one has ever suggested that this case involves racial discrimination—it quite obviously doesn't. So the Voting Rights Act is irrelevant.

## VI. The Protests Comport with Equal Protection and Substantive Due Process.

The right to vote is fundamental. But like all fundamental rights, voting is not an absolute right. The U.S. Supreme Court has established a test that balances the right to vote with a state's interest in ensuring election integrity. The protests, which seek to enforce laws that go to the heart of election integrity, satisfy this balancing test.

### A. The *Anderson-Burdick* test.

Voting is a fundamental right. *E.g., Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Yet, the U.S. Supreme Court has recognized that "[t]here must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).

The U.S. Supreme Court has established the *Anderson-Burdick* test to strike a balance between the right to vote and the need for fair elections. *See Libertarian Party of N.C. v. State*, 365 N.C. 41, 47-48, 707 S.E.2d 199, 203-04 (2011) (discussing test). The test requires that a regulation imposing a severe burden on voting be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (internal quotation marks omitted). Severe burdens are defined as invidious restrictions that "are unrelated to voter qualifications." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 (2008).

The test also accounts for non-severe burdens, which include "'evenhanded restrictions that protect the integrity and reliability of the electoral process itself.'" *Id.* at 189-90 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)). These lesser burdens are subject to a flexible balancing standard, which "weigh[s] 'the character and magnitude of the asserted injury'" against "'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Such burdens are usually justified by "a State's important regulatory interests." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 351 (1997).

**B.      The protests do not seek to impose severe limitations on voting.**

Judge Griffin is not asking the State Borad to enforce laws that would severely burden voting.

To start, the North Carolina Constitution establishes that both lawful registration and residency are voter qualifications. N.C. Const. art. VI, §§ 2(1), 3(1). And anybody who wants to vote in North Carolina must be a resident and lawfully registered—no exceptions

are allowed. Judge Griffin's request that the State Board enforce this *evenhanded* pair of voter *qualifications* cannot, as a matter of law, severely burden the right to vote. *See Crawford*, 553 U.S. at 189-90.

The third law that Judge Griffin asked the State Board to enforce (overseas voters providing photo identification) is enshrined in the General Statutes. *See supra* Argument § III. Like registration and residency, this requirement is also evenhanded—applying to all voters equally. Indeed, Judge Griffin filed the protest because the State Board unlawfully exempted one demographic of voters—those living overseas—from this universal requirement. The U.S. Supreme Court has already concluded that reasonable photo-identification requirements do not impose "a substantial burden on the right to vote." *Crawford*, 553 U.S. 191-98.

The State Board never mentions the *Anderson-Burdick* test anywhere in its order. Rather, in discussing the incomplete-registration protests, the Board defends its dismissal of those protests on the grounds that the individuals "did everything they were told to do to register." App. 57. The Board then relies on this Court's decisions in *Overton v. Mayor & City Commissioners of City of Hendersonville*, 253 N.C. 306, 116 S.E.2d 808 (1960), and *Woodall v. W. Wake Highway Commission*, 176 N.C. 377, 97 S.E. 226 (1918), for the Board's conclusion that "error by election officials in the processing of voter registration cannot be used to discount a voter's ballot." App. 59-60. But the decisions in *Woodall* and *Overton* do not hold such. Rather, those decisions reasoned that, because registrars had a duty to issue oaths (while voters had no obligation to take an oath), a *registrar's failure* of his *personal*

duty could not result in a voter being disqualified. *See Overton*, 253 N.C. at 315, 116 S.E.2d at 815; *Woodall*, 176 N.C. 377, 97 S.E. at 232.

Here, in contrast, a North Carolina statute imposes a duty on applicants to provide a drivers license or social security number that validates the applicants' identities. *See* N.C. Gen. Stat. § 162-82.4(a)(11), (d), (f). The Board's willingness to register applicants without this information does not excuse applicants of their duty to provide it. Moreover, *Woodall* and *Overton* cannot stand for an absolute rule that election-official errors can never result in the disqualification of voters because the Court plainly held otherwise in *James*, 359 N.C. at 270, 607 S.E.2d at 644, where the Court disqualified thousands of voters who (unlawfully) voted out of precinct at the instruction of poll workers. *James* even cited to *Burdick* to justify its result, seeing no conflict with this remedy and the *Anderson-Burdick* framework. *Id.*

Unlike in *Woodall*, *Overton*, and *James*, this is not an instance in which an election official's error prevented eligible voters from casting their ballots. This is an instance in which, after the State Board decided to not inform individuals of certain requirements, the individuals' ignorance resulted in them failing to take the steps necessary to become eligible voters. As courts have often held, "ignorance of the law is no excuse for a failure to comply with the law." *Orange Cnty. v. N.C. Dep't of Transp.*, 46 N.C. App. 350, 377, 265 S.E.2d

890, 908 (1980). It's not unconstitutional to require the public to be as knowledgeable of election laws as other laws.[12]

### C. The laws at issue are tailored to compelling state interests.

But even if the Court were to find that the enforcement of the laws at issue severely burdened the right to vote, North Carolina is well justified in enforcing these laws.

The State has an undeniable interest in restricting voting to only those who are eligible to vote, thereby ensuring that the votes of eligible voters are not diluted by ineligible ballots. *Bush v. Gore*, 531 U.S. 98, 105 (2000). Indeed, counting only eligible ballots is the ultimate means of accomplishing the State's "compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (cleaned up). Demanding that only qualified voters—those lawfully registered, residing in North Carolina, and producing photo identification—be allowed to cast a ballot is perfectly tailored to protecting eligible voters from vote dilution.

The State's compelling interest in election integrity also empowers the States to enact protections against possible voter fraud, because such protections assuage the public's

---

12  Even assuming citizens could blame the State Board for their failure to become eligible to vote, human error by government employees does not automatically create a constitutional violation. *See Pettengill v. Putnam Cnty. R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973) (holding no constitutional violation absent "aggravating factors such as denying the right of citizens to vote for reasons of race, or fraudulent interference with a free election by stuffing of the ballot box, or other unlawful conduct which interferes with the individual's right to vote" (citations omitted)); *Powell*, 436 F.2d at 88 (holding that neither the Equal Protection and Due Process Clauses of the Fourteenth Amendment "guarantee against errors in the administration of an election").

"fear [that] legitimate votes will be outweighed by fraudulent ones." *Id.* Thus, the State is justified in requiring that all voters provide photo identification as a means of identity verification. Moreover, the *Anderson-Burdick* standard does not demand an "elaborate, empirical verification" of efforts to counteract voter fraud. *Timmons*, 520 U.S. at 364. Rather, the State is free to protect against voter fraud "with foresight rather than reactively," so long as the protections are "reasonable" and don't "significantly impinge" constitutional rights. *Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986).

It is no longer debatable that universal photo-identification requirements are a constitutionally acceptable way to guard against impersonation of registered voters. *See Crawford*, 553 U.S. at 194-97 (Stevens, J.); *see also id.* at 209 (Scalia, J., concurring) ("The universally applicable requirements of Indiana's voter-identification law are eminently reasonable.").

It is equally established that North Carolina's requirement that individuals, in order to be qualified to vote, verify their identities via a drivers license or social security number guards against fraudulent registrations. *See Browning*, 522 F.3d at 1168 (describing HAVA's mirror requirement for such information as being "Congress's attempt to . . . prevent[] voter impersonation fraud"). "'The electoral system cannot inspire public confidence if no safeguards exist . . . to confirm the identity of voters.'" *Crawford*, 553 U.S. at 194 (quoting Building Confidence in U.S. Elections § 2.5 (Sept. 2005)).

**VII. The Appropriate Remedy Is Discounting the Illegal Ballots.**

In the end, the State Board and Justice Riggs do not disagree with Judge Griffin's reading of the law—they simply believe it's too late to comply with the law. But the results of an election cannot be tainted by ballots unlawfully cast. Judge Griffin's protests satisfy the legal standards established in the election-protest statutes and, therefore, the Court should order that any unlawful vote be discounted.

**A. To succeed, Judge Griffin need only provide substantial evidence of an outcome-determinative violation of election law.**

To ensure that no election is subject to the taint of inaccurate results, the General Assembly provided a lenient standard for the success of an election protest.

Our state constitution requires that elections be "free." N.C. Const. art. I, § 10. An election is free only if "the votes are *accurately* counted. Inherently, votes are not accurately counted if ineligible voters' ballots are included in the election results." *Bouvier*, 386 N.C. at 3, 900 S.E.2d at 842 (quoting *Harper v. Hall*, 384 N.C. 292, 363, 886 S.E.2d 393, 439 (2023)).

The election-protest process is the legislature's recognition that free—and, thus, accurate—elections "are vital to maintaining the public's trust and confidence in our system of self-government." *Id.* at 4, 900 S.E.2d at 842. The election-protests process is meant "to assure that an election is determined without taint of fraud or corruption and without irregularities that may have changed the result of an election." *Id.* at 4, 900 S.E.2d at 843.

Given the critical role that protests play in ensuring the public's confidence in the democratic process, the General Assembly provided for a lenient standard for a successful protest. This is because election boards "must expeditiously resolve election protests to facilitate appeals and the timely certification of elections." *Id.* at 16, 900 S.E.2d at 850. Election protests, therefore, "proceed rapidly, and the process does not lend itself to exhaustive discovery and absolute precision." *Id.*

For an election protest to succeed, the election protest only needs to present "**substantial evidence to believe** that a violation of the election law or other irregularity or misconduct did occur and that it was sufficiently serious to cast doubt on the apparent results of the election." N.C. Gen. Stat. § 163-182.19(d)(2)(d), (e) (emphasis added). If an election protest is successful, the statutes authorize the elections board to correct the vote count and declare new results. *Id.* § 163-182.19(d)(2)(d), (e).

This Court has described the "substantial evidence" standard as creating a "low" bar. *State v. Taylor*, 379 N.C. 589, 611, 866 S.E.2d 740, 757 (2021). Thus, in *State v. Butler*, this Court stated: "To be substantial, the evidence need not be irrefutable or uncontroverted; it need only be such as would satisfy a reasonable mind as being adequate to support a conclusion." 356 N.C. 141, 145, 567 S.E.2d 137, 139 (2002) (quotation omitted). In plain terms, "substantial evidence is simply evidence that is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982).

Courts routinely apply the "substantial evidence" standard, and have recognized for decades that "uncorroborated and untested testimony and hearsay testimony" can constitute substantial evidence, as long as that evidence is reliable and trustworthy. *EchoStar Commc'ns Corp. v. FCC*, 292 F.3d 749, 753 (D.C. Cir. 2002). It is also generally accepted that the "substantial evidence" standard can be satisfied by something less than a preponderance of the evidence, *La. Public Service Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and that the possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence, *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 669 (Fed. Cir. 2019).

### B. Judge Griffin provided substantial evidence of outcome-determinative election-law violations.

For the reasons already discussed, Judge Griffin's protests identify three categories of voters who, as a matter of law, are ineligible to vote in the 2024 elections. There is no doubt that North Carolina law prohibited these three categories of voters to cast ballots for Seat 6 of the North Carolina Supreme Court. The State Board's willingness to allow these voters to potentially determine the outcome of the election is a clear violation of election law.

In addition to establishing election-law violations, Judge Griffin's protests provide the identities of the ineligible voters. Judge Griffin's protests were each accompanied by an affidavit that (1) explained how the identities of these ineligible voters were determined **based on data from the State Board** and (2) attached the resulting lists of the voters'

identities. In the aggregate, the affidavits and lists that accompany the protests establish the following numbers of ineligible voters by category:

- Incomplete voter registration: 60,273.

- Never residents: 267.[13]

- Overseas voters without photo IDs: 5,509.[14]

Judge Griffin currently trails Justice Riggs by only 734 votes. There is no question that the State Board's unlawful decision to permit 5,509 overseas voters to cast ballots without providing photo identification is of a magnitude that it casts doubt on the outcome of the election. That is all the more true of the State Board's unlawful decision to allow 60,273 individuals to cast ballots despite the individuals never completing registration. While the Never Residents are, in isolation, insufficient to change the outcome of the election, those 267 voters could become outcome-determinative after the results are adjusted for the other categories of unlawful voters.

---

[13]  Judge Griffin was able to identify Never Residents who had submitted materials to the State Board. There are additional Never Residents who cast ballots but submitted their materials to the county boards of elections. Although Judge Griffin is not certain that these additional Never Residents are sufficient in number to change the outcome of his election, Judge Griffin ask that the Court's relief make clear that all Never Residents—whether they submitted materials to the State Board or a county board—be ineligible to vote in a state election.

[14]  Judge Griffin filed protests challenging no-ID overseas voters in six counties. Before filing the protest, counsel to Judge Griffin requested the list of such voters from six counties. App. 176. When the protests were originally filed, only one county (Guilford) had provided a list of such voters, and this list was included with the protest filed in Guilford County. App. 1831-78. Since filing the protests, Durham, Forsyth, Buncombe counties have provided the lists as well, and the lists were filed as supplements to Judge Griffin's protests. App. 177-343.

Again, the General Statutes require only "substantial evidence" of an outcome-determinative election-law violation. N.C. Gen. Stat. § 163-182.19(d)(2)(d), (e). This is a "low" bar, *Taylor*, 379 N.C. at 611, 866 S.E.2d at 757, that does not require "irrefutable or uncontroverted" evidence—it requires only that "a reasonable mind" might find the evidence to be adequate, *Butler*, 356 N.C. at 145, 567 S.E.2d at 139. The affidavits and lists constitute "substantial evidence" of outcome-determinative election-law violations because the affidavits and lists are, as a matter of law, sufficient to support a reasonable mind's conclusion that such voters were ineligible to vote. *See Lackey*, 306 N.C. at 238, 293 S.E.2d at 176.

### C.   The Board tried to cast doubts about its own data.

In its decision, the Board cast doubt on the unrebutted evidence offered in support of Judge Griffin's protests. Namely, the Board questioned whether the 60,000 voters identified in the protests had failed to provide their drivers license or social security numbers. App. 52.

As a threshold matter, the affidavits that accompany Judge Griffin's protest explain that the list identifying the incomplete registrants was **provided by the State Board itself** in response to a public records request. App. 1754-55 ¶¶ 9-11. The fact that the Board is now attempting to impeach its own data should make the Court suspicious of the Board's purported factual concerns. But the Court can also quickly dispense with these concerns on the merits.

To try to create doubt about the list provided by the State Board, the Board now speculates that the list could be over inclusive.

The State Board first speculates that the list might include individuals who were never issued a drivers license or social security number. *See* App. 52-53. But the Board—which certainly knows the answer to its own question—stops short of alleging that a single individual on the list falls within this category.

Second, the Board theorizes that some individuals might appear on the Board's list because, despite providing a drivers license or social security number with their application, the number was removed from "the voter's registration record" after the number failed the validation process. App. 53-54. But the Board concedes that, while the number is no longer in the "voter's registration record," "the *data is still retained* elsewhere in the system." App. 54 (emphasis added). The Board, moreover, provided a list of voters for which the Board's records did "not contain **data**" of either a drivers license number or social security numbers. App. 1754-55 (emphasis added).[15] According to the Board itself, the Board provided a list of voters for which the Board had no data of a drivers license or social security numbers. Notably, the Board never alleges that a single individual on the list provided a drivers license or social security number.

---

[15] Mr. Bonifay explains in his affidavit that he screened the Board's list for individuals who lacked data for both a drivers license number and a social security number, and then he matched that subset against a list of individuals who voted by absentee or provisional ballot. App. 1755.

None of the Board's speculation undermines the reality that Judge Griffin's incomplete-registration protests provide substantial evidence of an outcome-determinative election-law violation.

**D.    The Court should order the ineligible votes discounted and the election results retabulated.**

Like this Court held decades ago, "To permit unlawful votes to be counted along with lawful ballots in contested elections effectively 'disenfranchises' those voters who cast legal ballots, at least where the counting of unlawful votes determines an election's outcome." *James*, 359 N.C. at 270, 607 S.E.2d at 644. And the U.S. Supreme Court made the same point decades before that, reconfirming it in *Bush v. Gore*: "And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964), *quoted by Bush v. Gore*, 531 U.S. 98, 105 (2000).

This case is not the first time that an election protest has caught the State Board violating the law and counting unlawful ballots. In the 2004 general election, the Board "improperly counted provisional ballots cast outside voters' precincts of residence on election day." *James*, 359 N.C. at 269, 607 S.E.2d at 644. As this Court held, state law did not allow these voters to cast ballots. The issue came to the Court from an election protest. *Id.* at 263, 607 S.E.2d at 640. And like the violation of law here, that one too was "statutorily unauthorized" and resulted in "thousands of citizens" being denied "the right to vote on election day." *Id.* at 269, 607 S.E.2d at 644. Nonetheless, this Court unanimously held that

the error could not be remedied in a way to ensure the votes were counted: "This Court is without power to rectify the Board's unilateral decision to instruct voters to cast provisional ballots in a manner not authorized by State law." *Id.* at 270, 607 S.E.2d at 644. If the Court had simply permitted the State Board to count the statutorily unauthorized ballots, it would have disenfranchised those who cast lawful ballots: "To permit unlawful votes to be counted along with lawful ballots in contested elections effectively 'disenfranchises' those voters who cast legal ballots, at least where the counting of unlawful votes determines an election's outcome." *Id.*

Of course, Judge Griffin filed his election protests because unlawful votes have been counted, which has likely determined the election's outcome. Under *James*, the Board was required to discount the unlawful ballots. That is the normal result of a successful election protest. *See Bouvier*, 386 N.C. at 4, 900 S.E.2d at 843 ("Where the irregularity affects the accuracy of the election results, the county board of elections may order the ineligible ballots excluded from the vote total . . . .").

Before the State Board of Elections, there was discussion of whether the Board could order a post-election cure period for some of Judge Griffin's protests. But Justice Riggs's counsel adamantly opposed a cure opportunity, calling it unconstitutional and *ultra vires*. If there is to be no post-election cure opportunity, then the only remedy left is the *James* remedy: excluding the ineligible ballots.

## REQUESTED RULINGS AND RELIEF

In the interests of finality and expediency, Judge Griffin respectfully requests that the Court's order on the petition a writ of prohibition address every issue that has been raised in this proceeding. To summarize the preceding points, Judge Griffin requests that the Court hold:

(a)     Ballots cast by people who failed to provide their drivers license number or social security number when they registered to vote cannot be counted for this electoral contest.

(b)     Ballots cast by people who represented that "I am a U.S. citizen living outside the country, and I have never lived in the United States" cannot be counted for this electoral contest.

(c)     Ballots cast by overseas voters who did not present a photo identification cannot be counted for this electoral contest.

(d)     Judge Griffin's election protests were properly brought as election protests and were not required to be brought as voter challenges.

(e)     Judge Griffin's election protests do not require the removal of any person from the voter rolls.

(f)     All arguments under the NVRA, HAVA, the VRA, and the Civil Rights Act against the relief requested by Judge Griffin are rejected.

(g)    All arguments under the state or federal constitution that affected persons who cast ballots were improperly served or are due additional process are rejected.

(h)    All other arguments that the ballots cannot be discounted without violating the federal or state constitution are rejected.

(i)    This State Board is prohibited from counting the above-identified ballots, which were not lawfully cast.

## CONCLUSION

Judge Griffin respectfully requests that the Court issue a writ of prohibition prohibiting the Board from counting the unlawful ballots in the election for Seat 6 of the North Carolina Supreme Court and ordering the State Board correct the vote count.

This the 18th day of December, 2024.

<u>Electronically submitted</u>
Troy D. Shelton
N.C. State Bar No. 48070
tshelton@dowlingfirm.com
DOWLING PLLC
3801 Lake Boone Trail
Suite 260
Raleigh, North Carolina 27607
Telephone: (919) 529-3351

N.C. App. R. 33(b) Certification: I certify that the attorneys listed below have authorized me to list their names on this document as if they had personally signed.

Craig D. Schauer
N.C. State Bar No. 41571

cschauer@dowlingfirm.com
W. Michael Dowling
N.C. State Bar No. 42790
mike@dowlingfirm.com

Philip R. Thomas
N.C. State Bar No. 53751
pthomas@chalmersadams.com
Chalmers, Adams, Backer & Kaufman, PLLC
204 N Person Street
Raleigh, North Carolina 27601
Telephone: (919) 670-5185

*Counsel for the Honorable Jefferson Griffin*

# EXHIBIT N



By Tim Tsujii

Posted Wednesday, May 17, 2023

-
-

# 10 Facts About NC's Photo ID Requirement for Voting

RALEIGH, NC – The following are 10 facts about North Carolina's photo ID requirement for voting:

1. Voters will be asked to show photo ID when voting in North Carolina, starting with the 2023 municipal elections. Those elections occur in September, October, and November, depending on the town or city. (Find your local election details at ncsbe.gov/voting/upcoming-election.)
2. Most voters will simply show their NC driver's license, but many other types of photo ID will be accepted. See the list of acceptable IDs at ncsbe.gov/voter-id.
3. Voters without ID can get a "No Fee ID Card" from the NCDMV. Soon, voters will also be able to get a free ID from their county board of elections.
4. The State Board is developing a process for approving student and public employee IDs for voting. Lists will be added to the Voter ID website as soon as IDs are approved.
5. When a voter checks in to vote at a polling place, they will be asked to show an acceptable photo ID. Election workers check to see if the picture on the ID reasonably resembles the voter. The address on the photo ID does not have to match the voter registration records.
6. All voters will be allowed to vote with or without a photo ID. If the voter does not show an acceptable ID, the voter may vote with an ID Exception Form and a provisional ballot, or vote with a provisional ballot and return to their county board of elections office with their photo ID by the day before county canvass. (For municipal elections in September and October, this deadline is the Monday following Election Day. For all other elections, the deadline is the second Thursday following Election Day.)
7. Permitted exceptions to the photo ID requirement include the following: The voter has a reasonable impediment to showing photo ID (lack of transportation, lost or stolen ID, disability or illness, family responsibilities, etc.); the voter has a religious objection to being photographed; or the voter was a victim of a natural disaster within 100 days of Election Day.
8. When a registered voter cannot produce a photo ID, the county board of elections must count that ballot if the voter properly completes the ID Exception Form or brings an acceptable ID to their county board of elections before the county canvass.
9. Voters who vote by mail will be asked to include a photocopy of an acceptable ID inside the photo ID envelope that comes with their ballot. If they are unable to include a photocopy of their ID, they may complete an ID Exception Form with the absentee ballot return envelope. Photo ID is not required for military or overseas voters who vote using special absentee voting procedures that federal law makes available for such voters.
10. For more information, see ncsbe.gov/voter-ID and "FAQ: Voter ID". These web pages will be updated frequently with the latest information.

## Elections Director

Tim Tsujii, Elections Director

## Useful Links

State Board of Elections

N.C. General Assembly

Federal Election Commission

U.S. Election Assistance Commission

# Contact Us

Forsyth County Government Center
201 North Chestnut Street
Winston-Salem, NC 27101
Phone: 336 703 2800
Fax: 336 727 2893
Email: <u>Contact Us</u>
Hours of operation: 8am-5pm Monday-Friday

Connect with us:



**fcvotes**
ForsythBOE
161 followers
·
113 posts

View full profile on Instagram

Copyright © 2025 Forsyth County, North Carolina.

EXHIBIT O

# Military and Overseas Citizens

**The next elections are scheduled for May 2024.** See our <u>2024 Election Schedule</u> page for more information on the full 2024 election schedule.

Click <u>**this link to view the UOCAVA Election Notice**</u> for the May 14, 2024 Second Primary Election. See below for more information or click <u>this link to view our North Carolina State Board of elections website for more information</u>.

For information, the UOCAVA Election Notice for the November 5, 2024 General Election can be found through <u>this link</u>. *Important Note: this notice will be updated after the 05/24/2024 canvass meeting to include candidates selected from the May Republican Second Primary election.*

# Military and Overseas Absentee Voting
# Who is eligible to apply?

The following individuals, who are eligible to register and who are qualified to vote in any statewide primary or election held under the laws of North Carolina, and who are absent from the county of his or her residence are entitled to register and vote by military or overseas absentee ballot:

1. Members of the active or reserve components of the Army, Navy, Air Force, Marine Corps, or Coast Guard who are on active duty.
2. Members of the Merchant Marine, the commissioned corps of the Public Health Service, or the commissioned corps of the National Oceanic and Atmospheric Administration.
3. Members of the National Guard or state militia units on activated status.
4. Spouses and dependents of uniformed services members listed above.
5. U.S. Citizens residing outside of the country.

## How can I apply?

Military and/or Overseas voters may request through EITHER the <u>North Carolina Online Absentee Request Portal</u> OR by completing the <u>North Carolina State 2024 Absentee Ballot Request Form</u>. *Note: all previous versions of this form are obsolete.*

***Important note***: the Absentee Ballot Request Form is specific to the ONE election date. Please verify that the correct ONE date is selected on the form before completing and sending.

**Or**

Download the <u>Federal Post Card Application Form (FPCA)</u>. You must sign it (**no** computer-font signatures allowed) and then you may submit the form as detailed below.

Send **signed** (no computer-font signatures) and completed FPCA (or other forms) to:

Absentee Voting Department
Guilford County Board of Elections
PO Box 3427
Greensboro, NC 27402

**Or**

Fax **completed and signed** (no computer-font signatures) to: 336-641-4454.

**Or**

Email **completed and signed** (no computer-font signatures) attachment to absentee@guilfordcountync.gov.

The request must be signed before submitting it to the county board of elections. The deadline for individuals eligible under UOCAVA to register to vote and/or request an absentee ballot is 5 p.m. on the day before Election Day.

Only the voter may sign their FPCA or FWAB application. Family members may not sign these forms on the voter's behalf.

Any covered uniformed service or overseas voter that qualifies as listed above has the choice of either applying to register and/or vote through special programs such as using the FPCA (see link above) or FWAB or requesting a mail-in absentee ballot the same way as other registered voters. Access the Federal Voting Assistance website for more information.

# Returning the Ballot

Military or overseas voters may return their ballot, including an FWAB, via mail, fax or email. Additionally, a military or overseas voter who has submitted an FPCA or completed the UOCAVA portion of the North Carolina Absentee Request Form may use the UOCAVA portal to retrieve, mark, and return their ballot.

The deadline to return military and overseas ballots is the close of polls on Election Day (7:30 p.m. EST). If the ballot is received after the deadline, it will not be timely, unless the voter transmitted the ballot by 12:01 a.m. on the day of the election (voter time) and the county board receives the ballot by the last business day before the county canvass. The county canvass is typically conducted 10 days after a general election and 7 days after other elections. When returning the ballot by mail, no postmark is required.

Before returning the ballot, the military-overseas voter must sign the Affirmation of Military-Overseas Voter. The affirmation will be included in the instruction materials that are included with the blank ballot. If the balloting materials are mailed, then the affirmation is also on the back of the container-return envelope. Detailed instructions on returning the voted ballot are included with the absentee balloting materials sent to the voter.

If you have any questions, please contact us by email at absentee@guilfordcountync.gov, or call 336-641-6876, or visit the NC State Board of Elections website.

# EXHIBIT P

Election Services (/governing/depts/election/Default.aspx) ▼

Voting & Results (/governing/depts/election/voting-results.aspx) / Absentee Voting

# Absentee Dates And Deadlines

## 2024 Elections

|  | Primary: March 5, 2024 | Second Primary: May 14, 2024 | General: November 5th, 2024 |
|---|---|---|---|
| First Day to Request an absentee ballot: | January 1 | January 1 | January 1 |

|  | Primary: March 5, 2024 | Second Primary: May 14, 2024 | General: November 5th, 2024 |
|---|---|---|---|
| First Day Absentee Ballots sent out: | January 19 | April 2 | September 6 |
| Absentee Request Deadline: | Feb. 27 at 5pm | May 7 at 5pm | October 29 at 5pm |
| Absentee Return Deadline (In person): | March 5 at 7:30 pm | May 14 at 7:30 pm | November 5 at 7:30 pm |
| Absentee Return Deadline (Mailed): | Received by BOE March 5 at 7:30pm | Received by BOE May 14 at 7:30pm | Received by BOE November 5 at 7:30pm |

For more information on requesting and returning your absentee ballot, continue reading below.

View our Directory of Elected Officials (/common/election/elected-officials.pdf) to see what seats are reelected this year. Closer to the election, View Your Sample Ballot Here (https://vt.ncsbe.gov/RegLkup/)

---

# Requesting An Absentee Ballot



### ABSENTEE BALLOT REQUEST

Request Form

To receive an absentee-by-mail ballot you must complete an Absentee Ballot Request Form for each election. You can now visit the North Carolina Absentee Ballot Request portal (https://votebymail.ncsbe.gov/app/home) to complete your request. You can find a Absentee Ballot Request Form on our website or visit our office at 59 Woodfin Place, Asheville NC 28801. You can also call 828-250-4200 (tel:+18282504200) and we will mail you one.

**Return the request form in one of the following ways:**

- Mail it to: P.O. Box 7468, Asheville, NC 28802

- Hand deliver it to our office at 59 Woodfin Place, Asheville, 28801

If it is after the request deadline and a voter experiences a sudden or unexpected illness or disability that prevents them from going to a polling location, there are exceptions which would allow a near relative to obtain a ballot and deliver it to the voter. If you know a voter who requires this, please visit our office or call (828) 250-4200 (tel:8282504200) for more information.

You can request a ballot for any election in the calendar year beginning on January 1. A separate request form must be submitted for each election, unless you have an illness or disability and request to be sent a ballot for all elections in that year



# Returning An Absentee Ballot

Ballots will be mailed to voters who have submitted a completed Absentee Ballot Request Form.

The envelope we send will contain your ballot, a return envelope, and instructions.

- YOU ARE REQUIRED TO RETURN YOUR BALLOT IN THE DESIGNATED RETURN ENVELOPE WITH ALL APPLICABLE FIELDS CORRECTLY COMPLETED FOR YOUR BALLOT TO COUNT. The ballot return envelope has spaces for the signature of the voter and two witnesses, as well as the witnesses' addresses. You are required to have either two witnesses with addresses and signatures OR a valid notary signature. If we receive your ballot early enough, we will make every attempt possible to contact you to correct any deficiencies or missing information.

- Ballots may only be returned by the voter, the voters near relative, or the legal guardian. If you choose to return the ballot in person, it does not require postage.

**Absentee-By-Mail Voters**

- Voters who vote by mail must include a photocopy of an acceptable ID when returning their ballot, or they may complete an ID Exception Form. The voter places the photocopy of ID or ID Exception Form in a pocket on the outside of the ballot container envelope, which is then placed in an outer return envelope to protect the privacy of the voter.

**Acceptable Photo IDs for Voting**

Any of the following that is unexpired, or expired for one year or less:

- North Carolina driver's license

- State ID from the NCDMV (also called "non-operator ID")

- Driver's license or non-driver ID from another state, District of Columbia, or U.S. territory (only if voter registered in North Carolina within 90 days of the election)

- U.S. Passport or U.S. Passport card

- North Carolina voter photo ID card issued by a county board of elections (see Get a Free Voter Photo ID)

- College or university student ID approved by the State Board of Elections (see box below)

- State or local government or charter school employee ID approved by the State Board of Elections (see box below)

Note: A voter 65 or older may use an expired form of acceptable ID if the ID was unexpired on their 65th birthday.

Any of the following, regardless of whether the ID contains an expiration or issuance date:

- Military or veterans ID card (with photo) issued by the U.S. government

- Tribal enrollment card (with photo) issued by a tribe recognized by the State of North Carolina or the federal government

- ID card (with photo) issued by an agency of the U.S. government or the State of North Carolina for a public assistance program (Note: Although this is an acceptable form of ID under North Carolina law, the State Board is not aware of any such ID in circulation that contains a photo. All IDs for voting are required to have a photo.)

**Ballots can be returned in one of the following ways:**

1. By Mail
   - Ballots sent by mail must be postmarked on or before election day. If mailing your ballot close to the deadline, we recommend going into a post office and asking a post office official at the counter to postmark your ballot envelope as received. Otherwise, please

mail your ballot at least two weeks prior to the election, based on a history of missing postmarks and delays. Election law mandates ballots must be **received by the Board of Elections by 7:30pm the day of the election**.

2. In Person to an Early Voting Site
   - Ballots can be returned by the voter or near relative to any early voting site during early voting hours of operation. You must check in with an election official inside the precinct, which may mean waiting in line. You will hand your ballot to an election official at a computer station. During Early Voting, we will have a wait map available on our website so you can see the number of people in line.

3. In Person to the Elections Office
   - Ballots can be returned by the voter or near relative to our office at 59 Woodfin Place, Asheville NC 28801 during office hours, which are Monday-Friday, 8:00 am - 5:00 pm. You will need to fill out a short log sheet when handing your ballot in to an Election Services employee. **The deadline to return your ballot to the office is 7:30PM on Election Day**.



# Overseas And Military Voters

For information on voting overseas or military, please visit the Federal Voting Assistance Program website (http://www.fvap.gov).

**Notice:** You will need to print, sign and transmit these forms to either the State or Buncombe County Board of Elections.



# Locate & Contact

*Election Services*



Buncombe County Election Se...
59 Woodfin Pl, Asheville, NC 28801
5.0    4 reviews
Directions
View larger map

Buncombe County Election Services

## 👤 Contact

Election Services
P: (Phone) (828) 250-4200 (tel:+18282504200)
F: (Fax) (828) 250-6262

📍 **Election Services**
59 Woodfin Place
Asheville, NC 28801

## 🕐 Hours of Operation

Monday - Friday
8:00 a.m. to 5:00 p.m.

## ✉ Mailing Address

**Election Services**
PO Box 7468
Asheville, NC 28802-7468

## 💬 Social Media

**f**
(https://www.facebook.com/BuncombeCountyVotes/)
𝕏
(https://twitter.com/BuncombeCoVotes)

## ✈ Email Us

NOTE: All voter registration updates require a signed form. Please see Register to Vote (default.aspx?showRegModal=1) section for more information.

| Name |
| --- |

| Email |
| --- |

| Questions / Comments |
| --- |

**Verification:**

☐ I'm not a robot

reCAPTCHA
Privacy - Terms

SUBMIT

Explore BUNCOMBECOUNTY.org

Home (/default.aspx)

I Want To... (/i-want-to/default.aspx)

County Services (/governing/default.aspx)

About BC (/about-bc/default.aspx)

Site Index (/Governing/website-services/site-index.aspx)

Employee Access (/Governing/website-services/employee-services/default.aspx)

© 2022 - BUNCOMBE COUNTY GOVERNMENT

# EXHIBIT Q

Persons serving in the military and their dependents, who are away from their permanent home on Election Day, and U.S. citizens who are living abroad, have special voter registration and voting rights. They may apply to register and/or vote under a special law for military and overseas citizens. The **Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)** is a federal law that requires states to allow certain voters who are **absent** from their county of residence to have special rights that provide an expedited means to register and vote. In order to qualify under the provisions of UOCAVA in this state, a voter must be a legal resident of North Carolina.

Voters covered by UOCAVA include:

- A member of the active or reserve components of the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States who is on active duty.
- A member of the Merchant Marine, the commissioned corps of the Public Health Service, or the commissioned corps of the National Oceanic and Atmospheric Administration of the United States.
- A member of the National Guard or state militia unit who is on activated status.
- A spouse or dependent of a uniformed services member.
- U.S. citizens residing outside the United States.

Covered voters may use the **Federal Postcard Application (FPCA)** to register to vote and/or request an absentee ballot. They may also use the *State Absentee Request Form.*

In addition, covered voters may use a **Federal Write-in Absentee Ballot (FWAB)** to register to vote, request a ballot, and vote an official military-overseas ballot.

Military-overseas voters need to only apply for an absentee ballot by one of the methods mentioned.

## UOCAVA DEADLINES

The deadline for military-overseas voters to register to vote and/or request an absentee ballot is **5:00 p.m.** on the day before **Election Day**. The military-overseas voter may return his or her voted ballot, via mail, fax or email. The deadline to return military-overseas ballots is by the close of polls on **Election Day (7:30 p.m. EST)**.



For more information about Absentee Voting for **Civilians or Military-Overseas Citizens**, please visit our website at **www.ncsbe.gov** or call us at **(866) 522-4723.**



## NORTH CAROLINA
### State Board *of* Elections

**August 2014**



441 North Harrington Street
Raleigh, NC 27603

Phone: (919) 733-7173
Toll Free: (866) 522-4723
Fax: (919) 715-0135

Mailing Address:
P.O. Box 27255
Raleigh, NC 27611-7255

Email: Elections.sboe@ncsbe.gov

Visit our website:
**www.ncsbe.gov**

## ABSENTEE VOTING BY MAIL

Any registered North Carolina voter may request a mail-in absentee ballot. This type of absentee voting allows a voter, near relative (spouse, brother, sister, parent, grandparent, child, grandchild, mother-in-law, father-in-law, daughter-in-law, son-in-law, stepchild, or legal guardian), of a voter to request an absentee ballot by mail without an excuse.

## HOW TO REQUEST AN ABSENTEE BALLOT

To receive a mail-in absentee ballot for an election, a voter or the voter's near relative or legal guardian must use the **State Absentee Ballot Request Form** to request the ballot. Request forms are available on the State Board of Elections website and at county boards of elections offices. A signed and completed **State Absentee Ballot Request Form** must be received by the county board of elections office no later than **5:00 p.m.** on the last Tuesday prior to the date of the election for which the ballot is being requested. The form may be mailed, faxed, e-mailed or delivered in person to your county board of elections office.

## COMPLETING THE STATE ABSENTEE REQUEST FORM

The following information for the voter is **required** when completing the form:

1. Name and legal residential address
2. Date of birth
3. ID number (NCDMV driver license or identification card; last four digits of Social Security number)
4. Address where the ballot should be mailed
5. Signature

If a voter's near relative or legal guardian makes the request, the person must provide his or her:

1. Full name
2. Address
3. Signature

If an identification number is not provided on the form, the requestor must submit one of the following documents:

- A copy of a current and valid photo ID **or**

- A copy of one of the following documents that shows the name and address of the voter: a current utility bill; bank statement; government check, paycheck, or other government document.

If the ballot being requested is for a **partisan primary**, and the voter is registered *Unaffiliated*, the voter or requestor must indicate the ballot preference (the party primary in which the voter wishes to participate).

***Example:*** *State Absentee Ballot Request Form*



## BALLOT AVAILABILITY

Once a ballot is received, the county board of elections will mail the absentee voting materials to the voter. Ballots will be available:

- **50 days** in advance of the date of a primary or second primary election
- **60 days** in advance of a statewide general election
- **30 days** in advance of a municipal (city or town) election

## VOTING AN ABSENTEE BALLOT

In the presence of **two witnesses** (or one witness if the witness is a **notary-public**), the voter should mark the ballot according to instructions. Once the ballot is marked, the voter or a person assisting the voter must **seal** the ballot in the container-return envelope and must then **complete** the *Absentee Application and Certificate* on the back of the ballot container-return envelope. The voter's witnesses must **complete** and **sign** the envelope in the space designated as *Witnesses' Certification*. If someone assists the voter, the assister must sign and date the certificate as well.

## RETURNING THE BALLOT

The voted ballot (inside of the signed and completed *Absentee Ballot Container Return-Envelope*) must be returned either by the voter or the voter's near relative, no later than **5:00 p.m.** on **Election Day.** Voted ballots may be returned by mail or in-person to the county board of elections office or to any one-stop "early voting" site in the county.

## ALERT

Ballots received after 5:00 p.m. on Election Day will be timely ONLY if they are received at the county board of elections by mail bearing a postmark dated on or before the date of the election and are received no later than 5:00 p.m. on the third day following the election.

# EXHIBIT R



# FORSYTH COUNTY
## BOARD OF ELECTIONS

# Media Guide

★ ★ ★ NOVEMBER 5, 2024 ★ ★ ★

General Election



WWW.FCVOTES.COM

# TABLE OF CONTENTS

| Pages | Topics |
|---|---|
| 1 | Contact Information |
| 2 | About This Election |
| 3-4 | Photo ID Requirement |
| 5 | Electoral Profile |
| 6 | Voter Registration Statistics |
| 7 | Political Party Preference |
| 8-14 | Election and Board Meeting Schedule |
| 15 | Mail and Early Voting |
| 16 | Absentee By-Mail Instructions |
| 17 | Early Voting Schedule |
| 18-20 | Electioneering Guidelines |
| 21 | Media at Polling Place Guidelines |
| 22 | Election Night and Unofficial Results |
| 23 | Past Turnout Data |
| 24 | Canvass: Finalizing the Vote |
| 25-26 | FAQ |

# Contact Information

Forsyth County Board of Elections

201 North Chestnut Street

Winston Salem, North Carolina 27101

336-702-2800

Fax Number: 336-727-2893

fcvotes@forsyth.cc

www.fcvotes.com

Follow us on:

 

(@fcvotes)

Subscribe to receive emails about board meetings,
news updates, and voter resource tools at tiny.cc/fcboesubscribe

# ABOUT THIS ELECTION



**About this General Election:**

- In the 2024 General Election, there are a total 96 candidates and 1 state measure across all ballots.

## Partisan Offices

- President and Vice President (4 year term, every 4 years)
- United States Senator (2 seats, 6 year terms)
- United States Representative (2 year terms)
- Governor (4 year term)
- Council of State (4 year terms)
- State Senate and State House (2 year terms)
- Clerk of Superior Court (4 year term)
- Register of Deeds (4 year term)
- Sheriff (4 year term)
- District Attorney (4 year term)

- County Commissioner At Large (1 seat, 4 year term)
- County Commissioner District A (2 seats, 4 year terms)
- County Commissioner District B (4 seats, 4 year terms)
- Board of Education District 1 (2 seats, 4 year terms)
- Board of Education District 2 (4 seats, 4 year terms)
- Board of Education at Large (3 seats, 4 year terms)
- City of Winston-Salem – Mayor, 1 Council Member from each Ward (4 year terms)

## Partisan Judicial Seats

- Justice of NC Supreme Court (8 year terms)
- Judge of Court of Appeals (8 year terms)
- Judges of Superior Court District 31A, 31B, 31C & 31D (4 seats, 8 year terms)
- Judges of District Court (11 seats, 4 year terms)

## Nonpartisan Offices

- Soil and Water Conservation District Supervisor (3 seats, 4 year terms)



# Voter Photo ID Requirement

In general and municipal elections, North Carolina voters are asked to show photo ID when voting in North Carolina. If a voter cannot show photo ID when voting in person, they can still vote by filling out an ID Exception Form. Voters who vote by mail will be asked to include a photocopy of an acceptable photo ID or they can also fill out an ID Exception Form with their ballot when returning their ballot by mail.

For detailed information about the photo ID requirement, go to **ncsbe.gov/voter-ID**.



 ## WHAT PHOTO ID CAN I USE?

Any of the following that is **unexpired or expired for one year or less**:

- North Carolina Driver's License
- U.S. Passport Book/U.S. Passport Card
- State ID from NCDMV ("non-operator ID")
- NC Voter Photo ID card, issued by a county board of elections
- College/university student ID approved by State Board of Elections
- Charter school employee ID approved by State Board of Elections
- State/local government employee ID approved by State Board of Elections
- Driver's license/non-driver ID from another state, D.C. or U.S. territory

Any of the following, **regardless of whether the ID contains an expiration or issuance date**:

- Military or veteran ID card issued by the U.S. government
- Tribal enrollment card issued by a State or federally recognized tribe ID card issued by a U.S. government agency or the State of NC for a public assistance program. **(The State Board is not aware of any such ID in circulation that contains a photo. All IDs for voting are required to have a photo.)**

**NOTE:** Voters ages 65+ may use an expired ID if it was unexpired on their 65th birthday.

To see the complete list of acceptable photo IDs and details on how to request State Board approval for student and employee IDs, visit **ncsbe.gov/voter-ID**.

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 257 of 362

## WHAT IF I DON'T HAVE A PHOTO ID?

All voters **will be allowed to vote with or without a photo ID**. If any voter is unable to show a photo ID when voting, they may:

### FREE PHOTO ID CARDS

Any registered voter can get a free photo ID from their county board of elections. Contact information for county boards can be found at **vt.ncsbe.gov/BOEinfo**. Any North Carolina resident can get a free non-driver's ID from the NCDMV.



Vote with a **Provisional Ballot**, and...



Complete an **ID Exception Form**



**Bring acceptable ID to the county elections office** by the day before county canvass.

On the form, the voter will **choose from the following permitted exceptions**:

A "reasonable impediment" preventing them from showing ID.

A religious objection to being photographed.

A victim of a natural disaster within 100 days before Election Day.

Information regarding North Carolina's voter ID requirement is updated frequently; for the latest guidance on this law, acceptable types of photo ID, voting procedures, exceptions and more, visit **ncsbe.gov/voter-ID**.

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 258 of 362

# ELECTORAL PROFILE
### As of August 2024



### Registered Voters

## 267,851

# PROFILE OF THIS ELECTION



**Offices**
44



**Local Measures**
0



**County Measures**
0



**State Measures**
1



**Ballot Groups**
176



**Total Candidates Across all Ballots**
96



**Early Vote Sites**
18



**Election Precincts**
108



**Polling Places**
108



**Election Workers**
750
Approximate



**Est. Election Cost**
$1.47 million
Approximate



**Military and Overseas Voters**
571 (2020)

Case 5:24-cv-00731-M-RJ     Document 82-8     Filed 04/21/25     Page 259 of 362

# VOTER REGISTRATION STATISTICS
### As of August 2024



| Voters by Age | Registered | % of Registered |
|:---:|:---:|:---:|
| **<18*** | 687 | 0.25% |
| **18-25** | 36,371 | 13.64% |
| **26-40** | 66,687 | 25.01% |
| **41-65** | 100,174 | 37.56% |
| **Over 65** | 62,715 | 23.52% |
| **TOTAL** | 267,851 | |

*Citizens under the age of 18 may pre-register for primary elections if they will be 18 by the November election date

Case 5:24-cv-00731-M-RJ     Document 82-8     Filed 04/21/25     Page 260 of 362

# REGISTRATRION BY PARTY



| Qualified Parties | Registered | % of Registered |
|---|---|---|
| Democratic | 96,993 | 36.35% |
| Republican | 71,327 | 26.75% |
| Unafiliated | 96,057 | 36.02% |
| Libertarian | 1,655 | 0.62% |
| Green | 104 | 0.03% |
| No Labels | 498 | 0.18% |
| TOTAL | 267,851 | |

# 2024
# ELECTION SCHEDULE



**TUESDAY, MARCH 5, 2024**

**PRIMARY ELECTION**

**SECOND PRIMARY**

**May 14, 2024 for Federal Offices**



**TUESDAY, NOVEMBER 5, 2024**

**ELECTION DAY - GENERAL ELECTION**

**ABSENENTEE BALLOT RETURN DEADLINE**

# 2025
# ELECTION SCHEDULE



**TUESDAY, November 4, 2025**

## MUNICIPAL ELECTION

**(To be conducted in the Municipalities of Bethania, Clemmons, Kernersville, King, Lewisville, Rural Hall, Tobaccoville, and Walkertown)**



**TUESDAY ,NOVEMBER 11, 2025**

## VETERANS DAY

**FORSYTH COUNTY BOARD OF ELECTIONS**





FORSYTH COUNTY
BOARD OF ELECTIONS

# 2024 ELECTION SCHEDULE

| | |
|---|---|
| Tuesday, March 5, 2024 Primary Election | Polls open at 6:30 a.m. and close at 7:30 p.m. (G.S.163-166.25) Absentee Meeting 2:00 p.m. (G.S. 163-234(2)) Deadline for civilian absentee by-mail ballots and UOCAVA absentee ballots to be returned by 7:30 p.m. (G.S. 163-231 (b) (1)) (G.S.163-258-10))If mailed, must be received by 03/05/2024 no later than 7:30 p.m. Deadline for Unaffiliated Candidate Petitions to be submitted by 12:00 p.m. (G.S. 163-122 – State and County candidates) (S.L. 2017-214) |
| Friday, March 8, 2024 | **Hand-to-eye audit of ballots for the March 5, 2024, Primary Election at 10:00 a.m. in the Cooper-Caldwell Board Room (G.S. § 163-182.1(b)(1))** |
| Thursday, March 14, 2024 | The deadline for provisional voters to submit the HAVA document is 5:00 p.m. UOCAVA absentee by-mail ballots must be returned by a specific deadline. Absentee voters need to submit cure documentation by 5:00 p.m. The Supplemental Absentee Meeting starts at 2:00 p.m. |
| Friday, March 15, 2024 | **Canvass 11:00 a.m. (G.S. 163-182.5(b)** |
| Thursday, April 18, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Tuesday, May 14, 2024 | **Second Primary Election – If needed (G.S. 163-111(e) (S.L. 2023-140** |
| Thursday, May 16, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Monday, June 10, 2024 | **Candidate Filing for Soil and Water Conservation District begins at 12:00 p.m. (G.S.139-6** |
| Thursday, June 20, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Friday, July 5, 2024 | **Candidate Filing for Soil and Water Conservation District ends at 12:00 p.m. (G.S.139-6)** |
| Thursday, July 25, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Wednesday, August 7, 2024 | **Deadline for Unaffiliated Candidate Petition to be submitted. (G.S. 163-122) (S.L. 2017-72) For City of Winston-Salem candidates only** |
| Thursday, August 15, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Friday, September 6, 2024 | **Absentee by-mail ballots available to be mailed and UOCAVA absentee ballots available to be distributed (G.S. 163-227.10) (G.S. 163-258.9(a** |
| Thursday, September 19, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Tuesday, October 1, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f)** |

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 263 of 362



## 2024 ELECTION SCHEDULE

| | |
|---|---|
| Thursday, October 3, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Sunday, October 6, 2024 | **30-Day residency deadline (G.S. 163-82.15 (a)** |
| Tuesday, October 8, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Thursday, October 10, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Friday, October 11, 2024 | **Voter registration deadline. Forms must be postmarked or delivered in person by 5:00 p.m. (G.S. 163-82.20 (h)) & (G.S. 163-82.6 (d) (2))** |
| Tuesday, October 15, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f** |
| Thursday, October 17, 2024 | **Early Voting begins (G.S. 163-227.2 (b)) (G.S. 163-166.4)** <br> **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, October 22, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f)** |
| Thursday, October 24, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, October 29, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** <br> **Last day to request an absentee by-mail ballot by 5:00 p.m. (G.S. 163-230.1(a))** |
| Thursday, October 31, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f)** |
| Saturday, November 2, 2024 | **Early Voting ends at 3:00 p.m. (G.S. 163-227.2 (b)) (G.S. 163-166.4)** |
| Monday, November 4, 2024 | **Last day for UOCAVA voters to register and request an absentee by-mail ballot by 5:00 p.m. (G.S. 163-258.6 (a) (d)). Last day to request an absentee by-mail ballot due to sickness or disability – by 5:00 p.m. (G.S. 163-230.1 (b)).** |
| Tuesday, November 5, 2024 <br> **General Election** | **Polls open at 6:30 a.m. and close at 7:30 p.m. Absentee meeting at 2:00 p.m. Deadline for absentee ballots to be returned is by 7:30 p.m. on 11/05/2024.** |
| Friday, November 8, 2024 | **Hand-to-eye audit of November 5, 2024, General Election ballots at 10:00 a.m. in the Cooper-Caldwell Board Room as per G.S. § 163-182.1(b)(1).** |
| Thursday, November 14, 2024 | **Deadline for provisional voters to submit HAVA document by 5:00 p.m. (G.S. 163-166.16 (c)) (G.S. 163-82.4 (f))** <br> **Deadline for UOCAVA absentee by-mail ballots to be returned** <br> **Absentee voters to submit cure documentation by 5:00 p.m. (G.S.163-230.1(e) (08 NCAC 17 .0109** <br> **Supplemental Absentee Meeting starts at 2:00 p.m. (G.S. 163-234 (11))** |
| Friday, November 15, 2024 | **Canvass 11:00 a.m. (G.S. 163-182.5(b))** |



**FORSYTH COUNTY**
**BOARD OF ELECTIONS**

# 2024 BOARD OF ELECTIONS MEETING SCHEDULE

**Special meetings may be scheduled, and the schedule below is subject to change. They will be announced as soon as administratively possible**

| | |
|---|---|
| Tuesday, April 30, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, May 7, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Monday, May 13, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, May 14, 2024 Election Day – Second Primary | **Absentee Meeting 5:00 p.m. (G.S. 163-234(2))** |
| Friday, May 24, 2024 | **Supplemental Absentee Meeting 10:00 a.m. (G.S. 163-234(11))** |
| Friday, May 24, 2024 | **Canvass 11:00 a.m. (G.S. 163- 291(5))** |
| Thursday, June 20, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Thursday, July 25, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Thursday, August 15, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Thursday, September 19, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |
| Tuesday, October 1, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Thursday, October 3, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, October 8, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Thursday, October 10, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, October 15, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 265 of 362



# 2024 BOARD OF ELECTIONS MEETING SCHEDULE

**Special meetings may be scheduled, and the schedule below is subject to change. They will be announced as soon as administratively possible**

| | |
|---|---|
| Thursday, October 17, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, October 22, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Thursday, October 24, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, October 29, 2024 | **Absentee Meeting 5:00 p.m. (G.S. 163-230.1(f))** |
| Thursday, October 31, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Monday, November 4, 2024 | **Absentee Meeting 2:00 p.m. (G.S. 163-230.1(f))** |
| Tuesday, November 5, 2024 **General Election** | **Absentee Meeting 2:00 p.m. (G.S. 163-234(2))** |
| Thursday, November 14, 2024 | **Supplemental Absentee Meeting starts at 2:00 p.m. (G.S. 163-234 (11))** |
| Friday, November 15, 2024 | **Canvass 11:00 a.m. (G.S. 163-182.5(b))** |
| Thursday, December 19, 2024 | **Board Meeting (Regular) 3:00 p.m. (G.S. 163-31)** |

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    www.fcvotes.com  Page 266 of 362    14.

Forsyth County Board of Elections

# VOTE BY MAIL AND EARLY VOTING OPTIONS

## Absentee By Mail

Any North Carolina registered voter may request, receive, and vote a mail-in absentee ballot in elections where absentee voting is permitted. Learn about the general election in 2024 at www.fcvotes.com. Registered voters in North Carolina must request an absentee ballot with an official N.C. Absentee Ballot Request Form. There are two ways to access and submit the form:

1. Online:
   - "Option 1 – Request an Absentee Ballot" at the N.C. Absentee Ballot Portal.
2. On paper:
   - 2024 N.C. Absentee Ballot Request Form in English (fillable PDF)
   - 2024 N.C. Absentee Ballot Request Form in Spanish (download to come)
     - After completing, submit the form to your county board of elections or in person or by mail.

Track your absentee-by-mail ballot through the mail: Once you have requested your absentee ballot, you can track its status from printed to accepted by signing up online for status notifications through BallotTrax. BallotTrax will be available 30 days prior to each election in 2024.

## Early Voting

During the early voting period, voters may cast a ballot at any early voting site in their county. This is different than Election Day, when registered voters must vote at their assigned polling place. During the early voting period, eligible individuals may also register to vote and vote at the same time.

When you check in to vote at an early voting site, you may update your name or address within the same county if necessary. Individuals who are not registered to vote in a county may register and immediately vote at that same site. This process is called "same-day registration." Find more information at Register in Person During Early Voting. Although same-day registration is available for voters during early voting, same-day registration is not available for most voters on Election Day.

VOTE

## North Carolina
## Absentee Ballot Request Form for 2024

**2024**

### Request an absentee ballot

You can request an absentee ballot for 1 voter per form, for 1 election at a time.

The information that you provide on this form will be used to update your current voter record if signed by the voter. You may not change your party using this form.

If you are not registered, you must submit a voter registration form with this request.

**Fraudulently or falsely completing this form is a Class I felony under Chapter 163 of the NC General Statutes.**

### Instructions

**1: Election Date**
Request for 1 election per form.

**2: Voter name**
Provide your full legal name. If your name has changed, this form will be used to update your current voter record.

**3: Voter identification**
You must provide your date of birth **and** one of the following:

•A NC Driver's License or DMV ID card number
•The last 4 digits of your social security number

**4: Home address**
Provide the street address where you live as of today. If you are temporarily living away or displaced from the address where you live and you plan to return later, provide your residential (home) address for voting. **However**, if you have abandoned your place of residence and intend to stay at a new address indefinitely, you must provide your new address here. Signing in section 11 will update your voter registration. If your new address is in a different county, you will not be able to update your address using this form and will need to submit a new voter registration in your new county.

**5: Ballot mailing address**
Indicate where you would like your ballot to be sent. If you do not want your ballot to be sent to your residential or mailing address, provide another address here.

**6: Accessibility options**
Check if you require an absentee ballot for other possible elections in 2023 due to your continued or expected illness or disability. Check the 2nd box in section 6 if you require an accessible ballot due to blindness or visual impairment and provide your email in section 7 so that we may contact you when the ballot is available.

### How to return this form

Return your completed and signed form to your county board of elections by **5:00 pm on the Tuesday before the election.**

You can:
•Drop it off in-person
•Mail it

This form can only be returned by:
•The voter or the voter's near relative or verifiable legal guardian
•A Multipartisan Assistance Team
•A person who assisted by returning the form due to the voter's disability.

**7: Contact information**
This section asks for your contact information in case we have questions about this request. Provide contact information for the voter or if the voter did not fill out the form, contact information for the near relative, legal guardian, or assistant who filled out the form.

**8: Requesting a ballot for a voter**
A near relative or legalguardian may request a ballot for a voter but may not make changes to the voter's registration record. A near relative is a voter's:

• Spouse
•Brother or sister
•Parent or stepparent
• Mother/father-in-law
•Child or stepchild
• Son/daughter-in-law
• Grandparent/Grandchild
Any person may request an absentee ballot for a voter **who needs assistance making the request due to disability.** Under the Americans with Disabilities Act, a disability is a physical or mental impairment that causes someone to be substantially limited in a major life activity. *When requesting a ballot on behalf of a voter, the requester must complete and sign section 8.*

**9: Assisting a voter in filling out or re- turning this form**
If you are helping a voter fill out or return their form, complete this section. *The voter will still need to sign or make their mark in section 11.* Any voter may receive assistance from their near relative or verifiable legal guardian. A voter who needs assistance completing or returning their request form due to their blindness, disability, or inability to read or write may receive assistance from a person of their choice. **For voters living in a facility (clinic, nursing home, or adult care home) who do NOT require assistance due to a disability, certain limitations apply.**

### Return this form to:

### Questions?

**Skip the paper form and request online**
Complete, sign, and submit your request online at **votebymail.ncsbe.gov.**

The voter must first seek to have a near relative, legal guardian or Multipartisan Assistance Team (MAT) to assist with requesting a ballot. If none of these options is available within 7 days of making a request for a MAT, the voter may get assistance from anyone who is **not**:

•An owner, manager, director, or employee of the facility
•An elected official, a candidate, or an officeholder in a political party
•A campaign manager or treasurer for a candidate or political party

**10: Military or overseas**
Complete this section if you claim North Carolina as your voting residence and are:
•A U.S. citizen currently outside of the United States

**Or** a member of one of the following, **or** a spouse or dependent of a member of one of the following:
•The active or reserve components of the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States who is on active duty
•A member of the Merchant Marines, the Commissioned Corps of the Public Health Service, or the Commissioned Corps of the National Oceanic and Atmospheric Administration of the United States
•A member of the National Guard or State militia unit who is on activated status

**11:Voter's signature**
This form must be signed **by the voter** (unless a near relative or legal guardian or assistant is requesting a ballot on the voter's behalf and fills out section 8). If the voter cannot physically sign this form, they can make a mark. **A typed signature or signature fonts are not allowed.**

If you indicate that you have changed your name (section 2) or address (section 4), signing will update your voter registration.

# EARLY VOTING SCHEDULE
## NOVEMBER 5, 2024 – GENERAL ELECTION

### Dates and Times

| | | |
|---|---|---|
| Thursday - Friday | October 17-18 | 8:00 a.m. - 7:30 p.m. |
| Saturday | October 19 | 9:00 a.m. - 5:00 p.m. |
| Sunday | October 20 | 1:00 p.m. - 5:00 p.m. |
| Monday-Friday | October 21-25 | 8:00 a.m. - 7:30 p.m. |
| Saturday | October 26 | 9:00 a.m. - 5:00 p.m. |
| Sunday | October 27 | 1:00 p.m. - 5:00 p.m. |
| Monday - Friday | Oct. 28 - Nov. 1 | 8:00 a.m. - 7:30 p.m |
| Saturday | November 2 | 8:00 a.m. - 3:00 p.m. |

### Locations

**Brown & Douglas Neighborhood Center**
4725 Indiana Ave. – Winston-Salem

**Clemmons Branch Library**
6365 James St. - Clemmons

**First Tee at Winston Lake Golf Course**
3535 Winston Lake Rd. - Winston-Salem

**Kernersville Fire Station #42**
1180 NC 66 - Kernersville

**Lewisville Branch Library**
6490 Shallowford Rd. - Lewisville

**Little Creek Neighborhood Center**
610 Foxcroft Dr. - Winston-Salem

**Mazie Woodruff Center**
4905 Lansing Dr. – Winston-Salem

**Miller Park Community Center**
400 Leisure Ln. – Winston-Salem

**Old Town Neighborhood Center**
4550 Shattalon Dr. – Winston-Salem

**Paddison Memorial Branch Library**
248 Harmon Ln. - Kernersville

**Polo Park Community Center**
1850 Polo Rd. - Winston-Salem

**Rural Hall Branch Library**
7125 Broad St. - Rural Hall

**Sedge Garden Community Center**
401 Robbins Rd. – Winston-Salem

**Southside Branch Library**
3185 Buchanan St. - Winston-Salem

**Sprague Street Community Center**
1350 E. Sprague St. – Winston-Salem

**United Metropolitan Missionary Baptist Church**
450 Metropolitan Dr. - Winston-Salem

**Walkertown Branch Library**
2969 Main St. – Walkertown

**WSSU- Anderson Center**
1545 Reynolds Park Rd. – Winston-Salem

FORSYTH COUNTY
**BOARD OF ELECTIONS**



# GUIDELINES FOR ELECTIONEERING DURING ELECTIONS

**1- Conduct Outside of the Polling Place**
-Respect the right of all voters to participate in the election without fear of intimidation or violence. Intimidating any voter is a state and federal crime.
-Be courteous towards those at the voting place, regardless of any difference of opinion.
-Always remain civil and calm. While differences of opinion are expected and should be respected, resolve any disagreements or disputes amicably.
-Disagreements or disputes should not involve profanity or aggressive behaviors. -Confine electioneering and issue advocacy to designated areas outside of the voting place.
-Election officials strictly enforce the marked line beyond which no electioneering or loitering is permitted.

**2- Buffer Zone (G.S. 163-166.4 (a))**
-Breaching and moving the designated buffer zone is not permitted.
-No person or group of persons shall hinder access, harass others, distribute campaign literature, place political advertising, solicit votes, or otherwise engage in election-related activities inside the voting place or within a buffer zone.
-Dimensions of the buffer zone at each polling place shall be no more than 50 feet and no less than 25 feet from the entrance to the polling place.
-Electioneers may distribute campaign literature, place political advertising, and signage, solicit votes, or otherwise engage in election-related activity in the designated area outside the buffer zone.
-Not all polling locations allow for political signage or literature. You must verify the Restricted Polling Place List on the BOE website under the Polling Place tab.

**3- Area for Election-Related Activity (G.S. 163-166.4(b))**
-Volunteers and electioneers may distribute campaign literature, place political signs, solicit votes, and engage in election-related activities only outside of the designated buffer zone.
-Privately owned polling places might have restrictions on campaign literature and/or placement of political signs on their property on Election Day. Volunteers and electioneers must check the Restricted Polling Place List before every election, found on fcvotes.com under the tab Polling Places.

**4- Curbside Voting**

-The voter's vehicle is considered a voting place. Electioneers must respect it as such and not encroach on the designated curbside area. The buffer zone shall be at least six feet from the vehicle, and a greater distance if possible. Electioneers shall not enter the buffer zone.

-Approaching voters in their vehicles in the curbside area will not be tolerated.

**5- Party Observers and Runners (G.S. 163-45)**

-Only appointed observers and runners are permitted inside the voting place.

-The party chair must provide observer or runner's names to the Board of Elections before 10:00 a.m., five days prior to Election Day.

-An observer shall do no electioneering at the voting place and shall in no manner impede the voting process or interfere or communicate with or observe any voter in casting a ballot.

-The runner may receive a voter list from the precinct. No runner may enter the voting enclosure except when necessary to announce that runner's presence and to receive the list. The runner must leave immediately after being provided with the list.

**Example of Prohibited Acts That Illustrate Prohibited Behavior During Elections**

1- **Federal law prohibits those around the polling place from displaying badges, uniforms, or credentials that reasonable individuals would interpret to mean that the person is a law-enforcement officer (See 18 U.S.C. § 241 and Williams v. United States, 341 U.S. 97 (1951)).** Ex.: Individuals outside the buffer zone wearing "SECURITY" insignia and informing voters that they are "monitoring" the polling place.

2- **It is a crime to interfere with the ability of a voter to access the voting place. Individuals in the parking lot physically delay or prevent cars from parking.**

3- **No person may engage in election-related activity within the buffer zone. (G.S. 163-166.4(a)).** Ex.: A radio station is played over speakers inside the voting enclosure, and the broadcast includes political discussion or commentary.

Case 5:24-cv-00731-M-RJ   Document 82-8   Filed 04/21/25   Page 271 of 362

4- **It is a crime for any person to commit any boisterous act that disturbs any election official in the performance of his or her statutory duties (G.S. § 163-274(a)(5)).**
Ex.: Individuals use sound amplification to make racial slurs or otherwise insult those presenting to vote for their preferred candidate, and the chief judge has told the individual that their noise is causing a disruption inside the voting enclosure.

5- **It is a federal crime to intimidate, threaten, or coerce anyone to interfere with an individual's right to vote or not vote in an election; this includes conduct intended to force prospective voters to vote against their preferences (18 U.S.C. § 594).**
Ex.: Individuals outside the buffer zone threaten a voter if the voter does not vote for or against a particular candidate or party.

6- **It is both a violation of state and federal law for any voter to challenge an individual on the basis of their ethnicity, religion, language fluency, or national origin (G.S. § 163-90.1(a)).**
Ex.: An Individual attempts to enter a voter challenge without proper basis.

7- **Additional examples of voter intimidation.**
Ex.: An individual or individuals outside the buffer zone approach only voters who appear to be of a certain ethnic group to ask whether they speak English or to demand that they verify their citizenship.
Ex.: An individual or individuals outside the buffer zone follow a non-English speaker who is receiving assistance from a person of their choice and accuse them of committing voter fraud.
Ex.: An individual or individuals outside the buffer zone yell insults or profanity at people who received assistance in the voting enclosure.

**For questions or concerns regarding electioneering during elections, contact the Forsyth County Board of Elections at (336) 703-2800**



# GUIDELINES FOR MEDIA AT POLLING PLACES

**1- Conduct at Polling Places**

-The term media generally describes people affiliated with a television, radio or newspaper outlet. News media have a right to report on matters of public interest, including elections.

-The Chief Judge is the only election official authorized to interact with the media. Please remember to identify yourselves with your credentials when interacting with election officials.

**2- Buffer Zone**

-Any interviews or election polls must be conducted at least 50 feet from the entrance of the polling place. However, news cameras may be positioned near the doorway of a voting enclosure to record only panoramic, wide-angle views of the voting room. Photographers and videographers may not zoom in on ballots or voters. Media shall not block, interfere, obstruct, or disrupt the voting process, and shall not record any ballots or the tabulation of ballots. Photographing voters and poll workers is restricted so if a photo or recording includes voters and/or precinct officials, the media must obtain permission from the voters and/or precinct officials. Breaching and moving the designated buffer zone is not permitted.

-No person or group of persons shall hinder access, harass others, distribute campaign literature, place political advertising, solicit votes, or otherwise engage in election-related activities inside the voting place or within a buffer zone.

**3- Closing and Unofficial Results**

-After the polls close and all voters have left the enclosure, the media and public are allowed inside to observe the closing process but may not hinder operations of precinct officials.

-The Chief Judge may inform the media how many ballots have been cast at a precinct. However, media may not enter the voting enclosure to check the tabulator.

-Please do not ask officials for any opinions, guesses or predictions about the election. They may provide objective facts regarding the polling place but may not speculate on outcomes or turnout.



# REPORTING ELECTION RESULTS



### Early Votes Begin to Report

## 7:30pm

One-stop early votes and absentee by-mail votes that have been approved by the board of elections



### Precinct Results Begin to Report

## 8:30pm

Precinct officials hand-deliver results to the county board of elections

### After Election Night

Absentee ballots postmarked on or before Election Day and received by the county board of elections by the return deadline, as well as provisional votes, will be added to the results as they are approved by board during the canvass period after Election Night.

State Board, by a majority vote, may extend voting hours at a polling place if polls are delayed in opening for more than 15 minutes or are interrupted for more than 15 minutes. The Board may extend the closing time by an equal number of minutes.

## AFTER ELECTION NIGHT

### What is counted after Election Night?

Military or Overseas absentee ballots postmarked on or before Election Day and received by the county board of elections by the return deadline, as well as provisional votes, will be added to the results as they are approved by board during the canvass period after Election Night.

* The absentee ballot return deadline is now 7:30 p.m. Election Day, under Session Law 2023-140.

### Why are ballots counted after Election Night?

Absentee by mail and Provisional ballots returned on Election Day must be processed and verified before they can be counted and added to the results. In North Carolina, counties have 10 days to process, verify, and count these ballots – this period is known as the Official Election Canvass.

In a countywide election, there could be thousands of ballots left to be counted after polls close. Results reporting can extend past 1:00 am as precincts deliver their results.

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 274 of 362

# Past State Voter Turnout



| | | |
|---|---|---|
| November 2012 General Election 68.4% | November 2016 General Election 68.98% | November 2020 General Election 75.35% |

*MORE DATA AVAILABLE AT WWW.FCVOTES.COM

# CANVASS: FINALIZING THE VOTE

## Election Night

After polling places close at 7:30 PM on Election Day, all election results are secured and transported to be centrally compiled and posted at the Board of Elections, 201 North Chestnut Street Winston Salem, NC 27101. Election Night counts include ballots from precincts as well as One Stop Early Voting and Absentee by-Mail ballots received by Election Day.

## Finalizing the Official Vote Tally (Canvass)

Results on election night are unofficial. Canvass is the official process of determining the votes have been counted and tabulated correctly, resulting in the authentication of the official election results.

For close elections, the canvass period is especially important. During this time, elections officials count absentee ballots that came in before the deadline and research provisional ballots to determine whether they should be counted.

In every county, the canvass meeting when the results are certified is 10 days after Election Day. Because elections thrive on transparency, the canvass meeting is open to the public. Unless the county board unanimously votes for another site, the meeting will be held at the county board of elections office, per N.C.G.S. § 163-182.5.

Before the canvass meeting, the board must ensure that the sample hand-to-eye audit count and any discretionary or mandatory recounts have been completed.

Additionally, county boards confirm all eligible ballots have been counted, including:

- Ballots that were unable to be read in the precinct (ballot jams, torn ballots, etc.)
- Absentee ballots
- Provisional ballots

At the meeting, the board will prepare and sign all relevant, permanent public documents. The county board will retain one copy; a copy will be filed with either the clerk of Superior Court or, in the case of municipal elections, with the municipal clerk; and a copy will be provided to the State Board of Elections.

## Mandatory Hand-to-Eye Sample Audit

The sample audit count is a test to ensure voting equipment read the voter's choices accurately. It compares the machine counts with hand-to-eye counts conducted by elections officials in randomly selected voting sites. The sample audit count is open to the public and is completed before canvass. The day after the election, the State Board of Elections informs each county of their assigned contest and the two randomly selected samples (Election Day precinct, one-stop site, or absentee by mail ballots) to audit. For a presidential election, the contest audited is always the presidential contest. Selected ballots are hand-counted by a bipartisan team of elections officials.

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 276 of 362

# NOVEMBER 2024 GENERAL ELECTION FAQ

## VOTER REGISTRATION

### 🟡 HOW CAN I REGISTER TO VOTE?

▲ Complete a <u>voter registration form</u>, and then print and sign the form. Electronic signatures are NOT acceptable. Once finished, mail the form to our office at 201 N Chestnut St Winston Salem, NC 27101

▲ The form may also be dropped off in person to the same address Monday-Friday from 8-5 p.m. The deadline for voter registration for the 2024 general election is October 11th, 2024 at 5 p.m.

### 🟡 HOW CAN I CHECK MY REGISTRATION STATUS?

▲ Voters can check their registration status and information online at <u>https://vt.ncsbe.gov/RegLkup/</u> or call the Forsyth County Board of Elections at 336-703-2800.

### 🟡 CAN I VOTE IF I MISS THE REGISTRATION DEADLINE?

▲ Yes. Same-day registration is available for one-stop early voting, which begins after the registration deadline. However, voters who miss the registration deadline will not be able to vote on election day.

### 🟡 HOW AND WHEN SHOULD I UPDATE MY VOTER REGISTRATION?

▲ If a voter has moved, changed their name, or wants to change their political party affiliation, they can update their registration on their voter registration card and mail it to the Board of Elections. Alternatively, voters can update their registration by filling out, printing, and signing a new registration form and sending it to the Board of Elections.

## VOTE BY MAIL

### 🟡 WHEN CAN  I REQUEST MY ABSENTEE BY MAIL BALLOT?

▲ Absentee By-Mail requests must be made to the Board of Elections by the Tuesday before the election by 5:00 p.m.

### 🟡 HOW CAN I TRACK MY VOTE BY MAIL BALLOT?

▲ Once you have requested your absentee ballot, you can track its status from printed to accepted by signing up online for status notifications through <u>BallotTrax</u>

### 🟡 CAN I REQUEST A MAIL BALLOT FOR SOMEONE ELSE?

▲ Yes, a near relative ("near relative" means spouse, brother, sister, parent, grandparent, child, grandchild, mother-in-law, father-in-law, daughter-in-law, son-in-law, stepparent, or stepchild. § 163-230.2) or legal guardian may request that an absentee ballot be sent to another voter by mail

### 🟡 CAN I RECEIVE ASSISTANCE TO COMPLETE THE REQUEST FORM?

▲ If a voter, due to disability or illiteracy, is unable to complete the absentee ballot request form, the voter may receive assistance in completing the request form from an individual of the voter's choice.

### 🟡 WHEN DO I NEED TO SUBMIT MY BALLOT?

▲ Voters can return their ballot as soon as they receive it.

▲ All ballots MUST be returned to the Board of Elections by Election Day by 7:30 p.m.

▲ The Board of Elections can no longer accept absentee ballots postmarked before or on election day if they are received after the deadline.

# NOVEMBER 2024 GENERAL ELECTION FAQ

## VOTE BY MAIL

### 🟡 MILITARY OR OVERSEAS CITIZENS

🔺 Active duty military members, their dependents, and U.S. citizens living abroad may request an absentee ballot the same way as other registered voters. They may also apply to register and vote through special programs for military and overseas voters. Military and overseas voters may register and vote through the Federal Postcard Application (FPCA) or the Federal Write-in Absentee Ballot (FWAB)

### 🟡 WHAT ACCESSIBLE VOTING OPTIONS ARE AVAILABLE FOR ABSENTEE BY-MAIL?

🔺 If you are a blind or visually impaired voter, you can request, mark, and return an accessible absentee ballot online through a system that is compatible with screen readers and that allows for a digital signature.
If you live at a facility such as a hospital, clinic, or nursing home, find details about receiving assistance with mail-in voting and other services provided by a multipartisan assistance team (MAT).

## IN-PERSON VOTING

### 🟡 CAN I VOTE IN PERSON?

🔺 Yes. Voters will have the option to vote in person on election day at their assigned precinct, in addition to one-stop early voting and absentee by-mail.

### 🟡 HOW CAN I FIND MY PRECINCT?

🔺 Visit mapforsyth.org and use the voting districts and precincts tool to view your voting districts and precinct for election day voting.

🔺 To locate your precinct, consult the list of precinct locations at www.fcvotes.com using your precinct number.

### 🟡 WHEN CAN I VOTE IN PERSON?

🔺 Early In-person voting will be conducted at the Forsyth County Board of Elections from Thursday, Oct. 17, 2024 to 3 p.m. Saturday, Nov. 2, 2024.

### 🟡 HOW WILL I KNOW WHAT'S ON MY BALLOT?

🔺 Visit https://www.forsyth.cc/Elections/sample_ballot.aspx to see sample ballots for the upcoming election. Voters can view their specific sample ballot from their precinct can view composite sample ballots of all races.

### 🟡 DO I NEED TO PROVIDE IDENTIFICATION WHEN I VOTE?

🔺 Beginning with the 2024 municipal elections, North Carolina voters will be asked to show photo ID when they check in to vote. All voters will be allowed to vote with or without a photo ID.

🔺 To learn more about North Carolina's new photo ID requirement, go to **ncsbe.gov/voter-ID**.

Case 5:24-cv-00731-M-RJ    Document 82-8    Filed 04/21/25    Page 278 of 362

# EXHIBIT S

An official website of the State of North Carolina  How you know ⌄

ⓘ  State Government websites value user privacy. To learn more,
    view our full privacy policy (https://www.nc.gov/privacy).

🔒  Secure websites use HTTPS certificates. A lock icon or https:// means you've safely connected to the
    official website.

# Follow These Three Steps

Voting by mail in North Carolina takes three simple steps — requesting, completing, and returning a ballot. Find the information to complete each step by reading the text within each corresponding tab.

Note: If you are a blind or visually impaired registered voter in North Carolina, you can request, complete, and return an accessible absentee ballot online through a system that is compatible with screen readers and that allows for a digital or typed signature. Find detailed instructions at Accessible Absentee Voting (/voting/help-voters-disabilities/accessible-absentee-voting).

For details about North Carolina's next election, visit Upcoming Election (/voting/upcoming-election). For an overview of absentee-by-mail voting, see Vote By Mail (/voting/vote-mail).

| 1. Request a Ballot | 2. Complete a Ballot | 3. Return a Ballot |
|---|---|---|

You must be a registered voter to request an absentee ballot. If you have not yet registered to vote, you can find registration information at How to Register (/node/29).

## Complete an Absentee Ballot Request Form

Registered voters in North Carolina must request an absentee ballot with an official NC Absentee Ballot Request Form. There are two ways to access and submit the form:

1. **Online:** Option 1 at the [NC Absentee Ballot Portal](https://votebymail.ncsbe.gov/app/home).
2. **On paper:** 2025 NC Absentee Ballot Request Form (download will become available in 2025).
   - After completing, submit the form to your [county board of elections](https://vt.ncsbe.gov/BOEInfo/) or in person or by mail via the U.S. Postal Service, DHL, FedEx, or UPS.

*The deadline to request an absentee ballot is two weeks before Election Day; the deadline differs for [military and overseas citizen voters](/voting/military-and-overseas-voting) (/voting/military-and-overseas-voting).*

You must provide your date of birth and one of the following to verify your identity:

- North Carolina driver license number or NCDMV issued identification card number; or
- Last four digits of your Social Security number.

The request form must be signed by either the voter or the voter's near relative, or legal guardian. A typed signature is not allowed.

The on-paper absentee ballot request form can be mailed or returned in person to your county board of elections (contact information included). Your [county board of elections](https://vt.ncsbe.gov/BOEInfo/) must receive the completed and signed absentee request form by 5 p.m. the Tuesday before Election Day.

## Tip: Track Your Absentee Ballot

**Track your absentee-by-mail ballot through the mail:** Once you have requested your absentee ballot, you can track its status from printed to accepted by signing up online for status notifications through [BallotTrax](https://northcarolina.ballottrax.net/voter/) (https://northcarolina.ballottrax.net/voter/). BallotTrax will be available 30 days prior to the election.

## Who Can Request a Ballot for You

A near relative or legal guardian may request a ballot on behalf of the voter. A near relative is the voter's: Spouse, brother, sister, parent, grandparent, child, grandchild, mother-in-law, father-in-law, daughter-in-law, son-in-law, stepparent, or stepchild. If you need assistance requesting a ballot due to disability, you may choose any person to make that request for you.

## Who Can Assist You in Completing a Request

Most voters are only entitled to assistance from their near relative or verifiable legal guardian.

If a voter is unable to read or write, and a near relative or legal guardian is not available to assist that voter, the voter may request some other person to give assistance. That person must complete the assistance section of the absentee request form.

**Special note for disabled voters:** Any voter who needs assistance due to disability may receive assistance completing an absentee ballot request form from any person they choose.

## Assistance for Voters Who Are Patients in a Hospital, Clinic, Nursing Home, or Adult Care Home ("Facility")

Any registered voter in a facility may request assistance from a Multipartisan Assistance Team (MAT). A MAT is a group appointed by a county board of elections to assist voters in facilities with mail-in absentee voting. To schedule a MAT visit, contact your county board of elections.

**Important note:** Due to a federal court order issued in July 2022, an absentee voter who needs assistance due to disability may receive assistance from any person they choose. They may still request and use a MAT team, but they are not required to do so. They may receive assistance from the staff of the hospital, clinic, nursing home, or rest home where they are a patient or resident. They may also receive assistance from an elected official, political party officeholder, or candidate.

If the voter does not need assistance due to disability:

- It is unlawful for any owner, manager, director, or employee of the facility other than the voter's near relative, verifiable legal guardian, or member of a MAT to request an absentee ballot on behalf of a voter.
- If neither the voter's near relative nor verifiable legal guardian is available, and a MAT is not available within 7 calendar days of a request, the voter may obtain assistance from anyone who is not: An owner, manager, director, or employee of the facility; an elected official, a candidate, or an officeholder in a political party; or a campaign manager or treasurer for a candidate or political party.

## How to Complete Your Ballot

1. **Mark your ballot.**
   - Mark your ballot in the presence of a notary public or two witnesses. Your notary public or two witnesses should observe that you mark the ballot, not how you vote.
2. **Seal your ballot.**
   - Place your ballot in the return envelope that came with your ballot and seal the envelope. Don't put anything else into the envelope.
3. **Sign the envelope.**
   - Sign your name on the back of the envelope.
4. **Have your witnesses or notary public sign the envelope.**
   - Each witness will sign their name, print their name, and provide their full address on the back of the envelope.
   - Anyone who is 18 years of age or older can be a witness except a candidate (unless the candidate is your near relative or legal guardian or you are in a hospital, clinic, nursing home, or adult care home and are requesting the candidate's assistance due to disability).
   - See "Assistance with Returning Your Ballot" on the next tab for additional witness requirements.
   - Alternatively, you may have the application certified by one notary instead of two witnesses.
5. **If you received assistance, have the assistant sign the envelope.**
   - If you need assistance, your near relative or verifiable legal guardian may mark the ballot at your direction or help you fill out the envelope. If your near

relative or verifiable legal guardian is unavailable to assist you, you may receive assistance from another person.

- If you are a voter who is a patient in a hospital, clinic, nursing home, or adult care home ("facility"), you may receive assistance from a Multipartisan Assistance Team (MAT). A MAT is a group appointed by a county board of elections to assist voters in facilities with mail-in absentee voting. To schedule a MAT visit, contact your county board of elections (https://vt.ncsbe.gov/BOEInfo/). Unless a voter requests assistance due to disability, it is unlawful for any owner, manager, director, or employee of the facility other than the voter's near relative, verifiable legal guardian, or member of a MAT to assist a voter in completing their absentee ballot. A voter who needs assistance due to disability may choose any person who is at least 18 years old to provide assistance.
- If you received assistance with your ballot, the assistant must sign their name, print their name, and provide their full address on the back of the envelope.

6. **Include a copy of your photo ID.**
- Place a copy of an eligible photo ID in the clear sleeve on the back of your ballot envelope.
- If you are unable to provide a copy of a photo ID, complete and place the Photo ID Exception form (yellow form in your ballot package) into the clear sleeve.

7. **Seal and mail the ballot envelope.**
- Place the completed and sealed ballot envelope inside the absentee return envelope for mailing or delivering to an early voting site or your county board office.

## Two Ways to Return Your Ballot

1. **Mail your ballot:**
- Include correct postage on your ballot return envelope. Return postage is $1.77. Three Forever stamps (73 cents apiece) would cover this amount, for example.
- Your ballot must be *received* by your county board of elections by 7:30 p.m. on Election Day. *Note: State law previously provided for a grace period if your ballot was*

*postmarked on or before Election Day and received within three days after the election. That is no longer the case.*

2. **Return your ballot in person:**
   - You can return your ballot to your [county board of elections (https://vt.ncsbe.gov/BOEInfo/)](https://vt.ncsbe.gov/BOEInfo/) office or to an [early voting site (https://vt.ncsbe.gov/EVSite/)](https://vt.ncsbe.gov/EVSite/) in your county.
   - If returning to your [county board of elections (https://vt.ncsbe.gov/BOEInfo/)](https://vt.ncsbe.gov/BOEInfo/) office on Election Day, it must be received by 7:30 p.m.
   - You may *not* return your ballot to a polling place on Election Day.

## Who Can Return the Ballot?

According to state law, only you, or your near relative or legal guardian may mail or hand-deliver the Return Envelope. Do not give your balloting materials to a neighbor, friend, or stranger. A near relative is your: Spouse, brother, sister, parent, child, stepchild, grandparent, grandchild, stepparent, mother-in-law, father-in-law, daughter-in-law, or son-in-law. If you need assistance returning your ballot due to disability, these restrictions do not apply, and you may ask any person you choose to return your ballot.

## Assistance with Mailing Your Ballot

If you have a disability and need assistance mailing your ballot: You may direct an individual to immediately take the sealed envelope containing your ballot to the closest U.S. mail depository or mailbox. If you have a mailbox at your residence, the mailbox is the closest depository. The individual taking your sealed ballot to the closest depository or mailbox must sign the Voter Assistant Certification on the back of the ballot envelope.

# Related Content

- [Vote By Mail (/voting/vote-mail)](/voting/vote-mail)

# EXHIBIT T

# Federal Write-In Absentee Ballot

**Use this form if you are:**

- **On active duty in the Uniformed Services or Merchant Marine**

- **An eligible spouse or dependent**

- **A U.S. citizen living outside the United States**

■ If you do not receive your absentee ballot in enough time to meet your state's deadlines, use this ballot as a backup. If you send in this ballot and receive your state's ballot later, you should fill out and return your state ballot as well, noting that you had previously sent in this ballot. Your election official will count only one ballot.

■ The following require you to register and request an absentee ballot before filling out this form: AL, AS, AR, CT, FL, GU, HI, ID, IL, IN, KS, LA, NH, NJ, NM, NY, PA, PR, RI, SD, TX, WI, WV, and WY. If your state or territory is listed, complete a Federal Post Card Application (FPCA) online at FVAP.gov.

■ If you already registered and requested a ballot, send in the *Voter Information* page and the *Official Backup Ballot*.

■ Please be aware that some states will accept this form as registration and as an absentee ballot request for future elections.

## You can vote wherever you are. This is how.

1. Fill out your *Voter Information* page completely and accurately.

   - Your U.S. voting residence address is used to determine where you are eligible to vote absentee. For military voters, it is usually your last address in your state of legal residence. For overseas citizens, it is usually the last place you lived before moving overseas. You do not need to have any current ties with this address. DO NOT write a PO Box # in section 2.

   - Most states allow you to provide a Driver's License number or the last 4 digits of your SSN. New Mexico, Tennessee, and Virginia require a full SSN.

   - If you cannot receive mail at your current mailing address, please specify a mail forwarding address.

   - Many states require you to specify a political party to vote in primary elections. This information may be used to register you with a party.

   - **Section 6 Requirements:** Puerto Rico requires your mother's and father's first name. If registering in Vermont you must acknowledge the following by writing in section 6: "I swear or affirm that I have taken the Vermont Voter's Oath." Additional state guidelines can be found at FVAP.gov.

   - Remember to sign the bottom of the *Voter Information* page!

2. Carefully fill out and seal your *Official Backup Ballot.*

   - DO NOT sign your ballot or include any personal information. Keep your ballot anonymous.

   - If using a self-sealing form, remove the adhesive liner, fold and seal tightly.

   - If you printed out the form, fold the voted ballot and seal it in an envelope marked "ballot enclosed".

3. Assemble your documents for mailing.

   - Put your *Voter Information* page and *Official Backup Ballot* into the mailing envelope.

   - You can find the address for your election office at FVAP.gov.

   - All states accept this form by mail and many states accept this form by email and fax. See your state's guidelines at FVAP.gov.

### Agency Disclosure Statement

The public reporting burden for this collection of information, OMB Control Number 0704-0502, is estimated to average 15 mintues per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or burden reduction suggestions to the Department of Defense, Washington Headquarters Services, at whs.mc-alex.esd.mbx.dd-dod-information-collections@mail.mil. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
DO NOT SUBMIT YOUR FORM TO THE E-MAIL ADDRESS ABOVE.

### Privacy Advisory

**When completed, this form contains personally identifiable information and is protected by the Privacy Act of 1974, as amended.**

**Questions?**
**Email: vote@fvap.gov**

# Voter Information

Federal Write-In Absentee Ballot (FWAB)

Print clearly in blue or black ink, please see back for instructions.

**Have you already registered and requested an absentee ballot?**

Some states allow you to use this form to register and request ballots for future elections. Visit FVAP.gov for more details.

## 1. Who are you? Pick one.

For absent Uniformed Service members, their families, and citizens residing outside the United States.

☐ I am on active duty in the Uniformed Services or Merchant Marine **-OR-** ☐ I am an eligible spouse or dependent.
☐ I am a U.S. citizen living outside the country, and I intend to return.
☐ I am a U.S. citizen living outside the country, and my intent to return is uncertain.
☐ I am a U.S. citizen living outside the country, and I have never lived in the United States.

| Last name | | Suffix (Jr., II) | | ☐ Mr.   ☐ Miss |
|---|---|---|---|---|
| | | | | ☐ Mrs.   ☐ Ms. |
| First name | | Previous names (if applicable) | | |
| Middle name | | Birth date (MM/DD/YYYY) | /          / | |
| Social Security Number | ___ ___ ___ - ___ ___ - ___ ___ ___ ___ | Driver's license or State ID # | | |

## 2. What is your U.S. voting residence address?

Your voting materials will not be sent to this address. See instructions on other side of form.

| Street address | | Apt # | |
|---|---|---|---|
| City, town, village | | State | |
| County | | ZIP | |

## 3. Where are you now? You MUST give your CURRENT contact information.

| Your mailing address. (Different from above) | Your mail forwarding address. (If different from mailing address) |
|---|---|
| | |

## 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

| Email: | | Phone: | |
|---|---|---|---|
| Alternate email: | | Fax: | |

## 5. What are your preferences for future elections?

| A. Do you want to register and request a ballot for all elections you are eligible to vote in? | ☐ Yes ☐ No | B. How do you want to receive voting materials from your election office? | ☐ Mail ☐ Email or online ☐ Fax | C. What is your political party for primary elections? |
|---|---|---|---|---|

## 6. What additional information must you provide?

Alabama requires two witness signatures; Alaska, Virginia and Wisconsin, require one witness signature. Puerto Rico and Vermont need more information, see back for instructions. Additional state guidelines can be found at FVAP.gov.

## 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**

- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of election), eligible to vote in the requested jurisdiction, and
- I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.
- In voting, I have marked and sealed this ballot in private and have not allowed any person to observe the marking of this ballot, except those authorized to assist voters under State and Federal law.

 **Sign here X** _____ **Today's date (MM/DD/YYYY)**  /     /

This information is for official use only. Any unauthorized release may be punishable by law.     Previous editions are obsolete.     Standard Form 186 (Rev.09-2021), OMB No. 0704-0502

Case 5:24-cv-00731-M-RJ     Document 82-8     Filed 04/21/25     Page 288 of 362

# Official Backup Ballot

**Federal Write-In Absentee Ballot (FWAB)**

Print clearly in blue or black ink.

**Vote by writing the NAME or PARTY of the candidates you choose. To find out about specific federal candidates and races go to FVAP.gov.**

## Instructions

- The FWAB is intended to serve as a backup ballot. It can be used to vote for federal offices. Refer to your state or local election official for any special ballot instructions  (e.g., instant runoff voting or ranked choice voting).
- State laws vary on the use of the FWAB for state and local contests.  Learn more online at FVAP.gov.
- DO NOT write your name or any identifying number (SSN, driver's license) on this ballot.
- If you are voting in American Samoa, Guam, Puerto Rico, or the U.S. Virgin Islands, you may vote for Delegate or Resident Commissioner, and in presidential primaries.
- Photocopy this page if you require additional room for candidates or ballot initiatives.

### Federal offices

| | |
|---|---|
| President and Vice President | |
| U.S. Senator | |
| U. S. Representative, Delegate, or Resident Commissioner to Congress | |

### Other offices

| Office | Candidate name | Political party |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### Ballot initiatives or other items

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Standard Form 186 (Rev.09-2021), OMB No. 0704-0502

# Official Ballot

**Federal Write-In Absentee Ballot**

## Private

Fold your ballot and keep it private. Put it in the envelope.

# Before you seal this envelope:



1. **Sign and fold your *Voter Information* page.**
2. **Fold and seal your *Official Backup Ballot*.**
3. **Put both inside this envelope, and mail it to your election office. The address can be found at FVAP.gov.**



① Voter Information → Fold in half → Voter Information

② Ballot → Fold and seal → Official Ballot Private

③ Voter Info / Official Ballot Private → Mailing Envelope →

**For election officials:**

This is an official Federal Write-In Absentee Ballot authorized by 52 U.S.C. § 20301.

If you have questions about it, contact your State officials.

U.S. Postage Paid
39 USC 3406

PAR AVION



OFFICIAL
ELECTION MAIL
Approved by the U.S. Postal Service®

From

(Your name and mailing address.)

International airmail postage is required if not mailed using the
U.S. Postal Service, APO/FPO/DPO system, or diplomatic pouch.

**I have enclosed my ballot for the** _____ / _____ **election.**
MM    YYYY

OFFICIAL ABSENTEE BALLOTING MATERIAL – FIRST CLASS MAIL

NO POSTAGE NECESSARY IN THE U.S. MAIL – DMM 703.8.0

**To**

**(Fill in the address of your election office. The address can be found online at FVAP.gov.)**

# EXHIBIT U

<u>**TEMPORARY RULE**</u>

<u>**RRC STAFF OPINION**</u>

*P*LEASE *N*OTE: *T*HIS COMMUNICATION IS EITHER 1) ONLY THE RECOMMENDATION OF AN *RRC STAFF ATTORNEY AS TO ACTION THAT THE ATTORNEY BELIEVES THE *C*OMMISSION SHOULD TAKE ON THE CITED RULE AT ITS NEXT MEETING, OR 2) AN OPINION OF THAT ATTORNEY AS TO SOME MATTER CONCERNING THAT RULE. *T*HE AGENCY AND MEMBERS OF THE PUBLIC ARE INVITED TO SUBMIT THEIR OWN COMMENTS AND RECOMMENDATIONS (ACCORDING TO *RRC* RULES) TO THE *C*OMMISSION.*

AGENCY:     Board of Elections

RULE CITATION:  08 NCAC 17 .0109

RECOMMENDED ACTION:

    X       Approve, but note staff's comment

           Decline to approve, based on:

                Lack of statutory authority

                Unclear or ambiguous

                Unnecessary

                Failure to comply with the APA

           Extend the period of review

COMMENT:

*At its August 2019 meeting, the RRC approved the adoption of multiple temporary rules submitted by the Board of Elections, including this Rule. The temporary rules went into effect on August 23, 2019. Session Law 2019-239 was signed into law on November 6, 2019. The Act becomes effective January 1, 2020 and applies to elections conducted on or after that date. This Session Law amended several general statutes, including G.S. 163-230.1. This temporary rulemaking addresses the changes made by the Session Law.*

*The Board began the temporary rulemaking process set forth in G.S. 150B-21.1 by submitting the temporary rules to the Codifier on November 27, 2019. The agency held a public hearing on December 12, 2019. The Board closed the comment period on December 12, 2019. Therefore, the agency had a 10-business day comment period, rather than the 15-business day comment period set forth in G.S. 150B-21.1. In addition, the agency adopted on December 12, 2019, and did not give the Codifier or its interested persons the 30-business day notice required by G.S. 150B-21.1(a3)(1) and (2). Instead, the Board provided 10 business days for both.*

<center>Amanda J. Reeder
Commission Counsel
Issued December 16, 2019</center>

*Staff notes G.S. 150B-21.1(a)(11) states:*

**§ 150B-21.1.  Procedure for adopting a temporary rule.**

(a)      Adoption. - An agency may adopt a temporary rule when it finds that adherence to the notice and hearing requirements of G.S. 150B-21.2 would be contrary to the public interest and that the immediate adoption of the rule is required by one or more of the following:

 (11)      The need for the Bipartisan State Board of Elections and Ethics Enforcement to adopt a temporary rule after prior notice or hearing ==or upon any abbreviated notice or hearing the agency finds practical== for one or more of the following:

a.      In accordance with the provisions of G.S. 163A-742.

b.      To implement any provisions of state or federal law for which the Bipartisan State Board of Elections and Ethics Enforcement has been authorized to adopt rules.

c.      The need for the rule to become effective immediately in order to preserve the integrity of upcoming elections and the elections process.

*Staff notes that the former Bipartisan State Board of Elections and Ethics Enforcement was reconstituted as the Board of Elections in S.L. 2018-146, which became effective on December 27, 2018.  Therefore, staff believes that this temporary rulemaking process is governed by G.S. 150B-21.1(a)(11), and the timelines set forth in G.S. 150B-21.1(a2) and (a3) do not apply.  The RRC agreed with staff's interpretation of the law when it approved this temporary rule in August 2019, as the Board operated under a truncated timeframe for that temporary rulemaking, as well.*

*Staff further notes that S.L. 2019-239, section (1.6) authorized the Board to adopt emergency rules to implement the Session Law.  However, staff notes that emergency rules are only effective for about 60 days, so they would not remain effective through the primary season if implemented through that rulemaking process. The express exemption in G.S. 150B-1.1(a)(11) from the timeframes in G.S. 150B-21.1 allowed the Board to act nearly as quickly to implement temporary rules and those rules can remain in effect for up to 270 day.  Therefore, staff believes the Board has authority to implement this rule change via temporary rulemaking.*

*Staff recommends approval of the Rule submitted for inclusion in the NC Administrative Code as a temporary rule.*

Amanda J. Reeder
Commission Counsel
Issued December 16, 2019

1    08 NCAC 17 .0109 is proposed for amendment under temporary procedures as follows:

2

3    **08 NCAC 17 .0109          PHOTO IDENTIFICATION FOR ABSENTEE BALLOTS**

4    (a)  Definitions. The following definitions apply to this Rule:

5          (1)      "Readable" means that the name on the identification can be read and that the photograph is not

6                    blurry and depicts a person who is distinct and distinguishable from another person.

7          (2)      "Copy" means a duplicate of an original document, including a photographic copy of the original

8                    document. It does not include displaying an image on an electronic device.

9    (b)  Identification Requirement for Absentee Ballot Request Form. A completed written request form for an absentee

10   ballot shall include a readable electronic or physical copy of the identification required by G.S. 163A-1145.1(a)

11   displaying a name that is the same or substantially equivalent to the name contained in the registration record as

12   provided in 08 NCAC 17 .0101(c)(4). The election official shall make this determination based on the totality of the

13   circumstances, construing all evidence, along with any explanation or documentation voluntarily proffered by the

14   person presenting to vote, in the light most favorable to that person. The election official shall not require any

15   additional evidence outside the four corners of the photo identification. If the name on the identification is substantially

16   similar to the name listed on the registration record and the identification is readable, the county board of elections

17   shall presume that the person depicted in the photograph on the identification provided is the voter. It is not required

18   that the address on the identification match the residential address provided on the request form or the address on the

19   registration record.

20   (c)  Exceptions. The exceptions provided in G.S. 163A-1145.1(d) for voters voting in person shall apply to absentee

21   by mail voters. The reasonable impediment exception under G.S. 163A-1145.1(d)(2) shall include lack of access to a

22   method to attach an electronic or physical copy of the identification card to the request. The following additional

23   exceptions shall apply to absentee by mail voters:

24         (1)      Religious Objection Exception. After the voter's ballot is counted, if a voter claims the religious

25                   objection exception under G.S. 163A-1145.1(d)(1) and completes the prescribed affidavit, the

26                   religious objection exception shall be noted on the voter's registration record. In future elections that

27                   voter shall not be required to show photo identification under G.S. 163A-1145.1 or this Rule, or

28                   claim an exception under G.S. 163A-1145.1(d), until the voter either:

29                   (A)     notifies the county board of elections in writing that the voter no longer holds a religious

30                            objection to being photographed;

31                   (B)     provides photo identification in a future election; or

32                   (C)     claims an exception under G.S. 163A-1145.1(d)(2) or (d)(3) in a future election.

33         (2)      Annual Requests by Persons with Sickness or Physical Disability. If an applicant for an absentee

34                   request form reports in the application that the voter has a sickness or physical disability that is

35                   expected to last the remainder of the calendar year pursuant to G.S. 163A-1295(b) and satisfies the

36                   photo identification requirement under Paragraph (b) of this Rule or the voter completes an

37                   alternative affidavit pursuant to G.S. 163A-1145.1(d), the photo identification requirement shall be

| 1 | | met for all of the primaries and elections held during the calendar year when the application is |
| 2 | | received. |
| 3 | (3) | Applications for Absentee Ballots for Voting in Second Primary or Runoff Election. A voter who is |
| 4 | | automatically issued an application and absentee ballot for a second primary pursuant to G.S. 163A-|
| 5 | | 1299 or a runoff election shall not be required to submit a copy of acceptable photo identification |
| 6 | | under Paragraph (b) of this Rule or claim an exception under G.S. 163A-1145(d) with the absentee |
| 7 | | ballot and container-return envelope for the second primary or runoff election. |
| 8 | (4) | Covered Voters Under the Uniform Military and Overseas Voter Act. A covered voter who is casting |
| 9 | | a ballot pursuant to Part 2 of Article 21 of Chapter 163A of the General Statutes shall not be required |
| 10 | | to submit a copy of acceptable photo identification under Paragraph (b) of this Rule or claim an |
| 11 | | exception under G.S. 163A-1145(d). |

(d) Delivery of Absentee Ballots and Certification Form. If a voter is confirmed as a registered voter of the county, the absentee ballots and certification form shall be mailed to the voter, unless personally delivered in accordance with G.S. 163A-1308(b), even if the voter does not provide the identification required by G.S. 163A-1309(a)(4) and this Rule with the request. However, the voter shall provide identification or claim an exception under G.S. 163A-1145.1(d) prior to the counting of the voter's absentee ballot. If the voter provides the identification required by this Rule or claims an exception under G.S. 163A-1145.1(d) with the absentee ballot request form, the voter is not required to attach additional documentation to the container-return envelope.

(e) Valid Absentee Ballot Request Forms Requiring Further Action.

| 20 | (1) | The county board of elections shall include with the absentee ballots and certification form a letter |
| 21 | | notifying the voter that the voter's request is valid under G.S. 163A-1309(a) but that further action |
| 22 | | is needed by the voter to comply with the identification requirements, if any of the following apply: |
| 23 | | (A) | The voter does not submit the identification required by G.S. 163A-1309(a)(4). |
| 24 | | (B) | The voter does not claim an exception under G.S. 163A-1145.1(d). |
| 25 | | (C) | The voter includes an unreadable copy of the identification required by G.S. 163A-|
| 26 | | | 1309(a)(4). |
| 27 | | (D) | The identification does not meet the expiration date requirements under G.S. 163A-|
| 28 | | | 1145.1(a). |
| 29 | | (E) | The voter provides a type of identification not listed under G.S. 163A-1145.1(a). |
| 30 | | (F) | The voter provides identification displaying a name that is not the same as or substantially |
| 31 | | | similar to the name on the voter record as required pursuant to Paragraph (b) of this Rule. |
| 32 | | (G) | The exception affidavit is incomplete, either because there is no signature or, in the case of |
| 33 | | | a reasonable impediment exception under G.S. 163A-1145.1(d)(2), the voter did not |
| 34 | | | complete the reasonable impediment declaration form under G.S. 163A-1145.1(d1). |
| 35 | | (H) | The voter indicates she or he will provide identification at a later time. |
| 36 | (2) | The letter required in Subparagraph (1) of this Paragraph shall provide the voter with the following |
| 37 | | options: |

<table>
<tr><td>1</td><td>(A) At any point between the submission of the absentee ballot request form and 5:00 P.M. on</td></tr>
<tr><td>2</td><td>the day before the county canvass, provide the documentation necessary to comply with</td></tr>
<tr><td>3</td><td>the identification requirements via email, mail, or in person.</td></tr>
<tr><td>4</td><td>(B) Attach to the absentee ballot container return envelope the documentation necessary to</td></tr>
<tr><td>5</td><td>comply with the identification requirements pursuant to G.S. 163A-1307(b)(8).</td></tr>
</table>

6 (f) Counting of Absentee Ballots. Prior to the transmission of absentee ballots pursuant to G.S. 163A-1308(e), the

7 county board of elections shall notate the voter's ID status on the container return envelope for a voter who requires

8 further action pursuant to Subparagraph (e)(1) of this Rule. The county board of elections shall, at the first meeting

9 held pursuant to G.S. 163A-1308(f) to pass upon applications for absentee ballots after the absentee ballot is received,

10 consider whether the voter has complied with the photo identification requirements in G.S. 163A-1145.1(a) and this

11 Rule or whether an exception applies under G.S. 163A-1145.1(d). In its determination, the county board shall construe

12 all evidence in the light most favorable to the voter. If an exception applies, the county board of elections shall review

13 the affidavit provided. Absent any other reason provided by law for disapproving absentee ballots, if the county board

14 of elections determines that the registered voter is unable to provide proof of identification and the voter has completed

15 the required affidavit in G.S. 163A-1145.1(d), the county board of elections shall find that the absentee ballot is valid

16 unless the county board has grounds to believe the affidavit is false. A decision that the absentee ballot is not approved

17 because the affidavit provided under G.S. 163A-1145.1(d) is false shall require a unanimous vote by the county board

18 of elections. If the voter fails to submit acceptable photo identification pursuant to G.S. 163A-1145.1(a) and this Rule

19 or fails to submit a completed alternative affidavit pursuant to G.S. 163A-1145.1(d) with the container return

20 envelope, the mailed ballot shall be treated in the same manner as a mail-in absentee ballot under G.S. 163A-1144(e).

21 (g) Photocopy Requirement. The county board of elections shall allow any person seeking to vote by absentee ballot

22 the use of a photocopying device to make one photocopy of the voter's form of photo identification.

23 (h) Return of original form of identification. If a voter sends his or her original form of photo identification with either

24 the absentee request form or in the container return envelope, the county board of elections shall make a photocopy

25 of the identification and mail the identification back to the voter.

26 (i) Retention of Copies of Photo Identification and Exception Affidavits. Copies of photo identification and alternative

27 affidavits shall be retained according to the same schedule for absentee ballot applications under G.S. 163A-1313,

28 except that copies of religious objection affidavits shall be retained in the Statewide computerized voter registration

29 system maintained under G.S. 163A-874 until the voter ends this exemption pursuant to the methods listed in Parts

30 (e)(1)(A) through (C).

31 (a) Definitions. The following definitions apply to this Rule:

<table>
<tr><td>32</td><td>(1)</td><td>"Readable" means that the name on the identification can be read and that the photograph is not</td></tr>
<tr><td>33</td><td></td><td>blurry and depicts a person who is distinct and distinguishable from another person.</td></tr>
<tr><td>34</td><td>(2)</td><td>"Copy" means a duplicate of an original document, including a photographic copy of the original</td></tr>
<tr><td>35</td><td></td><td>document. It does not include displaying an image on an electronic device.</td></tr>
<tr><td>36</td><td>(3)</td><td>"Verifiable legal guardian" has the same meaning as in G.S. 163-226(e).</td></tr>
<tr><td>37</td><td>(4)</td><td>"Near relative" has the same meaning as in G.S. 163-226(f).</td></tr>
</table>

1   (b)  Identification Requirement for Absentee by Mail Ballots. Each container-return envelope returned to the county
2   board of elections with application and voted ballots shall include a copy of the identification required by G.S. 163-
3   166.16(a) or an affidavit as described in G.S. 163-166.16(d)(1), (d)(2), or (d)(3). The copy of identification must be
4   readable and must display a name that is the same or substantially equivalent to the name contained in the registration
5   record as provided in 08 NCAC 17 .0101(c)(4). It is not required that the address on the identification match the
6   residential address provided on the request form or the address on the registration record.

7   (c)  Incomplete Application for a Photo Identification-Related Reason. If the county board of elections receives an
8   absentee application and voted ballots prior to the deadline provided in G.S. 163-231(b), its staff shall make an initial
9   assessment of whether the voter provided a copy of photo identification and if not, whether the voter completed an
10  alternative affidavit. If, after this initial assessment, the copy of the photo identification is not readable, the voter did
11  not provide a copy of photo identification or an alternative affidavit, or the alternative affidavit is not signed or is
12  otherwise not complete, the county board of elections staff shall notify the voter in writing that the voter, the voter's
13  verifiable legal guardian, or the voter's near relative may mail or bring in person the voter's acceptable photo
14  identification under G.S. 163-166.16(a), a readable copy of the voter's acceptable photo identification, or a completed
15  alternative affidavit, to the county board of elections by the deadline specified in G.S. 163-82.4(f).

16  (d)  Exceptions. The exceptions provided in G.S. 163-166.16(d) for voters voting in person shall apply to absentee by
17  mail voters. The reasonable impediment exception under G.S. 163-166.16(d)(2) shall include lack of access to a
18  method to attach a physical copy of the identification card to the request. A covered voter who is casting a ballot
19  pursuant to Part 1 of Article 21A of Chapter 163 of the General Statutes is not required to submit a copy of acceptable
20  photo identification under Paragraph (b) of this Rule or claim an exception under G.S. 163-166.16(d).

21  (e)  Counting of Absentee Ballots. The county board of elections shall, at the first meeting held after the ballot is
22  received pursuant to G.S. 163-230.1(f) to pass upon applications for absentee ballots, consider whether the voter has
23  complied with the photo identification requirements as follows:

24      (1) Review of photo identification.  The county board of elections shall review the photo identification
25          submitted and shall determine the following:

26          (A)    That the photo identification is readable as defined in Subparagraph (a)(1);

27          (B)    That the photo identification meets the expiration date requirements provided in G.S. 163-
28                 166.16(a); and

29          (C)    That the name appearing on the photo identification is the same or substantially equivalent
30                 to the name contained in the registration record pursuant to 08 NCAC 17 .0101(c)(4). If
31                 the name on the identification is substantially equivalent to the name listed on the
32                 registration record, the county board of elections shall presume that the person depicted in
33                 the photograph on the identification provided is the voter.

34      In making its determination under this Subparagraph, the county board of elections shall not require any
35          additional evidence outside the four corners of the photo identification and shall make the
36          determination based on the totality of the circumstances, construing all evidence in the light most
37          favorable to the voter. A decision that the absentee ballot is not approved because the name listed

1   on the photo identification is not the same as or substantially equivalent to the name on the

2   registration record shall require a unanimous vote by the county board of elections.

3   (2) Review of alternative affidavit. Absent any other reason provided by law for disapproving absentee

4   ballots, if the voter has completed the required affidavit in G.S. 163-166.16(d), the county board of

5   elections shall find that the absentee ballot is valid unless the county board has grounds to believe

6   the affidavit is false. A decision that the absentee ballot is not approved because the affidavit

7   provided under G.S. 163-166.16(d) is false shall require a unanimous vote by the county board of

8   elections.

9   If the voter fails to submit in the container-return envelope a copy of acceptable photo identification pursuant to G.S.

10  163-166.16(a) or an alternative affidavit under G.S. 163-166.16(d), the copy of the photo identification is not readable,

11  or the alternative affidavit is not signed or is otherwise not complete, the mailed ballot shall be treated in the same

12  manner as a mail-in absentee ballot under G.S. 163-166.12(e). The voter, the voter's verifiable legal guardian, or the

13  voter's near relative may mail or bring in person the voter's acceptable photo identification under G.S. 163-166.16(a),

14  a readable copy of the voter's acceptable photo identification, or a completed alternative affidavit, to the county board

15  of elections by the deadline specified in G.S. 163-82.4(f).

16  (f)  Photocopy Requirement. The county board of elections shall allow any person seeking to vote by absentee ballot

17  the use of a photocopying device to make one photocopy of the voter's form of photo identification.

18  (g)  Return of original form of identification. If a voter sends his or her original form of photo identification in the

19  container-return envelope, the county board of elections shall make a photocopy of the identification and mail the

20  identification back to the voter.

21  (h)  Retention of Copies of Photo Identification and Alternative Affidavits. Copies of photo identification and

22  alternative affidavits shall be retained according to the same schedule for absentee ballot applications under G.S. 163-

23  233. Copies of photo identification associated with the absentee ballot are not public record.  The alternative affidavit

24  is a public record, but the voter's signature may only be viewed in the county board of elections office and cannot be

25  retained or traced.

26

27  *History Note:*     Authority G.S. ~~163A-1145.1; 163A-1307; 163A-1309(f); 163A-1319;~~ *163-166.16; 163-230.1; 163-*

28              *233; S.L. 2018-144, s. 1.2.(e), (i); S.L. 2019-239.*

29              *Temporary Adoption Eff. August 23, 2019.*

30              *Temporary Amendment Eff. January 6, 2020.*

# EXHIBIT V

**NORTH CAROLINA**
**STATE BOARD OF ELECTIONS**

*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611

(919) 814-0700 or
(866) 522-4723

*Fax:* (919) 715-0135

# Numbered Memo 2021-03

**TO:**       County Boards of Elections

**FROM:**    Karen Brinson Bell, Executive Director[1]

**RE:**       Absentee Container-Return Envelope Deficiencies

**DATE:**    June 11, 2021 (updated September 25, 2023; January 19, 2024)[2]

---

The State Board is required to provide a cure process for voters whose absentee ballot envelopes contain certain deficiencies.[3] In general, the cure process for absentee-by-mail deficiencies is guided by G.S. § 163-230.1(e), as amended by Session Law 2023-140 (SB 747), and this numbered memo. The cure process for photo ID documentation containing deficiencies, when that documentation is submitted with an absentee ballot, is provided through G.S. § 163-230.1(e), as amended by Session Law 2023-140, an administrative rule adopted by the State Board[4], and is guided by this numbered memo. County boards of elections must ensure that the votes of all eligible voters are counted using the same standards, regardless of the county in which the voter resides.

The ballot container-return envelope (ballot envelope) and the accompanying photocopy of the voter's photo ID or completed Photo ID Exception Form (photo ID documentation) are transmitted to the county board in an outer return envelope. This numbered memo directs the procedure county boards must use to address deficiencies in the envelopes and photo ID

---

[1] This memo is issued under the authority delegated by the State Board to the executive director pursuant to G.S. § 163-22(p).

[2] This numbered memo replaces Numbered Memo 2020-19, which was first issued on August 21, 2020 and subsequently revised and reissued on September 22, 2020, and October 17, 2020. This numbered memo was updated on September 25, 2023, and again on January 19, 2024, to include processes related to photo ID requirements for absentee-by-mail voting.

[3] See G.S. § 163-230.1(e), revised by N.C. Session Law 2023-140 § 35, to provide a cure process for deficiencies associated with returned absentee-by-mail ballots. *See also Democracy NC v. State Board of Elections*, 476 F.Supp.3d 158 (M.D.N.C. Aug. 4, 2020) (explaining that due process requires such a cure opportunity).

[4] 08 NCAC 17 .0109(b).

documentation, to ensure that a voter is provided every opportunity to correct certain deficiencies, while also recognizing that processes must be manageable for county boards to timely complete required tasks.

## No Signature Verification[5]

Verification of the voter's identity is completed through the witness requirement. The voter's signature on the envelope shall not be compared with the voter's signature in their registration record, on their request form, or on their photocopy of photo ID or Photo ID Exception Form submitted with their ballot, because this is not a requirement for the approval of an absentee ballot under North Carolina law.[6] County boards shall accept the voter's signature on the ballot envelope if it appears to be made by the voter, meaning the signature on the envelope appears to be the name of the voter and not some other person. Absent clear evidence to the contrary, the county board shall presume that the voter's signature is that of the voter, even if the signature is illegible. A voter may sign their signature or make their mark.

## Types of Deficiencies

Trained county board staff shall review each return envelope, executed ballot envelope, and photo ID documentation the office receives to determine if there are any deficiencies. County board staff shall, to the extent possible, regularly review these absentee ballot materials on each business day, to ensure that voters have every opportunity to timely correct deficiencies.[7] Review for deficiencies occurs *after* intake. The initial review is conducted by staff to expedite processing of the envelopes in advance of a county board absentee meeting.[8]

---

[5] Session Law 2023-140 § 48 provides for a signature verification pilot program to be conducted during the 2024 primary election. As stated in Section 48.(c), however, "[i]n implementing the pilot program established in this section, no executed mail-in absentee ballot shall be rejected by the county board of elections for failing any signature verification. All executed mail-in absentee ballots that are otherwise eligible to be counted in accordance with Chapter 163 of the General Statutes shall be counted."

[6] See *In re: Request for Declaratory Ruling on Signature Matching for Absentee Ballot Requests and Ballot Envelopes*, N.C. State Bd. of Elections (July 22, 2022). See also Numbered Memo 2020-15, which explains that signature comparison is not permissible for absentee request forms.

[7] Specifically for ballot application deficiencies and photo ID documentation deficiencies, discussed below, G.S. § 163-230.1(e) requires that the county board "promptly notify the voter of the deficiency and the manner in which the voter may cure the deficiency."

[8] See Numbered Memo 2020-25 regarding preparatory steps for absentee meetings.

There are three categories of deficiencies: 1) return deficiencies, 2) ballot application deficiencies, and 3) photo ID documentation deficiencies.

## 1. Return Deficiencies

Previously, a voter transmitted their absentee-by-mail ballot to the county board in a single ballot container-return envelope. However, with the implementation of photo ID requirements starting with the 2023 municipal elections, the ballot envelope is now transmitted to the county board in an outer return envelope to ensure the privacy of the accompanying photo ID documentation. As a result, there may be certain instances where the return of the absentee ballot requires the ballot to be spoiled and the absentee package reissued to the voter.

*Deficiencies that Require the Ballot to Be Spoiled (Civilian)*

- Ballot is inside the ballot envelope, which is not sealed or which appears to have been opened and re-sealed, <u>and</u> the ballot envelope is received in a return envelope which is not sealed or which appears to have been opened and re-sealed.[9]
- Ballot is inside the executed ballot envelope, which is not sealed, and someone other than the voter hand delivers the ballot envelope to an early voting site or the county board office, <u>and</u> the return envelope is also unsealed or there is no return envelope. Even if the person is authorized to return this ballot, they cannot seal the ballot without the voter being present. The voter must direct that the ballot be sealed "in the voter's presence."[10]
- The return or ballot envelope indicates the voter is requesting a replacement ballot.

If a county board identifies one of these deficiencies, county board staff shall spoil the returned ballot and reissue a ballot, as long as the new ballot is issued before Election Day, along with a notice explaining the county board office's action, in accordance with this numbered memo.

*Anomalies that Are <u>Not</u> Deficiencies (Civilian)[11]*

- Ballot is inside the executed ballot envelope, which is not sealed or which appears to have been opened and re-sealed, <u>but</u> the ballot envelope is received in a sealed return

---

[9] Ballots must be "sealed in the container-return envelope." G.S. § 163-230.1(d); see also G.S. § 163-231(a)(3).

[10] G.S. § 163-231(a)(3).

[11] With all ballot mistakes or anomalies, elections officials must be guided by the clear instruction in the federal Civil Rights Act of 1964 to not allow an error on ballot materials to lead to a ballot's rejection when that error is immaterial to determining a voter's eligibility to cast the ballot: "No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if

3

envelope. Immediately upon opening the return envelope and noticing this situation, staff should re-seal the return envelope with a notation of "sealed in return envelope." The county board should open the return envelope and address that ballot at its next absentee meeting.[12]

- Ballot is not inside the ballot envelope or has been placed inside the clear sleeve on the ballot envelope used for including the photo ID documentation, but the return envelope is sealed. Immediately upon opening the return envelope and noticing this situation, staff should re-seal the return envelope with a notation of "sealed in return envelope." The county board should open the return envelope and address that ballot at its next absentee meeting.[13]

- Ballot is received in a return envelope that is not sealed or appears to have been opened and re-sealed, but the ballot is inside the executed ballot envelope that is sealed. This situation does not require any special action to document the anomaly before presenting the ballot envelope to the county board.

- Ballot is inside the executed ballot envelope, which is not sealed, and the voter hand delivers the ballot envelope to an early voting site or the county board office. Before taking receipt of the envelope, staff should request that the voter first seal the ballot envelope.

In all of the above situations, the ballot was received in a sealed envelope and is therefore not deficient.[14]

A person hand-delivering the absentee ballot, whether it is the voter or someone authorized to return the voter's ballot, is not required to deliver the ballot envelope inside the return envelope for the absentee application to be approved. The return envelope is designed to protect the voter's confidential identifying information during mail transit. If the person hand-delivers only the sealed ballot envelope, staff should follow their usual storage practices and keep the ballot

---

such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

[12] In this situation, for the purposes of staff's initial review of photo ID documentation pursuant to 08 NCAC 17 .0109(b), the ballot application is not "received" until the return envelope is opened at the absentee meeting.

[13] In this situation, for the purposes of staff's initial review of photo ID documentation pursuant to 08 NCAC 17 .0109(b), the ballot application is not "received" until the return envelope is opened at the absentee meeting.

[14] G.S. §§ 163-230.1(d), 163-231(a)(3).

envelope in a secure location, which may include placing the ballot envelope in a new return envelope for storage purposes.

## 2. Ballot Application Deficiencies

The ballot application is the form on the ballot envelope that is completed by the voter, their witnesses or notary, and assistant (if applicable).[15] Ballot application deficiencies fall into two main categories: those that can be cured with a cure certification (*i.e.*, an attestation) by the voter, and those that cannot be cured. If a deficiency cannot be cured, the ballot must be spoiled and a new ballot must be issued, as long as the new ballot is issued before Election Day. See the Voter Notification Section below.

### *Deficiencies Curable with Cure Certification (Civilian and UOCAVA)*

The following deficiencies can be cured by sending the voter a cure certification:

- Voter did not sign the Voter Certification.[16]
- Voter signed in the wrong place.[17]

The cure certification process applies to civilian and UOCAVA voters.

### *Deficiencies that Require the Ballot to Be Spoiled (Civilian)*

The following deficiencies cannot be cured by certification, because the missing information comes from someone other than the voter:

- The name of the witness or assistant is not printed,[18] unless the witness's or assistant's signature is legible such that the name can be determined, in which case the ballot envelope is not deficient and the ballot shall not be spoiled for this reason.[19]
- A witness or assistant did not print their address.[20]

---

[15] G.S. § 163-229(b).

[16] G.S. § 163-230.1(e)(1).

[17] G.S. § 163-230.1(e)(2).

[18] G.S. § 163-230.1(e) provides that "The identification of the two persons witnessing the casting of the absentee ballot in accordance with G.S. 163-231(a) is not a curable deficiency." However, if the printed name is readable and on the correct line, even if it is written in cursive script, for example, it does not invalidate the ballot envelope.

[19] G.S. § 163-231(a)(5) ("Failure to include a printed witness name does not invalidate the application and certificate if the identity of an individual can solely be ascertained by the witness's signature.").

[20] Failure to list a witness's ZIP code does not invalidate the ballot envelope. G.S. § 163-231(a)(5). A witness's or assistant's address does not have to be a residential address; it may be a post office box or

5

- A witness or assistant did not sign.
- A witness or assistant signed on the wrong line. Where the witness or assistant signed in place of the voter's signature, that deficiency cannot be cured and requires the ballot to be spoiled. However, if all required information from the witness or assistant is present but not on the designated line for each (for example, the witness or assistant printed their name on the address line, printed their address on the name line, and signed), the ballot envelope is not deficient and the ballot shall not be spoiled for this reason.

Additionally, when a voter's witness is a notary, two errors in the notarial certificate will result in the ballot being spoiled: 1) the notary's signature is missing, or 2) the notarial seal is missing altogether or contains missing information. As discussed in Numbered Memo 2021-07, other technical errors with the notarial certificate will not affect the sufficiency, validity, or enforceability of the notarial certificate itself or the underlying document and are not considered deficiencies.

### 3. Photo ID Documentation Deficiencies

When a voter includes photo ID documentation with their absentee ballot envelope, there may be deficiencies in that documentation that require a cure notice to be sent to the voter. All deficiencies with a voter's photo ID documentation are curable, because the cure documentation comes from the voter. [21]

*Photocopy of Photo ID Deficiencies*

Deficiencies in a photocopy of a voter's photo ID include:

- The ID is not a type of ID that is acceptable for voting purposes under 08 NCAC 17 .0101(a)(1).
- The ID does not meet expiration requirements, if applicable.

---

other mailing address. Additionally, if the address is missing a city or state, but the county board of elections can determine the correct address, the failure to list that information does not invalidate the ballot envelope. For example, if a witness lists "Raleigh 27603," you can determine the state is NC, or if a witness lists "333 North Main Street, 27701," you can determine that the city/state is Durham, NC. If both the city and ZIP code are missing, staff will need to determine whether the correct address can be identified. If the correct address cannot be identified, the envelope shall be considered deficient and the ballot spoiled and a new ballot reissued. See Numbered Memo 2020-29 for additional information regarding address issues.

[21] G.S. § 163-230.1(e) ("Curable deficiencies are deficiencies that can be cured with supplemental documentation or attestation provided by the voter[.]").

- The photocopy is not readable, which means that the name on the ID cannot be read, the photograph on the ID does not depict a person (e.g., it only depicts a shadow or outline of a person), or both.
- The name on the ID is not the same as or substantially equivalent to the voter's name in their voter record.

Any difference between the voter's address on their ID and the address in their registration record is not a deficiency.

*Photo ID Exception Form Deficiencies*

Deficiencies in a Photo ID Exception Form include:

- The voter did not print their name on the Form, unless the voter's signature on the Form appears to be made by the voter, meaning the signature on the Form appears to be the name of the voter and not some other person. The county board shall presume that the voter's signature is that of the voter, even if the signature is illegible, unless there is clear evidence to rebut this presumption.
- The voter did not check a box for at least one claimed exception from the photo ID requirements, or if the exception is a reasonable impediment, the voter failed to identify their specific reasonable impediment (including by writing their reason if they chose "Other"[22]).
- If the reasonable impediment chosen is that the voter is unable to make a photocopy of their ID to include with their ballot, the voter did not include their North Carolina driver's license number, DMV ID number, or last 4 digits of their social security number.[23] However, if the voter has additionally checked a box indicating another reasonable impediment that prevents them from including a copy of a photo ID, the Form cannot be found deficient for the missing identification number alone.

---

[22] If the voter writes a reason for "Other" but does not check the "Other" box, the Form is not deficient for that reason alone. Similarly, if the voter writes their North Carolina driver's license number, DMV ID number, or last 4 digits of their social security number but does not check the "I am unable to include a photocopy of my photo ID with this absentee ballot envelope" box, the Form is not deficient for that reason alone provided that the voter did check the first box indicating that they suffer from a reasonable impediment that prevents them from including a copy of photo ID.

[23] G.S. § 163-230.1(g)(2).

7

- The voter did not sign the Form.[24]

Additionally, a voter's failure to include *any* photo ID documentation—either a photocopy of their ID or an Exception Form—is a deficiency that may be cured.[25]

A voter may respond to a notification that their ballot is missing photo ID documentation by stating that it is in the ballot envelope. If this occurs, and staff have not otherwise identified any return or ballot application deficiencies that would require the ballot to be spoiled and reissued, staff must defer the review of the photo ID documentation to the next absentee board meeting, when the county board can review the application and, if approved, open the ballot envelope and confirm photo ID compliance.[26] If the board identifies a photo ID deficiency at that point, staff should be instructed to notify the voter of the opportunity to cure as explained further in this memo.

*County Board Review of Photo ID Exception Forms for Falsity*

Although a county board's finding that a Photo ID Exception Form is false will result in the absentee ballot being rejected, this is not a "deficiency" in the same sense as the ones listed above—where staff will take action to notify the voter to address a deficiency. Staff deficiency review of Photo ID Exception Forms is for completeness—not falsity.[27] A board's finding of falsity can only come after the board gives the voter notice and an opportunity to be heard on the matter. See Numbered Memo 2020-25, p 8 ("Review of Photo ID Exception Forms"). County boards shall follow the applicable administrative code provisions[28] and Numbered Memo 2023-03, pp. 11–13, when considering whether a Photo ID Exception Form is false.

---

[24] If a voter is unable to sign the Photo ID Exception Form due to a disability, the person of the voter's choice who is assisting them can sign the Form on the voter's behalf and must complete the assistant certification on the envelope. See Numbered Memo 2022-11, p. 3 (Court Order Regarding Assistance for Absentee Voters with Disabilities).

[25] G.S. § 163-230.1(e)(3).

[26] This does not prevent the voter from also choosing to send photo ID cure documentation to the county board while its review of the application is pending, and staff may encourage the voter to do so when time is of the essence.

[27] Of course, staff may flag an Exception Form for the board's review at a meeting if staff has specific information suggesting the form is false.

[28] See 08 NCAC 17 .0109(c).

8

## 4. Deficiencies that are first discovered at a board meeting

Some deficiencies will not be apparent until a board meeting and, when discovered, will require board action at that time. These deficiencies can include the following:

- There is no ballot in the ballot envelope. In this situation, although there is no ballot to spoil, the entire absentee package must be reissued to the voter so that the statutory requirements for voting and transmitting an absentee ballot can be met.
- There is more than one ballot in the ballot envelope. In this situation, both ballots will need to be spoiled and new absentee ballot packages issued to both voters, because it will not be possible to determine which of the two ballots were voted by the voter who completed the application.
- Two voters' ballots and ballot envelopes were switched, based on the county board's review of the CIV numbers (ballot identifying numbers). In this situation, the county board will need to consider the circumstances of the ballots and ballot envelopes together to decide whether to approve the ballots. **If the two voters had their absentee ballots sent to the same address and there are no issues with the applications, then the county board should not spoil the ballots**, because under those circumstances, each voter has properly attested to voting the ballot enclosed with their application. The ballot identifying numbers associated with the enclosed ballots are used for official tracking purposes, and voters in the same household should not have their ballots rejected for failing to ensure these numbers match between their ballots and applications, which is neither a requirement for approval of the ballot under state law nor material to determining a voter's eligibility to cast the ballot under federal law.[29] The board staff should make a note of the ballot number that now corresponds with the voter in the SEIMS record.

If the county board disapproves a ballot envelope by majority vote in a board meeting, it shall proceed according to the notification process in G.S. § 163-230.1(e) and as outlined below. If the county board disapproves a ballot for a reason based on the voter's photo ID documentation, it shall proceed according to the notification process in 08 NCAC 17 .0109 and as outlined below.

# Voter Notification

## Sending an Absentee Ballot Deficiency Notification or New Ballot

If there are any **return deficiencies** or **ballot application deficiencies**, the county board of elections shall mail a notice to the voter within one business day of identifying the deficiency to inform the voter there is an issue with their absentee ballot, enclosing an absentee ballot

---

[29] See 52 U.S.C. § 10101(a)(2)(B).

deficiency notification, which contains the cure certification, or a new ballot.[30] The written notice shall also include information on how to vote in-person during the early voting period and on Election Day. When the voter is issued a new ballot, they must include new photo ID documentation with their ballot when transmitting it back to the county board, because each absentee ballot envelope "returned to the county board . . . shall be accompanied by" a photocopy of the voter's photo ID or Photo ID Exception Form.[31]

The written notice shall be sent to the address to which the voter requested their ballot be sent. The outside of the envelope containing the new ballot or absentee ballot deficiency notification should be in an official envelope so that it indicates that it contains official election mail, unless it is not possible due to the use of a specialized USPS or commercial carrier service envelope.

If the deficiency can be cured and the voter provided their phone number or email address on the absentee ballot request form, then the county board shall additionally notify the voter of the curable deficiency by phone or email.[32] Like with the mail notice, this shall be done within one business day of identifying the deficiency, and the same information shall be provided as in the mail notice. If a voter did not provide their phone number or email address on the absentee ballot request form, then staff shall additionally notify the voter by phone or email if the voter has a phone number or email address contained in the voter's registration record. If both phone and email are available, notify the voter by email. If notifying the voter by email, the county board shall include the absentee ballot deficiency notification document that is also mailed to the voter. If the county board sends the notification by email and by mail, the county board should encourage the voter to only return *one* of the notifications with the certification.

If the deficiency cannot be cured, and the voter has an email address on file, the county board shall notify the voter by email that a new ballot has been issued by mail to the voter. If the voter did not provide an email address but did provide a phone number, the county board shall contact the voter by phone to inform the voter that the county board has issued a new ballot by mail.

A county board shall not reissue a ballot on or after Election Day. If there is a curable deficiency, the county board shall contact voters up until the day before county canvass.

---

[30] When there is a curable deficiency, G.S. § 163-230.1(e) specifically provides that the county board must "promptly notify the voter of the deficiency and the manner in which the voter may cure the deficiency." If a ballot must be spoiled and reissued, the same need to act promptly exists.

[31] G.S. § 163-230.1(f1).

[32] G.S. § 163-230.1(e).

If there is a **photo ID documentation deficiency**, the county board must mail notice to the voter within one business day of identifying the deficiency to inform the voter there is an issue with their absentee ballot, enclosing an absentee ballot deficiency notification that identifies the specific deficiencies with the photo ID documentation.[33] The notification must also inform the voter that the voter, the voter's verifiable legal guardian or near relative, or a person of the voter's choice if the voter needs assistance due to the voter's disability, may provide the photo ID cure documentation to the county board.[34] If the voter provided their phone number or email address on the absentee ballot request form, then the county board shall additionally notify the voter of the photo ID documentation deficiency by phone or email using the phone number or email address listed on the request form.[35] Like with the mail notice, this shall be done within one business day of identifying the deficiency, and the same information shall be provided as in the mail notice. If a voter did not provide their phone number or email address on the absentee ballot request form, then staff shall additionally notify the voter by phone or email, using any phone number or email address contained in the voter's registration record.[36] If both phone and email are available, notify the voter by email. If notifying the voter by email, the county board shall include the absentee ballot deficiency notification document that is also mailed to the voter.

The photo ID cure documentation can be either a new photocopy of the voter's photo ID or a new Absentee Photo ID Exception Form. A voter who submitted a deficient photocopy of their photo ID may also submit a Photo ID Exception Form for the first time. A voter may choose to do so, for example, because in this instance they may no longer be able to make a photocopy of their ID to include with their ballot. Likewise, a voter who submitted a deficient Photo ID Exception Form may also submit a photocopy of a photo ID for the first time. A voter may choose to do so, for example, because they may have obtained a photo ID, or the means to make a photocopy, since the time at which they transmitted their absentee ballot to the county board. Accordingly, **when sending an absentee ballot deficiency notification for a photo ID documentation deficiency, the county board must include a blank Absentee Photo ID Exception Form**.

---

[33] As explained above, all photo ID documentation deficiencies are curable, and when there is a curable deficiency, G.S. § 163-230.1(e) specifically provides that the county board must "promptly notify the voter of the deficiency and the manner in which the voter may cure the deficiency." See also 08 NCAC 17 .0109(b).

[34] 08 NCAC 17 .0109(b).

[35] G.S. § 163-230.1(e).

[36] 08 NCAC 17 .0109(b).

## Receipt of a Cure Certification or Photo ID Cure Documentation

The cure certification or photo ID cure documentation must be received by the county board of elections by 5 p.m. the day before county canvass.[37]

The cure documents may only be returned by the voter, the voter's near relative or legal guardian, a multipartisan assistance team (MAT), or a person of the voter's choice if the voter needs assistance due to the voter's disability.[38] A cure document returned by any other person is invalid.

The cure documents may be submitted to the county board office by email, by mail or commercial carrier, in person, or by fax.[39] When submitting cure documents by email, the voter may attach an image of their cure documentation (*e.g.*, emailing a photo of their photo ID or executed Exception Form).The documents must be *received* by the deadline (not postmarked by the deadline).

If a voter appears in person at the county board office to cure their ballot, they may also be given, and can complete, a cure certification. Similarly, a voter may appear in person and

---

[37] G.S. § 163-230.1(e) ("Any container-return envelope with a curable deficiency that is transmitted to the county board shall be considered timely if cure documentation is received no later than the end of business on the business day before the canvass conducted by the county board of elections held pursuant to G.S. 163-182.5.").

[38] Voters who require assistance in returning their ballot due to the voter's disability, can direct the person of their choice to return the ballot according to the voter's instruction (*i.e.*, by mail or in person to the county board). See Numbered Memo 2022-11.

[39] Although G.S. 163-230.1(e) now provides that photo ID cure documentation "may be transmitted via e-mail to the county board of elections," this does not preclude the use of email to transmit a cure certification for ballot application deficiencies, because the statute is otherwise silent on the manner of transmittal and form of receipt of cure documentation for those deficiencies, and the statute's instruction to notify a voter of a curable deficiency by email indicates transmission of cure documentation by email is permissible.

complete a Photo ID Exception Form to accompany the ballot envelope,[40] or request that staff make a photocopy of the voter's photo ID to accompany the ballot envelope.[41]

It is not permissible for a cure certification to be submitted through a portal or form created or maintained by a third party. A cure certification may not be submitted simultaneously with the ballot.

Any person who is permitted to assist a voter with their ballot may assist a voter in filling out the cure certification, making a photocopy of the voter's photo ID, or filling out the Photo ID Exception Form, but the certification and Photo ID Exception Form must be signed by the voter.[42] A wet ink signature is not required for cure documents, but the signature used must be unique to the individual. A typed signature is not acceptable, even if it is cursive or italics such as is commonly seen with an electronic signature program, such as DocuSign.

### County Board Review of Cure Documentation

At each absentee board meeting, the county board of elections may consider deficient ballot return envelopes for which cure documentation has been returned, whether a cure certification or photo ID documentation. The county board shall consider together the executed absentee ballot envelope and the cure documentation. If the cure documentation was timely received, includes the required documentation or attestations, and was returned by an authorized person, the county board of elections shall approve the absentee ballot. See Numbered Memo 2020-25.

## Data Entry in SEIMS

County board staff shall follow the instructions provided by the State Board in the most recent guide for the proper entry of data in SEIMS when processing absentee ballots and addressing deficiencies. Data shall be promptly entered as ballots are processed. This will ensure that the data maintained by the county boards and State Board follows uniform conventions and is up to date. This will help ensure the processing of absentee ballots is transparent to the public.

---

[40] The option to complete a Photo ID Exception Form in the county board office is only available for voters who are voting absentee-by-mail. Voters who vote in person at an early voting site or on Election Day must complete the Photo ID Exception Form at the voting site. See Numbered Memo 2023-03.

[41] See Numbered Memo 2020-23 regarding staff making photocopies of photo IDs for inclusion with an absentee ballot envelope.

[42] If a voter is physically unable to sign or make their mark on the Photo ID Exception Form due to disability, any person of that voter's choice can write in the signature line, "Disabled - cannot sign." See Numbered Memo 2022-11.

# EXHIBIT W

STATE OF NORTH CAROLINA

WAKE COUNTY

## BEFORE THE STATE BOARD OF ELECTIONS

| | | |
|---|---|---|
| IN RE PROTEST OF JEFFERSON | ) | **BRIEF IN OPPPOSITON** |
| GRIFFIN ("UOCOVA ID" PROTEST) | ) | |
| | ) | |

On November 20, 2024, the State Board issued an order accepting jurisdiction of the several protests of Jefferson Griffin regarding the contest for Associate Justice of the State Supreme Court in the November 2024 General Election, including the Durham County UOCAVA ID Petition in which Respondent is a challenged voter (Affected Party).

Now comes Respondent to file a brief in opposition to the contemplated denial of his constitutional right to cast and have counted a ballot in this contest.

**Let us make no mistake that discarding the ballots of citizens eligible to vote is the death penalty for democracy.** Unlike a protest of disqualified voters, this protest aims to destroy the voices of North Carolinians unequivocally eligible to vote by law due to an alleged requirement that could not have been known to them at the time of voting.


**Notice to Affected Parties was Improper and Intentionally Obscure**

The Petitioner was required to mail notices to all Affected Parties, including myself as a challenged voter. The notice that I received, which upon information and belief is identical to those received by all others in this and Petitioner's other concurrent petitions, is defective and the protest should be administratively denied on that ground.

1. **Failure to specify which protest/grounds of protest apply on the notice itself.**

   Voters are required to scan the QR Code and visit a GOP-controlled website. There, they must manually review PDF copies of the hundreds of protest filings to determine the protest in which they are an Affected Party. The links contain only terms such as "FPCA," and "UOCAVA ID" which are not known to the general public.

Moreover, voters must scroll through to the appendix and find their name across hundreds of voters in each protest to determine in which protest(s) they are an Affected Party. There is no neutral information provided as to how voters may respond or defend their right to vote, only a link to the allegations of Petitioner.

2. **Use of the phase "your vote *may* be affected by one or more protests."** (italics added to specify the objection)

In fact, the Petitioner knows for a fact that every addressee of this notice is the subject of a protest. The use of the word "may" was deliberately chosen to confuse Affected Parties as to their role in the protest. Petitioner's actions are analogous to attempting to serve a respondent with a suggestion that they check the clerk's office to see if they might be involved in any of the hundreds of pending cases.

3. **Omitting the Petitioner's name from the notice.**

The notices bear the boxed notice "Paid for by the North Carolina Republican Party," and the return address is the address of the NC GOP headquarters in Raleigh. The Petitioner's name (Jefferson Griffin) does not appear anywhere on the notice. Because election protests can only be filed by natural persons, either voters or candidates, this misleads Affected Parties into thinking the notice is not of an official election protest. Furthermore, because filings and orders are captioned *in re* the name of the Petitioner, omitting this name prevents Affected Parties from identifying with specificity the protest in which they are involved.

4. **Disguising the notice as political advertising**.

The boxed notice, which would is required and present on the innumerable campaign mailings sent by the NC GOP throughout the year, combined with the size and format of the postcard-style notice commonly used in campaign mailings, leads Affected Parties to misinterpret this important legal notice as "junk mail."

This is particularly problematic given that the challenged voters are, of course, those that the Petitioner believes are not likely to vote for NC GOP candidates. They would be particularly likely to discard, ignore, or distrust information in the appearance of a campaign mailing from the NC GOP.

The misleading, confusing, and obscure nature of this notice is evidenced by the comments of North Carolinians in a recent online discussion about these notices, in which many commenters advised not scanning the QR code due to concerns of malware or that it was opinionated political advertising from the NC GOP and not a factual legal notice.[1]

Moreover, the State Board itself has had to create a web page and place an alert banner at the top of its website, clarifying that these notices pertain to the protests of Petitioner and that recipients are in fact those with a challenged vote, due to repeated inquiries from those left confused by the Petitioner's defective notices.[2]

**Sustaining the Protest Would Violate Voters' Due Process Rights**

In consideration of the above points, the State Board would violate Affected Parties' rights to procedural due process under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 19 of the N.C. Constitution by sustaining the protest and depriving Affected Parties of their constitutional right to vote while many had no idea such as serious action was even being considered, much less what they could do about it.

Even those who went to the State Board's specially created webpage about these protests would not have found any information as how to access the protests themselves or file a response. Upon information and belief, one must browse the hundreds of folders on the State Board's FTP server to find official copies of the protests and the State Board's orders thus far. By contrast, our state and federal courts allow one to electronically search their name and instantly view a register of all actions in the cases to which they are a party.

Inexplicably, the State Board's webpage suggested Affected Party Voters to email the two candidates involved in the race in question. Contacting either of the two candidates does not result in the consideration by the State Board of the voter's views. This unfortunate wording only further decreased the likelihood that the State Board would consider the arguments of those voters whom it now considers to disenfranchise.

Furthermore, the notices were mailed as USPS Nonprofit Marketing Mail, rather than First-Class Mail conventionally used for legal notices. As a result, there is no postmark date, but it is reasonable to conclude that many Affected Parties did not receive notice at all until a few days before the December 6 response deadline set by the State Board in its recent order, especially given the recent holiday. Proceeding to take from these hundreds of voters their right to vote is an egregious violation of the right to procedural due process.

---

[1]https://old.reddit.com/r/NorthCarolina/comments/1gzkw0g/whats_this_bullshit_that_the_nc_gop_mailed_me/ (before the original post was deleted, it contained a picture of the mailing sent to Affected Parties)
[2] https://www.ncsbe.gov/information-voters-challenged-election-protest

**The State Board Should be Estopped from Retroactively Requiring Voter ID on UOCAVA Ballot Returns from Voters it Explicitly Told *not* to Attach ID**

The State Board of Elections explicitly represented to me at the time of submitting my Federal Post Card Application, at the time of returning my UOCAVA Ballot, and at all times through the election and canvass that submission of a photo ID or photocopy thereof was NOT required for UOCAVA voters. Upon information and belief, the same is true for all Affected Party Voters.

Moreover, for those Affected Party Voters who, as did Respondent, used the State Board's Electronic FPCA/Ballot Submission Portal (https://votebymail.ncsbe.gov/app/uocava), there was no place in the online form designated for the secure transmission of a Photo ID. Even those voters who hypothetically may have wanted to submit a Photo ID in spite of the instructions not to would have had no way to do so electronically. The only option to securely submit such an ID would have been to print and mail the ballot, which risked lengthy international mail delays or loss, and additional costs to the voter.

The doctrine of estoppel by representation prevents the State Board who explicitly told voters, who reasonably relied on it as an authoritative source of voting procedures, not to submit a Photo ID if they voted under UOCAVA procedures from retroactively changing those procedures and throwing out ballots that were compliant at the time of the election.


In conclusion, the State Board should administratively deny the protest on the grounds of improper notice to Affected Parties and deny the protest on its merits as sustaining it would violate the constitutional due process rights of challenged voters and the doctrine of estoppel by representation.


/s/ Aidan Hunt

Respondent (Affected Party Voter)

December 4, 2024

By Electronic Mail to legal@ncsbe.gov

# EXHIBIT X

An official website of the State of North Carolina  How you know ⌄

ⓘ  State Government websites value user privacy. To learn more,
   view our full privacy policy (https://www.nc.gov/privacy).

🔒  Secure websites use HTTPS certificates. A lock icon or https:// means you've safely connected to the
   official website.

Voters will now be asked to present a valid photo identification when voting in person. If you do not have a valid photo ID card, you may obtain one from your county board of elections prior to the election, through the end of the early voting period.

If you do not have a valid photo ID card on Election Day, you may still vote and have your vote counted by signing an affidavit of reasonable impediment (or "Photo ID Exception Form") as to why you have not presented a valid photo ID. The Exception Form can also be used if you have a religious objection to being photographed or are a victim of a recently declared natural disaster.

As an alternative, if you don't have your ID when you vote, you can still vote and then bring your valid photo ID to your county board of elections by 5 p.m. on the ninth day after Election Day (or the sixth day after Election Day for September or October local elections).

If you vote by mail, then you must include a photocopy of a valid photo ID when returning your ballot. You may also complete the Absentee Photo ID Exception Form that is provided with your absentee ballot materials.

Details as well as a list of all types of ID that can be used for voting is available on the State Board of Elections Voter ID (https://www.ncsbe.gov/voting/voter-id) webpage. For information on how to get a free ID, see Get a Free Voter Photo ID (https://www.ncsbe.gov/voting/voter-id/get-free-voter-photo-id).

# EXHIBIT Y

State Government websites value user privacy. To learn more,
view our full privacy policy (https://www.nc.gov/privacy).

Secure websites use HTTPS certificates. A lock icon or https:// means you've safely connected to the official website.

# Voter ID

**Overview**

**Acceptable Photo IDs for Voting**

**ID Exceptions**

**Printable Materials**

**FAQ**

# Overview

Voters will be asked to show photo ID when voting in North Carolina. Most voters will simply show their driver's license, but there are many other acceptable photo IDs. **All voters will be allowed to vote with or without a photo ID.**

If a voter cannot show an acceptable photo ID when voting in person, they can still vote by filling out an ID Exception Form. If absentee-by-mail voters are unable to include a copy of their photo ID with their ballot envelope, they can also fill out an ID Exception Form to return with their ballot. (See ID Exceptions below.)

Watch the video below for an overview of North Carolina's photo ID requirement.



**Voter Photo ID-NCSBE**

**Board of Elections**

04:46

### Watch: Learn all about the new voter photo ID requirement.

## Acceptable Photo IDs for Voting

Any of the following that is unexpired, or expired for one year or less:

- North Carolina driver's license
- State ID from the NCDMV (https://www.ncdot.gov/dmv/license-id/identification/Pages/default.aspx), also called "non-operator ID"
- Driver's license or non-driver ID from another state, District of Columbia, or U.S. territory (only if voter registered in North Carolina within 90 days of the election)
- U.S. Passport or U.S. Passport card

- North Carolina voter photo ID card issued by a county board of elections (see Get a Free Voter Photo ID (/voting/voter-id/get-free-voter-photo-id))
- College or university student photo ID approved by the State Board of Elections (see callout below)
- State or local government or charter school employee photo ID approved by the State Board of Elections (see callout below)

Note: A voter 65 or older may use an expired form of acceptable ID if the ID was unexpired on their 65th birthday.

Any of the following, regardless of whether the ID contains an expiration or issuance date:

- Military or veterans ID card with photo issued by the U.S. government
- Tribal enrollment card with photo (/voting/voter-id/tribal-photo-ids-voting) issued by a tribe recognized by the State of North Carolina or the federal government
- ID card with photo issued by an agency of the U.S. government or the State of North Carolina for a public assistance program
  - Note: Although this is an acceptable form of ID under North Carolina law, the State Board is not aware of any such ID in circulation that contains a photo. All IDs for voting are required to have a photo.

Continue for details about free photo ID, and information for in-person and absentee voters.



## Student and Public Employee IDs Approved for Voting

All previous ID approvals expired on Dec. 31, 2024. The State Board will accept applications for new ID approvals from Feb. 1 through April 1, 2025.

Learn how to apply **(/node/1907)**

## Free Photo ID Cards

All [county boards of elections (https://vt.ncsbe.gov/BOEInfo/)](https://vt.ncsbe.gov/BOEInfo/) can issue free voter photo IDs to registered voters in their county. To get a free voter photo ID card, the voter must provide their name, date of birth, and the last four digits of their Social Security number, and have their photo taken. Find additional information at [Get a Free Voter Photo ID (/voting/voter-id/get-free-voter-photo-id)](/voting/voter-id/get-free-voter-photo-id).

Additionally, any North Carolina resident can get a free non-driver's ID card from the NCDMV. Find more information under "No-Fee ID Cards" at [State IDs | NCDMV (https://www.ncdot.gov/dmv/license-id/identification/Pages/default.aspx)](https://www.ncdot.gov/dmv/license-id/identification/Pages/default.aspx).

## In-Person Voters

Voters must show an acceptable photo ID when they check in at their voting site during early voting or on Election Day. Election workers check to see if the picture on the ID reasonably resembles the voter and if the name on the ID is the same as or very similar to the voter's name in their registration record. The address on the photo ID does not have to match the voter registration records.

If the voter does not show an acceptable ID, the voter may proceed to vote in one of the two following ways:

1. Complete an ID Exception Form and then vote with a provisional ballot, *or*
2. Vote with a provisional ballot and then return to their [county board of elections office (https://vt.ncsbe.gov/BOEInfo/)](https://vt.ncsbe.gov/BOEInfo/) with their photo ID by noon on the third business day after the election.

## Absentee-By-Mail Voters

Voters who vote by mail must include a photocopy of an acceptable ID when returning their ballot, or they may complete an ID Exception Form. The voter places the photocopy of ID or ID Exception Form in a pocket on the outside of the ballot container envelope, which is then placed in an outer return envelope to protect the privacy of the voter.

Note: Military and overseas voters casting ballots under special provisions for these voters are not required to submit a photocopy of their ID or an ID Exception Form when returning their ballot. See Photo Identification for Absentee-By-Mail Ballots (08 NCAC 17 .0109(d)) (http://reports.oah.state.nc.us/ncac/title%2008%20-%20elections/chapter%2017%20-%20photo%20identification/08%20ncac%2017%20.0109.html).

---

### Bring it! Your identification. Your vote. (PDF)

Access our printer-friendly infosheet to review acceptable voter photo IDs and two free ways to obtain one.

(https://s3.amazonaws.com/dl.ncsbe.gov/Voter%20ID/2023-24%20Elections/2024-Free-Voter-Photo-ID-Infosheet.pdf)

---

Read also: 10 Facts About NC's Photo ID Requirement for Voting (/news/press-releases/2023/05/17/10-facts-about-ncs-photo-id-requirement-voting).

## ID Exceptions

If any voter is unable to show photo ID when voting (whether in person or by mail), they may fill out an ID Exception Form and vote their ballot. The voter will choose from the following permitted exceptions:

1. The voter has a "reasonable impediment" to showing photo ID. This means that something is preventing the voter from showing ID. The voter must provide their reason by selecting from the following choices on the form.
   - You cannot get an ID because of:

- Lack of transportation
- Disability or illness
- Lack of birth certificate or other documents needed to get an ID
- Work or school schedule
- Family responsibilities

- Photo ID is lost, stolen, or misplaced
- Applied for photo ID but have not received it
- (For mail voters only) Unable to attach a copy of photo ID (Voter must include driver's license number or last four digits of Social Security number on the form)
- Other reasonable impediment (if selected, the voter must write the reason on the form)
- State or federal law prohibits voter from listing the reason

2. The voter has a religious objection to being photographed.
3. The voter was a victim of a natural disaster within 100 days before Election Day that resulted in a disaster declaration by the President of the United States or the Governor of North Carolina.

*County boards of elections must count provisional ballots with truthfully completed ID Exception Forms.*

# Printable Materials

**Infosheet: 2 Ways to Get a Free Voter Photo ID (PDF)**
**(https://s3.amazonaws.com/dl.ncsbe.gov/Voter%20ID/2023-24%20Elections/2024-Free-Voter-Photo-ID-Infosheet.pdf)**

**Federally Recognized Tribal Photo IDs (PDF)**
**(https://s3.amazonaws.com/dl.ncsbe.gov/Voter%20ID/Federally-Recognized-Tribal-Photo-IDs.pdf)**

**Infosheet: Acceptable Forms of Photo ID (2024 General Election) (PDF)
(https://s3.amazonaws.com/dl.ncsbe.gov/Voter%20ID/2023-24%20Elections/2024-
General-Acceptable-Voter-Photo-IDs.pdf)**

# FAQ

Find answers to questions about North Carolina's photo ID requirement for voting at FAQ:
Voter ID (/node/1180).

EXHIBIT Z

# Voter ID

Photo identification will be required in North Carolina beginning in 2023! To see full details on the photo identification requirement in North Carolina, please review the materials below.



**PHOTO ID NOTICE**

## Photo ID in NC ⌄

All details related to photo identification in North Carolina can be found on the Voter ID page created by the State Board of Elections! To access all the details on the NC voter photo identification requirements, click the links below.

NCSBE Voter ID Page

Approved List of Student and Public Employee ID's

Voter ID Factsheet

Data Visualization - Issued Voter ID Cards

## Need an ID? ⌄

Registered voters can request and receive a photo identification for voting purposes from the Board of Elections for free! To obtain your free NC Voter Photo ID Card, please visit our office during regular business hours. Upon arrival, you will need to complete an NC Voter Photo ID Card Request Form prior to receiving your ID. The form will require you to provide the following information:

- Full Name
- Date of Birth
- Last 4 digits of Social Security Number
- Signature

Registered voters who are requesting a replacement card for the following reasons can request a new card by mail, in-person, or by telephone:

- Lost or Defaced Identification Card
- Name Change (Must submit a voter registration update form first)

NC Voter ID Cards will be issued from the Board of Elections during regular business hours except during the time period between the end of One-Stop voting and Election Day for each election. These cards are valid for 10 years from the date of issuance.

NC Voter Photo ID Card Request Form

## Photo ID Video 

Check out our new overview video on photo identification in North Carolina! You can also click this <u>link</u> to access the video.



Voter Photo ID

Board of Elections

04:46

# EXHIBIT AA

# Absentee Voting

To request an absentee-by-mail ballot online click here!

To see absentee-by-mail turnout for the election, click here!

## Requesting an Absentee Ballot by Mail ⌄

Any registered voter of Durham County may request an absentee ballot. Requests can only be made by completing an Absentee Ballot Request Form provided by the State Board of Elections.

A request may be returned by any of the methods noted below:

- Online: Absentee Request Portal
- By Mail: Durham County Board of Elections, Attn: Absentee Ballots, PO Box 868, Durham, NC, 27702
- In Person: 3825 S. Roxboro Street Suite 101
  Durham, NC 27713

For more details on Absentee Voting in North Carolina, please click here.

2025 English Absentee Request Form - PDF ***(Coming Soon)***

2025 Spanish Absentee Request Form - PDF ***(Coming Soon)***

## Request a Multi-Partisan Assistance Team ＞

## Returning the Absentee Ballot ＞

## Military and Overseas Voters ⌄

Military and overseas voters have expanded absentee by-mail voting options! Please click here for more details on the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA).

## Frequently Asked Questions ⌄

### When will ballots be mailed prior to an election?

In accordance with G.S. 163-227.10, absentee ballots will be made available as follows:

- Statewide General Elections in even-numbered years: 60 days prior to the election

- Other Non-Municipal Elections: 50 days prior to the election, unless 45 days is authorized by the State Board of Elections
- Municipal Elections: 30 days prior to the election

**Is ID required for absentee by-mail voting?**

Yes. Civilian absentee voters are required to submit a photocopy of acceptable photo ID or an ID Exception Form along with their by-mail ballot. Click here for more information on photo ID for absentee-by-mail voters.

**Who is qualified to vote an absentee by-mail ballot?**

Any registered voter may vote an absentee ballot by-mail. No reason is required.

**How can I receive an absentee ballot by mail?**

In order to receive an absentee by-mail ballot, you must first complete a request form. This form is available here on our website or through the online submission portal. The form must be completed and returned in-person, through our online portal, or by mail. You will not be able to receive an absentee by-mail ballot unless this required form is properly completed and signed by the voter or requester. Click here for more information.

**May I request an absentee ballot by mail for someone else?**

If you are a near relative, a verifiable legal guardian or a person the voter requests assistance from due to a disability, you may request a by-mail ballot by completing the required request form.

**I have completed my absentee by-mail ballot request form. Is there a way to track when my ballot will arrive?**

To track your absentee by-mail ballot through BallotTrax, click here.

**May I mail my voted absentee by-mail ballot together with another voter's absentee by-mail ballot in the same envelope?**

No. Each voter receives an absentee by-mail ballot return envelope. That envelope is specific to each voter and should be returned only with that voter's completed ballot inside.

**I am a visually impaired voter, is there an easy way for me to request and vote with an absentee by-mail ballot?**

Visually impaired voters can request and vote with an accessible ballot through the Absentee Ballot Portal here.

**I live in a care facility, how do I request an absentee by-mail ballot and vote?**

If you live at a facility such as a hospital, clinic or nursing home, find out how to receive assistance with mail-in voting and other services provided by a Multipartisan Assistant Team (MAT), by reviewing the

# EXHIBIT BB

**(https://survey123.arcgis.com/share/fa0b3e5002fd450dae76810fb5651871)**

County Center (/countycenter/default.aspx) ▼

# Everything You Need to Know About Voting in the 2024 General Election in Buncombe County

This news item expired on Friday, November 15, 2024 so the information below could be outdated or incorrect.



**Update Oct. 11, 2024**

**In response to Tropical Storm Helene, the North Carolina State Board of Elections authorized Buncombe County and a dozen other "severely disrupted" counties to modify election procedures. The state General Assembly made further modifications. We're tracking changes below. Please check back for updates.**

The 2024 General Election is Tuesday, Nov. 5. Do you know if you are registered to vote or what voter ID is required? Read on for everything you need to know, from registering to vote, finding your precinct, how to view your sample ballot, and more.

**Important dates and deadlines**
Here are voter dates and deadlines for the 2024 General Election in North Carolina:?

- Oct. 11, 2024: Voter Registration Deadline (5 p.m.)
- Oct. 17, 2024: In-person Early Voting begins (same-day registration available)
- Oct 29, 2024: Absentee ballot request deadline (5 p.m.). Note that the emergency resolution allows voters to request and receive an absentee ballot in person at their county board of elections office until Nov. 4
- Nov. 2, 2024: In-person early voting ends (3 p.m.)
- Nov. 5, 2024: Election Day (6:30 a.m.–7:30 p.m.)
- Nov. 5 , 2024: Absentee ballot return deadline (7:30 p.m.)

**Find your sample ballot and voting location**
To look up your sample ballot, along with your precinct **(note Election Day precinct locations for Buncombe County have not been confirmed at this time),** voting location, and other details, visit the State Board of Elections voter lookup tool or click the Voter Information button at buncombecounty.org/vote (http://buncombecounty.org/vote).

## 1. Early Voting

Early Voting is available Oct. 17-Nov. 2. Hours for Oct. 17-Nov. 1 are 9 a.m.-5 p.m. Saturday, Nov. 2 hours are 9 a.m.-3 p.m. Voters may vote at any one of 10 locations (https://www.buncombecounty.org/governing/depts/election/election-early-voting.aspx) throughout Buncombe County.

## 2. Absentee ballots by mail

You can request an absentee ballot now by completing an Absentee Ballot Request form. The deadline to submit an Absentee Ballot Request Form (https://votebymail.ncsbe.gov/app/home) is Oct., 29 at 5 p.m. Please note, the deadline to return completed domestic absentee ballots is now 7:30 p.m. on Election Day, which is Nov. 5.

**Updated information about absentee ballots: the emergency state resolution and modifying state legislation for Tropical Storm Helene do the following:**

- Allow voters to request and receive an absentee ballot in person at their county board of elections office until Nov. 4 — the day before the election. As always, the voter or voter's near relative or legal guardian is required to complete an absentee request form with the required personal information for the voter, and that information must be verified by the county board as with any absentee request.

- Allow voters or their near relatives or legal guardians to hand-deliver completed absentee ballots to any county board of elections office in North Carolina (the Buncombe County elections office is at 59 Woodfin Place in Asheville) or to the State Board of Elections office, as long as the ballot is received by 7:30 p.m. on Election Day. The county or State Board would then ensure those ballots are delivered to each voter's county board of elections by Nov. 14 — the day before county canvass — to be counted. A log and chain of custody will be maintained to secure these ballots.

Any North Carolina registered voter who is eligible for the election may request, receive, and vote an absentee ballot by mail. No special circumstance or reason is needed. Registered voters in North Carolina must request an absentee ballot with an official N.C. Absentee Ballot Request Form. There are two ways to access and submit the form:

**Online** - Request an Absentee Ballot at the N.C. Absentee Ballot Portal (https://votebymail.ncsbe.gov/app/home).

**On paper** - print the online N.C. Absentee Ballot Request Form for 2024 currently available on our website (https://s3.amazonaws.com/dl.ncsbe.gov/Forms/2024/English-Fillable-2024-Absentee-Ballot-Request-Form.pdf). A Spanish Absentee Ballot request form is also available by clicking here (https://s3.amazonaws.com/dl.ncsbe.gov/Forms/2024/Spanish-Fillable-2024-Absentee-Ballot-Request-Form.pdf).

If you don't have a printer, you may complete an absentee ballot request form at the Election Services office at 59 Woodfin Place, Asheville, 28801, or call (828) 250-4200 and one will be mailed to you.

For active duty military, their family members, and U.S. citizens living abroad, click here (https://fvap.gov/). If you have questions about that process, you may call us at (828) 250-4200 or visit buncombecounty.org/vote (http://buncombecounty.org/vote).

You may return the request in one of the following ways:

**Mail it to:**
P.O. Box 7468, Asheville, NC 28802

**Hand deliver it to:**
Our office at 59 Woodfin Place, Asheville, NC 28801

Note: The Absentee Ballot Request Form may not be emailed or faxed.

**Returning an Absentee Ballot:**
The deadline to return the completed absentee ballot is Tuesday, Nov. 5 at 7:30 p.m. However, voters are encouraged to return the ballot as early as possible. In addition, voters will now be required to provide a copy of an acceptable photo ID when they return their absentee ballot. Specific instructions are provided in the return envelope. You may return your ballot to us in one of the following ways:

**By mail:** Absentee ballots may be mailed to P.O. Box 7468 Asheville, NC 28802. Ballots must be received by Nov. 5 at 7:30 p.m.

**At any Early Voting site:** Absentee ballots may be returned to an Early Voting site during the Early Voting period. Voters will be directed to the Early Voting Help Desk to return an absentee ballot.

**In person:** Absentee ballots may be returned in person to our office at 59 Woodfin Place, Monday–Friday, 8 a.m.-5 p.m. Absentee ballots may only be returned by the voter or the voter's near relative or legal guardian or, if you are not the voter or the voter's near relative or legal guardian, the voter requested their assistance returning their ballot due to disability.

For more information about absentee voting, visit the North Carolina Board of Elections website (https://www.ncsbe.gov/Voting-Options/Absentee-Voting). Track the status of your mail-in ballot, from start to finish at https://northcarolina.ballottrax.net/voter/ (https://northcarolina.ballottrax.net/voter/).

**3. General Election Day, Tuesday, Nov. 5**

On Nov. 5, polls are open 6:30 a.m.-7:30 p.m. As long as you are in line by 7:30 p.m., you will have the opportunity to vote.

Make sure you know your assigned voting location if you are casting a ballot on Election Day. Remember: During Early Voting, anyone can vote at any Early Voting location, but on Election Day you must vote at your assigned location. If you need help finding your voting location, enter your name at the Voter Search Tool (https://vt.ncsbe.gov/RegLkup/). And lastly, wait numbers will also be available on Election Day. Check it out before you head out the door.

**Voter ID:** A new state law means new changes to how you vote. For 2024, you will be required to present photo identification when you go to the polls. Please review this information so that your ability to vote will not be affected. Below you will find information from the State Board of Elections (https://www.ncsbe.gov/news/press-releases/2023/05/17/10-facts-about-ncs-photo-id-requirement-voting) on what IDs will be accepted, how to get a photo ID, how to vote without a photo ID, and more.

# Note: If you lost your photo ID due to Tropical Storm Helene, you have options:

1. Fill out a Photo ID Exception Form at your voting site or send the form back with your absentee ballot. (A blank Exception Form will arrive with your absentee packet.) Check the box for "Exception 3: Victim of a Natural Disaster." Make sure to sign the form.
2. Go to your county board of elections office. If you are a registered voter, they can take your photo and print an acceptable ID on the spot. For details, go to Get a Free Voter Photo ID.
3. Get a free ID from an NCDMV office in your area. For details, see State IDs | NCDMV (https://www.ncdot.gov/dmv/license-id/identification/Pages/default.aspx).

For details about North Carolina's photo ID requirement, including a list of all acceptable IDs, go to BringItNC.gov (https://www.ncsbe.gov/voting/voter-id).

**Quick links to useful information**

- List of acceptable voter IDs (https://www.ncsbe.gov/voting/voter-id)
- Get a free photo ID from the Buncombe Board of Elections (https://www.buncombecounty.org/countycenter/news-detail.aspx?id=20878)
- How to get a free ID card from the DMV (https://www.ncdot.gov/dmv/license-id/identification/Pages/default.aspx)
- Voter ID FAQs (https://www.ncsbe.gov/voting/voter-id/faq-voter-id)

**Curbside voting**
Curbside voting is available in North Carolina for those who are unable to go inside the voting location due to age or disability. Just pull up to the curbside voting sign, and an election official will come out and assist you. Curbside voting is available during Early Voting and on Election Day at all voting locations. Anyone voting curbside will also be asked to provide an acceptable photo ID.

**ExpressVote:** ExpressVote ballot marking machines will be in use at all Early Voting locations. Watch the voter experience video. (https://youtu.be/n5403MOyBYw?si=F7ZT-tFnY3AmAKuc)

**Helpful resources**
Absentee Ballot Portal (N.C) (https://votebymail.ncsbe.gov/app/home)
Absentee Ballot Request Form (https://www.buncombecounty.org/common/election/absentee-ballot-request-form.pdf)
Discover Buncombe Election and Property Information (http://discover.buncombecounty.org)
Early Voting locations, times, and more

(https://www.buncombecounty.org/governing/depts/election/election-early-voting.aspx)
Election Services Website
(https://www.buncombecounty.org/governing/depts/election/Default.aspx)
Military and Overseas Voting Information (https://www.ncsbe.gov/voting/vote-mail/military-and-overseas-voting)
N.C. Board of Elections Website (https://www.ncsbe.gov/)
Poll Worker Application (https://www.buncombecounty.org/governing/depts/election/employment-opportunities.aspx#sec-poll-worker)
Register to Vote/Update Voter Information (https://www.ncdot.gov/dmv/offices-services/online/Pages/voter-registration-application.aspx)
Registering to Vote as a Person in the Criminal Justice System
(https://www.ncsbe.gov/registering/who-can-register/registering-person-criminal-justice-system)
Voter Search Tool (https://vt.ncsbe.gov/RegLkup/)
Voter Registration Application
(https://s3.amazonaws.com/dl.ncsbe.gov/Voter_Registration/NCVoterRegForm_06W.pdf)

**Questions?**
Email elections@buncombecounty.org (mailto:elections@buncombecounty.org)
Call (828) 250-4200

## Filter News:

Filter county news by department

 Translate Options

| Spanish | Russian |
|---------|---------|

 Article Information

Updated Oct 11, 2024 02:42 PM
Published Aug 15, 2024 12:10 PM

---

## 🗒 Featured News

Explore BUNCOMBECOUNTY.org

Home (/default.aspx)

I Want To... (/i-want-to/default.aspx)

County Services (/governing/default.aspx)

About BC (/about-bc/default.aspx)

Site Index (/Governing/website-services/site-index.aspx)

Employee Access (/Governing/website-services/employee-services/default.aspx)

© 2022 - BUNCOMBE COUNTY GOVERNMENT

# EXHIBIT CC


# Voter Guide

### Voting

You will be assigned a voting place within the precinct where you live. Your precinct will be assigned by our office when you register or change your address and you will be notified by mail. You will receive a voter card before any election if you are a new voter or have made changes since the last election. The voter card will indicate the name and location of your voting place. You may also telephone the Elections Office at 678-7733 for the location of your voting place.

### Voter ID

Voters will be asked to show photo ID when voting in North Carolina, beginning with the 2023 municipal elections!

Most voters will simply show their driver's license, but there are other acceptable photo IDs.

Check out the Photo ID Video on photo identification in North Carolina

Details related to photo identification can be found on the Voter ID page on the NC State Board of Elections website. To access all details on NC voter photo identification requirements, click on the links below.

NCSBE Voter ID Page

**Do you need an ID?**
Registered voters can request and receive a photo identification for voting purposes from the Board of Elections for free. To obtain your free NC Voter Photo ID Card, visit our office during regular business hours. You will need to complete a NC Voter Photo ID Card Request Form prior to receiving your ID, the following information will be required and have your photo taken:

- Full Name
- Date of Birth
- Last 4 digits of your Social Security Number
- Signature

The free voter photo ID will include your photo, name, and registration number. It will expire 10 years from the date of issuance.

NC Voter ID Cards will be issued from the Board of Elections during regular business hours except during the time period between the end of Early Voting and Election Day for each election.

Registered voters who are requesting a replacement card for the following reasons can request a new card by mail, in-person, or by telephone:

- Lost or defaced Voter Identification Card
- Name Change (Must submit a voter registration update form first)

NC Voter Photo ID Card Request Form

Voters can also get a free ID card from the N.C. Division of Motor Vehicles (NCDMV). Find more information under "No-Fee ID Cards" at State IDs | NCDMV.

All voters will be allowed to vote with or without a photo ID. If a voter cannot show photo ID when voting in person, they can still vote by filling out an ID Exception Form. For absentee-by-mail voters, if they are unable to include a copy of their photo ID in their ballot return envelope, they can also fill out an ID Exception Form with their ballot.

### Transfer Voting

If you fail to change your address by the registration deadline, there is a procedure that allows you to vote. On election day, go to your old precinct and fill out a voter update/transfer form. Then you can take the form to your new precinct where you will be able to vote. To avoid this paperwork, change your address by the registration deadline. The deadline is 25 days before an election.

**All voting places in Cumberland County are open from 6:30 a.m. until 7:30 p.m. every election day.**

**At The Voting Place**

Upon entering the voting place, give your name, address and party (primary only) to the election officials. If you are properly registered, you will be given a ballot to take to the voting booth. If precinct officials are unable to locate your registration record, you may be asked to vote a provisional ballot. **Voter must return provisional ballot in the sealed envelope to precinct official.**

**Curbside Voting**

If you are unable to enter the voting place because of age or physical disability, you will be allowed to vote in your vehicle. Curbside voting is available at all voting sites during the one-stop absentee voting period and on election day. Voting sites have designated parking indicating curbside voting and have a curbside alert system that alerts the election officials a curbside voter has arrived. An election official will come to the vehicle to obtain the voter's name and address. Before a ballot is issued to a curbside voter, the voter must swear an oath affirming his or her qualification to use curbside voting.

**Help for Voters with Disabilities**

Federal and state laws require early voting locations and Election Day polling sites to be accessible. Find details about accessible voting equipment and receiving voting assistance at Accessible Voting Sites.

Any voter who qualifies for assistance may ask for help at their polling place under Assistance to voters. N.C.G.S. § 163-166.8.

If you are a blind or visually impaired voter, you may request, mark, and return an accessible absentee ballot online through the N.C. Absentee Ballot Portal. It is compatible with screen readers and allows for a digital or typed signature. Learn how it works at Accessible Absentee Voting.

**Primaries and General Elections**

In primaries in North Carolina, you vote only in the primary of the party with which you are affiliated. If you register unaffiliated you may be allowed to vote in a primary if a party allows unaffiliated voters.

**Voter Search Lookup Tool**

Use this Lookup Tool to:

- See your registered name
- See your registered address
- See your party affiliation
- Locate your polling place
- See your election districts
- Find your county board of elections

During an election, the Voter Search Lookup Tool will also display:

- Your Sample Ballot
- Your Absentee Ballot Status

## Contact Us

| | |
|---|---|
| **Phone:** | 910-678-7733 |
| **Fax:** | 910-678-7738 |
| **Email:** |  |
| **Director:** | Angie Amaro |
| **Address:** | 227 Fountainhead Lane |
| | Fayetteville, NC 28301 |

 

**Cumberland County Government**
Judge E. Maurice Braswell Courthouse
117 Dick Street
Fayetteville, NC 28301

Feedback
Contact Us
Events Calendar
Employees/Retirees
ADA Compliance

# EXHIBIT DD

# Absentee Voting

Any registered voter in North Carolina who is qualified to vote in an election can either request and receive a mail-in absentee ballot or vote during Early Voting for any election, whether it is a statewide primary, general election, or special election on constitutional amendments, referendum or bond proposals, or any municipal election in which absentee voting is allowed. No special circumstance or excuse is needed to receive and vote a mail-in absentee ballot.

## Absentee Public Register

For each election, the Absentee Public Register is confidential and not a public record until the opening of the polls on Election Day. You can easily access the Absentee Public Register for an election through the NC State Board of Elections's website: **Absentee Public Register (link)** (select an election date to view public data regarding absentee voting for that election).

## VOTER PHOTO ID FOR 2025 MUNICIPAL ELECTIONS

- Current Status: **Photo ID Required for Voting**
- Voters will be asked to show photo ID when voting in North Carolina, starting with the 2023 Municipal Elections. Voters will also be asked to show photo ID in the 2025 Municipal Elections.
- Voters who vote by mail must include a photocopy of acceptable ID inside the "photo ID envelope" that comes with their ballot. Or they may complete an ID Exception Form with the absentee ballot return envelope.

- Most voters will simply show their driver's license, but many other types of ID will be accepted. For a list of acceptable photo IDs, click the following link to the NC State Board of Elections's website: **Voter ID (link)**.

- Voters without a photo ID can get a **No Fee ID Card (link)** from the NCDMV. Voters can also get a free voter ID card from the county board of elections office. Contact the New Hanover County Board of Elections Office at (910) 798-7330 for more information.

- For more information about Voter ID in North Carolina visit the **North Carolina State Board of Elections Voter ID webpage (link).**

## ▸ REQUESTING AN ABSENTEE BY-MAIL BALLOT

### General Instructions

To request an absentee ballot, a person must be a registered voter in their North Carolina County of residence. If not registered to vote in the proper county, a person must submit a **voter registration application (PDF)** along with the 2025 NC Absentee Ballot Request Form (will be linked here once made available). The deadline to register to vote is 25 days before the date of the election.

Registered voters may request a ballot through the new online **Absentee Request Portal (link)** on the NC State Board of Elections website or fill out the NC State Absentee Request Form. For more information about how to vote absentee-by-mail, visit the **NC State Board of Elections website (link)**.

### Who May Request an Absentee Ballot?

Either the voter or the voter's near relative or qualified legal guardian may request an absentee ballot. A "near relative" is defined as the voter's spouse, brother, sister, parent, grandparent, child, grandchild, mother-in-law, father-in-law, daughter-in-law, son-in-law, stepparent, or stepchild.

Hi 👋, how can Chatbot help you?

If a registered voter is a patient in any hospital, clinic, nursing home, or rest home, it is unlawful for any owner, manager, director, employee, or other person, other than the voter's near relative or verifiable legal guardian, to request

an absentee ballot on behalf of the voter, unless the absentee voter is disabled. A disabled absentee voter may receive assistance from any person they choose.

## Completing the Absentee Ballot Request Form

The voter's full name, residential address, date of birth, and identification number must be provided on this form. This information will be used to confirm your voter registration. In addition, this form must be signed by the voter or the voter's near relative or qualified legal guardian. The absentee ballot request form may also serve as a voter change form; however, changes in voter registration may only be made by the voter.

## Proof of Identification

If the voter's NC driver's license number, NC DMV-issued identification card number, or last four digits of social security number is not provided, a copy of one of the following must be provided along with the request form:

- A current and valid photo identification
- A document that shows the name and residential address of the voter:

  - a current utility bill,
  - bank statement,
  - government check,
  - paycheck,
  - or other government document

## Absentee Ballot Availability

- 45 days before the date of a statewide primary election
- 60 days before the date of a statewide general election
- 30 days before the date of municipal elections

How can our chatbot help you?

▶ **RETURNING AN ABSENTEE BY-MAIL REQUEST FORM**

- Civilian voters may return completed absentee request forms by mail or deliver in person to the county board of elections office.

- Completed absentee request forms may **only** be delivered in person to the county board of elections by one of the following:

  - The voter
  - The voter's near relative or verifiable legal guardian
  - A member of a Multipartisan Assistance Team (MAT) Page
  - U.S. Postal Service or designated delivery service authorized pursuant to 26 USC. § 7502(f).
  - Forms returned by any other person will not be processed.

- Voters may submit their absentee request online using the new **NC Absentee Ballot Request Portal (link)** on the NC State Board of Elections website.

- A signed and completed State Absentee Ballot Request Form must be received by the county board of elections office no later than **5 pm on the absentee ballot return deadline, which is two weeks prior to the date of the election** for which the ballot is being requested. This deadline differs for military and overseas voters (link).

- Requests that are received after the absentee request deadline will not be deemed timely, regardless of any postmark date.

- Requests forms that are delivered by the deadline to the State Board will be considered timely. To ensure that county boards of elections can promptly process voters' absentee requests, we strongly recommend that forms be submitted to the **appropriate county board of elections (link)**.

▶ **RETURNING AN ABSENTEE BY-MAIL BALLOT**

Hi 👋 , how can Chatbot help you?

**Voting the Absentee By-Mail Ballot**

The voter is required to mark the ballot in the presence of two witnesses who are at least 18 years of age, or they may use one witness if the person is a notary public. The voter's witnesses do not need to see how they vote; instead, they are witnessing that the voter is voting of their own accord.

## Completing the Absentee Container-Return Envelope

To submit a ballot successfully, the voter *must* complete all required sections on the absentee container-return envelope. The voter must ensure that they have signed the "Voter's Certification" section and that the voter's two witnesses, or a notary public, have completed all required elements in the "Witness" section on the container-return envelope.

The following persons may not be an absentee witness:

- **For all voters**:

  - A person who is a candidate for nomination or election to any federal, state, or local elective office in the primary or election in which you are voting absentee (unless the candidate is your near relative or legal guardian.) (G.S. § 163A-1317(c))

- **For voters who are patients or residents of a hospital, clinic, nursing home, or rest home and are not disabled**:

  - An owner, manager, director, or employee, of a hospital, clinic, nursing home, or rest home in which you are a patient or resident. (G.S. § 163A-1298(a) (4))
  - A person who holds any federal, state, or local elective office. (G.S. § 163A-1298(a)(4))
  - A person who holds office in a state, congressional district, county, or precinct political party or organization, or who is a campaign manager or treasurer for any candidate or political party. (G.S. § 163A-1298(a)(4)).

- **For any voter who is disabled, including those who are patients or residents of a hospital, clinic, nursing home, or rest home**:

  - A disabled absentee voter may receive assistance from any person they choose, including a MAT team, staff of the hospital, clinic, nursing home, or rest home where they are a patient or resident, an

Hi 👋 , how can Chatbot help you?

elected official, political party office holder, or candidate.

If the voter, due to a disability, requires assistance in marking the ballot or needs assistance in mailing the ballot, the person providing this assistance must complete the Voter Assistant Certification also found on the container-return envelope. This portion of the container-return envelope differs from the "Witness" portion of the envelope and is only required in situations where the voter receives assistance completing or mailing the ballot.

### Returning the Absentee By-Mail Ballot

All ballots must be in the possession of the county board of elections by 7:30 pm on Election Day. The deadline for returning all civilian absentee by-mail ballots is the same regardless of delivery method (by mail or in-person drop-off).

A civilian ballot is late if it is received *after* the absentee ballot receipt deadline.

## ▶ MILITARY & OVERSEAS VOTERS

### The Uniformed & Overseas Citizens Absentee Voting Act (UOCAVA)

The UOCAVA is a federal law requiring states to allow certain voters absent from their county of residence to have special rights that provide an expedited means for them to register and vote by mail-in absentee ballot. To qualify under the provisions of the UOCAVA in this state, a voter must be a legal resident of North Carolina.

Citizens covered by the UOCAVA include:

- Members of the active or reserve components of the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States who are on active duty

- Members of the Merchant Marine, the commissioned corps of the Public Health Service, or the commissioned corps of the National Oceanic and Atmospheric Administration of the United States

- Members of the National Guard or state militia unit who are on activated status

- Spouses or dependents of uniformed service members
- U.S. citizens residing outside the United States

**UOCAVA Forms**

UOCAVA voters should use *one* of the following forms to register and/or request an absentee ballot:

- **Federal Post Card Application (FPCA) (PDF)**

- **Federal Write-In Ballot (FWAB) (PDF)**

A military-overseas voter may request an absentee ballot using *only one* of the forms listed above, the FPCA or the FWAB, not both. Generally speaking, the FWAB serves as a backup to the FPCA. For most voters, the FPCA is the best option.

FWAB users should reference the UOCAVA Election Notice for a list of candidates: **UOCAVA Notice for the 2024 General Election (PDF)**.

Previously registered UOCAVA voters may also use the **State Absentee Ballot Request Form (PDF)** to request an absentee ballot. Registered voters may request a ballot through the new online **Absentee Request Portal (link)** on the NC State Board of Elections website.

For more information on absentee voting for UOCAVA voters, please visit the NC State Board of Elections's **Military and Overseas Voting webpage (link)**.

▶ **MULTIPARTISAN ASSISTANCE TEAM (MAT)**

# Multipartisan Assistance Team (MAT)

- What is a MAT?

- What services do MATs offer?

- Who can schedule a MAT visit?

- How do I schedule a MAT Visit?

Hi 👋 , how can Chatbot help you?

**View All**

Government Websites by CivicPlus®

Hi 👋 , how can Chatbot help you?

# EXHIBIT EE

**General Statistics**

| | |
|---|---|
| Total Ballots Cast | 4,521,953 |
| Total Eligible Voters* | 7,829,653 |
| **Turnout** | **57.75%** |

**Total Ballots Cast (Absentee/Early Voting)**

| | |
|---|---|
| In-Person Early Voting | 4,223,752 |
| Civilian (Mail) | 266,168 |
| Military (Mail) | 10,500 |
| Overseas  (Mail) | 21,533 |
| | **4,521,953** |

**Comparison to 2020 & 2016 General Elections**

Total ballots cast this time in 2020 & 2016

Numbers through 20 days after Election Day

| | 2020* | 2016 |
|---|---|---|
| Early Voting | 3,628,663 | 2,955,609 |
| Civilian, Military, & Overseas | 1,001,596 | 191,599 |
| *(Total number of accepted ballots cast)* | **4,630,259** | **3,147,208** |

\* The 2020 election was conducted during the COVID-19 pandemic, resulting in a significant increase in voting by mail. Absentee voting started later in 2024 due to a court decision requiring the removal of a candidate's name from the ballot

**Registration Statistics by Party**

| | | % |
|---|---|---|
| Democratic | 2,449,316 | 31.28% |
| Republican | 2,340,613 | 29.89% |
| Unaffiliated | 2,958,892 | 37.79% |
| Libertarian | 49,874 | 0.64% |
| Green | 3,592 | 0.05% |
| No Labels | 25,033 | 0.32% |
| Constitution | 510 | 0.01% |
| We The People | 1,337 | 0.02% |
| Justice For All | 486 | 0.01% |
| | **7,829,653** | |

**Ballots Cast by Party**

| | | Turnout* | Proportion** |
|---|---|---|---|
| Democratic | 1,465,192 | 59.82% | 32.40% |
| Republican | 1,498,257 | 64.01% | 33.13% |
| Unaffiliated | 1,525,448 | 51.55% | 33.73% |
| Libertarian | 18,956 | 38.01% | 0.42% |
| Green | 1,815 | 50.53% | 0.04% |
| No Labels | 10,952 | 43.75% | 0.24% |
| Constitution | 337 | 66.08% | 0.01% |
| We The People | 742 | 55.50% | 0.02% |
| Justice For All | 254 | 52.26% | 0.01% |
| | **4,521,953** | | |

**Registration Statistics by Race**

| | | % |
|---|---|---|
| White | 4,988,213 | 63.71% |
| Black | 1,538,748 | 19.65% |
| Other | 1,302,692 | 16.64% |
| | **7,829,653** | |

**Ballots Cast by Race**

| | | Turnout* | Proportion** |
|---|---|---|---|
| White | 3,121,638 | 62.58% | 69.03% |
| Black | 806,346 | 52.40% | 17.83% |
| Other | 593,969 | 45.60% | 13.14% |
| | **4,521,953** | | |

**Registration Statistics by Ethnicity**

| | | % |
|---|---|---|
| Hispanic or Latino | 325,478 | 4.16% |
| Not Hispanic or Not Latino | 5,162,571 | 65.94% |
| Undesignated | 2,341,604 | 29.91% |
| | **7,829,653** | |

**Ballots Cast by Ethnicity**

| | | Turnout* | Proportion** |
|---|---|---|---|
| Hispanic or Latino | 129,707 | 39.85% | 2.87% |
| Not Hispanic or Not Latino | 3,132,927 | 60.69% | 69.28% |
| Undesignated | 1,259,319 | 53.78% | 27.85% |
| | **4,521,953** | | |

**Registration Statistics by Gender**

| | | % |
|---|---|---|
| Female | 3,852,525 | 49.20% |
| Male | 3,284,358 | 41.95% |
| Undesignated | 692,770 | 8.85% |
| | **7,829,653** | |

**Ballots Cast by Gender**

| | | Turnout* | Proportion** |
|---|---|---|---|
| Female | 2,337,874 | 60.68% | 51.70% |
| Male | 1,858,771 | 56.59% | 41.11% |
| Undesignated | 325,308 | 46.96% | 7.19% |
| | **4,521,953** | | |

\* Turnout = Ballots Cast per Demographic / Registered Voter Count for that Demographic

\*\* Proportion = Ballots Cast per Demographic / Total Ballots Cast

Data Sources: absentee_counts_state_20241105.csv, absentee_20201103.zip

# Ballots Cast by County

| County | In-Person<br>EARLY VOTING | Mail<br>CIVILIAN | Mail<br>MILITARY | Mail<br>OVERSEAS | Total |
|---|---|---|---|---|---|
| ALAMANCE | 64,971 | 4,100 | 93 | 231 | 69,395 |
| ALEXANDER | 16,556 | 445 | 17 | 32 | 17,050 |
| ALLEGHANY | 4,957 | 218 | 5 | 18 | 5,198 |
| ANSON | 7,268 | 227 | 3 | 6 | 7,504 |
| ASHE | 11,347 | 561 | 15 | 41 | 11,964 |
| AVERY | 6,367 | 373 | 14 | 30 | 6,784 |
| BEAUFORT | 19,436 | 763 | 34 | 51 | 20,284 |
| BERTIE | 6,602 | 155 | 6 | 3 | 6,766 |
| BLADEN | 12,704 | 416 | 20 | 13 | 13,153 |
| BRUNSWICK | 87,734 | 6,629 | 136 | 248 | 94,747 |
| BUNCOMBE | 116,032 | 10,927 | 145 | 1,142 | 128,246 |
| BURKE | 35,523 | 1,428 | 64 | 98 | 37,113 |
| CABARRUS | 82,181 | 7,029 | 167 | 258 | 89,635 |
| CALDWELL | 34,726 | 1,423 | 48 | 59 | 36,256 |
| CAMDEN | 4,359 | 148 | 34 | 13 | 4,554 |
| CARTERET | 35,567 | 1,666 | 159 | 172 | 37,564 |
| CASWELL | 8,272 | 343 | 12 | 13 | 8,640 |
| CATAWBA | 67,489 | 3,398 | 101 | 194 | 71,182 |
| CHATHAM | 42,937 | 3,016 | 60 | 304 | 46,317 |
| CHEROKEE | 12,078 | 722 | 7 | 31 | 12,838 |
| CHOWAN | 5,772 | 213 | 6 | 13 | 6,004 |
| CLAY | 5,765 | 292 | 9 | 13 | 6,079 |
| CLEVELAND | 38,903 | 1,605 | 50 | 91 | 40,649 |
| COLUMBUS | 18,577 | 737 | 6 | 25 | 19,345 |
| CRAVEN | 42,620 | 2,504 | 219 | 163 | 45,506 |
| CUMBERLAND | 98,629 | 5,184 | 1,575 | 501 | 105,889 |
| CURRITUCK | 9,874 | 647 | 58 | 23 | 10,602 |
| DARE | 18,104 | 1,239 | 58 | 123 | 19,524 |
| DAVIDSON | 67,820 | 4,004 | 109 | 129 | 72,062 |
| DAVIE | 20,153 | 996 | 21 | 48 | 21,218 |
| DUPLIN | 15,335 | 644 | 29 | 23 | 16,031 |
| DURHAM | 145,709 | 8,455 | 138 | 1,853 | 156,155 |
| EDGECOMBE | 18,521 | 476 | 13 | 15 | 19,025 |
| FORSYTH | 155,235 | 11,480 | 176 | 838 | 167,729 |
| FRANKLIN | 32,657 | 1,548 | 37 | 69 | 34,311 |
| GASTON | 88,752 | 4,656 | 124 | 198 | 93,730 |
| GATES | 3,704 | 113 | 12 | 6 | 3,835 |
| GRAHAM | 3,355 | 168 | 7 | 5 | 3,535 |
| GRANVILLE | 25,515 | 1,137 | 26 | 47 | 26,725 |
| GREENE | 5,976 | 269 | 11 | 6 | 6,262 |
| GUILFORD | 218,056 | 11,837 | 271 | 1,136 | 231,300 |

| | | | | | |
|---|---|---|---|---|---|
| HALIFAX | 16,528 | 475 | 15 | 15 | 17,033 |
| HARNETT | 47,597 | 2,616 | 526 | 145 | 50,884 |
| HAYWOOD | 28,037 | 1,637 | 30 | 100 | 29,804 |
| HENDERSON | 50,506 | 4,341 | 39 | 291 | 55,177 |
| HERTFORD | 7,066 | 222 | 0 | 1 | 7,289 |
| HOKE | 17,037 | 567 | 147 | 37 | 17,788 |
| HYDE | 1,158 | 86 | 3 | 7 | 1,254 |
| IREDELL | 81,229 | 5,685 | 123 | 273 | 87,310 |
| JACKSON | 16,746 | 808 | 13 | 65 | 17,632 |
| JOHNSTON | 95,778 | 4,980 | 180 | 157 | 101,095 |
| JONES | 3,518 | 133 | 10 | 7 | 3,668 |
| LEE | 22,877 | 1,227 | 106 | 68 | 24,278 |
| LENOIR | 20,911 | 729 | 35 | 30 | 21,705 |
| LINCOLN | 44,020 | 1,927 | 61 | 97 | 46,105 |
| MACON | 16,161 | 1,062 | 15 | 54 | 17,292 |
| MADISON | 9,978 | 418 | 15 | 27 | 10,438 |
| MARTIN | 7,527 | 286 | 6 | 8 | 7,827 |
| MCDOWELL | 17,876 | 741 | 19 | 28 | 18,664 |
| MECKLENBURG | 430,292 | 35,444 | 569 | 3,111 | 469,416 |
| MITCHELL | 6,644 | 339 | 4 | 12 | 6,999 |
| MONTGOMERY | 9,014 | 346 | 17 | 16 | 9,393 |
| MOORE | 41,820 | 3,686 | 546 | 291 | 46,343 |
| NASH | 40,919 | 1,243 | 34 | 51 | 42,247 |
| NEW HANOVER | 97,870 | 7,717 | 223 | 633 | 106,443 |
| NORTHAMPTON | 6,324 | 185 | 8 | 8 | 6,525 |
| ONSLOW | 58,834 | 3,002 | 1,360 | 240 | 63,436 |
| ORANGE | 69,077 | 4,688 | 107 | 1,545 | 75,417 |
| PAMLICO | 6,014 | 300 | 0 | 18 | 6,332 |
| PASQUOTANK | 14,737 | 577 | 42 | 30 | 15,386 |
| PENDER | 30,986 | 1,241 | 111 | 53 | 32,391 |
| PERQUIMANS | 5,481 | 175 | 7 | 6 | 5,669 |
| PERSON | 16,241 | 651 | 25 | 19 | 16,936 |
| PITT | 66,433 | 2,555 | 112 | 224 | 69,324 |
| POLK | 9,972 | 599 | 18 | 70 | 10,659 |
| RANDOLPH | 58,200 | 2,545 | 84 | 85 | 60,914 |
| RICHMOND | 13,524 | 401 | 19 | 12 | 13,956 |
| ROBESON | 30,968 | 894 | 57 | 24 | 31,943 |
| ROCKINGHAM | 38,288 | 1,371 | 49 | 45 | 39,753 |
| ROWAN | 54,308 | 2,991 | 70 | 108 | 57,477 |
| RUTHERFORD | 24,036 | 1,214 | 26 | 74 | 25,350 |
| SAMPSON | 20,092 | 724 | 33 | 10 | 20,859 |
| SCOTLAND | 10,937 | 464 | 27 | 17 | 11,445 |
| STANLY | 28,149 | 1,120 | 26 | 33 | 29,328 |
| STOKES | 19,728 | 782 | 22 | 37 | 20,569 |
| SURRY | 27,678 | 1,468 | 47 | 42 | 29,235 |
| SWAIN | 5,093 | 182 | 16 | 18 | 5,309 |
| TRANSYLVANIA | 16,213 | 933 | 24 | 122 | 17,292 |

| | | | | |
|---|---|---|---|---|
| TYRRELL | 1,158 | 16 | 0 | 1 | 1,175 |
| UNION | 107,929 | 6,479 | 164 | 410 | 114,982 |
| VANCE | 15,000 | 630 | 5 | 9 | 15,644 |
| WAKE | 466,075 | 44,052 | 782 | 4,005 | 514,914 |
| WARREN | 6,903 | 320 | 10 | 12 | 7,245 |
| WASHINGTON | 4,175 | 138 | 7 | 12 | 4,332 |
| WATAUGA | 25,785 | 1,254 | 32 | 176 | 27,247 |
| WAYNE | 42,835 | 1,468 | 279 | 109 | 44,691 |
| WILKES | 23,752 | 1,340 | 33 | 46 | 25,171 |
| WILSON | 30,220 | 1,232 | 44 | 47 | 31,543 |
| YADKIN | 12,912 | 637 | 18 | 17 | 13,584 |
| YANCEY | 8,448 | 634 | 5 | 43 | 9,130 |
| **Total** | **4,223,752** | **266,168** | **10,500** | **21,533** | **4,521,953** |