# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| JUDGE JEFFERSON GRIFFIN,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>    Defendant,<br><br>    and<br><br>ALLISON RIGGS, et al.,<br><br>    Intervenor-Defendants. | **STATE BOARD'S OPENING BRIEF**<br><br>**Case No. 5:24-cv-00731-M** |
| NORTH CAROLINA DEMOCRATIC PARTY,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>    Defendants. | **Case No. 5:24-cv-00699-M** |
| CARRIE CONLEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALAN HIRSCH, et al.,<br><br>    Defendants. | **Case No. 5:25-cv-00193-M** |

# INTRODUCTION

In this case, the North Carolina state courts have ruled on certain state-law claims and ordered the State Board of Elections to implement a remedial process that could result in altering the 2024 election results for a seat on the North Carolina Supreme Court. Now, this Court must decide whether those state-court orders comply with federal law. The Board respectfully submits that they do not.

First, under squarely controlling Fourth Circuit precedent, it violates due process for a state court to retroactively alter the rules of an election that has already taken place. Yet that is exactly what Plaintiff Judge Jefferson Griffin seeks here. A Board rule that has been in effect for five elections—and never before elicited any objection from Griffin or his political party— explicitly told military and overseas voters that they did not need to submit a copy of a photo ID or otherwise complete an exception affidavit in order to vote. Similarly, until this election cycle, no objection has ever before been raised to a 2011 statute unanimously passed by the North Carolina General Assembly that allowed certain military and overseas citizens who inherited their residency to vote. Forty-three elections have passed in North Carolina with this rule in place. To change the rules of the election now, and retroactively apply those changes to cancel votes that were cast in compliance with the rules at the time of the election, violates due process.

Second, procedural due process demands that when voters' ballots are challenged, voters must be given notice, so that they can take steps to protect their vote. The state court of appeals, however, invalidated a rule promulgated by the Board that has required protesters like Judge Griffin to provide notice to voters whose votes they challenge. Because the decision of the state court of appeals denies voters the notice that they need to protect their fundamental rights, its decision denies due process for this reason as well.

Third, it is well established that it violates equal protection to arbitrarily apply different voting rules in different counties. Yet Judge Griffin's protests demand exactly that. He explicitly seeks to enforce photo ID requirement on military and overseas voters in only a small number of counties, while leaving votes from identically situated voters in other counties intact. It is difficult to imagine a more straightforward equal protection violation in this context.

For these and other reasons explained below, the Board respectfully submits that this Court should deny Judge Griffin's petitions for judicial review because they seek relief that violates federal law. The Board further submits that this Court should enjoin the remedial process ordered by the state courts and bring this protracted and ill-conceived litigation to an end.

## BACKGROUND

### A. Judge Griffin challenges the election results, and the Board removes to this Court.

Plaintiff Judge Griffin and Intervenor Associate Justice Allison Riggs were candidates in the statewide 2024 general election for Associate Justice on the North Carolina Supreme Court. Final canvassed results show that Justice Riggs prevailed by 734 votes.[1]

On November 19, 2024, Judge Griffin filed a number of election protests challenging the election results. Two categories of protests are at issue here.[2]

First, Judge Griffin challenged 1,409 votes cast in one North Carolina county by military and overseas voters who did not submit a copy of their photo ID with their ballot. D.E. 1-4 at 12. At the time of the election, the North Carolina Administrative Code provided that military and

---

[1] NC SBE Election Contest Details, N.C. State Bd. of Elections, bit.ly/3PA7R6P (last visited Apr. 21, 2025).

[2] As discussed below, the parties dispute the scope of these protests. This dispute does not, however, change the Board's federal-law arguments.

overseas voters were "*not* required to submit a photocopy of acceptable photo identification." 08 N.C. Admin. Code § 17.0109(d) (emphasis added). The Rules Review Commission—a body appointed by the state legislature to review agency rulemaking—unanimously voted that this rule was "within the authority delegated to the [Board] by the General Assembly." N.C. Gen. Stat. § 150B-21.9(a)(1); D.E. 1-4 at 46. During the rulemaking process, no objection was ever raised by Judge Griffin, his political party, any member of the bipartisan Board, or any member of the General Assembly that the rule was not consistent with state statutory law. D.E. 1-4 at 46. This photo ID rule had been applied in five prior elections. *See* D.E. 1-4 at 46. In the 2024 election, the majority of military and overseas voters statewide used an online portal to submit their absentee ballots, but that portal was not configured to accept photo identification documentation from these voters. D.E. 61 at 3 n.3; *see* N.C. Gen. Stat. § 163-258.4(d) (authorizing the Board to "develop standardized absentee-voting materials, including privacy and transmission envelopes and their electronic equivalents" for military and overseas voters).

Second, Judge Griffin challenged 266 votes cast by military and overseas-citizen voters who have not lived in the United States but who the North Carolina legislature authorized to vote in state elections due to the voters' familial connection to the State. D.E. 1-4 at 12. At the time of the election, state law provided that these voters were eligible to cast a ballot in state elections. N.C. Gen. Stat. § 163-258.2(1)(e). The state legislature unanimously passed this law in 2011. Uniform Military and Overseas Voters Act, N.C. Sess. Law No. 2011-182, bit.ly/4czpr5j. The law had been applied in more than forty prior elections. D.E. 1-4 at 40.

The Board dismissed these protests, concluding both that Judge Griffin had failed to comply with procedural filing requirements and that he had failed to establish probable cause of an election-law violation. D.E. 1-4 at 10-52. Judge Griffin filed petitions for judicial review in

4

Wake County Superior Court seeking to enjoin the Board from certifying the election results until it had retabulated the results by cancelling the challenged votes. D.E. 1-4, 1-12. The Board removed the petitions to this Court. D.E. 1. This Court held that the Board had properly removed this case, but abstained from exercising jurisdiction under *Burford v. Sun Oil Company*, 319 U.S. 315 (1943), and remanded this matter back to Wake County Superior Court. D.E. 24.

The Board appealed. D.E. 26. The Fourth Circuit affirmed this Court's holding that the Board correctly removed this case to federal court but "direct[ed] [this Court] to modify its order to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." *Griffin v. N.C. State Bd. of Elections*, No. 25-1018(L) (4th Cir. Feb. 4, 2025) (per curiam), slip op. at 9, 11 (citing *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964)).[3] Implementing the Fourth Circuit's mandate, this Court modified its original order to abstain under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496 (1941), and to expressly retain jurisdiction over the federal issues. D.E. 35.

**B.   On remand, the state courts order the Board to implement a "cure process" and cancel certain ballots.**

As the parties litigated the appeal from this Court's remand order, this case continued to proceed in state court.

On February 3, 2025, the Board submitted briefs in state trial court that raised arguments under both federal and state law for affirming the Board's decision to dismiss Judge Griffin's protests. No. COA25-181, *Griffin v. N.C. State Bd. of Elections*, Documentary Exhibits to Record on Appeal, Vol. II, at 63-76, 175-223, 334-350 (N.C. Ct. App.), bit.ly/4jzXqNl. The next

---

[3]   When this case was on appeal, the Fourth Circuit allowed Justice Riggs and a group of voters to intervene. No. 25-1020, Dkt. 19, 31.

5

day, the Fourth Circuit issued its decision modifying this Court's remand order to abstain under *Pullman* rather than *Burford*. The Board then promptly filed an *England* reservation in state trial court. No. COA25-181, *Griffin v. N.C. State Bd. of Elections*, Record on Appeal at 128-33 (N.C. Ct. App.), bit.ly/41FOn7H. This reservation informed the state trial court of the Board's federal-law arguments but otherwise expressly reserved the Board's right to litigate the federal-law issues in a federal forum. *Id.* The Board reiterated its *England* reservation in its filings in the North Carolina Court of Appeals and the North Carolina Supreme Court. No. COA25-181, Response Br. at 81-83 (N.C. Ct. App. Feb. 27, 2025), bit.ly/3G9ovZx; No. 320P24-3, Pet. for Writ of Supersedeas at 3 n.2 (N.C. Apr. 6, 2025), bit.ly/43ZrBJk.[4]

After the state trial court rejected Judge Griffin's arguments and thus denied his petitions for judicial review, Judge Griffin appealed to the North Carolina Court of Appeals, which reversed over a dissent. *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724 (N.C. Ct. App. Apr. 4, 2025). The court of appeals first reversed the Board's determination that Judge Griffin had failed to properly serve his protests on challenged voters

---

[4] The state supreme court's April 11 order, which resolved the merits of Judge Griffin's protests under state law, marks the end of the state-court proceedings for purposes of *Pullman* and *England*. *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, --- S.E.2d ---, 2025 WL 1090903 (N.C. Apr. 11, 2025). Having properly made an *England* reservation, the Board's "right to return [to federal court] will in all events be preserved." *England*, 375 U.S. at 421-22; *see also Promovision Int'l Films, Ltd. v. Trapani*, 744 F.2d 1063, 1065 (4th Cir. 1984). This right reflects the fact that abstention under *Pullman* is not an "abdication of federal jurisdiction, but only the postponement of its exercise." *England*, 375 U.S. at 416 (citation omitted). "[E]vidence that a party has been compelled by the state courts to litigate his federal claims there will of course preclude a finding that he has voluntarily done so." *Id.* at 421 n.12. But once a valid *England* reservation is made, "the litigant is in no event to be denied his right to return to the District Court." *Id.* at 421-22. Here, the Superior Court of Wake County, the North Carolina Court of Appeals, and the North Carolina Supreme Court all diligently avoided consideration of the federal issues. *Id.* at 421 & n.12. Since the Board's *England* "reservation has been made," this Court retains jurisdiction over the federal issues. *Id.* at 421-22. Judge Griffin "cannot impair the corresponding right of the [Board]" "to return to the District Court." *Id.* at 422 n.13.

6

under state law.  It held that the Board lacked authority to enforce a Board rule requiring such service.  Id. at *5-*6.  The court then held that, under state law, the two categories of voters at issue here voted unlawfully in the November 2024 general election.  *Id.* at *11-*13.  For military and overseas voters who did not include a copy of their photo ID or an exception affidavit with their absentee ballot, the court instructed the Board to: (1) identify and then notify those voters of their failure to meet the photo ID requirement, (2) provide those voters fifteen business days to cure the defects from the date of being sent a notice letter, and (3) discard votes in this contest cast by those voters who fail to cure the alleged defects.  *Id.* at *15.  The court also instructed the Board to identify voters with inherited residency and remove their ballots from the final vote total.  *Id.* at *15.

The Board petitioned the North Carolina Supreme Court for discretionary review of this decision.  On April 11, the state supreme court issued an order that modified the decision in part and declined review in part.  *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, --- S.E.2d ---, 2025 WL 1090903 (N.C. Apr. 11, 2025).  The court modified the court of appeals decision by holding that military and overseas voters who failed to meet the photo ID requirement should have thirty calendar days to submit a copy of their photo ID or an exception affidavit.  *Id.* at *3. The court also denied review of the court of appeals decisions that election protesters are not required to notify challenged voters, and that the voters with inherited residency were ineligible to vote in state elections and should have their votes cancelled.  *Id.*[5]

---

[5]     Judge Griffin also challenged roughly 60,000 voters who had allegedly incomplete voter registrations.  The state supreme court rejected Judge Griffin's challenge to these voters on state-law grounds.  *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, --- S.E.2d ---, 2025 WL 1090903, at *1-*2 (N.C. Apr. 11, 2025).  This category of protests is therefore not at issue here.

7

The state supreme court remanded to the state court of appeals "for further remand and actions not inconsistent with [the supreme court's] order." *Id.* On April 16, the court of appeals entered an order remanding the case to the state trial court, "for immediate further remand" to the Board. No. COA25-181, Certification of Judgment at 2 (Apr. 16, 2025). A concurring judge noted that the state-court orders "leave open the question of exactly to which voters [Judge Griffin's] challenges apply." *Id.* at 3 (Hampson, J., concurring in the result).

C. **The Board complies with the state-court orders.**

Until directed otherwise by a court, the Board will continue to work diligently to comply with the state-court orders. As this Court directed, the Board has informed the Court of the steps it intends to take to carry out the remedial process. D.E. 61.

Judge Griffin disputes how the Board intends to implement the remedial process that the state courts have ordered. He has petitioned the North Carolina Court of Appeals for a writ of mandamus or, alternatively, asked that court to clarify the scope of its prior decision. No. COA25-181, Pet. for Writ of Mandamus and Alternative Motion to Clarify (N.C. Ct. App. Apr. 16, 2025), bit.ly/44t9hIG. He argues that his challenge to military and overseas voters who failed to meet the photo ID requirement should encompass voters in six of the State's 100 counties, even though he only timely completed his protests in one of those six. *Id.* at 7-11. He argues that all military and overseas-citizen voters who have not lived in the United States should be excluded from the vote count, not just the 266 voters that he timely identified in his election protests, including voters in counties in which he has never filed an election protest. *Id.* at 11-14. And he argues that the Board should not take further steps to identify these so-called "never resident" voters, despite public reporting that some have in fact previously resided in the State—

reporting that has been initially verified by the Board's own internal review of voter records. *Id.* at 15-19.[6]

The Board believes that it is faithfully following the state-court orders in this case. The Board intends to file a response to the petition and motion by April 25, the deadline set by the North Carolina Court of Appeals. No. COA25-181, Order (N.C. Ct. App. Apr. 17, 2025), bit.ly/4jA7eXw.

### D. The case returns to this Court.

The state supreme court decision conclusively resolved the merits of Judge Griffin's state-law claims. Thus, under *Pullman*, this Court resumed jurisdiction to decide whether the relief afforded by the state courts is consistent with federal law.

After the state supreme court decision, Justice Riggs moved this Court for a preliminary injunction under Rule 65 and an injunction under the All Writs Act, 28 U.S.C. § 1651. D.E. 37 at 1. Specifically, Justice Riggs sought an injunction "prohibiting the parties from taking any action to enforce or effectuate the North Carolina Court of Appeals' opinion," "as modified by the North Carolina Supreme Court in its April 11 Order, while this Court considers the federal issues remaining after resolution of the state court proceedings." *Id.*

This Court granted the injunction in part. The Court ordered the Board "to proceed in accordance with the North Carolina Court of Appeals opinion, . . . as modified by the North Carolina Supreme Court in its April 11 Order." Text Order of Apr. 12, 2025. But the Court also prohibited the Board from "certify[ing] the results of the election, pending further order of this

---

[6] *See, e.g.*, Bryan Anderson, *Longtime N.C. Voters May Have Their Ballots Wrongfully Tossed in Supreme Court Race*, The Assembly (Apr. 13, 2025), bit.ly/4iqZAhk; Judd Legum et al., *North Carolina Supreme Court Throws Out Hundreds of Ballots Based on Flawed Data*, Popular Information (Apr. 15, 2025), bit.ly/3GaAKVt.

9

court." *Id.* To "facilitate prompt resolution of this matter," this Court instructed the parties to file briefs "addressing the remaining federal issues." *Id.*

Two other cases brought against the Board in federal court are now also currently before the Court. First, the North Carolina Democratic Party sued the Board under 42 U.S.C. § 1983, seeking a declaratory order that Judge Griffin's relief violates federal law, as well as preliminary and permanent injunctions to enjoin the Board from canceling the votes that Judge Griffin challenged. *N.C. Democratic Party v. N.C. State Bd. of Elections*, No. 24-cv-699, D.E. 35 (E.D.N.C.). Second, a putative class of military and overseas voters who did not present photo ID and whose votes Judge Griffin challenged sued the Board's members and its Executive Director under 42 U.S.C. § 1983, seeking the same relief. *Conley v. Hirsch*, No. 25-cv-193, D.E. 1 (E.D.N.C.). This Court held that these cases "[i]nvolve . . . common question[s] of law or fact" with the *Griffin* litigation and consolidated them. Text Order of Apr. 14, 2025; *see* Fed. R. Civ. P. 42(a). The Court noted that it "intends to resolve Plaintiff Jefferson Griffin's pending motions for injunctive relief as soon as practicable," and was thus allowing all parties to participate in briefing of the federal issues. Text Order of Apr. 14, 2025.

Following this Court's April 12 order instructing the Board to proceed per the orders of the state courts, Justice Riggs, voter-intervenors, the Democratic Party, and the *Conley* plaintiffs all filed appeals to the Fourth Circuit. D.E. 44, 45, 49, 51. Those parties have now moved in the Fourth Circuit for a stay and injunction pending appeal to bar the Board from implementing the cure process ordered by the state courts. No. 25-1397, D.E. 5; No. 1398, D.E. 7; No. 25-1399, D.E. 13; No. 25-1401, D.E. 10. As of the filing of this brief, those motions remain pending in the Fourth Circuit.

The Board now submits this brief "addressing the remaining federal issues" in this dispute now that the state courts have resolved the merits of Judge Griffin's protests under state law. Text Order of Apr. 12, 2025. As explained below, in the *Griffin* litigation, this Court should deny Judge Griffin's petitions for judicial review because the relief he seeks violates federal law. In the litigation brought by the Democratic Party and the *Conley* plaintiffs in federal court, this Court should permanently enjoin the remedial process ordered by the state courts because it violates federal law.

## ARGUMENT

### I. The State Court Order Violates Federal Law.

Implementing the North Carolina Court of Appeals' order, as modified by the North Carolina Supreme Court, would require the Board to review and cancel ballots that were cast during an election that concluded months ago. In doing so, the Board would be forced to violate substantive due process, procedural due process, and equal protection under the Fourteenth Amendment, as well as multiple federal civil-rights statutes.

#### A. The order violates substantive due process.

The order to retroactively cancel votes from this election violates the principles of due process. It is "patent[ly] and fundamental[ly]" unfair to change the rules governing an election after it has already taken place. *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978); *see Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (describing this principle as "settled"). For that reason, the Fourteenth Amendment's Due Process Clause bars the systematic, "retroactive invalidation" of votes. *Burns*, 570 F.2d at 1079-80.

A prior North Carolina elections case—*Hendon v. North Carolina State Board of Elections*—illustrates these principles. At the time, North Carolina law allowed a voter to mark a specific "party circle" at the top of their ballot, which would result in a straight party vote for all

11

candidates of that party. *Hendon*, 710 F.2d at 179. Under the law, however, if a voter wanted to vote for an individual candidate outside of that party, the voter could not mark the "party circle." *Id.* If the voter attempted to mark both the "party circle" and any individual candidates from the other party, machines used in five counties across the state would disregard the individually marked candidates and only register the marked "party circle" at the top, ensuring a straight party vote. *Id.* After the 1982 general election for a seat in the U.S. House of Representatives, the losing candidate in the race brought a lawsuit requesting a recount in the five counties with machines, because numerous voters in those counties selected the winning candidate's "party circle" at the top of their ballot but had also separately marked a vote for the losing candidate. *Id.* at 179-80.

In the post-election challenge, the Fourth Circuit held the state law that required a straight party vote to override any individual candidate votes on the same ballot was unconstitutional. *Id.* at 181. But in doing so, the court only declared the law unconstitutional *prospectively*, while declining to order a recount of the past election. *Id.* at 182-83. The court emphasized the "duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication." *Id.* at 182. A contrary rule, the court explained, would allow "parties who could raise a claim [earlier] 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action." *Id.* (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)). Because the losing candidate in that case could have previously challenged the election law as unconstitutional, the court found "no reason to depart from the general rule that denies relief with respect to past elections." *Id.*

The seminal case on this point, *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), is similarly instructive. *See Hendon*, 710 F.2d at 182 (describing *Griffin* as "settled law"). There,

election officials in Rhode Island issued absentee ballots in a party primary—a practice which had been in place for seven years, and which the officials believed was authorized by state law. *Id.* at 1067. After the primary, the losing candidate claimed that the use of such ballots was unlawful. *Id.* The state supreme court agreed and invalidated those ballots, which changed the outcome of the election. *Id.* at 1068. The First Circuit held that this abrupt reversal violated due process. *Id.* at 1078. As the court explained, because absentee voters had cast their ballots in an "officially-endorsed manner," invalidating those ballots en masse resulted in "broad-gauged unfairness" of a constitutional magnitude. *Id.* at 1073, 1077. Put another way: The Fourteenth Amendment forbids a state from discounting votes cast in accordance with "long-standing practice" and "the instructions of the officials charged with running the election." *Id.* at 1075-76; *see also, e.g., Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) (describing the "massive *ex post* disenfranchisement that the Rhode Island Supreme Court's ruling created" in *Griffin*); *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995) (in an election featuring a seat on the Alabama Supreme Court, retroactively eliminating a requirement of Alabama law that absentee ballots contain the signatures of two witnesses or a notary after voting had begun violated due process); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 243 (6th Cir. 2011) ("To disenfranchise citizens whose only error was relying on poll-worker instructions appears to us to be fundamentally unfair.").

      These principles fully apply here. Implementing the state courts' order would force the Board to discount votes cast in compliance with longstanding elections rules that were in place long before the 2024 election. And the challenging party has "introduced no evidence of any reason why they could not have challenged the constitutionality of these laws before the [ ] general election." *Hendon*, 710 F.2d at 182.

For military and overseas voters, a rule that the Board promulgated before the election unequivocally told voters who cast absentee ballots that they were "not required to submit a photocopy of acceptable photo identification." 08 N.C. Admin. Code 17 .0109(d). This rule was approved by the Rules Review Commission, a body appointed by the North Carolina General Assembly to ensure that administrative rules comply with statutory mandates. *Id.* At no point in the rule-making process did Judge Griffin or his party, any member of the bipartisan Board, any member of the legislatively appointed Rules Review Commission, or any member of the General Assembly, raise any concerns that the rule was unlawful. Moreover, the state's electronic voting portal for military and overseas voters who cast absentee ballots electronically was not even configured to allow copies of voter IDs to be submitted. D.E. 61 at 3 n.3. Discounting votes that were cast consistent with this unequivocal—and uncontested—guidance would deny voters substantive due process.

For voters with inherited residency, the statute that authorizes them to vote was enacted unanimously by the General Assembly in 2011—and has been followed, without complaint or controversy, since that time. N.C. Gen. Stat. § 163-258.2(1)(e))). Cancelling ballots cast by voters with inherited residency *after* an election has taken place, even though those voters followed all the rules in place at the time of the election, would be patently unfair.

If the court holds otherwise, it would "constitute a retroactive change in the election laws that will effectively stuff the ballot box, implicating fundamental fairness issues." *Roe*, 43 F.3d at 581 (cleaned up). The Fourteenth Amendment bars that fundamentally unfair result.

14

Case 5:24-cv-00731-M-RJ    Document 83    Filed 04/21/25    Page 14 of 19

### B. The order violates procedural due process.

The state court order also denies voters procedural due process. The state court of appeals held that the Board lacks statutory authority to require election protesters like Judge Griffin to notify voters that their votes are being challenged. *Griffin*, No. COA25-181, 2025 WL 1021724, at *5. That holding offends due process because voters have a "constitutionally protected liberty interest" in their right to vote. *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 227 (M.D.N.C. 2020). As a result, when a voter's "ballot [is] challenged," due process requires that voters be "given notice," so they can protect their vote. *Id.* at 228.[7]

### C. The order violates the Equal Protection Clause.

The state court order would also require the Board to violate the Equal Protection Clause of the Fourteenth Amendment. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam); *see Wise v. Circosta*, 978 F.3d 93, 100 & n.7 (4th Cir. 2020) (en banc) (stating that *Bush* "is of limited precedential value" given its fact-specific analysis but acknowledging that it "prohibits arbitrary and disparate treatment in the valuation of one person's vote in relation to another's"). If the Board were forced to review and

---

[7] Judge Griffin also reads the decision of the state court to appeals to exacerbate the procedural due process problem here. As part of the remedial process that this Court has declined to enjoin, the Board intends to provide notice to voters that Plaintiff has challenged as "never residents" and to allow them an opportunity to show that they have, in fact, been residents of North Carolina. D.E. 61 at 3-5. Recent news reports and the Board's own review of these voters' voting records suggests that at least some of them either live or have lived in North Carolina and therefore are eligible to vote under state law. *Id.* at 4 n.6. Judge Griffin, however, has asked the state court of appeals to hold that its mandate requires the Board to discount the votes of all these voters, without providing any notice or process. D.E. 76-1 at 19-23. The Board does not interpret the state-court mandate to require the Board to summarily discard these votes, but if the state court of appeals clarifies its mandate as requested by Judge Griffin, that would clearly deny those voters procedural due process.

15

invalidate ballots within the limited set of counties where Judge Griffin brought election protests, "the standards for accepting or rejecting" ballots would "vary" for wholly arbitrary reasons. *Bush*, 531 U.S. at 106; *see also Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 49 (S.D.N.Y. 2020) (equal protection concerns arise when a state "requires identically situated ballots to be counted or invalidated based on random chance"). "To say that a vote is worth more in one [county] than in another would . . . run counter to our fundamental ideas of democratic government." *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964).

These equal protection concerns are illustrated in *Hunter v. Hamilton County Board of Elections*, 635 F.3d 219 (6th Cir. 2011). There, a county board of elections in Ohio decided to count only some provisional ballots that were defective. *Id.* at 224. This decision violated the Equal Protection Clause by "arbitrarily allowing some provisional voters the right to vote when the error in the ballot was caused by the poll worker, but denying other provisional voters the right to vote when the error in the ballot was caused by the poll worker." *Id.* at 226, 238. The court specifically noted that "the cause for constitutional concern is much greater when the Board is exercising its discretion in areas relevant to the casting and counting of ballots." *Id.* at 235. The board "must apply similar treatment to equivalent ballots" to "satisfy . . . equal protection." *Id.* (cleaned up). Otherwise, allowing this "unequal treatment" results in "discriminatory disenfranchisement" of "voters who may bear no responsibility for the rejection of their ballots." *Id.* at 238.

The same principle applies here, where the state supreme court's decision requires the "unequal treatment" of votes across different counties. *Id.* Among the tens of thousands of military and overseas voters who cast ballots in North Carolina's 100 counties, Judge Griffin chose to file protests in only six counties—Buncombe, Cumberland, Durham, Forsyth, Guilford,

16

and New Hanover. No. COA25-181, *Griffin v. N.C. State Bd. of Elections*, Documentary Exhibits to Record on Appeal, Vol. I, at 349-58; 831-40; 1102-11; 1238-47; 1504-51; 2401-10 (N.C. Ct. App.), bit.ly/4llqXw3; NC SBE Election Contest Details, *supra* n. 1. And he timely challenged the votes of specific voters in only one of these counties (Guilford), meaning that only 1,409 voters in one county were properly challenged. D.E. 61 at 2 n.2; N.C. Gen. Stat. § 163-182.9(b)(4)(c). Under the order, the board of elections in a single county will thus be forced to review and cancel the votes of only a fraction of the military and overseas voters that Judge Griffin claims voted improperly. By instructing the Board to review and invalidate only a subset of identically situated voters, the order would force the Board to arbitrarily "value one person's vote over that of another." *Bush*, 531 U.S. at 104-05. But as the Supreme Court has held, it violates equal protection for "the standards for accepting" ballots "[to] vary . . . from county to county." *Id.* at 106; *see also Lecky v. Va. State Bd. of Elections*, 285 F. Supp. 3d 908, 920 (E.D. Va. 2018) ("Courts have generally found equal protection violations where a lack of uniform standards and procedures results in arbitrary and disparate treatment of different voters."). This Court has an "obligation to avoid [such] arbitrary and disparate treatment of the members of its electorate." *Bush*, 531 U.S. at 105.

  **D.**  **The order violates the NVRA.**

  The order also violates the National Voter Registration Act by effectively requiring the Board to remove at least 266 inherited residents from the voter rolls. Under the NVRA, once a person is registered to vote, they may be removed from the rolls only in narrow, enumerated circumstances. 52 U.S.C. § 20507(a)(3), (a)(4), (b)(2), (c)(1), (d)(1). The NVRA also prohibits officials from "systematically remov[ing]" voters from the rolls within 90 days of an election, again except in narrow, enumerated circumstances. *Id.* § 20507(c)(2)(A). This federal requirement has been expressly extended to all North Carolina election contests. N.C. Gen. Stat.

§ 163-82.14(a1).

While a change in residency may lead to a voter's removal from the rolls after following the proper procedures in the NVRA, the nature of a registered voter's residency is not grounds for removal in the period leading up to an election. 52 U.S.C. § 20507(a)(4)(B). And while we are not technically within the NVRA's 90-day quiet period barring the State from removing inherited residents en masse from the rolls, requiring the Board to do so now would completely undermine the quiet period's purpose. *See id.* § 20507(c)(2)(A). Congress enacted the quiet period to "prevent the discriminatory nature of periodic voter purges." S. Rep. 103-6, at 20 (1993). To enforce Congress's prophylactic prohibition against voter purges for the 90-day period before an election, courts cannot require a State to retroactively implement mass voter purges *after* an election has occurred.

E.   **The order violates the Voting Rights Act.**

Implementing the order would also require the Board to violate 52 U.S.C. § 10307(a) of the VRA, which prohibits officials from "willfully fail[ing] or refus[ing] to tabulate, count, and report" the votes of individuals who were qualified to vote in the election. Again, Judge Griffin does not dispute that the military and overseas voters whose ballots are being challenged for a failure to comply with the photo ID requirement are qualified to vote under federal and state law. The state supreme court itself recognized that fact by allowing these voters an opportunity to "cure" their ballots. *Griffin*, No. 320P24-3, 2025 WL 1090903, at *3. As a result, the VRA prohibits the Board from refusing to count their votes.[8]

---

[8]   In addition, Judge Griffin reads the state court of appeals' decision to require the Board to disregard evidence that some voters that he challenged as "never residents" actually are or have been state residents and are therefore qualified to vote. If Judge Griffin were correct in this reading, it would require the Board to cancel votes of qualified North Carolina voters in violation of the Voting Rights Act.

18

## CONCLUSION

For the foregoing reasons, the State Board of Elections respectfully submits that this Court should deny Judge Griffin's petitions for judicial review because they seek relief that would require the Board to violate federal law. This Court should further permanently enjoin the remedial process ordered by the state courts.

Respectfully submitted this the 21st day of April, 2025.

/s/ Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
tsteed@ncdoj.gov
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6567
Fax: 919-716-6758