# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| North Carolina Democratic Party,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>North Carolina State Board of Elections, *et al.*,<br><br>　　　　　Defendants. | Case No. 5:24-cv-699-M |
| Jefferson Griffin<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>North Carolina State Board of Elections,<br><br>　　　　　Defendants,<br><br>　　and<br><br>Allison Riggs, VoteVets Action Fund, North Carolina Alliance for Retired Americans, Sarah Smith, and Juanita Anderson,<br><br>Intervenor-Defendants | Case No. 5:24-cv-731-M |
| Carrie Conley, Lockhart Webb, and Ella Kromm, *individually and on behalf of all others similarly situated*; Gabriela Adler-Espino; and the League of Women Voters of North Carolina,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Alan Hirsch, Jeff Carmon, Stacy Eggers IV, Kevin N. Lewis, and Siobhan O'Duffy Millen, *in their official capacities as members of the North Carolina State Board of Elections*, and Karen Brinson Bell, *in her official capacity as Executive Director of the North Carolina State Board of Elections*,<br><br>　　　　　Defendants. | Case No. 5:25-cv-193-M |

**BRIEF OF AMICI CURIAE TY COBB, TOM COLEMAN, BARBARA COMSTOCK, DAVID EMERY, CLAUDINE SCHNEIDER, PETER SMITH, LAURENCE H. TRIBE, AND JOE WALSH**

NORMAN EISEN
POOJA CHAUDHURI
SPENCER KLEIN
JON GREENBAUM
State Democracy Defenders Fund
600 Pennsylvania Avenue SE#15180
Washington, D.C. 20003
(202) 601 8678
norman@statedemocracydefenders.org

WILLIAM D. SMITH
WILLLIAM C. MCKINNEY
HAYNSWORTH SINKLER BOYD, P.A.
223 S West St STE 925
Raleigh, NC 27603
(864) 240 3271
wmckinney@hsblawfirm.com

i

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................................II

TABLE OF AUTHORITIES ............................................................................................... III

STATEMENT OF INTEREST OF AMICI CURIAE .................................................................. 1

INTRODUCTION ................................................................................................................. 2

ARGUMENT........................................................................................................................ 4

   I.    THE NORTH CAROLINA SUPREME COURT'S DECISION TO REQUIRE MILITARY AND OVERSEAS VOTERS REGISTERED IN SOME COUNTIES TO PROVIDE PHOTO IDENTIFICATION VIOLATES THE EQUAL PROTECTION CLAUSE................................. 4

   II.    THE NORTH CAROLINA SUPREME COURT'S INVALIDATION OF THE DISPUTED BALLOTS VIOLATES VOTERS' SUBSTANTIVE DUE PROCESS RIGHTS .. 8

CONCLUSION............................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*Bush v. Gore*, 531 U.S. (2000) ................................................................................................ 4, 5

Griffin v. *N.C. State Bd. of Elections (Griffin II)*, No. 320P24-3, 2025 WL 1090903,

(N.C. Apr. 11, 2025). .......................................................................................................... 3, 4, 13

*Griffin v. Burns,* 570 F.2d 1065 (1st Cir. 1978) .......................................................................... 9, 10

*Griffin v. N.C. State Bd. of Elections (Griffin I),* No. COA25-181, 2025 WL 1021724, (N.C. Ct.

   App. Apr. 11, 2025) ........................................................................................................ 2, 3, 7

*Hendon v. N.C. State Bd. of Elections*, 710 F. 2d 177 (4th Cir, 1983) ................................ 9, 12, 13

*Moore v. Oglivie*, 394 U.S. 814 (1969) .......................................................................................... 5

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) ........................................................ 8

*Reynolds v. Sims*, 377 U.S. (1964) ............................................................................................ 1, 5

*Roe v. Alabama,* 43 F.3d 574 (11th Cir. 1995) .................................................................. 11, 12, 13

# STATEMENT OF INTEREST OF AMICI CURIAE[1]

Amici curiae are a bipartisan group of legal experts, former elected officials, and other government officers. Amici have devoted their lives to defending the rule of law and upholding the constitution. Amici strongly believe that the right to vote and have one's vote counted is the cornerstone of American democracy. *See Reynolds v. Sims*, 377 U.S. 533, 562 (1964) ("[T]he Court [has] referred to 'the political franchise of voting' as 'a fundamental political right, because preservative of all rights'") (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). Amici are therefore highly concerned about recent attempts to subvert free and fair elections, including in this case. Amici believe that invalidating ballots based on rules that are contrary to what was communicated to the voters during the election is patently unfair and undermines confidence in the democratic process. Amici also object to any attempt to cherry pick votes to be thrown out with an eye toward political gain. This strategic manipulation corrupts the electoral process and deprives citizens of their fundamental right to vote. Amici are listed below:

- **Ty Cobb**, Special Counsel to the President in the Trump Administration from 2017 to 2018.

- **Tom Coleman**, Republican, Representative of the 6th District of Missouri from 1976 to 1993.

- **Barbara Comstock**, Republican, Representative of the 10th Congressional District of Virginia from 2015 to 2019.

- **David Emery**, Republican, Representative of the 1st Congressional District of Maine from 1975 to 1983.

- **Claudine Schneider**, Republican, Representative of the Second District of Rhode Island from 1981 to 1991.

---

[1] This brief was not authored in whole or part by counsel for a party. No one other than *Amici* and their counsel made a monetary contribution to preparation or submission of the brief.

- **Peter Smith**, Republican, Representative-at-Large of Vermont from 1989 to 1991.

- **Laurence H. Tribe**, Carl M. Loeb University Professor of Constitutional Law Emeritus at Harvard University and former Director of the Office of Access to Justice in the U.S. Justice Department.

- **Joe Walsh**, Republican, Representative of the 8th Congressional District of Illinois from 2011 to 2013.

## INTRODUCTION

When all the votes were tallied after November 5, 2024, Judge Jefferson Griffin fell 734 votes short in his contest against incumbent Justice Allison Riggs for North Carolina Supreme Court Seat 6. Instead of accepting defeat, Judge Griffin sought to invalidate the votes of voters who had followed the rules as they existed at the time of the election.

Two of Judge Griffin's challenges involved military and overseas voters. One claim was that the State Board of Elections' exemption of military and overseas voters from providing photo identification violated North Carolina law. But he only challenged the votes of military and overseas voters who did not provide photo identification in four counties: Guilford County, where the challenge was timely, and Durham, Forsyth, and Buncombe counties, where the challenges were filed after the Board's deadline. *Griffin v. N.C. State Bd. of Elections* (*Griffin I*), No. COA25-181, 2025 WL 1021724, (N.C. Ct. App. Apr. 11, 2025) (Hampson, J., dissenting). Second, he contested the votes of military and overseas voters who, despite never having resided in the United States, are citizens whose parents last lived in North Carolina before leaving the United States. *Id.* at *1.

The Board rejected Judge Griffin's challenges. The Wake County Superior Court affirmed. Then, five months after the election, the North Carolina Court of Appeals reversed in a divided opinion. The majority determined that state law requires military and overseas voters to provide photo identification. *Griffin I*, 2025 WL 1021724, at * 11–12. The majority ruled that affected

2

voters must submit photo identification or a Reasonable Impediment Declaration to election officials within fifteen days after receiving notice for their ballots to remain valid. *Id.* at * 12. The order did not clarify whether it only applied to the voters in Guilford County or also encompassed the voters in Durham, Forsyth, and Buncombe Counties. The majority further held that state law prohibited the military and overseas voters who had never resided in North Carolina or the United States from voting in North Carolina and ordered their votes invalid.

In a single paragraph discussion, a divided North Carolina Supreme Court upheld the decision of the lower court regarding photo identification but extended the cure period to thirty days. *Griffin v. North Carolina State Board of Elections* (*"Griffin II"*)*,* No. 320P24-3, 2025 WL 1090903, at *11–12 (N.C. Apr. 11, 2025). Like the Court of Appeals, the North Carolina Supreme Court did not address whether the ruling applied to voters in Guilford County exclusively or also extended to voters in Durham, Forsyth, and Buncombe Counties. Additionally, the court also affirmed the lower court's decision to invalidate the votes of the military and overseas voters who had never resided in North Carolina or the United States. *Id.* at *3.

The North Carolina Supreme Court's ruling is unconstitutional for two reasons. First, the court's selective imposition of a photo ID requirement as to military and overseas voters registered in Guilford County (and possibly three other counties), but no other counties, violates longstanding Equal Protection Clause principles. Second, the court's decision to change the rules for voting *after the conclusion of an election* violates the Due Process Clause.

3

# ARGUMENT

## I. THE NORTH CAROLINA SUPREME COURT'S DECISION TO REQUIRE A PHOTO ID FOR MILITARY AND OVERSEAS VOTERS IN ONLY CERTAIN COUNTIES VIOLATES THE EQUAL PROTECTION CLAUSE.

As discussed above, Judge Griffin has argued that North Carolina military and overseas voters are required under state law to provide photo identification for their votes to count. But instead of challenging all votes from military and overseas voters who did not provide photo identification, he has limited his challenge to voters from selected counties. The decisions of the North Carolina Supreme Court and the North Carolina Court of Appeals to accept Judge Griffin's challenge and order the Board to require military and overseas voters in only one (or possibly four) counties to provide photo identification is a violation of the Equal Protection Clause of the Fourteenth Amendment.

It has been a longstanding principle that "when a State accord[s] arbitrary and disparate treatment to voters in its different counties," it violates the Equal Protection Clause. *Bush v. Gore*, 531 U.S. 98, 107 (2000) (quoting *Gray v. Sanders*, 372 U.S. 368 (1963)). Supreme Court decisions of the 1960s such as *Gray*, *Reynolds v. Sims*, 377 U.S. 533 (1964) and *Moore v. Oglivie*, 394 U.S. 814 (1969) all stand for the principle that vote dilution based on where a voter lives violates the Equal Protection Clause. The prototypical example is when states allocated legislative seats by county, thereby affording voters in more densely populated counties less voting influence than those in more sparsely populated counties. *Reynolds*, 577 U.S. at 580–81. As the Supreme Court discussed in *Reynolds*, it had been long settled as of 1964 that the denial of the right to vote of some citizens and not others violated Equal Protection. *Id.* at 586–87.

The Court's equal protection principles set forth in *Reynolds* and the vote denial cases formed the basis for the Court's decision in *Bush v. Gore*, where it held that the Florida Supreme

4

Court's lack of uniform standards for counting contested votes in the 2000 Presidential election violated the Equal Protection Clause. 531 U.S. 98, 103 (2000). Seven justices, including the five-member majority and two dissenting justices, agreed that the disparate treatment of contested ballots by county violated the Equal Protection Clause. *Id.* at 111. Justices Souter and Breyer dissented on the issue of remedy (by submitting this brief, Amici do not endorse the per curiam 5-4 decision concerning remedy, which prevented the Florida Supreme Court from implementing a remedy consistent with the equal protection basis for the 7-2 holding, whereas Justices Souter and Breyer would have given the Florida Supreme Court a chance to do so).

The majority emphasized that the foundational principle of the Equal Protection Clause prohibits states from assigning unequal weight to votes: "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104. Applying this principle, the Court determined the issue was "whether the recount procedures the Florida Supreme Court has adopted are consistent with its obligation to avoid arbitrary and disparate treatment of the members of its electorate." *Id.* at 105.

The majority identified three ways in which the Florida Supreme Court had violated the Equal Protection Clause. First, the Florida Supreme Court had ordered that revised totals after a full manual recount in two counties and a partial recount in one be included in the certified vote total. The Court explained that the treatment of voters in these counties as opposed to voters in other counties, which had been ordered by the Florida Supreme Court to undertake a manual recount of ballots that had not originally registered a vote for President, was the basis for an Equal Protection violation. *Id.* at 107. The Court concluded that this "distinction has real consequences" and that the "State Supreme Court's inclusion of vote counts based on these variant standards exemplifies concerns with the remedial process." *Id.* at 107–08. Second, the Court observed that

5

the Florida Supreme Court's inclusion of a partial recount from one county, Miami-Dade County, raised "a further equal protection concern." *Id.* at 108. Third, the Court recognized the lack of uniform standards in determining voter intent was "inconsistent with the minimum procedures necessary to protect the fundamental right of each voter." *Id.* at 109. For these reasons, the Supreme Court ruled that the Florida Supreme Court had violated the Equal Protection Clause.

Justice Souter, in a portion of his opinion joined by Justice Breyer in part, framed the equal protection concern as "unjustifiably disparate standards . . . appl[ying] in different electoral jurisdictions to otherwise identical facts." *Id.* at 545 (Souter, J., dissenting). According to Justice Souter, evidence suggested "that a different order of disparity obtains under rules for determining a voter's intent that have been applied (and could continue to be applied) to identical types of ballots used in identical brands of machines and exhibiting identical physical characteristics (such as 'hanging' or 'dimpled' chads)." *Id.* He concluded no legitimate state interest existed to treat similarly situated voters differently, finding that "the differences appear wholly arbitrary." *Id.*

The North Carolina Supreme Court's order repeats the Florida Supreme Court's mistake. Subjecting military and overseas voters in Guilford County (and possibly three other counties) to a post-election photo identification requirement that does not apply to voters in the other almost one hundred counties is, to paraphrase Justice Souter, an unjustifiable disparate standard applied in different electoral jurisdictions to otherwise identical facts.

The North Carolina Supreme Court's order violates the other component of the Equal Protection standard from *Bush v. Gore*: it is arbitrary. Judge Griffin engaged in gamesmanship by challenging not only the photo ID requirements for military and overseas voters *after* the election, but also selectively targeting counties where his opponent likely outperformed him. *Griffin I,* 2025 WL 1021724, at *41 at n.23 (Hampson, J., dissenting). The North Carolina Supreme Court's

6

the Florida Supreme Court's inclusion of a partial recount from one county, Miami-Dade County, raised "a further equal protection concern." *Id.* at 108. Third, the Court recognized the lack of uniform standards in determining voter intent was "inconsistent with the minimum procedures necessary to protect the fundamental right of each voter." *Id.* at 109. For these reasons, the Supreme Court ruled that the Florida Supreme Court had violated the Equal Protection Clause.

Justice Souter, in a portion of his opinion joined by Justice Breyer in part, framed the equal protection concern as "unjustifiably disparate standards . . . appl[ying] in different electoral jurisdictions to otherwise identical facts." *Id.* at 545 (Souter, J., dissenting). According to Justice Souter, evidence suggested "that a different order of disparity obtains under rules for determining a voter's intent that have been applied (and could continue to be applied) to identical types of ballots used in identical brands of machines and exhibiting identical physical characteristics (such as 'hanging' or 'dimpled' chads)." *Id.* He concluded no legitimate state interest existed to treat similarly situated voters differently, finding that "the differences appear wholly arbitrary." *Id.*

The North Carolina Supreme Court's order repeats the Florida Supreme Court's mistake. Subjecting military and overseas voters in Guilford County (and possibly three other counties) to a post-election photo identification requirement that does not apply to voters in the other almost one hundred counties is, to paraphrase Justice Souter, an unjustifiable disparate standard applied in different electoral jurisdictions to otherwise identical facts.

The North Carolina Supreme Court's order violates the other component of the Equal Protection standard from *Bush v. Gore*: it is arbitrary. Judge Griffin engaged in gamesmanship by challenging not only the photo ID requirements for military and overseas voters *after* the election, but also selectively targeting counties where his opponent likely outperformed him. *Griffin I,* 2025 WL 1021724, at *41 at n.23 (Hampson, J., dissenting). The North Carolina Supreme Court's

6

decision to endorse this approach—imposing different standards on similarly situated voters—lacked legal justification and gave license to Judge Griffin's attempt to undermine the results of the election. Notably, neither the North Carolina Supreme Court nor the Court of Appeals addressed the equal protection issue raised in the dissents, which cited North Carolina's state constitutional safeguards against imposing arbitrary restrictions of this kind. *Griffin II*, 2025 WL 1090903, at * 7 (Earls, J., dissenting); *Griffin I,* 2025 WL 1021724 *40-41 (Hampson J., dissenting). For the reasons outlined in *Bush v. Gore*, the North Carolina courts' differential treatment of voters whose situations are identical, except for the counties in which they registered to vote, creates severe Equal Protection problems and undermines the right to vote.

Faced with a similar set of facts, the Sixth Circuit also held that differential treatment of military and overseas voters violated the Equal Protection Clause. In *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012), the Sixth Circuit found Ohio's decision to reduce the number of days of early voting for all voters except military and overseas voters was unconstitutional. In reaching its conclusion, the court noted the problem with giving some voters special privileges that other similarly situated voters do not receive:

> Equally worrisome would be the result if states were permitted to pick and choose among groups of ***similarly situated voters*** to dole out special voting privileges. Partisan state legislatures could give extra early voting time to groups that traditionally support the party in power and impose corresponding burdens on the other party's core constituents. . . . To avoid this dangerous result, courts must carefully weigh the asserted injury against the 'precise interests' proffered by the State.

*Id.* at 435 (emphasis in original).

Here, Judge Griffin has chosen to challenge one subset of similarly situated voters while leaving the rest alone to gain what he perceives to be an electoral advantage. And the North Carolina Supreme Court issued an order treating that subset of voters differently without providing

7

any legal basis for the differential treatment. To paraphrase the Sixth Circuit, this order has enabled Judge Griffin to pick and choose among groups of similarly situated voters and disadvantage those he believes are most likely to vote against him. This violates the Equal Protection Clause.

## II. THE NORTH CAROLINA SUPREME COURT'S INVALIDATION OF THE DISPUTED BALLOTS VIOLATES VOTERS' SUBSTANTIVE DUE PROCESS RIGHTS

The North Carolina Supreme Court's decision also violates the Due Process Clause. It is well established that a court may not upset voters' settled expectations by changing the rules of an election after ballots have been cast and counted. *See, e.g., Griffin v. Burns,* 570 F.2d 1065, 1077 (1st Cir. 1978). In *Hendon v. N.C. State Bd. of Elections*, 710 F. 2d 177 (4th Cir, 1983), the Fourth Circuit explained why candidates must bring their complaints about voting rules to the court before an election is held:

> Courts have imposed a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible. They have reasoned that failure to require pre-election adjudication would "permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action."

*Id.* at 182 (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

In *Hendon*, a losing candidate and a voter claimed, after the election, that two procedures which North Carolina election officials had used for years violated the Constitution. *Id.* Though the Fourth Circuit found one of the procedures unconstitutional and that a second might be, it denied the plaintiffs' request for a recount because the plaintiffs "introduced no evidence of any reason why they could not have challenged the constitutionality of these laws before the . . . . election." *Hendon*, 710 F.2d at 182. Instead, the Fourth Circuit identified prospective relief as the proper remedy: it ordered the district court to enjoin future use of the unconstitutional procedure

8

and required the court to examine whether the other procedure was unconstitutional, and if so, enjoin its future use. *Id.* at 182–83.

Judge Griffin proceeded like the plaintiffs in *Hendon*: he brought his claims after the election. Only when he lost did he seek to undo the results, first before the Board and then before the North Carolina courts. Unfortunately, the North Carolina Supreme Court did not follow the teachings of the Fourth Circuit in *Hendon*. By granting Judge Griffin's retroactive relief rather than restricting his remedy to future elections, the North Carolina Supreme Court wrongly endorsed Judge Griffin's systemic manipulation of the electoral system.

*Hendon* not only illuminates the flaws with the retroactive relief granted by the North Carolina Supreme Court, it also establishes the underlying legal theory for reversing that relief: substantive due process. The theory of substantive due process, as the *Hendon* court put it, comes into play when "the election process reaches the point of 'patent and fundamental unfairness.'" *Id.* at 181 (quoting *Griffin v. Burns*, 570 F.2d at 1077). And though the *Hendon* court did not find a substantive due process violation on the facts that were before it, the court made clear that the line of due process cases recognizing the unconstitutionality of patently and fundamentally unfair election processes governs in the Fourth Circuit. *Id*

Indeed, the very case that the *Hendon* court quoted in defining the substantive due process standard, *Griffin v. Burns*, is instructive. There, a federal court, citing substantive due process, undid a decision by a state supreme court that invalidated votes cast under rules which existed at the time of the election. *Griffin*, 570 F.2d at 1079. In *Griffin*, the Rhode Island Supreme Court had invalidated absentee ballots cast in a primary election, concluding absentee ballots were only available in a general election and therefore could not be counted in the vote totals for the primary. *Id.* at 1068. The ruling ran contrary to "a practice that had existed in Rhode Island for about seven

9

years in the case of primaries." *Id.* at 1067. Prior to election day, election officials "believing the issuance of such ballots in party primaries to be authorized . . . [had] advertised and issued" absentee ballots to voters for use in the primary. *Id.* at 1067. But the invalidation of these ballots, the First Circuit concluded, amounted to "a broad-gauged unfairness that infected the results" of the election, thereby violating voters' due process rights. *Id.* at 1078. In reaching this conclusion, the First Circuit noted the Rhode Island Supreme Court's substantial departure from pre-election rules and the unbroken practice of issuing absentee ballots in primaries. *Id.* at 1078–79. It was unwilling to entertain "the fiction that the voters had a duty, at their peril, somehow to foresee the ruling of the Rhode Island Supreme Court invalidating their ballots." *Id.* at 1076.

*Roe v. Alabama,* 43 F.3d 574 (11th Cir. 1995) involved similar circumstances and led to a similar result. In *Roe*, following a close state supreme court election, a state court ordered the counting of absentee ballots that were not accompanied by a witnessed or notarized ballot affidavit. *Id.* at 578. The state court's decision ran contrary to a settled understanding of state law and the established procedures that state officials had used and implemented in prior elections. *See id.* at 578. Changing the rules after an election, the Eleventh Circuit concluded, reached a point of "fundamental unfairness" that violated the Due Process Clause. *Id.* at 580. Just as in *Griffin v. Burns*, the *Roe* court criticized the state supreme court for abandoning long-established procedures and directly contravening state election law as written when the election occurred. *Id.* at 581–82.

*Hendon* stands in stark contrast to the above cases. In *Hendon,* it was the plaintiffs who requested retroactive relief when they could have brought their challenges prior to the election. 710 F.2d at 182. *Hendon* also concerned a much different election issue, namely the alleged noncompliance of a ballot design with the technical requirements of North Carolina law. *Id.* at

182. This bears no resemblance to the blanket inclusion or exclusion of classes of ballots in *Griffin* and *Roe*.

Both *Roe* and *Griffin* also stand for the principle that voters may rely on the representations of state officials that their ballots will be counted. In both cases, state officials made statements prior to the election that were contradicted by a state court after the election. *Roe*, 43 F.3d at 581; *Griffin*, 570 F.2d at 1075-76. And in both cases, the respective courts concluded that voters had a right to rely on these earlier representations. The Court in *Roe* said it "consider[ed] it unreasonable to expect average voters and candidates to question the Secretary [of State's], the Attorney General's, and the election officials' interpretation and application of the statute, especially in light of its plain language." 43 F.3d at 581, the court noted that it was unreasonable to "expect[] a voter to have questioned the State Secretary's and other state officials' issuance of the absentee ballots." 570 F.2d at 1076.

This case is similar to *Griffin* and *Roe*, and very different from *Hendon*. Here, a state court issued an order after the election that certain ballots should not count even though that directive contravened rules that existed at the time of the election. The impact of the North Carolina Supreme Court's decision was to disenfranchise voters who, as Justice Earls aptly noted in dissent, would have had every reason to believe they were casting their vote under the proper procedure. *Griffin II*, 2025 WL 1090903 at 6–7 (Earls, J. dissenting). In the case of military and overseas votes, both the State Board and Rules Review Commission (appointed by the General Assembly) had confirmed on multiple occasions that a Photo ID was not required for these ballots to count. *Id.* at 6. And in the case of overseas voters who inherited their North Carolina citizenship from their parents, the legislature passed a law thirteen years ago permitting those voters to vote. *Id.* at 7. This Court should not countenance such a patent violation of voters' due process rights.

11

## CONCLUSION

For the foregoing reasons, this Court should hold that the North Carolina Supreme Court's decision violates the Equal Protection and Due Process Clauses of the United States Constitution, reject Judge Griffin's petition for review, and permanently enjoin the remedial process ordered by the North Carolina Supreme Court.

/s/ William D. Smith

William D. Smith, Fed ID: 14014
State Bar No. 61488
William C. McKinney, Fed ID: 15580 N.C.
State Bar No. 046254
Haynsworth Sinkler Boyd, P.A. ONE North Main, 2nd Floor Greenville, South Carolina 29601 Telephone: (864) 240-3200
wmckinney@hsblawfirm.com

*Local Civil Rule 83.1(d) Attorney for Amicus Curiae*

/s/Norman Eisen
Norman Eisen
Pooja Chaudhuri
Spencer Klein
Jon Greenbaum
*Pro hac vice applications forthcoming*
State Democracy Defenders Fund 600 Pennsylvania Avenue SE #15180
Washington, DC 20003
norman@statedemocracydefenders.org
pooja@statedemocracydefenders.org
spencer@statedemocracydefenders.org
jgreenbaum@justicels.com