UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JEFFERSON GRIFFIN,<br><br>   Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>   Defendant,<br><br>and<br><br>ALLISON RIGGS, et al.,<br><br>   Intervenor-Defendants. | **STATE BOARD'S RESPONSE BRIEF**<br><br>Case No. 5:24-cv-00731-M |
| NORTH CAROLINA DEMOCRATIC PARTY,<br><br>   Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>   Defendants. | Case No. 5:24-cv-00699-M |
| CARRIE CONLEY, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>ALAN HIRSCH, et al.,<br><br>   Defendants. | Case No. 5:25-cv-00193-M |

Defendants, the North Carolina State Board of Elections, its members, and its executive director, respectfully submit this response to Judge Griffin's opening brief on the remaining federal-law issues.

## I. *Younger* Abstention Is Inappropriate.

In his brief, Judge Griffin first argues that this Court should abstain under *Younger* from resolving the federal issues that remain in this case. Griffin Br. at 5-9. For multiple independent reasons, *Younger* abstention is inappropriate here.

First, abstention would be inconsistent with the Fourth Circuit's mandate. Lower courts must comply "on remand with the dictates of a superior court," whose mandate "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). This rule also "forecloses litigation of issues" that have been "waived . . . because they were not raised in the district court" initially. *Id*.

In the Fourth Circuit's decision, it directed this Court "to expressly retain jurisdiction of the federal issues identified in the Board's notice of removal should those issues remain after the resolution of the state court proceedings, including any appeals." *Griffin v. N.C. State Bd. of Elections*, No. 25-1018(L), slip op. at 11 (4th Cir. Feb. 4, 2025) (per curiam). Abstaining from exercising this jurisdiction would be inconsistent with the Fourth Circuit's directive that this Court "*retain* jurisdiction" over the federal issues in this case. *Id.* (emphasis added). And in these circumstances, abstaining under *Younger* would be particularly inappropriate. That is because Judge Griffin himself first "asked [this Court] to abstain under *Pullman*." *Id.* at 10. He did so, moreover, without suggesting that *Younger* abstention was appropriate. Because he did not raise *Younger* abstention previously, the Fourth Circuit's mandate now bars consideration of this "waived" issue. *Bell*, 5 F.3d at 66.

2

Second, *Younger* abstention is also inappropriate because the State has consented to federal jurisdiction here. It is well established that if "the State voluntarily chooses to submit to a federal forum," *Younger* does "not demand that the federal court force the case back into the State's own system." *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977); *see also Gilliam v. Foster*, 61 F.3d 1070, 1082 (4th Cir. 1995) (recognizing rule).

Here, the Board removed this case to federal court under a statute enacted by Congress that guarantees a federal forum when state officials are, as here, asked to violate federal law. *See* 28 U.S.C. § 1443(2); *Griffin*, No. 25-1018(L), slip op. at 9 (affirming removal under this statute). Thus, because the Board itself voluntarily removed this case to federal court and submitted to the jurisdiction of this federal forum, *Younger* does not apply.

Third, abstaining under *Younger* would also be mistaken because this case does not fit among any of the "three types of proceedings" for which such abstention is exclusively allowed: (1) "ongoing state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citations omitted); *see also Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 328-29 (4th Cir. 2022) (recognizing rule). If a "case does not [fall into one of these three settled categories], courts need go no further." *Jonathan R.*, 41 F.4th at 329. They "can properly entertain their federal-question jurisdiction without worrying about stepping on state toes." *Id*.

In his brief, Judge Griffin does not address or cite this well-established test for *Younger* abstention. *See* Griffin Br. at 5-9. In passing, however, he does argue that exercising jurisdiction would interfere with "the processes by which the State compels compliance with the judgment of its courts." *Id.* at 8 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13-14 (1987)). In doing so,

Judge Griffin possibly means to argue that this case falls within the third group of these cases, which involve interference with "a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 571 U.S. at 72-73.[1] This third category only encompasses an exceedingly narrow set of cases. *Id.* at 78. Cases that fall into this third category involve "challenges to the processes by which the State compels compliance with the judgments of its courts[,]" where proceeding in federal court would not only "interfere with the execution of state judgments, but . . . do so on grounds that challenge the very process by which those judgments were obtained." *Pennzoil*, 481 U.S. at 13-14; *see also Jonathan R.*, 41 F.4th at 330.

Here, however, exercising jurisdiction would not interfere with the enforcement of any "judgments" of the North Carolina courts or challenge the judicial process by which they were obtained. *Pennzoil*, 481 U.S. at 14. This Court "expressly retained jurisdiction" over the federal issues in this case, the Board then made an *England* reservation concerning those issues, and the state courts did not rule on the federal issues now before this Court. *See* D.E. 35; Bd. Br. at 6-8. There is thus no state court "judgment" that bears on the federal issues before this Court that the renewal of federal jurisdiction over this case could possibly disturb. *Pennzoil*, 481 U.S. at 14.

Were it otherwise, *Pullman* abstention would become a nullity. "The usual rule . . . to retain jurisdiction in *Pullman* situations" would serve no purpose, *Meredith v. Talbot Cnty.*, 828

---

[1] The first two groups of cases are inapplicable. This case is not a criminal prosecution. Nor is it a civil enforcement proceeding, which involve the State "sanction[ing]" a party for a "wrongful act." *Sprint*, 571 U.S. at 79. Here, rather, Judge Griffin himself commenced this action seeking judicial review of the Board's decision, which does not implicate *Younger*. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) (holding that "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action"); *Cawthorn v. Circosta*, 590 F. Supp. 3d 873, 888 n.6 (E.D.N.C.) (Myers, J.) (holding that proceeding before Board was not "civil enforcement proceeding" because, as here, it was not "akin to criminal prosecution"), *rev'd on other grounds*, *Cawthorn v. Amalfi*, 35 F.4th 245, 261 (4th Cir. 2022).

F.2d 228, 232 (4th Cir. 1987), because allowing cases first to proceed in state court would result in judgments that *Younger* would then shield from federal jurisdiction. Unsurprisingly, then, Judge Griffin fails to cite any case where a court has abstained under *Younger* after a case returned to federal court for resolution of federal issues under *Pullman*. Griffin Br. at 5-9; *see, e.g.*, *Pennzoil*, 481 U.S. at 11 n.9 (abstaining under *Younger* without addressing whether "*Pullman* abstention" was "appropriate" instead). Because this Court's jurisdiction is governed by *Pullman*, Judge Griffin cannot show that this case could possibly interfere with a state court judgment to which *Younger* might apply.

For all these reasons, therefore, this case is not subject to *Younger* abstention. This Court should exercise jurisdiction over the federal issues in this case, as the Fourth Circuit ordered.

## II. Judge Griffin's Federal-Law Arguments Fail on the Merits.

Judge Griffin attempts to defend the state court order on the merits, but his arguments fall short.

### A. The order violates substantive due process.

Judge Griffin's opening brief notably fails to address the Fourth Circuit's decision in *Hendon v. N.C. State Board of Elections,* 710 F.2d 177 (4th Cir. 1983). But as the Board has explained, that squarely on-point precedent controls the substantive due process analysis here. Bd. Br. at 11-12.

Judge Griffin claims that refusing to retroactively invalidate the challenged votes would require "the expansion of a substantive due process right never recognized by the Supreme Court." Griffin Br. at 9. That is incorrect. "Since the time of [the Supreme Court's] early explanations of due process, [the Court has] understood the core of the concept to be protection against arbitrary action." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998). It requires no

5

"expansion" of due-process protections generally—or of substantive due process specifically—to apply that rule here.

Specifically, in the elections context, courts have held that due process prohibits a state election from "reach[ing] the point of patent and fundamental unfairness." *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978); *Hendon,* 710 F.2d at 182 (noting that *Burns* is "settled" law). Patent and fundamental unfairness can arise when (1) there is "likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election," and (2) "significant disenfranchisement" would "result[ ] from a change in the election procedures." *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998).

Both criteria are satisfied here. First, Judge Griffin altogether ignores the reliance interests of our State's voters. Yet it is undisputed that the challenged voters did everything that they were asked to cast a ballot under the rules in place at the time of the election. Upsetting these reliance interests months after the election is fundamentally unfair. *Burns*, 570 F.2d at 1076 (emphasizing "the unreasonableness of expecting a voter to have questioned" instructions from elections officials during the election process). Second, as for the extent of the disenfranchisement, Judge Griffin claims that he contests only a "handful of affected voters." Griffin Br. at 15. But he has challenged at least 1,600 votes—and he is actively seeking to expand the scope of his protests to challenge thousands more. *Id.* at 15-16 & n.2. Judge Griffin claims that at least 10 percent of all the votes cast would have to be at issue to violate due process, *id.* at 15-16, but he cites nothing in law or logic for establishing a constitutional ten-percent rule of that kind. *Cf. League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014) (observing that "even one disenfranchised voter—let alone several

6

thousand—is too many"); *Bennett*, 140 F.3d at 1227 (no massive disenfranchisement occurred because "[e]very ballot submitted was counted").

Judge Griffin argues that his challenges are merely "garden variety" election disputes and so they cannot rise to the level of a due process violation. Griffin Br. at 12. Specifically, he claims that "a state board of elections misinterpreting a state's election code is about as garden-variety as it gets." *Id.* at 14. But the *Board* here did not misinterpret state election law. The state courts struck down a law passed by the *state legislature* as unconstitutional and invalidated a rule approved by the *legislatively appointed* Rules Review Commission as exceeding the scope of the Board's statutory authority. *Griffin v. N.C. State Bd. of Elections*, No. COA25-181, 2025 WL 1021724, at *11-13 (N.C. Ct. App. Apr. 4, 2025); *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *1-3 (N.C. Apr. 11, 2025). The state courts thus did not merely "clarify" preexisting election rules, as Judge Griffin claims, Griffin Br. at 13-14—the state court orders changed the rules and applied those changes retroactively. To say that a holding of that kind is "garden variety" blinks at reality. *Cf. Griffin*, 2025 WL 1090903, at *17 (Dietz, J., concurring in part and dissenting in part) ("By every measure, this is the most impactful election-related court decision our state has seen in decades."). Judge Griffin's effort to retroactively disenfranchise at least 1,600 military and overseas voters by challenging longstanding election rules is far from "garden variety."

Judge Griffin finally contends that the state-court-ordered cure process solves any possible substantive due process problem here. Griffin Br. at 16. But the thirty days afforded military and overseas voters to submit a copy of their photo ID does not change the fact that these voters were held to have voted unlawfully—and will have their ballots canceled—unless they take further steps to have their vote counted, months *after* the election is over when no voter

is expecting to have to continue the voting process that has long ended, even though these voters followed all of the election rules that were in place at the time. The cure process does nothing to alleviate the fundamental and patent unfairness of that result. *Hendon*, 710 F.2d at 182 (emphasizing "the general rule that denies relief with respect to past elections").

### B. The order violates procedural due process.

Judge Griffin focuses his procedural due process arguments on the constitutionality of the cure process itself. Griffin Br. at 17-21. But that skips a threshold issue: whether the state courts could hold, consistent with due process, that the Board is not allowed to require election protestors like Judge Griffin to notify voters that their votes are being challenged. *Griffin*, No. COA25-181, 2025 WL 1021724, at *5. As the Board explained in its opening brief, the answer is no. Bd. Br. at 15. The right to vote is a constitutionally protected liberty interest, and, at a minimum, due process requires "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. Any notice from the Board of a potential cure process now—more than five months after the election and after any "opportunity to present their objections" has passed—is constitutionally inadequate. At the very least, such a notice now by the State Board does not excuse the inadequate notice provided by Judge Griffin with his initial protests that failed to apprise the challenged voters that they could be disenfranchised. Bd. Br. at 15.

8

### C. The order violates equal protection.

Judge Griffin offers three ways to distinguish *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam). But all his arguments have been squarely rejected by the Fourth Circuit. First, Judge Griffin claims that *Bush* is of "limited precedential value." Griffin Br. at 21-22 (quoting *Wise v. Circosta*, 978 F.3d 93, 100 n.7 (4th Cir. 2020) (en banc)). But the Fourth Circuit has recognized the case as "binding" and prohibiting "arbitrary and disparate treatment in the valuation of one person's vote in relation to another's." *Wise*, 978 F.3d at 100 & n.7. Second, Judge Griffin argues that the equal-treatment rule in *Bush* should only apply to presidential elections. Griffin Br. at 21-22. The Fourth Circuit, however, has already applied *Bush* in the context of state elections. *Wright v. North Carolina*, 787 F.3d 256, 263-64 (4th Cir. 2015) (applying *Bush* to a challenge to state law that redrew school board electoral districts). Third, Judge Griffin argues that *Bush* is relevant only in cases that involve court-ordered recounts. Griffin Br. at 22. But again, the Fourth Circuit has applied *Bush* outside that context. *Wise*, 978 F.3d at 100 (applying *Bush* to dispute over absentee-ballot deadline but holding that equal treatment was satisfied).

Judge Griffin alternatively suggests that this case "doesn't present a *Bush v. Gore* problem," because "[c]orrecting election errors in one location doesn't require correcting all errors across the State." Griffin Br. at 23. He cites no authority for that highly dubious proposition. And he otherwise fails to explain how selectively targeting voters in at most six of the State's 100 counties does not create the kind of "arbitrary and disparate treatment in the valuation of one person's vote in relation to another's" that *Bush* prohibits. *Wise*, 978 F.3d at 100.

### D. The order violates the NVRA.

Judge Griffin's various arguments under the NVRA also fail.

First, Judge Griffin is incorrect that the NVRA is inapplicable to state elections. Griffin Br. at 25. State law expressly extends the NVRA's requirements to state elections. N.C. Gen. Stat. § 163-82.14(a1). As the Fourth Circuit has held, "North Carolina has a unified registration system for both state and federal elections," and it is thus "bound by the provisions of the NVRA." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 401 (4th Cir. 2024).

Second, Judge Griffin argues that the NVRA only bars the Board from canceling voter registrations, not canceling votes. Griffin Br. at 24-25. But having a list of voters who are eligible to vote makes no sense if the government then removes their ballots under the premise that the eligibility rules changed after election day. *See Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 512 F. Supp. 3d 1354, 1368 (M.D. Ga. 2021) (rejecting this same argument as drawing "a distinction without a difference" because "[t]he effect of not appearing on the list of electors is the same as not being eligible to vote").[2] Judge Griffin's arguments therefore squarely implicate the NVRA's limits on removing registered voters from the rolls.

Third, Judge Griffin argues that the state-court orders do not impose a "program" to "systematically remove" the names of voters from the rolls. Griffin Br. at 26; *see* 52 U.S.C. § 20507(c)(2)(A). But the cure process ordered by the state courts does just that. The phrase "any program" "has a broad meaning" that includes "efforts to remove the names of ineligible voters from the State's voter rolls." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1339, 1344 (11th Cir. 2014); *see* Merriam-Webster Dictionary, *Program* ("a plan or system under which action

---

[2] Moreover, if the NVRA permits removing the ballot of a voter who is nonetheless on the rolls of eligible voters, it would permit a violation of the Voting Rights Act. *See* DE 83 at 18. In the NVRA, Congress expressly mandated that any systematic voter list maintenance by the States must be "in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).

10

may be taken toward a goal"). And the program is "systematic" here because these voters may be removed from the rolls as part of a process to carry out this program. Merriam-Webster Dictionary, *Systematic* ("methodical in procedure or plan"); *see also N.C. State Conference of the NAACP v. Bipartisan State Bd. of Elecs. & Ethics Enf't*, No. 1:16CV1274, 2018 U.S. Dist. LEXIS 134228, at *18-22 (M.D.N.C. Aug. 8, 2018) (holding that "systematic" means a process based on generic evidence like returned mail or database information, rather than individualized inquiry into each voter's circumstances.). Indeed, Judge Griffin reads the state court of appeals' decision to require the Board to disregard evidence that some voters that he challenged as "never residents" actually are or have been state residents and are therefore qualified to vote—further confirming that the program to remove voters here would be "systematic" under the NVRA. *Arcia*, 772 F.3d at 1344 (a "systematic" program does "not rely upon individualized information or investigation to determine which names from the voter registry to remove").

## CONCLUSION

For the foregoing reasons, the State Board respectfully submits that this Court should deny Judge Griffin's petitions for judicial review because they seek relief that would require the Board to violate federal law. This Court should further permanently enjoin the remedial process ordered by the state courts.

Respectfully submitted this 25th day of April, 2025.

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
tsteed@ncdoj.gov
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Phone: 919-716-6900
Fax: 919-716-6758
*Counsel for State Board Defendants*