# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| JEFFERSON GRIFFIN,<br>   *Plaintiff*,<br>v.<br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br>   *Defendant*,<br>and<br>ALLISON RIGGS, VOTEVETS ACTION FUND, NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, SARAH SMITH, and JUANITA ANDERSON,<br>   *Intervenor-Defendants*. | Case No. 5:24-cv-00731-M |
| NORTH CAROLINA DEMOCRATIC PARTY,<br>   *Plaintiff*,<br>v.<br>NORTH CAROLINA STATE BOARD OF ELECTIONS et al.,<br>   *Defendants*. | Case No. 5:24-cv-00699-M-KS |
| CARRIE CONLEY et al.,<br>   *Plaintiffs*,<br>v.<br>ALAN HIRSCH et al.,<br>   *Defendants*. | Case No. 5:25-cv-00193-M-RJ |

# JUDGE JEFFERSON GRIFFIN'S THIRD BRIEF ON FEDERAL CLAIMS

## TABLE OF CONTENTS

Introduction ..................................................................................................................... 1

Argument ........................................................................................................................ 2

   I.    No case supports tossing out a state supreme court's post-election cure process as a constitutional violation. ......................................................................... 2

   II.   Movants cannot explain why additional court-ordered process violates the Constitution. ............................................................................................................. 5

   III.  Movants cite no case holding that a state-court order enjoining unlawful counting of ballots in fewer than all counties states an equal protection claim. 6

   IV.  The NVRA is legally irrelevant. ........................................................................... 8

   V.   *Younger* abstention is appropriate. ....................................................................... 10

Conclusion .................................................................................................................... 11

Certificate of Compliance ............................................................................................. 13

Certificate of Service .................................................................................................... 13

# INTRODUCTION

Movants cite no case in which a federal court has enjoined a state court-ordered cure process. The cases they rely on hold that when courts allow the opportunity for voters to cure deficient ballots, there are no due process concerns. So Movants urge the Court to break new ground on novel legal theories unsupported by text or precedent. The "theories in this case illustrate the ways in which a lawsuit such as this could intrude on the role of states … to conduct elections and adjudge results." *Hutchinson v. Miller*, 797 F.2d 1279, 1285 (4th Cir. 1986).

At the heart of their federal theories is a state-law issue: whether the North Carolina Supreme Court applied new law to a completed election. Movants attack those judgments at every turn, claiming "the state court orders changed the rules" of the election. BOE 2d Br.7. But the North Carolina courts didn't understand their orders that way. As any court does when confronting a statute, the courts said what "state law" is and applied those judgments to the controversy before it. *Griffin I*, 2025 WL 1021724, at *3 (N.C. Ct. App. Apr. 4, 2025). To address the equities resulting from applying state law, the courts ordered a mandatory notice-and-cure procedure ten times more generous than normally permitted. Movants ask this Court to reweigh those equities, revising the state-court judgments to be prospective only. This Court should decline that request. No federal law requires States to tolerate unlawful election results by issuing prospective advisory opinions in their election contests.

## ARGUMENT

**I. No case supports tossing out a state supreme court's post-election cure process as a constitutional violation.**

Movants still have not identified the right they seek to vindicate with "precision." *Elhady v. Kable*, 993 F.3d 208, 220 (4th Cir. 2021). They continue to parrot vague notions of "fairness." *See* Riggs 2d Br.8-13. But even if "fairness" were sufficiently precise, it requires excluding ballots deemed invalid under state law. After all, "[p]ermitting ballots to be counted when cast by individuals not qualified to vote under governing law or in a manner not authorized by governing procedures impairs the due process rights of all who cast legitimate votes by diluting the effect of those votes." *Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 458–59 (N.D.N.Y. 2006).

Movants' best support for their "fairness" right is a single line in *Hendon v. North Carolina State Board of Elections*, 710 F.2d 177, 182 (4th Cir. 1983). But neither of their cases—*Burns* or *Hendon*—found that a right to vote in accordance with unlawful administrative guidance, exempt from court-ordered cure procedures, is "objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Riggs and VoteVets try to identify the "liberty interest" as "the right to vote." *E.g.*, VV 2d Br.9. But that concession just collapses into the "*Anderson-Burdick*" test. *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138-39 (3d Cir. 2022) (collecting cases).

Movants ignore the fact that *Griffin v. Burns* relied on the absence of "a fully adequate state corrective process." 570 F.2d 1065, 1077 (1st Cir. 1978). The state courts

2

Case 5:24-cv-00731-M-RJ    Document 106    Filed 04/28/25    Page 4 of 15

here provided months of due process, plus an equitable cure procedure to address any "unfairness" potentially resulting from enforcing state law. In contrast, "the state court" in *Burns* "did not confront the questions that retroactive application of its ruling would create." *Id.* at 1079. *Hendon* did not displace the rule in *Burns* that state cure processes undermine claims that the election was constitutionally defective. *Hutchinson* likewise observes that "alternative remedies are adequate to guarantee the integrity of the democratic process." 797 F.2d at 1283.

The League of Women Voters is the only Movant that even mentions *Hutchinson*, and it dismisses half the case as "*dicta*." LWV 2d Br.5. But the opinion devotes an entire "section" to the "alternative means of resolving electoral disputes" through state process. *Hutchinson*, 797 F.2d at 1283. "Contests for county offices … are resolved by county courts," *id.* at 1284, just as contests for state office are resolved by state courts in North Carolina. Those courts "have not abandoned their duty to ensure the reliability and fairness of democratic elections." *Id.* They've taken that duty seriously, giving all parties the process they're due. That Movants ignore *Hutchinson* confirms they have no answer to the "[p]rinciples of separation of powers and federalism" that require the Court to "avoid this inquiry" into state affairs. *Id.* at 1286.

Movants make much of the fact that the court in *Hendon* declined to apply its judgment to a completed election. VV 2d Br.9-11. But *Hendon*'s discussion of retrospective relief was part of the court's discretionary "equitable jurisdiction"—it had nothing to do with what the Due Process Clause requires. 710 F.2d at 182-83. Movants

3

pressure this Court to reweigh the North Carolina Supreme Court's careful exercise of equitable discretion. But they cite no federal case overturning a court-ordered equitable cure process. Instead, they misconstrue *Hendon* as constitutionalizing a rule against applying "judicial decisions" in election contests "retrospectively," which contradicts basic judicial principles "familiar to every law student." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982). The Due Process Clause does not require state courts overseeing election contests to issue advisory opinions, foreclosing the possibility that they can prevent "'unlawful votes'" from being counted "'in contested elections.'" *Griffin II*, 2025 WL 1090903, at *2 (N.C. Apr. 11, 2025).

At bottom, Movants disagree with the North Carolina courts about whether the contested ballots are "'unlawful votes.'" *Id.* Movants act as if they're not attacking state law, while maintaining that the disputed votes were "lawfully cast ballots." Riggs 2d Br.14-15. That voters relied on administrative guidance in casting those ballots doesn't make those votes *lawful*. Movants' frequent refrains about changes in the law confirm that they attack the foundation of the state court judgments concluding that the disputed ballots "failed to comply" with the law at the time they were "cast." *Griffin II*, 2025 WL 1090903, at *1. To the extent "state actions" might have "induce[d] voters to miscast their votes," those concerns come into play only when "the State will permanently reject their ballots without an opportunity to cure the situation." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 595 (6th Cir. 2012).

4

Case 5:24-cv-00731-M-RJ    Document 106    Filed 04/28/25    Page 6 of 15

## II. Movants cannot explain why additional court-ordered process violates the Constitution.

Movants insist that *Mathews v. Eldridge* applies to their procedural-due-process claim. Riggs 2d Br.17-18. But the "*Anderson-Burdick*" test applies to "the right to procedural due process" in this context. *Mazo*, 54 F.4th at 139. That a few "district courts" strayed from that rule, Riggs 2d Br.17-18, cannot overcome the "more persuasive" reasoning of the Third, "Fifth, Ninth, and Eleventh Circuits" applying *Anderson-Burdick* over *Mathews*, *Democratic Party of Va. v. Brink*, 599 F. Supp. 3d 346, 361 (E.D. Va. 2022).

Courts "considering a challenge to a state election law under the First and Fourteenth Amendments '*must* resolve such a challenge' under the *Anderson/Burdick* balancing test." *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). That Movants collaterally attack the state courts' *application* of "state election law" makes their claims more extraordinary, *id.*, but it doesn't remove them from the class of cases involving "the mechanics of the electoral process," *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995). Movants even rely on cases applying "the *Anderson-Burdick* standard" to ballot-rejection cases. *Husted*, 696 F.3d at 592 (cleaned up). They allege that the "process" and "mechanics" provided under North Carolina's election-contest system burden "the right to vote." *Mazo*, 54 F.4th at 139-40. So *Anderson-Burdick* applies.

As for the process that's "due," Movants' primary concern is that "[a]ny notice from the Board of a potential cure process now" will come "more than five months

5

after the election." BOE 2d Br.8. They cite no case constitutionalizing a federal deadline for state election contests. Those five months weren't idle delay. They were five months of *process*—where the parties litigated this dispute throughout.

Justice Riggs argues that the pre-process notice to voters contained "deficiencies," such as using "a QR code" to provide information. Riggs 2d Br.18-19. The court of appeals dismissed those arguments, holding that "Griffin's campaign satisfied the purported notice requirement." *Griffin I*, 2025 WL 1021724, at *6. The few hundred pages of briefing this Court has received should shut down any implication that more litigation was required. Even Movants recognize what matters is "pre-deprivation process," NCDP 2d Br.9, not pre-litigation process. And every affected overseas voter will receive notice and an opportunity to cure their deficient ballots before any deprivation occurs. In sum, the five months of litigation, the reasoned judgments of the state courts, and the equitable notice-and-cure procedures all prove that "adequate state corrective procedures exist." *Burns*, 570 F.2d at 1077. Whether under *Mathews* or *Anderson-Burdick*, Movants' Fourteenth Amendment claims fail.

### III. Movants cite no case holding that a state-court order enjoining unlawful counting of ballots in fewer than all counties states an equal protection claim.

The Fourth Circuit has not "applied *Bush* in the context of state elections." *Contra* BOE 2d Br.9. The case Movants cite for that contention quotes *Bush* twice, but only for the general proposition that "'the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another.'" *Wright v. North Carolina*, 787

6

Case 5:24-cv-00731-M-RJ    Document 106    Filed 04/28/25    Page 8 of 15

F.3d 256, 263 (4th Cir. 2015) (quoting *Bush v. Gore*, 531 U.S. 98, 104-05 (2000)). Another case they say "applied" *Bush*, Riggs 2d Br.20, merely cites it for the principle that "[t]he right to vote is 'fundamental,'" *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 337 (4th Cir. 2016). Those cases did not "appl[y] *Bush v. Gore*'s 'arbitrary and disparate treatment' analysis" at all, *contra* Riggs 2d Br.20, let alone apply them to overturn a court-ordered notice-and-cure process.

Movants retreat to "the principles undergirding" *Bush*, in the hopes of avoiding the differences with this case. Riggs 2d Br.20. For example, no Movant explains how *Bush* can apply outside of "the use of standardless manual recounts." *Bush*, 531 U.S. at 103. Movants instead back out to 1960s cases discussing "equal opportunity" in elections. Riggs 2d Br.20-21. But *Bush* explains how those cases apply to election contests. 531 U.S. at 105-07 (citing *Harper*, *Reynolds*, *Gray*, and *Moore*). Those cases cannot justify expanding *Bush* beyond "the present circumstances" of a "standardless manual recount" in "Presidential election contests." *Id.* at 103, 109.

That the election contests here remedy unlawful ballots in a handful of counties doesn't make the application of a statutory requirement "standardless." *Id.* at 103. The Supreme Court "'has firmly established the principle that the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution.'" *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 313 (3d Cir. 1999) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)). "The Constitution does not require states to enforce their laws (or cities their

7

ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets." *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985) (citations omitted). Movants claim that relief for the overseas ballots "was limited to heavily Democratic" counties, NCDP 2d Br.10-11, while ignoring the practical constraints on obtaining evidence and bringing challenges in multiple counties. In any event, circumstantial evidence of partisan impact doesn't present an equal-protection violation. *Rucho v. Common Cause*, 588 U.S. 684, 707 (2019). To the extent Movants identify any similarities between this case and *Bush*, they cannot make up for the differences. The case doesn't apply, and there's no equal-protection violation.

## IV. The NVRA is legally irrelevant.

Movants have yet to cite a case where a federal court applied the NVRA to ballot-casting during a state election. Text, precedent, and the name itself confirm the National Voter Registration Act governs "Voter Registration" in "National" elections. *Young v. Fordice*, 520 U.S. 273, 275-76 (1997).

Start with the text. Movants believe the NVRA requires not only counting Never Residents' illegal ballots, but also prohibiting a State's notice-and-cure process. NCDP 2d Br.14. They commit multiple errors. They assume this is an "election for Federal office," that it's "90 days prior" to an election, and that "official [registration] lists" are being altered. *Contra* 52 U.S.C. §20507(c)(2)(A). They dispute Judge Griffin's definition of "program." VV 2d Br.21. But their definition of "program" as "programs of any

kind" is circular. NCDP 2d Br.14. When the NVRA uses the word "program," it refers to "the process of reviewing voter registration applications" for "maintenance of voter rolls." *Project Vote/Voting for Am. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012). Nothing the North Carolina courts are accused of doing falls within that definition.

Movants also ignore context. Section 8 of the NVRA moves from: (1) "applicant[s]" to (2) "eligible applicant[s]," to (3) "registrant[s]," to (4) "eligible voters," to (5) "ineligible voters." 52 U.S.C. §20507(a)-(c). Never Residents don't make it past the second step. They aren't "eligible applicants" to vote. So, they can't become valid "registrants," "eligible voters," or "ineligible voters." The 90-day limitation on removal programs doesn't apply to them. It would raise constitutional doubts if it did, because North Carolina "has unquestioned power to impose reasonable residence restrictions of the availability of the ballot." *Carrington v. Rash*, 380 U.S. 89, 91 (1965).

Movants also misapply precedent. They argue the Fourth Circuit's stay denial in *Beals* contradicts Judge Griffin's NVRA interpretation. Riggs 2d Br.24. But the Supreme Court granted a stay. *Beals v. VA Coal. for Immigrant Rts.*, 220 L. Ed. 2d 179 (Oct. 30, 2024). Movants assert *Bell v. Marinko* is "no help." VV 2d Br.22.n11. But it's directly on point: the NVRA "protects only 'eligible' voters from unauthorized removal" and "[e]ligible voters, at a minimum, are those who qualify as bona fide residents of the precinct in which they are registered or wish to register to vote." 367 F.3d 588, 592 (6th Cir. 2004). Ultimately, Movants' NVRA arguments ignore what this Court already told

9

them: "this matter involves a state election," so provisions like the NVRA are "legally irrelevant." Doc.50 at 8, No. 5:24-cv-724.

## V. *Younger* abstention is appropriate.

This case "fit[s] within *Sprint's* third category," which encompasses "demand[s] for relief" that "'directly or indirectly thwart state court compliance processes.'" *Dawkins v. Staley*, 2023 WL 1069745, *4 (M.D.N.C. Jan. 27, 2023). By seeking to enjoin the court-ordered cure process, Movants "touch on" the "state court's ability to perform its judicial function," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013), challenging "the processes by which the State compels compliance with the judgments of its courts," *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13-14 (1987).

This case is thus unlike *Dixon v. Justice*, where plaintiffs didn't even "challenge any state-court order." 41 F.4th 316, 331 (4th Cir. 2022). To enjoin the cure process here would "interfere with the execution of state judgments," *Pennzoil*, 481 U.S. at 14, enjoining "state administrative employees" from "enforcing state [election] statutes and carrying out state court orders," *Satkowiak v. McClain*, 2024 WL 3448445, *6 n.4 (E.D. Mich. July 16, 2024). A state court's "ability to enforce its own injunction" falls under *Sprint*'s "third" category. *Id.* at *6. This case also "falls into *Sprint*'s third category because it implicates" a "subject in which the states have an especially strong interest." *Dawkins*, 2023 WL 1069745, *4 (quoting *Moore v. Sims*, 442 U.S. 415, 435 (1979)). "[S]tate election practices" are "an area of peculiar interest to the state" where *Younger* abstention is appropriate. *Fam. Found. v. Brown*, 9 F.3d 1075, 1078 (4th Cir. 1993).

Even if parties weren't allowed to raise new arguments on summary judgment, "*Younger* abstention is jurisdictional," *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004), so it can't be waived, *contra* BOE 2d Br.2. The Board's removal doesn't necessarily bar abstention. The "abstention cases" are "rooted" in "equity," not rigid formality. *Sims*, 442 U.S. at 427. This Court need not wait for the state courts to begin contempt proceedings to recognize that Movants challenge the "execution of state judgments." *Pennzoil*, 481 U.S. at 14. Finally, the Fourth Circuit's mandate was to "retain jurisdiction of the federal issues as required by *Pullman* abstention." Doc.132 at 11, No. 25-1018 (Feb. 4, 2025). The Court applied that mandate, and now *Pullman* abstention no longer requires retention of federal jurisdiction. But the "considerations" that "mandate *Pullman* abstention are relevant to a court's decision whether to abstain under *Younger*." *Pennzoil*, 481 U.S. at 11 n.9. The Court should thus abstain.

## CONCLUSION

The Court should deny the motions and dismiss the cases.

This 28th day of April, 2025.        Respectfully submitted,

/s/ *Thomas R. McCarthy*

Craig D. Schauer
41571 (NC)
Dowling PLLC
3801 Lake Boone Trial
Suite 260
(919) 529-3351
cschauer@dowlingfirm.com

Troy D. Shelton
48070 (NC)
Dowling PLLC
3801 Lake Boone Trial
Suite 260
(919) 529-3351
tshelton@dowlingfirm.com

W. Michael Dowling
42790 (NC)
Dowling PLLC
3801 Lake Boone Trial
Suite 260
(919) 529-3351
mike@dowlingfirm.com

Thomas R. McCarthy*
Conor D. Woodfin*
William Bock IV*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
conor@consovoymccarthy.com
wbock@consovoymccarthy.com

*\*Appearing under Local Rule 83.1(d)*

*Counsel for Judge Griffin*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 7.2(f)(2) because it contains fewer than 2,800 words excluding the parts that can be excluded.

*/s/Thomas R. McCarthy*

## CERTIFICATE OF SERVICE

I certify that I electronically filed this brief using the court's CM/ECF system and that I have electronically mailed the documents to all non-CM/ECF participants.

*/s/Thomas R. McCarthy*