| | |
|---|---|
| JEFFERSON GRIFFIN,<br><br>*Plaintiff*,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>*Defendant*,<br><br>and<br><br>ALLISON RIGGS et al.,<br><br>*Intervenor-Defendants*. | No. 5:24-cv-00731-M-RJ |
| NORTH CAROLINA DEMOCRATIC PARTY,<br><br>*Plaintiff*,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS et al.,<br><br>*Defendants*. | No. 5:24-cv-00699-M-KS |
| CARRIE CONLEY et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALAN HIRSCH et al.,<br><br>*Defendants*. | No. 5:25-cv-00193-M-RJ |

**REPLY BRIEF OF INTERVENOR-DEFENDANT ALLISON RIGGS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1
ARGUMENT ................................................................................................................................. 1
   I. Justice Riggs Seeks to Protect the Fundamental Right to Vote. .......................................... 1
     A. The Right to Vote Is Well Established. ............................................................................ 1
     B. Selective, Retroactive Disenfranchisement Violates the Right to Vote. ......................... 2
  II. The Cure Process for Military and Overseas Voters Is Insufficient to Compensate for Their Retroactive Disenfranchisement. ................................................................................ 5
 III. A Candidate Cannot Pick His Voters After He Loses. .......................................................... 7
 IV. The Federal Questions Here Are for This Court. .................................................................. 9
CONCLUSION ............................................................................................................................ 10

Justice Riggs files this brief in reply to Judge Griffin's response brief, ECF No. 104

## INTRODUCTION

The volume of filings in these consolidated proceedings should not distract from the straightforward questions before the Court.

Changing the election rules after the votes have been cast and counted is wrong and unconstitutional. So too is targeting military and overseas voters who happened to register in a Democratic-leaning county.

Judge Griffin wants to avoid those common-sense principles of federal law. But he must confront them. He cannot overturn his election loss without convincing a court that federal law permits retroactive, selective changes to the voting rules. The North Carolina courts did not decide those federal questions because this Court retained jurisdiction over them. Those questions are now for this Court to decide.

This Court should stop this dangerous effort to undermine the will of the people.

## ARGUMENT

**I. Justice Riggs Seeks to Protect the Fundamental Right to Vote.**

    **A. The Right to Vote Is Well Established.**

Justice Riggs is not seeking to protect "a novel right." Griffin Resp. Br. at 1. The right implicated—and threatened—by Judge Griffin's election protests could not be simpler or more historically entrenched in this country's principles. It's the right to vote. That right is "fundamental" and "preservative of all rights," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886), and it can be "denied by a debasement" just "as effectively as by wholly prohibiting [its] free exercise," *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

More than thirty years ago, the Eleventh Circuit rejected a similar claim that a party had "failed to allege, or to demonstrate, the violation of a right 'secured by the Constitution.'" *Roe v.*

*Alabama*, 43 F.3d 574, 580 (11th Cir. 1995) (per curiam) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). The plaintiffs had alleged "a retroactive" change to the law governing "a potentially controlling number of votes," which "would result in fundamental unfairness and would violate plaintiffs' right to due process of law in violation of the Fourteenth Amendment." *Id.* (quotation marks omitted).

Judge Griffin seeks to redefine the federal right implicated here. He suggests that voters had no right to rely on "executive guidance instead of state law." Griffin Resp. Br. at 1. But that argument mischaracterizes the record. There was no conflict between "administrative guidance" and "a state court judgment." *Id.* at 3. The voters cast their ballots under the rules that *everyone* understood governed the November 2024 election. Consider the rule clarifying that military and overseas voters did not have to provide photo ID when voting. The bipartisan State Board unanimously approved that rule after notice and comment; the North Carolina Republican Party commented on other aspects of the rule but made *no* objection to the parts relevant here; and the Rules Review Commission—"an agency appointed by the leadership of the General Assembly that is required to object to rules proposed by an administrative agency if those rules exceed the authority of the agency to adopt them"—unanimously approved the rule. State Board Dec. & Order at 37, ECF No. 1-8 at 10. This permanent rule became effective in April 2024, but Judge Griffin made no effort to challenge it until *after* he lost the November 2024 election. Judge Griffin is simply wrong to say that voters "rel[ied] on administrative guidance instead of state law as interpreted by state courts." Griffin Resp. Br. at 9.

### B. Selective, Retroactive Disenfranchisement Violates the Right to Vote.

The cases Judge Griffin cites as requiring an analysis of history and tradition for the existence of a new right demonstrate the flaws in his argument. Each of those cases dealt with unenumerated, disputed rights. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237–

38 (2022) (abortion); *Washington v. Glucksberg*, 521 U.S. 702, 723 (1997) (assisted suicide); *Elhady v. Kable*, 993 F.3d 208, 221 (4th Cir. 2021) (travel). No historical survey is required here, because there is no question that the U.S. Constitution protects the fundamental right to vote. The question here is whether, as the State Board concluded, Judge Griffin seeks to abridge that right.

To that point, existing law is clear that Judge Griffin's retroactive and selective disenfranchisement of voters violates the constitutional right to vote. *See, e.g.*, *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 98 (2d Cir. 2005); *Roe*, 43 F.3d at 580–81; *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983); *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978).

The First Circuit's analysis in *Burns*—which the Fourth Circuit called "settled" law, *Hendon*, 710 F.2d at 182—is controlling. *Burns* held that "retroactive invalidation of ballots cast in an officially-endorsed manner amounted to a constitutional violation" even when "adequate state corrective procedures exist." 570 F.2d at 1077. Judge Griffin's effort to achieve that retroactive invalidation is "intentional," which *Hendon* recognized as one factor relevant to the constitutional analysis. 710 F.2d at 182. The whole point of these protests is to overturn an election and thus "erode[] the democratic process." *Id*.

The relevant distinction between this case and *Burns* is that Judge Griffin seeks to compound the constitutional violation. Judge Griffin requests more than just retroactive invalidation: he wants to change the rules only for some military and overseas voters, all without explaining why it would be appropriate to single those voters out for disparate treatment. Judge Griffin denies that his protests are "standardless," *see* Griffin Resp. Br. at 16–17, but he refuses to explain what standard he applied.

The record suggests that the standard is electoral politics. Judge Griffin targeted military and overseas voters in counties where he "lost by significant margins." *Griffin v. N.C. State Bd.*

3

*of Elections*, No. COA25-181, 2025 WL 1021724, at *41 n.23 (N.C. Ct. App. Apr. 4, 2025) (Hampson, J., dissenting). This surgical strike on voters Judge Griffin perceives as likely to have supported Justice Riggs is *worse* than the equal protection violation in *Bush v. Gore*, 531 U.S. 98 (2000).

In *Bush v. Gore*, the Supreme Court was concerned that the "minimal procedural safeguards" meant that "the standards for accepting or rejecting contested ballots *might* vary not only from county to county but indeed within a single county from one recount team to another." *Id*. at 106, 109 (emphasis added). Here, variation from county to county is the intended result. Under Judge Griffin's protests, a military or overseas voter who registered in Randolph County will have their vote counted, but that same vote would be "presumed to be fraudulent and will not count unless that voter provides proof of their identity" if the voter had registered across the county line, in Guilford County. *Griffin v. N.C. State Bd. of Elections*, No. 320P24-3, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025) (Earls, J., concurring in part and dissenting in part). Judge Griffin cannot explain how that distinction is constitutional.

None of the cases Judge Griffin cites involved—let alone ratified—the uneven treatment of voters across multiple jurisdictions.[1] And even if Judge Griffin were right that variations between counties can be justified under some circumstances, he has presented no principled basis for distinguishing between counties here. The Equal Protection Clause requires that his challenges to

---

[1] *See Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (analyzing burdens on voters in a single jurisdiction, not across jurisdictions); *Lemons v. Bradbury*, 538 F.3d 1098, 1106–07 (9th Cir. 2008) (rejecting equal protection arguments because "all counties" applied similar processes and there were "uniform standards" throughout the state); *Kim v. Bd. of Educ. of Howard Cnty.*, 641 F. Supp. 3d 223, 236 (D. Md. 2022) (concerning a single locality's decision to "implement[] a different [election] system"); *cf. Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 241 (6th Cir. 2011) (rejecting standard that would result "in the unequal counting of votes across counties").

4

specific counties be rooted in something more than a naked attempt to discard ballots cast for his opponent.

* * *

The implications of Judge Griffin's defense of his election challenges are chilling. Judge Griffin suggests that the right to vote does not include the right of the voter to rely on the collective authority of existing state law, clear regulations, the lack of any challenge to voting rules, and past practice. Without those backstops, it is hard to conceive of when a voter could *ever* be confident that their vote would count. Worse, Judge Griffin's approach would leave the runner-up in an election free to raise new arguments only in counties with a disproportionate share of voters he deems hostile to his interests—whether because of their political affiliation, military service, or any other characteristic. It takes no great insight to imagine the damage that rule would permit.

## II. The Cure Process for Military and Overseas Voters Is Insufficient to Compensate for Their Retroactive Disenfranchisement.

The disenfranchise-then-cure process that Judge Griffin endorses is unconstitutional. As already discussed by Justice Riggs and others, the cure process does not survive scrutiny under *either* the *Anderson-Burdick* test or procedural due process assessment in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Every case cited by Judge Griffin in support of the 30-day cure window relates to cure periods implemented in the days immediately following an election to allow voters to fix errors based on rules that existed *when they cast their ballots*. There is *no* precedent for a cure process six months after an election when a new interpretation of state law retroactively invalidated ballots.

Judge Griffin's bald assertion that the cure measures provide "additional process" by forcing military and overseas voters to take additional steps *only for his election race* defies logic. Griffin Resp. Br. at 11. It is one thing to give voters an opportunity to cure a deficiency in their

5

ballots that they could have known about when they cast those ballots. It is quite another to tell them six months later that their ballots were deficient (while those of their identically situated compatriots were not) based on a new court ruling and to force them to go through an unprecedented cure process that may not reach them in time.

The briefs in this case already feature an extensive litany of the challenges uniquely faced by military and overseas voters in complying with the belated cure process—whether it be their remote location, the taxing demands of their occupation, irregular access to mail, or their ongoing responsibilities outweighing a previously unannounced obligation to cure their ballots cast in full compliance with the law in effect during the election. Judge Griffin cites no case that approves of a process that singles military and overseas voters out for increased burdens on their voting rights.

*Richardson v. Texas Secretary of State*, 978 F.3d 220, 236 (5th Cir. 2020), which Judge Griffin cites for the statement that "ordinary and widespread burdens" cannot amount to constitutional violations, related to a signature-verification procedure challenge well before an election. *See* Griffin Resp. Br. at 14. *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), considered a settled state law requiring *all* in-person voters to present photo ID. That requirement placed "a somewhat heavier burden" on voters who lacked that ID, but the burden was mitigated by the option to "cast provisional ballots that will ultimately be counted." *Id*. Nothing in *Crawford* suggests that it would be permissible to saddle military and overseas voters with new burdens months *after* the election. And this case is not about a universal photo ID requirement, challenged months before an election, that "result[s] in somewhat more inconvenience for some voters." *Lee v. Virginia State Bd. of Elections*, 843 F.3d 592, 601 (4th Cir. 2016). Judge Griffin seeks to impose new, unexpected burdens solely on (some) military and overseas voters, heedless of the patent difficulties those voters in particular will face in carrying those burdens on their rights.

6

Case 5:24-cv-00731-M-RJ   Document 107   Filed 04/28/25   Page 8 of 13

### III. A Candidate Cannot Pick His Voters After He Loses.

Judge Griffin is wrong to argue there is no constitutional violation here because "as a matter of law Never Residents are not qualified voters." Griffin Resp. Br. at 16. Judge Griffin seeks a "post-election departure from previous practice," *Roe*, 43 F.3d at 581, *in his race*, and only *after he knew he had lost*. That kind of post-election rule change reaches the point of "patent and fundamental unfairness" that violates the Due Process Clause. *Id.* at 580; *see Hendon*, 710 F.2d at 182.

Judge Griffin cites *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978), for the unremarkable proposition that a state may choose—before any given election—to "restrict the right to participate in its political processes to those who reside within its borders," *id*. at 68–69. No one is arguing here, as in *Holt*, that it would be unconstitutional for North Carolina to deny the vote to certain voters living outside its geographic boundaries. Instead, North Carolina chose—in a unanimous bipartisan vote of the General Assembly—more than 13 years ago to *extend* the franchise to U.S. citizens who inherited their North Carolina residence from their parents. *See* N.C. Gen. Stat. § 163-258.2(1)(e)(1). No one—including Judge Griffin—denies that this duly enacted statute has been settled law in North Carolina for 43 elections and that these votes *counted* in every race in 2024 (including this one, until Judge Griffin sought a belated change in the law for his race only). The "fundamental unfairness" does not arise from excluding votes from this category of voters, but from the fact that this "will constitute a retroactive change in the election laws that will effectively 'stuff the ballot box'" in favor of one candidate. *Roe*, 43 F.3d at 581; *see also United States v. Saylor*, 322 U.S. 385, 389 (1944).

It is no answer to say that "North Carolina courts didn't change the law" but merely *clarified* the state's election laws. Griffin Resp. Br. at 5. Disappointed candidates have tried, and failed, to make this argument before. In *Roe*, the plaintiff argued there was no unconstitutional

retroactive change in the law because the state judiciary had "merely articulated in a clearer way what the law has always been in Alabama." 43 F.3d at 581. The Eleventh Circuit rejected that effort to distort the timeline, explaining that it was "unreasonable to expect average voters and candidates to question" official guidance in effect at the time of the election. *Id.* (citing *Burns*, 570 F.2d at 1076). In the same way here, Judge Griffin "ignores the fact that" N.C. Gen. Stat. § 163-258.2(1)(e)(1) "on its face" allowed these voters to participate in North Carolina elections; that this law was widely "acknowledged" and applied by election officials for dozens of elections; and that "the practice of the election officials throughout the state," including in every other race in 2024, was to *count these ballots*. *Roe*, 43 F.3d at 581. Judge Griffin cannot explain why it would have been reasonable for voters and candidates to question that law in effect during the November 2024 election.

It is not just the expectations of the voters themselves that give rise to a constitutional violation so severe that it threatens to "erode[] the democratic process." *Hendon*, 710 F.2d at 182. Had the candidates known that a change to settled law was coming, "campaign strategies would have taken this into account." *Roe*, 43 F.3d at 582. There "can be no dispute that the very integrity of the process rests on the assumption that clear rules will be established and that, once established, they will be enforced fairly, consistently, and without discrimination so long as they remain in force." *Brown v. O'Brien*, 469 F.2d 563, 570 (D.C. Cir.), *vacated as moot*, 409 U.S. 816 (1972). That is why courts have "imposed a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication." *Hendon*, 710 F.2d at 182. It poses a fundamental unfairness that "erodes the democratic process" to encourage the kind of gamesmanship that will eventually be rife in post-election challenges if Judge Griffin's gambit here succeeds. *Id.*

At bottom, for elections to be fair, the voters must choose the candidate they prefer to win the election. The disappointed, losing candidate cannot seek a redo under a different set of rules that allow him to pick his voters by tossing ballots cast by those he suspects voted for his opponent.

## IV. The Federal Questions Here Are for This Court.

Throughout his response brief, Judge Griffin fails to grapple with the procedural posture of this case. The State Board dismissed Judge Griffin's protests under both state and federal law. Judge Griffin filed *this case* to overturn that decision. He is the plaintiff. If Judge Griffin does not prevail here, then Justice Riggs must be certified as the winner. To prevent that outcome, Judge Griffin has to win this case by showing that the State Board was wrong under state law *and* under federal law.

The North Carolina courts have now held that, as a matter of *state law*, the State Board was right to dismiss one category of Judge Griffin's protests but wrong to dismiss the other two. That state-law holding is no longer at issue because, by abstaining under *Pullman*, this Court recognized "the role of state courts as the final expositors of state law." *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964). But that recognition "implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." *Id.* at 415–16. Once the North Carolina courts provided the "authoritative state court construction for which the court abstained," Justice Riggs had "the right to return to the District Court . . . for a final determination of [her] claim." *Id.* at 417 (quoting *NAACP v. Button*, 371 U.S. 415, 427 (1963)).

Judge Griffin asks this Court to deny Justice Riggs that right to a final determination in this Court. He calls this case a "bold request for federal intervention," Griffin Resp. Br. at 2, without any acknowledgment that *he filed this case*. Judge Griffin's real complaint is that a federal court is deciding the case he filed. But he already lost that argument. *See* ECF No. 30 at 9–11 (Fourth Circuit opinion). This Court's abstention under *Pullman* "does not, of course, involve the

9

abdication of federal jurisdiction, but only the postponement of its exercise." *England*, 375 U.S. at 416 (quoting *Harrison v. NAACP*, 360 U.S. 167, 177 (1959)).

Judge Griffin's arguments for "great caution" are variations on the same theme. Griffin Resp. Br. at 2 (quoting *Hutchinson v. Miller*, 797 F.2d 1279, 1287 (4th Cir. 1986)). He asks this Court to "dismiss" this case—the one he filed to overturn the State Board's decision under state and federal law—because there are "adequate state corrective procedures," *id*. at 1–2 (quoting *Burns*, 570 F.2d at 1077). But this case *is* the corrective procedure. While Judge Griffin initiated that procedure in state court, it has now been removed to federal court. This Court's resolution of the federal questions presented is not an "intrusion" on the normal corrective procedures, and there is no reason for this Court to avoid deciding those federal questions.

Indeed, Judge Griffin cannot prevail *unless* the Court agrees with him under federal law. Without a ruling from this Court under federal law, no court will have disturbed the State Board's reasoning that federal law requires that Judge Griffin's protests be dismissed. This Court should hold that the State Board was right to dismiss those protests under federal law. And it should ensure that no state-law remedy goes into effect until it has decided that federal question.[2]

## CONCLUSION

The Court should enter judgment in favor of Justice Riggs (and the State Board) stating that federal law bars Judge Griffin's efforts to overturn the November 2024 general election for Seat 6 on the Supreme Court of North Carolina.

---

[2] If this Court rules that federal law permits Judge Griffin's protests, it should maintain the Fourth Circuit's injunction in "furtherance of federal jurisdiction" to ensure that the Fourth Circuit has an opportunity to consider the issues presented here. ECF No. 92 at 4 ("In furtherance of federal jurisdiction, we enjoin the North Carolina State Board of Elections from mailing any notice to any potentially affected voter pending the district court's resolution of Riggs' motion for a preliminary injunction."); *see* Fed. R. Civ. P. 62(d).

Dated: April 28, 2025	Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

 /s/ *Raymond M. Bennett*
Raymond M. Bennett
N.C. State Bar No. 36341
Samuel B. Hartzell
N.C. State Bar No. 49256
Zachary N. Bernstein
N.C. State Bar No. 61681
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-2112
ray.bennett@wbd-us.com
sam.hartzell@wbd-us.com
zachary.bernstein@wbd-us.com

*Counsel for Intervenor-Defendant Allison Riggs*

11