IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| North Carolina Democratic Party,<br><br>    Plaintiff,<br><br>v.<br><br>North Carolina State Board of Elections, *et al.*,<br><br>    Defendants. | Case No. 5:24-cv-699-M |
| Jefferson Griffin<br><br>    Plaintiff,<br><br>v.<br><br>North Carolina State Board of Elections,<br><br>    Defendants,<br><br>    and<br><br>Allison Riggs, VoteVets Action Fund, North Carolina Alliance for Retired Americans, Sarah Smith, and Juanita Anderson,<br><br>Intervenor-Defendants | Case No. 5:24-cv-731-M |
| Carrie Conley, Lockhart Webb, and Ella Kromm, *individually and on behalf of all others similarly situated*; Gabriela Adler-Espino; and the League of Women Voters of North Carolina,<br><br>    Plaintiffs,<br><br>v.<br><br>Alan Hirsch, Jeff Carmon, Stacy Eggers IV, Kevin N. Lewis, and Siobhan O'Duffy Millen, *in their official capacities as members of the North Carolina State Board of Elections*, and Karen Brinson Bell, *in her official capacity as Executive Director of the North Carolina State Board of Elections*,<br><br>    Defendants. | Case No. 5:25-cv-193-M |

**REPLY BRIEF OF PLAINTIFF NORTH CAROLINA DEMOCRATIC PARTY
PURSUANT TO APRIL 14, 2025 ORDER**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..........................................................................................................................1
ARGUMENT .................................................................................................................................1
I. The Post-Election Measures The State Courts Adopted Violate The U.S. Constitution.....1
    A. Undue Burden ..........................................................................................................1
    B. Procedural Due Process ...........................................................................................5
    C. Equal Protection.......................................................................................................7
II. The Post-Election Measures The State Courts Adopted Violate The National Voter Registration Act ....................................................................................................................7
III. Injunctive Relief Is Warranted............................................................................................9
CONCLUSION.............................................................................................................................10

# INTRODUCTION

The named defendants uniformly agree that discarding ballots cast in reliance on state laws in place before and during last fall's elections violates federal law—especially when targeted at military and overseas voters in a few strategically selected counties rather than done statewide. Judge Griffin's response largely reiterates the arguments made in his opening brief, which NCDP has already addressed at length. NCDP addresses his new arguments below.

# ARGUMENT

## I. THE POST-ELECTION MEASURES THE STATE COURTS ADOPTED VIOLATE THE U.S. CONSTITUTION

### A. Undue Burden

1. Judge Griffin opens (Resp.2) with the false premise that movants "claim a right to rely on administrative guidance instead of state law." The right implicated here is the right to vote, and have one's vote counted. *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). Regardless, the targeted voters did not rely on "administrative guidance"; they followed state statutes and regulations in place before and during the election. *See* NCDP Resp.5-6.

Judge Griffin also asserts (Resp.5) that the state courts "didn't change the law" but merely "clarified" it "after the [North Carolina State Board of Elections] failed to comply with the statutes as written." That is wrong with respect to both categories of targeted voters.

As to so-called "never residents," NCSBE *did* "comply with the statute as written." That statute—unanimously passed in 2011 and applied in more than 40 elections—expressly allowed these citizens to vote. N.C. Gen. Stat. §163-258.2(1)(e). That the North Carolina Court of Appeals has now determined that this statute violates the state constitution does not negate the NCSBE's adherence to the laws it was required to follow during the 2024 election.

Similarly, both before and during the election, state law provided that military and overseas citizens who cast ballots under Article 21A of UMOVA were "not required to submit a photocopy of acceptable photo identification … or claim an exception." 8 N.C. Admin. Code §17.0109(d). The state Rules Review Commission unanimously voted that this rule was "within the authority delegated to the [NCSBE] by the General Assembly," N.C. Gen. Stat. §150B-21.9(a)(1); D.E.1-4 at 46, and no one objected during the rulemaking process, D.E.1-4 at 46. This provision was "an administrative rule," *Griffin v. NCSBE*, 2025 WL 1021724, at *11 (N.C. Ct. App. Apr. 4, 2025), not "guidance." And administrative rules constitute law: As the North Carolina Office of Administrative Hearings—which publishes the North Carolina Administrative Code—succinctly explained, "Rules = Law." North Carolina Office of Administrative Hearings, *Rules vs. Policies* (Feb. 12, 2024) at 3, https://www.oah.nc.gov/rules-vs-policies/open; *see also* N.C. Gen. Stat. §150B-2(8a) (distinguishing rules from guidance). Lastly, the online portal through which most of these voters cast their ballots did not even *allow* submission of photo ID or an exception form, leaving voters no choice but to follow the state laws in place at the time. *See* NCDP Br.7. Judge Griffin offers no response.

2. Judge Griffin asserts (Resp.5) that NCDP does not address "the core problem" with its undue-burden claim: "that all qualified voters still have the opportunity to vote." That is wrong for reasons the NCDP has already briefed at length, which Judge Griffin again ignores. Specifically, he has no response to the fact that some overseas and military voters who did not provide photo identification have died since the election or will be otherwise unable to cure (NCDP Br.14-15; NCDP Resp.8). Nor does he confront the indications that many voters are on his so-called "never resident" list in error (NCDP Br.6; NCDP Resp.2, 7).

2

As to the latter point, the closest Judge Griffin comes to responding is his suggestion (Resp.11) that "election officials must rely on" these voters' form declarations. But he acknowledges that those declarations don't end the relevant inquiry, stating that a voter's sworn testimony that they have never lived in the United States "*tends* to make it *more likely* that the applicant is not a qualified voter," Griffin Resp. 27 (quotation marks omitted) (emphasis added). Voters' sworn statements that they have never lived in North Carolina may, indeed, "tend" to show that fact. But voters may very well have checked that box in error, and if so they should have a chance to explain that. That is especially true because, had state law at the time not allowed "never residents" to vote, checking the box would have presumably alerted voters—conspicuously—that their ballot would be rejected. For example, the Department of Voter Services for Chester County, Pennsylvania instructs overseas and military voters that "[s]electing 'I am a U.S. citizen living outside the country, and I have never lived in the United States' makes a person **NOT** eligible to vote under Pennsylvania statute 42 U.S.C. §§1973ff-6(5)(B) & (C)." *Civilian Overseas, Active Duty Military and Federal Absentee Voting*, https://www.chesco.org/5076/Overseas-and-Military-Absentee-Voting (last visited Apr. 28, 2025).

3. Judge Griffin again attempts to distinguish *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), which bars states from disenfranchising voters based on after-the-election changes, *id.* at 1079, and which the Fourth Circuit has described as reflecting "settled" law, *Hendon v. North Carolina State Board of Elections*, 710 F.2d 177, 182 (4th Cir. 1983). But his four-point effort to differentiate *Griffin* (Resp.6-10) consists of nothing more than labeling and irrelevant distinctions. NCDP has already answered points one and three in detail. *See* NCDP Resp.3, 6-7.

Judge Griffin's second distinction, that the Fourth Circuit has interpreted *Griffin* as requiring "a finding of 'intentional' state conduct directed at impairing a citizen's right to vote"

3

(Resp.7), is flawed. The key language in *Hendon* says only that "whether [an irregularity] was intentional or more of a negligent failure to carry out properly the state election procedures" is relevant to whether that irregularity gives rise to a constitutional claim—not that intentionality is a precondition. 710 F.2d at 182. Moreover, the "irregularity" here is not, as Judge Griffin asserts (Resp.7), "the Board's misreading of North Carolina's election code"; it is the state courts' intentionally ordering the Board to "throw[] out ballots that were legally cast consistent with all election laws in effect on the day of the election," *Griffin v. NCSBE*, 2025 WL 1090903, at *3 (N.C. Apr. 11, 2025) (Earls, J., concurring in part and dissenting in part). That is "'intentional' state conduct directed at impairing a citizen's right to vote." *See* Griffin Resp.7.

Judge Griffin's fourth purported distinction (Resp.8-9), that the district court in *Griffin* was not "asked to examine the validity of the election or supervise the administrative details of a local election," 570 F.2d at 1078, rings hollow. NCDP is not asking this Court to do that here either. Instead, as in *Griffin*, NCDP asks this Court to "remedy a broad-gauged unfairness" that would result from implementation of the state courts' post-hoc measures. *Id.* Just as in *Griffin*, a portion of the electorate would be, "in effect, denied its vote in this close election" because state officials "sanctioned" voting practices "which the [state] Supreme Court quashed after the results of the election were in." *Id.* at 1078-1079. And as in *Griffin*, those practices "had been accepted in the state" for several "years" (and enshrined in state law), and "the legislature had never acted to halt" them. *Id.* at 1079. In short, *Griffin* remains squarely on point.

4. Finally, the state has *no* legitimate interest in the retroactive application of post-election state-law changes to disenfranchise strategically targeted voters to alter the outcome of an election. None of the cases Judge Griffin invokes to support state interests (Resp.15) related to "preserving 'public confidence in the integrity and confidence of representative government'" or

4

to avoiding "distrust of our government" involved situations remotely close to this one. *See Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) (upholding newly enacted photo ID law requirement that would apply to in-person voters statewide); *Purcell v. Gonzales*, 549 U.S. 1 (reversing temporary injunction suspending voter identification procedures *before* the election, and emphasizing the danger of late judicial tinkering with election laws). Nor can Judge Griffin bootstrap his way to a legitimate interest by declaring (Resp.16) that the votes cast are "unlawful." Indeed, after months of litigation, Judge Griffin—despite doggedly describing these voters as "illegal," Resp.16—has not even alleged that a *single* targeted voter lied about her identity or took any action that was unlawful at the time of the election.

### B. Procedural Due Process

Judge Griffin—who continues to collapse the substantive- and procedural-due-process claims (Resp.10)—still has not explained why applying the *Mathews v. Eldridge* factors does not show a constitutional violation.

1. Judge Griffin is wrong (Resp.10-11) that the so-called "never residents" have no right to notice and an opportunity to be heard. "[O]nce the class of voters is chosen and their qualifications specified" by the state, the Fourteenth Amendment protects those voters' right to have their vote counted. *Gray v. Sanders*, 372 U.S. 368, 380-381 (1963). As explained, state law entitled military and overseas voters to register in reliance on their family residence. And because Judge Griffin has no answer to the indications that his protests are factually inaccurate as to dozens of voters, Lawson Supp. Decl. ¶¶28-29 (D.E.78-1), his argument does not even apply to all of the voters on his "never resident" list.

2. Judge Griffin claims (Resp.11-15) that the minimal process the targeted voters are being given is constitutionally sufficient. But the relevant inquiry is whether there remains (despite

5

any procedures provided) a significant risk that voters will be erroneously deprived of their right to have their ballots counted. NCDP Br.13-16. Since state courts have not guaranteed the voters targeted as "never residents" *any* process at all, there is a very real risk that at least some of those voters will be erroneously deprived. Judge Griffin has no answer to this point.

In arguing that the remaining voters are receiving sufficient process, Judge Griffin relies again (Resp.12-13) on cases involving domestic civilian voters, and does not address the facts that (1) thirty calendar days is not enough time for some voters who live overseas and on-base to receive and answer any notice, and (2) voters who have died *cannot* cure, *see* NCDP Br.14-15. Moreover, courts have deemed procedures like those ordered here inadequate—holding, for example, that removing ballots if mail sent to voters is returned as undeliverable is insufficient process. *Voto Latino v. Hirsch*, 712 F.Supp.3d 637, 652-653 (M.D.N.C. 2024). Tossing ballots because the state's notice did not reach overseas or military voters in time is no different.

Judge Griffin next makes the irrelevant point (Resp.13) that states may require voters to provide photo ID because such requirements do not *per se* impose a "severe burden" on the right to vote. Again, that is not the relevant test; *Mathews* applies. In any event, the case he cites, *Crawford*, certainly did not endorse a requirement that voters provide, over five months after they voted, photo identification they were told they did not need to provide, which the state's own website prevented them from providing, and that they already provided a declaration to obviate the need for. 553 U.S. 181; *see* NCDP Br.7, 14. To the contrary, *Crawford* involved a state law that allowed voters who lacked ID to demonstrate their identities by affidavit. 553 U.S. at 186 & n.2 (Stevens, J., op.). That is precisely what the military and overseas voters Judge Griffen targets have *already* done.

Lastly, the Fourth Circuit has cautioned against applying North Carolina's photo identification laws in a manner that burdens particular classes of voters. *See NAACP v. McCrory*, 831 F.3d 204, 214-215 (4th Cir. 2016). To disenfranchise certain military and overseas voters unless they prove their identity *again* severely burdens the targeted class of voters. NCDP does not argue that the state owes these voters an "infallible" voting procedure, as Judge Griffin suggests (Resp.14-15). It argues that in this circumstance—where voters have been listed in error, the state courts have not provided hundreds of them *any* chance to cure, and those who are receiving some process must speedily respond to an international mailing—the risk of erroneous deprivations is high. Judge Griffin does not dispute that.

### C. Equal Protection

As in his opening brief (pp.21-24), Judge Griffin's only answer (Resp.16-19) to the obvious equal-protection violation here (NCDP Br.17-18; NCDP Resp.10) is that *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), is inapposite. Again, that would not help Judge Griffin even if true, because the equal-protection violation is clear under other cases. NCDP Resp.10. But it is not true, for the reasons in NCDP's response brief (pp.10-12).

### II. THE POST-ELECTION MEASURES THE STATE COURTS ADOPTED VIOLATE THE NATIONAL VOTER REGISTRATION ACT

1. Judge Griffin's argument (Resp.20) that the NVRA does not apply because he seeks to retroactively remove votes from the count rather than remove registrations mischaracterizes his efforts. He argues here (Br.27) that the "never-resident" voters "were improperly *registered*," not that there was anything wrong with their ballots. That is the argument the state courts adopted, *Griffin*, 2025 WL 1021724, at *12-13, and state officers have been asked to identify voters who were improperly registered. Thus, voters *are* being de-registered. Judge Griffin not only assumes that North Carolina will retain these voters' registrations; but also necessarily argues that states

7

should be able to purge their voters well past the NVRA's 90-day bar so long as they leave disenfranchised voters' names on the official registration roll, let the voters vote, and then discard their votes *after* the election. That would eviscerate the NVRA.

2. As to Judge Griffin's refrain (Resp.20) that this is a state election, as explained (NCDP Br.19 & n.3), the NVRA applies to the state's "official list" of voters, 52 U.S.C. §20507(c)(2)(A), and in North Carolina, there is only one "official voter registration list," N.C. Gen. Stat. §163-82.10(a). That federal law did not *compel* North Carolina to adopt the NVRA's requirements for state and local elections is immaterial; now that it *has* adopted the NVRA's protections, the state's unified list is federally protected. The Fourth Circuit has acknowledged that this "unified registration system" means that North Carolina "is bound by the provisions of the NVRA." *Republican National Committee v. NCSBE*, 120 F.4th 390, 401-402 (4th Cir. 2024). This Court has not finally "dispensed with that argument" (Griffin Resp.20), and it could not do so without explaining why the Fourth Circuit's determination that the NVRA protects the voters on the shared federal-state voter list is not binding here. That Judge Griffin's *challenge* to those voters concerns a state race does not matter, because the state subjects voters for "all elections in the State" to the same criteria for eligibility and registration. N.C. Gen. Stat. §163-82.10(a).

3. Judge Griffin has largely abandoned his remaining four answers to the NVRA claim. He briefly reprises (Resp.21) his earlier third and sixth arguments that the NVRA does not protect voters from late-stage removal if they "were improperly registered" according to a state, Griffin Br.27. As explained (NCDP Resp.14), the NVRA is designed to ensure that eligible voters are not *erroneously* swept up in an effort to target ineligible ones. In a brief reference to his fourth answer, Judge Griffin describes his protests as "episodic" (Resp.20), implying that the NVRA does not apply to his one-time attempt to retroactively discard ballots cast in his election. But the NVRA

is violated even when a removal is initiated in a one-time effort by a private party, in a single election. NCDP Resp.14. And Judge Griffin has entirely abandoned his fifth argument that he targeted hundreds of voters at issue on an "individualized" basis, Griffin Br.26-27, likely because he has taken the opposite stance in state courts, *see* NCDP Resp.14-15. This is systematic removal, and the NVRA prohibits it.

4. In what appears to be an attempt to evade the NVRA not raised in his initial brief, Judge Griffin mischaracterizes the NVRA's text. He proposes (Resp.20) that the NVRA "applies '90 days prior' to an election—not after." But what the NVRA prohibits is voter-removal programs that occur "*later than* 90 days prior to the date of a primary or general election for Federal office." 52 U.S.C. §20507(c)(2)(A) (emphasis added). Judge Griffin's reading would allow states to easily circumvent the 90-day ban by simply waiting until the day after an election to remove any voters they please from the rolls—and discard the ballots those voters just cast. Courts should not indulge such an effort to eviscerate Congress's attempt to protect the fundamental right to vote (and indeed they evidently have not done so, as Judge Griffin cites no case supporting his argument).

## III. INJUNCTIVE RELIEF IS WARRANTED

All movants agree that the Court should at the very least order that state officials permanently stop any cure or ballot-discard process. *See* NCDP Br.3; Riggs Br.3; Conley Br.26-27; Vote Vets Br.22. Although Judge Griffin labels that request too "tricky" for the Court to "decipher[]" (Resp.29), the Court is perfectly capable of exercising its "'virtually unflagging' obligation" to resolve the federal issues here and issue the requested relief. Order at 22 (D.E.50) (citation omitted). And as Judge Griffin does not dispute (Resp.30), NCDP has detailed (Br.20-24) why it meets the factors for obtaining permanent injunctive and declaratory relief.

Judge Griffin asserts (Resp.30) that the equities and public interest are "best served" by allowing the state courts to "enforce the law adopted by the North Carolina General Assembly." But as explained, *see supra* pp.1-2, the state courts have *invalidated* the law adopted by the General Assembly on newfound state-constitutional grounds (thereby expanding the state's residency requirements) and the law adopted pursuant to authority delegated by the General Assembly on newfound state-statutory grounds (thereby expanding the state's photo identification requirements). Equity and the public interest demand that these changes in state law not apply retroactively. Judge Griffin also implicitly concedes (Resp.30-31) that the cure-and-discard process will confuse voters, *see* NCDP Br.11, 17. He argues (Resp.31) that such voter confusion does not matter because the *Board* confused voters first. That is beside the point, because what matters is whether federal intervention is necessary to end voter confusion *now*. It is also wrong. The Board simply instructed voters to follow then-current (and widely accepted) state law.

Judge Griffin does not contest any other basis for final injunctive relief or point to disputed issues of material fact that would preclude such relief. There are none; NCDP argues that federal law prohibits any identification of ballots for cure or for removal from the vote count, and that claim requires no factual development. The Court should grant final relief now.

## CONCLUSION

The Court should issue a permanent injunction and declaratory relief as requested in NCDP's second amended complaint, or effect equivalent relief.

April 28, 2025                                              Respectfully submitted,

                                                            */s/* Shana L. Fulton

S<small>ETH</small> P. W<small>AXMAN</small>*                        S<small>HANA</small> L. F<small>ULTON</small>
D<small>ANIEL</small> S. V<small>OLCHOK</small>*                     N.C. Bar No. 27836
C<small>HRISTOPHER</small> E. B<small>ABBITT</small>*                W<small>ILLIAM</small> A. R<small>OBERTSON</small>
J<small>ANE</small> E. K<small>ESSNER</small>*                       N.C. Bar No. 53589
N<small>ITISHA</small> B<small>ARONIA</small>*                       J<small>AMES</small> W. W<small>HALEN</small>
A<small>NN</small> E. H<small>IMES</small>*                          N.C. Bar No. 58477
W<small>ILMER</small> C<small>UTLER</small> P<small>ICKERING</small>  B<small>ROOKS</small>, P<small>IERCE</small>, M<small>C</small>L<small>ENDON</small>,
   H<small>ALE AND</small> D<small>ORR LLP</small>                      H<small>UMPHREY</small> & L<small>EONARD</small>, LLP
2100 Pennsylvania Avenue N.W.                               150 Fayetteville Street, Suite 1700
Washington, D.C. 20037                                      Raleigh, N.C. 27601
Phone: (202) 663-6000                                       Phone: (919) 839-0300
Fax: (202) 663-6363                                         Fax: (919) 839-0304
seth.waxman@wilmerhale.com                                  sfulton@brookspierce.com
daniel.volchok@wilmerhale.com                               wrobertson@brookspierce.com
christopher.babbitt@wilmerhale.com                          jwhalen@brookspierce.com
jane.kessner@wilmerhale.com
nitisha.baronia@wilmerhale.com
annie.himes@wilmerhale.com

* Local Rule 83.1(e) special appearance

**CERTIFICATE OF SERVICE**

On this 28th day of April, 2025, I electronically filed the foregoing document using the court's CM/ECF system.

/s/ Shana L. Fulton
Shana L. Fulton