| | |
|---|---|
| JEFFERSON GRIFFIN,<br>    *Plaintiff*,<br>v.<br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br>    *Defendant*,<br>and<br>ALLISON RIGGS, NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, VOTEVETS ACTION FUND, TANYA WEBSTER-DURHAM, SARAH SMITH, JUANITA ANDERSON,<br>    *Intervenor-Defendants*. | Case No. 5:24-cv-00731-M-RJ (lead) |
| NORTH CAROLINA DEMOCRATIC PARTY,<br>    *Plaintiff*,<br>v.<br>NORTH CAROLINA STATE BOARD OF ELECTIONS et al.,<br>    *Defendants*. | Case No. 5:24-cv-00699-M-KS |
| CARRIE CONLEY et al.,<br>    *Plaintiffs*,<br>v.<br>ALAN HIRSCH et al.,<br>    *Defendants*. | Case No. 5:25-cv-00193-M-RJ |

**VOTEVETS ACTION FUND, NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS, TANYA WEBSTER-DURHAM, SARAH SMITH, AND JUANITA ANDERSON'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.    Griffin fails to refute the many federal grounds for denying his challenges. ..................... 1

          A.  Substantive due process prohibits retroactive application of an election-law ruling.... 1

          B.  Equal protection bars discriminating against voters by county. .................................. 4

          C.  Invalidating lawfully-cast ballots long after the election unduly burdens the right to vote.................................................................................................................................. 6

          D.  Griffin's challenges are incompatible with procedural due process. ........................... 7

          E.  The NVRA prohibits retroactive systematic removals of voters. ................................ 8

          F.  The Federal Post Card Application's checkbox is immaterial where officials have sufficient proof of residency. ....................................................................................... 8

    II.   VoteVets Intervenors are entitled to relief. ........................................................................ 9

CONCLUSION......................................................................................................................... 9

## INTRODUCTION

At bottom, this case poses a simple question with profound consequences, for this election and democracy itself: Can a losing candidate overturn the will of the electorate by rewriting election rules for select voters after seeing the results? Griffin insists the answer is yes. But the Constitution, federal law, and basic fairness say no. Voters are entitled to rely on the rules in place when they cast their ballots. Griffin's after-the-fact bid to selectively invalidate votes violates federal law at every turn. This Court should exercise its properly retained jurisdiction to put an end to this dangerous attempt to retroactively change the rules of the game for disfavored voters.

## ARGUMENT

**I.     Griffin fails to refute the many federal grounds for denying his challenges.**

    **A.     Substantive due process prohibits retroactive application of an election-law ruling.**

Disenfranchising voters for "state actions that induce [them] to miscast their votes" "run[s] afoul of due process." *Ne. Ohio Coal. for Homeless v. Husted* ("*NEOCH*"), 696 F.3d 580, 597 (6th Cir. 2012). Griffin's claim that this "specific right" is unestablished, Resp.3, ECF No. 104, runs headlong into authority holding that substantive due process bars disenfranchising voters who reasonably rely on "established election procedure." *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998) (discussing line of cases). That rule is consistent with the cornerstone principle that "retroactive application" of the law is unconstitutional. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 176 (4th Cir. 2010) (collecting authority). Indeed, Griffin cannot point to a *single instance* where a federal court has upheld the *ex-post* application of an election law ruling to disenfranchise voters after they cast their ballots. Doing so is, quite simply, unconstitutional.

To avoid this clear result, Griffin pretends the new rules he seeks to impose were established on election day, and voters had no right to rely on contrary "administrative guidance."

Resp.2-5. But Griffin said the opposite just months ago, insisting "this case rest[ed] upon" "*difficult*" and "*unsettled questions* of state law." Doc.26 at 5 & Doc.17 at 13, No. 25-1018 (emphases added). He urged that this Court should avoid making "a dubious and tentative forecast about unsettled state-law questions." Doc.17 at 14, No. 25-1018 (cleaned up).

With a state court ruling he likes in hand, Griffin's tune has changed. Now he argues voters who participated in the November 2024 election should have correctly guessed about the meaning of election laws that Griffin found "difficult" and "unsettled" until just weeks ago. According to Griffin, those voters should have (1) portended his untimely, post-election challenges; (2) made a "tentative forecast" about state law questions the Board (as to UOCAVA ID) and the Legislature (as to UMOVA) got wrong; and (3) engineered a way to comply.[1] Hypocrisy aside, this expects the impossible from voters, and this list of absurdities illustrates the fundamental unfairness of retroactively invalidating their ballots.[2]

The sop Griffin tosses to voters is that "overseas voters still have the opportunity to vote." Resp.6. What he really means is the subset of military and overseas voters he has selectively targeted can try to save their now-invalid ballots through a half-baked cure requirement six months after they voted. But substantive due process prohibits this: these voters relied "on an established election procedure and/or official pronouncements" about how to vote, and a post-election "change in the election procedures" will result in "significant disenfranchisement." *Bennett*, 140 F.3d at

---

[1] For example, Griffin's position is that UOCAVA voters should have known to provide ID—notwithstanding contrary instructions from election officials—but he never explains how voters could have provided it, given that the state's election machinery was not equipped for it.

[2] For similar reasons, Griffin's reliance on *Hutchinson v. Miller*—which denied damages to failed candidates who alleged only "election irregularities that [did not] disenfranchise[] a class of voters"—is misplaced. 797 F.2d 1279, 1280. Indeed, that case "affirm[ed] the significant duty of federal courts to preserve constitutional rights in the electoral process," as necessary here. *Id.* at 1283 (citing cases).

1226-27. Alarmingly, that prospect of selective disenfranchisement appears to be Griffin's motivation; why else challenge some UOCAVA voters but not others?[3]

Griffin's attempts to avoid *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), are misguided and easily dismissed. *First*, Griffin claims the cure requirement is an "adequate state corrective procedure[]" under *Burns*. But the corrective procedures considered in *Burns* were the "state's administrative and judicial corrective process"—the very process here that invalidated the challenged ballots. 710 F.2d at 1078. Its further imposition of a novel, after-the-fact cure requirement that many voters—whether they be deceased, redeployed, or the like—cannot hope to comply with fails to show "the availability of a *fully adequate* state corrective process." *Id.* at 1077 (emphasis added).

*Second*, Griffin claims there can be no substantive due process violation here because officials acted only "negligent[ly]" in how they administered the election and did not "intentionally" disenfranchise anyone. Resp.5, 7. That willfully misconstrues what state action is challenged—it is Griffin's effort to marshal an April 2025 judicial ruling to force the Board to invalidate certain ballots cast in November 2024 that offends due process. *That* imminent and purposeful state action demands federal relief. *See Burns*, 570 F.2d at 1070.

*Third*, Griffin claims substantive due process is violated only if a large share of the electorate is disenfranchised. But *Burns* nowhere imposes that requirement. *See* VV Mem.6-7, ECF No. 87. The decision stressed that the potentially determinative nature of the challenged

---

[3] In *Bennett*, the Ninth Circuit found no substantive due process violation because it was implausible any voter relied on the disputed election rule. *See* 140 F.3d at 1227. In contrast, Griffin seeks to punish voters who dutifully listened to election officials and relied on their "official pronouncements." *Id.* Nor did the state court ruling underlying *Bennett* result in any disenfranchisement—"[e]very ballot submitted was counted." *Id.* Griffin demands the opposite, insisting that ballots cast in November 2024 be invalidated based on resolution of "unsettled" state law questions in April 2025.

ballots warranted federal intervention. *See Burns*, 570 F.2d at 1080. *Burns* thus counsels *against* adopting a novel rule that would perversely reward Griffin for targeting just enough voters to change the outcome of the election in localities he thinks disfavor of him.

*Finally*, Griffin suggests *Burns* may not be applied absent a request for a new election. Resp.8-9. But *Burns* merely held the district court did not err in crafting a remedy tailored to that case; it nowhere cabined the relief available. *See Burns*, 570 F.2d at 1079-80. This case has different facts warranting a different remedy. *See* VV Resp.n.4, ECF No. 102. Moreover, Griffin has never sought a new election; substantive due process bars the relief he seeks—it does not require a remedy no one has requested.

**B.  Equal protection bars discriminating against voters by county.**

Griffin does not dispute that, under the state court orders, ballots cast by *identically-situated voters* will be discarded in some counties but not others. Resp.16-19. Instead, he defends this unequal treatment because the "standard" the state court orders impose for determining legal votes in Guilford County, he says, is "clear" because it requires voters to "provide photo-ID or its equivalent." Resp.17. In other words, Griffin believes that as long as the *substance* of the standard is clear, it can be arbitrarily applied to disenfranchise voters in some counties and not in others. No reading of *Bush v. Gore*, 531 U.S. 98 (2000), supports that warped outcome. Under Griffin's logic, in *Bush* the Florida Supreme Court could have crafted a stringent standard but applied it retroactively *only* to Bush-friendly counties, so long as the standard applied in those counties was "clear." But *Bush* forbade that kind of lopsided treatment by rebuking the counting of "overvotes" in some, but not all, counties. *See id.* at 107-08. *Bush* held that a state court ruling cannot lead to "arbitrary and disparate *treatment*" of voters based on their county of residence. *Id.* at 106 (emphasis added). *Bush* broke no new ground; it was based in precedent concerning "arbitrary and disparate *treatment*" of voters in "different counties." *Id.* at 107 (citing *Gray v. Sanders*, 372 U.S.

4

368 (1963) (emphasis added)). The state court orders here constitute the same kind of arbitrary and disparate treatment.

Griffin nonetheless contends that a court-ordered review of "'all deficient' ballots 'within the county under the same standard,'" does not violate equal protection. Resp.19 (citing *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 241 (6th Cir. 2011)). The case Griffin cites in support explains why he is wrong. In *Hunter*, the court concluded that disputed ballots could be re-reviewed in a single county without violating equal protection because the election at issue was for a *local* judgeship in which "only voters in [that] county [we]re eligible" to vote. *Id.* at 242. *Hunter* expressly warned that had there been a "statewide" election (as here), "[s]tatewide equal-protection implications could arise." *Id.*

Griffin is also wrong that the state courts decided issues relevant to "only one jurisdictional entity." Resp.19. The purported photo-ID problem with UOCAVA voters did not only occur in Guilford County. And the state courts construed a state statute to prospectively impose new requirements on *all* UOCAVA voters in *all* counties. Yet their retrospective remedy applied only to Griffin's cherry-picked jurisdiction. That decision unconstitutionally "ratified" "uneven treatment" across counties. *Bush*, 531 U.S. at 107.[4]

Griffin's remaining cases change none of this. In *Donald J. Trump for President, Inc. v. Boockvar*, the use of drop boxes in only some counties did not violate equal protection because any ensuing vote dilution would be "distributed *equally* across the electorate as a whole," 493 F. Supp. 3d 331, 388 (W.D. Pa. 2020) (emphasis added)—it would not target voters by county. But

---

[4] Griffin's reliance on *Taft v. Cuyahoga Cnty. Bd. of Elections*, 854 N.E.2d 472, 478 (Ohio 2006), is misplaced. There, a recount was limited to one precinct because it was the only precinct with a known "counting problem." *Id.* Here, the variation in application is not the result of a county-specific problem, but a losing candidate's effort to challenge just enough votes to flip an election.

5

here, the only voters who will have their ballots rejected are those unlucky enough to be registered in a challenged county. And while all voters in *Pierce v. Allegheny County* were subject to the same ballot-delivery rules at any given time, voters in Guilford County will be singled out for differential treatment despite voting at the same time as all other North Carolinians. *See* Resp.18-19 (quoting 324 F. Supp. 2d 684, 699 (W.D. Pa. 2003)). This is inherently unequal treatment.

### C. Invalidating lawfully-cast ballots long after the election unduly burdens the right to vote.

Griffin again pins his undue burden argument on blaming voters. According to him, the challenged voters can suffer no undue burden because they voted "illegally." Resp.10-15. That revisionist history glosses over Griffin's effort to punish voters for not preordaining his challenges and predicting the answers to "unsettled" questions of law he never posed until after election day. His demand that they be disenfranchised as a result unduly burdens their voting rights.

Griffin argues the wholesale rejection of UMOVA voters' ballots is no burden because they have no right to vote at all. Resp.10-11. But North Carolina permitted such voters to participate in dozens of elections under an unambiguous statute not found invalid until *after* the election. Whatever *prospective* effect that ruling should have, applying it retroactively burdens the rights of voters who cast ballots in reliance on the law as written. *See NEOCH*, 696 F.3d at 597. That burden is especially significant considering these voters will receive no notice or opportunity to prove their eligibility. *See infra* I.D.

Next, Griffin argues UOCAVA voters face a minimal burden because the cure requirement "make[s] it *easier* to vote." Resp.14. That assertion flips reality: these ballots were valid until state court orders retroactively invalidated them and imposed a burdensome cure requirement—one many military and overseas voters cannot satisfy. *See* VV Mem.12-13; Eaton Decl. ¶7. No one demands "an infallible way to vote," Resp.14, only the right to rely on established election rules.

*Cf. NEOCH*, 696 F.3d at 597. Tellingly, Griffin cites no case where a voter was forced to cure a ballot cast in full compliance with then-existing rules. *Contra* Resp.12-14 (citing only cures for errors under rules in effect when ballots were cast). This Court should decline to break that Kafkaesque ground.

Notably, Griffin points to preventing "illegal voting" as the state's sole interest here, ignoring that the voters he challenges cast ballots under a legislative act (UMOVA voters) and the Board's rules (UOCAVA voters). Given their compliance with *state-sanctioned* voting rules, Griffin cannot show any valid state interest in retroactively depriving those voters of the benefit of those rules.

**D. Griffin's challenges are incompatible with procedural due process.**

Griffin's quibbling over the legal standard aside, rejecting UMOVA voters' ballots without providing notice or an opportunity to be heard is a quintessential procedural due process violation. *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 226 (M.D.N.C. 2020); *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637, 670 (M.D.N.C. 2024). Griffin has no answer to this point, relying on the theory that these voters "never had the right to cast [a] ballot to begin with." Resp.11. But the *entire point* of notice and due process is to determine the truth of that claim; a claim the Board has already found to often be wrong. ECF No. 61 at 4-5. Had Griffin brought a *timely* challenge, it is indisputable these voters would have had an opportunity to prove their residency. N.C.G.S. §§163-85(d), 163-86. He now seeks to rob them of that chance.

Griffin also suggests no cure process can ever be unconstitutional. *See* Resp.11-15. That is wrong. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1339 (N.D. Ga. 2018) (finding procedural due process violation when cure opportunity proved illusory for certain voters). Worse, his arguments are divorced from the reality that the cure requirement *here* applies to military and overseas

7

voters—who will have the most difficulty complying. *See* VV Mem.15-16. For many, the promise of a cure opportunity will be wholly illusory. *See Martin*, 341 F. Supp. 3d at 1339.

### E. The NVRA prohibits retroactive systematic removals of voters.

North Carolina has only one voter registration list "for the conduct of all elections." N.C.G.S. §163-82.11(a). In enacting this provision, the Legislature chose to align voter registration for state elections with the NVRA. That choice now forecloses Griffin's efforts to disenfranchise UMOVA voters. *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 401 (4th Cir. 2024).

As to timing, Griffin says the NVRA prohibits mass challenges only "90 days prior" to an election. Resp.20. Wrong. It requires any mass removal to be "*complete*" at least 90 days prior to an election. 52 U.S.C. §20507(c)(2)(A). While Griffin was free to raise registration challenges for *future* elections after the November election, he could not legally seek *backwards*-looking mass challenges—such systematic removals definitionally cannot be "complete" 90 days prior to the election for which Griffin intended the removal to apply. *Id.*; *see also* VV Resp.18-22.

### F. The Federal Post Card Application's checkbox is immaterial where officials have sufficient proof of residency.

Griffin says UMOVA voters should be disenfranchised based on a checkmark on a form that does not specifically address North Carolina residency even where election officials have *definitive* proof of residency. Resp.26; *see* VV Mem.21. That is wrong: the materiality provision "prevent[s] officials from rejecting applicants for" how they check boxes when they have "already verified the applicant's [eligibility]." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 760 (9th Cir. 2025) (Bumatay, J., affirming on this point). The Board thus cannot discard UMOVA voters' ballots where it has "satisfactory proof" of their residency. *Id.*; 52 U.S.C. §10101(a)(2)(B).

8

## II. VoteVets Intervenors are entitled to relief.

Griffin is incorrect that "VoteVets make[s] no argument on the equitable factors." Resp.30; *see* VV Resp.22-25 (addressing permanent injunction factors). Griffin is also wrong that ruling in VoteVets Intervenors' favor would be "tricky." Resp.29. The Board is presently enjoined from discarding ballots or imposing the cure requirement; this Court need only enter similar permanent relief and require the Board to certify the election. Finally, citing a copyright *damages* case, Griffin claims an injunction is unwarranted even if VoteVets Intervenors prevail. *Id.* at 30. But when a state actor is set to imminently violate federal voting rights, "[t]he proper remedy … is the issuance of an injunction against [] enforcement." *Wilson v. N.C. State Bd. of Elections*, 317 F. Supp. 1299, 1303 (M.D.N.C. 1970).

## CONCLUSION

The Court should grant VoteVets Intervenors' motion for summary judgment and the relief requested therein.

Date: April 28, 2025

Respectfully submitted,

/s/ *Lalitha D. Madduri*
Lalitha D. Madduri
Christopher D. Dodge
Tina Meng Morrison
James J. Pinchak
Julie Zuckerbrod
ELIAS LAW GROUP LLP
250 Massachusetts Ave, N.W.
Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
cdodge@elias.law
tmengmorrison@elias.law
jpinchak@elias.law
jzuckerbrod@elias.law

Narendra K. Ghosh
N.C. Bar No. 37649
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27217
Telephone: (919) 942-5200
nghosh@pathlaw.com


*Counsel for Voter Intervenors VoteVets Action Fund, the North Carolina Alliance for Retired Americans, Tanya Webster-Durham, Sarah Smith, and Juanita Anderson*

**CERTIFICATE OF COMPLIANCE**

1.  This document complies with the type-volume limit of Local Rule 7.2(f)(3), because, excluding the parts of the document exempted by Local Rule 7.2(f)(1), this document contains 2,788 words.

2.  This document complies with the typeface requirements of Local Rule 10.1(a) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point Times New Roman.


Dated: April 28, 2025 /s/ *Lalitha D. Madduri*
Lalitha D. Madduri

*Counsel for Voter Intervenors VoteVets Action Fund, the North Carolina Alliance for Retired Americans, Tanya Webster-Durham, Sarah Smith, and Juanita Anderson*

**CERTIFICATE OF SERVICE**

On this 28th day of April, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

<u>/s/ *Lalitha D. Madduri*</u>
Lalitha D. Madduri

*Counsel for Voter Intervenors VoteVets Action Fund, the North Carolina Alliance for Retired Americans, Tanya Webster-Durham, Sarah Smith, and Juanita Anderson*