| | |
|---|---|
| CARRIE CONLEY et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALAN HIRSCH et al.,<br><br>*Defendants.* | |
| JEFFERSON GRIFFIN,<br><br>*Plaintiff*,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>*Defendant*,<br><br>and<br><br>ALLISON RIGGS et al.,<br><br>*Intervenor-Defendants*. | Case Nos.  5:25-cv-00193-M<br>5:24-cv-00731-M (lead)<br>5:24-cv-00699-M<br><br>**VOTER PLAINTIFFS' REPLY BRIEF RE: APRIL 12, 2025 ORDER TO RESOLVE "REMAINING FEDERAL ISSUES" AND, IN THE ALTERNATIVE, SECOND MOTION FOR INJUNCTIVE RELIEF** |
| NORTH CAROLINA DEMOCRATIC PARTY,<br><br>*Plaintiff*,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS et al.,<br><br>*Defendants.* | |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    Plaintiffs prevail on their substantive due process claims. ................................................. 2

    II.    Plaintiffs prevail on their equal protection claims. ............................................................ 5

    III.   *Anderson-Burdick* does not apply but, if it does, Plaintiffs still prevail. ............................ 6

CONCLUSION ........................................................................................................................... 9

CERTIFICATE OF COMPLIANCE ....................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ................................................................................................... 6

*Ariz. Democratic Party v. Hobbs*,
    18 F.4th 1179 (9th Cir. 2021) ..................................................................................... 7

*Bush v. Gore*,
    531 U.S. 98 (2000) ............................................................................................. 4, 5, 6

*Calder v. Bull*,
    3 U.S. 386 (1798) ....................................................................................................... 2

*Carrington v. Rash*,
    380 U.S. 89 (1965) ..................................................................................................... 5

*Cipriano v. City of Houma*,
    395 U.S. 701 (1969) (per curiam) .............................................................................. 2

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) ................................................................................................ 7, 8

*Democratic Party of Va. v. Brink*,
    599 F. Supp. 3d 346 (E.D. Va. 2022) .............................................................. 3, 4, 8

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) ....................................................................... 6

*Gamza v. Aguirre*,
    619 F.2d 449 (5th Cir. 1980) ..................................................................................... 4

*Gray v. Sanders*,
    372 U.S. 368 (1963) ................................................................................................... 3

*Griffin v. Burns*,
    570 F.2d 1065 (1st Cir. 1978) ............................................................................ *passim*

*Hendon v. N.C. State Bd. of Elections*,
    710 F.2d 177 (4th Cir. 1983) ................................................................................ 2, 4

*Hoblock v. Albany Cnty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) ........................................................................................ 4

*Pierce v. Allegheny Cnty. Bd. of Elections*,
 324 F. Supp. 2d 684 (W.D. Pa. 2003) ................................................................................. 6

*Richardson v. Tex. Sec'y of State*,
 978 F.3d 220 (5th Cir. 2020) ............................................................................................... 7

*Roe v. Alabama*,
 43 F.3d 574 (11th Cir. 1995) ........................................................................................... 6, 7

*Shannon v. Jacobowitz*,
 394 F.3d 90 (2d Cir. 2005) .................................................................................................. 4

*Sharma v. Hirsch*,
 121 F.4th 1033 (4th Cir. 2024) ............................................................................................ 1

*Taft v. Cuyahoga Cnty. Bd. of Elections*,
 854 N.E.2d 478 (Ohio 2006) ............................................................................................... 5

*United States v. Mosley*,
 238 U.S. 383 (1915) ............................................................................................................ 3

*Wexler v. Anderson*,
 452 F.3d 1226 (11th Cir. 2006) ........................................................................................... 6

*Wright v. North Carolina*,
 787 F.3d 256 (4th Cir. 2015) ............................................................................................... 5

## INTRODUCTION

Griffin does not dispute that, under the settled rule in place for the 2024 Seat Six election, military and overseas voters could vote by affirming their identity under penalty of perjury, without providing a copy of voter ID. He does not dispute that this settled rule was codified in multiple formal regulations with the force of law, each permitted by legislative oversight committees. He does not dispute that election officials repeatedly communicated this settled rule to individual voters and to the public writ large. He does not dispute that the covered voters who, notwithstanding this settled rule, wished to submit a copy of their voter ID with their absentee ballots had no official way of doing so. He does not dispute that the state courts changed this settled rule and ordered Defendants to apply it retroactively nearly six months *after* the 2024 election. Finally, he does not dispute, or even attempt to justify, his failure to challenge the settled rule *prior* to the 2024 election, or his insistence that Defendants apply it *only* in counties where voters predominantly supported his opponent.

Whether in federal or state elections, "[s]tates must yield to … constitutional provisions that protect the rights of voters and candidates." *Sharma v. Hirsch*, 121 F.4th 1033, 1038 (4th Cir. 2024). Here, multiple such provisions bar Defendants from discarding Plaintiffs' votes or making them contingent on satisfying a reinterpreted rule, retroactively and discriminatorily applied, in an unprecedented disqualify-then-cure process.

Rather than address the many constitutional violations Defendants are ordered to commit at his behest, Griffin attempts to rewrite this case as a "garden variety" election contest. But he continues to fail to identify *a single prior instance, anywhere*, that similarly forced thousands of targeted voters to now heed reinterpreted rules, six months after the election, or else their already counted vote will be discarded. The negative consequences of rendering the U.S. Constitution

powerless to avert Griffin's effort to overturn his electoral defeat are easy to foresee. This Court should end this brazen attack on Plaintiffs' fundamental rights.

**ARGUMENT**

At each turn, Griffin trivializes the fundamental constitutional rights of Plaintiffs and the Class of military and overseas voters, claiming they lack substantive due process, equal protection, and procedural due process guarantees, and that Defendants' actions only minimally and justifiably burden their right to vote. In so doing, he misrepresents Plaintiffs' claims and sidesteps binding precedent that forecloses his arguments.

**I.    Plaintiffs prevail on their substantive due process claims.**

Griffin mischaracterizes Plaintiffs' claim as one based on an amorphous principle recognized only in "out-of-circuit caselaw." ECF 104 at 7 (Griffin. Resp. Br.). But the substantive right Plaintiffs' assert is their fundamental right to vote. The prohibitions against antiretroactivity and faulting voters for widespread administrative errors are well-established ways in which the Due Process Clause protects that right.

Fourth Circuit precedent has long recognized the "settled" rule that voters' substantive due process rights are violated "if the election process reaches the point of 'patent and fundamental unfairness.'" *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978)). Griffin ignores just how deeply rooted this antiretroactivity principle is in this Nation's history and tradition, *see Calder v. Bull*, 3 U.S. 386, 391 (1798) ("Every law that takes away, or impairs, rights vested, agreeably to existing laws, is retrospective, and is generally unjust…."), a principle in no way limited to statutes, *see Cipriano v. City of Houma*, 395 U.S. 701, 706 (1969) (per curiam) ("Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity." (internal quotations omitted)).

And the fundamental right to vote, and to have one's vote counted, is settled in over a century of precedent. *See, e.g.*, *Gray v. Sanders*, 372 U.S. 368, 380 (1963); *United States v. Mosley*, 238 U.S. 383, 386 (1915). Given the established interpretation of the voter ID statute before the 2024 election—one consistent with a fair reading of the state statutes and the associated federal law, communicated widely by state officials, blessed by legislative oversight committees, and unchallenged by Griffin or anyone else—this antiretroactivity principle firmly protects the fundamental rights at stake.

Griffin eventually acknowledges that the *Burns* framework governs but contends that Defendants' actions do not violate Plaintiffs' rights for four reasons. ECF 104 at 6-10. Two simply rehash already rebutted arguments. *See* ECF 103 at 6-7 (Pls. Resp. Br.). The other two also lack merit.

***First***, the disqualify-then-cure process is not an "adequate state corrective procedure." *Cf.* ECF 104 at 7. It is nothing like an ordinary cure process made available to voters who do not comply with a rule *they can discern and abide by when they cast their ballots*. That is the basic premise of *Democratic Party of Virginia v. Brink*, 599 F. Supp. 3d 346 (E.D. Va. 2022), which Griffin relies on extensively. ECF 104 at 6, 13-14. The *Brink* court reasoned that a cure process provides a *second* chance to voters who did not follow rules they could have at the time of an election but failed to because of *the voters*' "negligence." 599 F. Supp. 3d at 363. Here, by contrast, Griffin does not and cannot claim that military and overseas voters did anything wrong. They had no notice they were subject to the voter ID requirement during the 2024 election (because they weren't) and no opportunity to comply with the rule when voting (because they couldn't). The disqualify-then-cure process is not enfranchising—it retroactively imposes a new burden that did

not exist at the time of the 2024 election, in a manner made "more problematic" because it "'places a particular burden on an identifiable segment' of voters." *Id.* at 363 n.23.

**Second**, Griffin asserts that Plaintiffs must show "both 'fundamental unfairness' in the election process and … 'intentional' state conduct directed at impairing a citizen's right to vote." ECF 104 at 7. This cannot be squared with *Hendon*, which does not make an intent to "impair[] a citizen's right to vote" a prerequisite to finding a substantive due process violation. Rather, *Hendon* confirms that a severe irregularity that "erodes the democratic process" violates due process, whether resulting from official negligence or intentional misconduct. 710 F.2d at 1282; *accord Burns*, 570 F.2d at 1078-79.[1]

Griffin's own cited authority for his invented "intentionally subversive" standard, ECF 104 at 7-8 (citing *Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980)), makes clear it is *not* addressing due process claims under the *Burns* framework, *see Gamza*, 619 F.2d at 454 n.6. But even if this incorrect analysis were applied, Plaintiffs challenge Defendants' retroactive application of a changed voting rule, contrary to the instructions they provided to these voters. This is undoubtedly "intentional … conduct." *Compare Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 97-98 (2d Cir. 2005) (under *Burns*, "the intentional decision by the Board to send out absentee ballots to voters and then to refuse to tally those ballots is the type of decision that can give rise to a constitutional violation" (citation and quotations omitted), *with Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) (describing "a malfunctioning voting machine" as "an unfortunate but unintended irregularity" not cognizable under *Burns*).

---

[1] Griffin also mischaracterizes *Hendon*'s discussion of the equities. *See* ECF 104 at 9. Because Griffin failed to offer "any reason why [he] could not have challenged" settled voting rules prior to the 2024 election, equity forbids providing "relief with respect to past elections" *on behalf of* Griffin. *Hendon*, 710 F.2d at 182.

**II. Plaintiffs prevail on their equal protection claims.**

The equal protection principles underpinning *Bush v. Gore*, 531 U.S. 98 (2000), are well-established. *See* ECF 103 at 9-11. Griffin ignores them and defends the selective enforcement of a changed voting rule in a subset of (predominantly Democratic) areas because "[t]he photo-ID standard is uniform under state law and will not vary in its implementation from official to official." ECF 104 at 18. Irrespective of whether the photo-ID standard "is uniform under state law," applying it to only *some* voters—but not similarly situated others—solely because of location, is precisely the "arbitrary and disparate treatment, valu[ing] one person's vote over that of another" that equal protection forbids, *Wright v. North Carolina*, 787 F.3d 256, 259 (4th Cir. 2015). Despite Griffin's claims, the reality is that he manipulated his statewide theory of the voter-ID law to apply only to a potentially dispositive subset of voters. Griffin did not purport to base his challenges on any evidence of irregularities in particular counties. And he disputes neither that his own political interests drive this differential treatment, nor that such partisan "'[f]encing out' from the franchise … is constitutionally impermissible," *Carrington v. Rash*, 380 U.S. 89, 94 (1965).

The out-of-circuit cases Griffin cites are unavailing. ECF 104 at 18-19. *Taft v. Cuyahoga County Board of Elections* held that conducting a recount in one precinct that experienced ballot counting problems did not violate equal protection because "there was no evidence that any other precincts had experienced the same counting problem." 854 N.E.2d 472, 478 (Ohio 2006). By contrast, there is no basis for distinguishing between overseas and military voters inside and outside of Griffin's targeted counties. In invoking *Hunter v. Hamilton County Board of Elections*, Griffin omits a key fact: *Hunter* addressed a recount in a single county for *a county judgeship*. 635 F.3d 219, 242 (6th Cir. 2011). Treating a one-county recount in a one-county race like a one-county recount in a *statewide* race compares apples to oranges. As *Hunter* recognized: "Statewide

5

equal-protection implications could arise, however, to the extent that the ballots at issue include candidates for … statewide races that transcend county lines." *Id.* (citing *Bush*, 531 U.S. at 106-07). Where, as here, voters statewide are disparately treated post-election, "the cause for constitutional concern is much greater." *Id.* at 235.

Griffin cites *Pierce v. Allegheny County Board of Elections* to argue that *Bush v. Gore* is not implicated because Defendants are not "applying different standards *at the same time* in defining a legal vote." ECF 104 at 18-19 (quoting 324 F. Supp. 2d 684, 699 (W.D. Pa. 2003)). Yet that is *exactly* what Defendants are ordered to do. In the targeted areas, an overseas or military vote is "illegal" without photo ID; everywhere else, that vote is "legal." Griffin's other case involves plaintiffs who failed to allege that their votes would be affected in a way distinct from all voters statewide. *See Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 387 (W.D. Pa. 2020). *Boockvar* reaffirms Plaintiffs' equal protection theory that it deems "uncontroversial": "a state may not take the votes of two voters, similarly situated in all respects, and, for no good reason, count the vote of one but not the other." *Id.*

### III. *Anderson-Burdick* does not apply but, if it does, Plaintiffs still prevail.

Griffin's summary response to Plaintiffs' procedural due process arguments is emblematic of his treatment of their due process rights in this matter. His only (baseless) contention is that *Anderson-Burdick* subsumes essentially *all* constitutional claims pressed in the elections context. He cites not one case supporting this broad conclusion, which is meritless, *see* ECF 103 at 12-14.

Indeed, Griffin overlooks that *Anderson v. Celebrezze* itself specified that it "base[d] [its] conclusions directly on the First and Fourteenth Amendments" and separately noted the distinct "analysis … resting on the Equal Protection Clause" it had not deployed. 460 U.S. 780, 786 n.7 (1983). Griffin's other arguments rely on dicta from inapposite out-of-circuit decisions. ECF 104 at 10. He cites *Wexler v. Anderson* to argue that claims sounding in "fundamental fairness" must

fall under *Anderson-Burdick*. *See* 452 F.3d 1226, 1233 (11th Cir. 2006). But Griffin disregards *Roe v. Alabama*, the instructive Eleventh Circuit case applying the *Burns* framework (without mentioning *Anderson-Burdick*) to a claim alleging that "a post-election departure from previous practice in Alabama" violated due process because it "implicate[d] fundamental fairness." 43 F.3d 574, 581 (11th Cir. 1995). Applying *Burns*, the *Roe* court explained that it is "unreasonable to expect average voters and candidates to question … the election officials' interpretation and application of the statute," and upheld their voting rights exercised in reliance on the settled pre-election rules. *Id.* Nothing in *Anderson* or its progeny indicates that the analysis encompasses all election-related constitutional claims, creating silent exceptions to other established doctrines like procedural due process.

Griffin also wrongly conflates Plaintiffs' demand for adequate process with an invented demand for "an infallible way to vote." ECF 104 at 14. Plaintiffs make no such argument; they explain that the lack of adequate predeprivation process is alone sufficient to support their claim, and the attempted postdeprivation process is also mired with infeasibility and inevitable shortcomings that render the disqualify-then-cure constitutionally deficient. ECF 82 at 18-22. Griffin confronts none of this. He instead relies on out-of-circuit decisions that still do not support his position. *Richardson v. Texas Secretary of State* involved a signature-matching provision that voters were on notice of prior to the election, where state officials gave voters numerous alternative ways of complying with the law in advance of election day. 978 F.3d 220, 237 (5th Cir. 2020). A similar process was available in *Arizona Democratic Party v. Hobbs*, 18 F.4th 1179, 1189 (9th Cir. 2021). Neither case resembles these unprecedented circumstances.

Even if *Anderson-Burdick* applies, Plaintiffs prevail. *See* ECF 82 at 15-18. Griffin accuses Plaintiffs of "'neglect[ing] meaningfully to analyze' relevant precedent." ECF 104 at 13. Griffin

7

is only telling on himself. He first claims *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), means that a photo-ID requirement can never severely burden voters' fundamental rights. But *Crawford* involved a pre-election facial challenge to a universally applicable voter-ID law that no one disputed applied to the voters in question from the beginning. *Id.* at 186. That is squarely within the *Anderson-Burdick* framework. Plaintiffs' claims are more modest than the facial attack in *Crawford*; they pursue narrower as-applied challenges to the law's retroactive and discriminatory application to their already cast and counted votes. Moreover, *Crawford* reasoned that the severity of the ex-ante voting burden was "mitigated by the fact that" voters had time to conform their conduct to the established rule and the "voters without photo identification may cast provisional ballots that will ultimately be counted." *Id.* at 199. Here, however, the severity of the burden is heightened because Plaintiffs lack the kind of advanced time and available alternatives to conform their voting conduct to an established pre-election requirement.

Griffin also again obscures what distinguishes this case from *Brink* and every ordinary notice-and-cure case: Plaintiffs had no instruction or opportunity to comply with the reinterpreted voter-ID rule *before* they voted. Whereas voters' fundamental rights are not ordinarily burdened by giving them a *second* chance, their fundamental rights are *severely* burdened by retroactively imposing a rule change months after an election under the guise of an unprecedented "cure" process. *See* ECF 103 at 15-16.

Finally, Griffin's claimed state interests are incoherent, inapplicable, or both. He identifies an interest in "protecting citizens from 'unlawful votes,'" ECF 104 at 15, but Defendants are, *at Griffin's behest*, being ordered to count what Griffin claims are the "unlawful votes" cast by military and overseas voters in the counties Griffin did not target. He asserts a similar interest in "counting only the votes of eligible voters," *id.*, despite the complete lack of evidence that any

8

targeted voter is ineligible. He asserts the state's interest in "preserving 'public confidence in the integrity and legitimacy of representative government,'" *id.*, disregarding the role his post-election litigation strategy has played in subverting the democratic process, injecting disparate treatment into the counting of ballots, and creating confusion about what rules apply and to whom. Nor does he refute the evidence that his campaign has undermined public confidence in elections. *See* ECF 82 at 18. Whatever purchase such interests have in the abstract, all are ill-served by allowing Defendants to do what Griffin demands.

## CONCLUSION

This election proves the axiom "every vote matters" is more than a candidate's platitude to supporters: it's the truth. But every vote matters only if all votes are counted in accordance with the rules in place at the time ballots are cast. If Defendants are allowed to pull the rug out from under qualified voters who did everything required of them during the 2024 election, the harms to the public's faith in the democratic process will be immediate, dire, and warranted. This case will become a blueprint for candidates who wish to reverse the outcome of close elections anytime they dislike the result. Plaintiffs respectfully ask this Court to protect their fundamental constitutional rights and grant their requested relief.

Dated: April 28, 2025　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　/s/ *Jessica A. Marsden*
　　　　　　　　　　　　　　　　　　　　Jessica A. Marsden

　　　　　　　　　　　　　　　　　　　　Jessica A. Marsden
　　　　　　　　　　　　　　　　　　　　Protect Democracy Project
　　　　　　　　　　　　　　　　　　　　510 Meadowmont Village Circle, No. 328
　　　　　　　　　　　　　　　　　　　　Chapel Hill, NC 27517
　　　　　　　　　　　　　　　　　　　　jess.marsden@protectdemocracy.org
　　　　　　　　　　　　　　　　　　　　Telephone: (202) 579-4582
　　　　　　　　　　　　　　　　　　　　Fax: (202) 769-3176
　　　　　　　　　　　　　　　　　　　　State Bar No. 50855

Anne Harden Tindall
Protect Democracy Project
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
anne.tindall@protectdemocracy.org
Telephone: (202) 579-4582
Fax: (202) 769-3176
State Bar No. 31569

Samuel Jacob Davis
Election Law Clinic at Harvard Law School
6 Everett Street,
Cambridge, MA, 02138
Telephone: (631) 807-2327
State Bar No. 57289

Hayden Johnson*
Protect Democracy Project
2020 Pennsylvania Avenue NW, Suite #163
Washington, DC 20006
hayden.johnson@protectdemocracy.org
Telephone: (202) 579-4582
Fax: (202) 769-3176

John Paredes*
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
john.paredes@protectdemocracy.org
Telephone: (202) 579-4582
Fax: (202) 769-3176

Stacey Leyton*
Danielle Leonard*
Juhyung Harold Lee*
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Fax: (415) 362-8064
sleyton@altber.com
dleonard@altber.com
hlee@altber.com

*By special appearance or notice of special appearance forthcoming*

## CERTIFICATE OF COMPLIANCE

As required by Local Civil Rule 7.2(3)(A), I hereby certify that the foregoing document contains 2,800 words, not including items that may be omitted from the word count pursuant to Local Civil Rule 7.2(f)(1).

Dated: April 28, 2025                    /s/ *Jessica A. Marsden*
                                         Jessica A. Marsden