| | |
|---|---|
| JEFFERSON GRIFFIN,<br>*Plaintiff*,<br><br>v.<br><br>NORTH CAROLINA STATE<br>BOARD OF ELECTIONS,<br>*Defendant*,<br><br>and<br><br>ALLISON RIGGS, VOTEVETS AC-<br>TION FUND, NORTH CAROLINA<br>ALLIANCE FOR RETIRED AMER-<br>ICANS, SARAH SMITH, and<br>JUANITA ANDERSON,<br>*Intervenor-Defendants*. | FILED<br>MAY 05 2025<br>PETER A. MOORE, JR., CLERK<br>US DISTRICT COURT, EDNC<br>BY _____ DEP CLK<br><br><br>Case No. 5:24-cv-00731-M |
| NORTH CAROLINA DEMOCRATIC<br>PARTY,<br>*Plaintiff*,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD<br>OF ELECTIONS et al.,<br>*Defendants*. | Case No. 5:24-cv-00699-M-KS |
| CARRIE CONLEY et al.,<br>*Plaintiffs*,<br><br>v.<br><br>ALAN HIRSCH et al.,<br>*Defendants*. | Case No. 5:25-cv-00193-M-RJ |

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | 3 |
| INTEREST OF AMICUS CURIAE | 1 |
| ISSUES ADDRESSED | 3 |
| ARGUMENT | 3 |
|     NCSBE'S VIOLATION OF FEDERAL AND STATE LAW IS UNDISPUTED | 6 |
|     NCSBE's FAILURE TO ENFORCE REGISTRATION STANDARDS HARMS PUBLIC TRUST AND VIOLATES FEDERAL MANDATES | 7 |
|     A TARGETED LIST MAINTENANCE REMEDY IS REQUIRED AND LAWFUL | 7 |
|     A SPECIAL MASTER IS NEEDED TO MONITOR NCSBE'S COMPLIANCE | 8 |
| REQUEST FOR REMEDY | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**State Statutes**

N.C.G.S. §163-14(c1)(2)(a)     8

N.C.G.S. § 163-82.4(a)(11)-(b)     6

**Federal Statutes**

52 U.S.C. § 20507     4

52 U.S.C. § 20507(d)(2)     8

52 U.S.C. § 21083     4

52 U.S.C. § 21083(A)     6

# IDENTITY AND INTEREST OF AMICUS CURIAE

Jay Norman DeLancy is the founder and executive director of Voter Integrity Project – NC (VIP), a nonpartisan election watchdog organization dedicated to ensuring lawful elections and public trust in the democratic process. For over a decade, the Project has conducted research, audits, and analysis of election systems, while identifying fraudulent voters, some of whom received felony convictions through the group's work. Additionally, VIP has frequently advised lawmakers on policy reforms consistent with state and federal election law. DeLancy's efforts in 2024 included bringing the first election protest over the matter of the roughly 60,000 registrations at the heart of the Plaintiff's lawsuit. While the NC Supreme Court confirmed the illegal registrations, they declined the opportunity to remedy the problem and Plaintiff's counsel dropped matter in their appeal to this Court. Mr. DeLancy submits this brief as amicus curiae in support of the Plaintiffs' *prior* request that the North Carolina State Board of Elections ("NCSBE") be compelled to conduct list maintenance and remedy unlawful voter registrations in compliance with federal law, specifically the Help America Vote Act (HAVA), 52 U.S.C. § 21083, and the National Voter Registration Act (NVRA), 52 U.S.C. § 20507 and not certify the winner of the 2024 NC Supreme Court Seat 6 election until the margin of victory exceeds the number of unresolved ballots cast by voters with illegal and incomplete registrations.

# INTRODUCTION

The North Carolina Supreme Court recently acknowledged that more than 60,000 voter registration records were defective due to the NCSBE's long-standing failure to collect required personally identifying information (PII) from registrants, as mandated by HAVA and state law. (For brevity, these will be referred to as "non-PII" voters.) However, despite affirming this factual finding, the Court refused to compel any corrective action, citing judicial deference to "government error" in voter registration. This deference effectively legitimizes administrative misconduct, rewards a pattern of deliberate and systemic noncompliance, and dilutes to votes of lawfully registered voters in an extremely close statewide election.

The undersigned respectfully urges this Court to reject that rationale, which permitted the government's willful subversion of election law, and exercise its equitable authority to prevent further erosion of our state's election administration. Specifically, this Court should order the NCSBE to initiate immediate list maintenance procedures to contact all affected registrants, verify eligibility, and collect the missing PII before retabulating the election results. Since all of NC's early and absentee votes are retrievable and the Election Day results are not, there is a possibility that the number of non-PII votes may still exceed the margin of the

election. If this scenario eventuates, it will require a do-over election in order to determine the lawful winner. Moreover, given the NCSBE's pattern of delay and defiance, a Special Master should be appointed to supervise the Agency's compliance with this Court's order.

## ARGUMENT

### I. NCSBE'S VIOLATION OF FEDERAL AND STATE LAW IS UNDISPUTED.

Since 2004, HAVA has required that an application for voter registration in federal elections include either a valid state driver's license number or the last four digits of the applicant's Social Security number. 52 U.S.C. § 21083(A). North Carolina law codifies these requirements in N.C.G.S. § 163-82.4(a)(11)-(b). In violation of these laws, the NCSBE admitted in 2023 that its registration form improperly marked these fields as "optional," resulting in nearly 500,000 NC voters on the rolls lacking the legally required PII, with roughly 60,000 of whom voting in a statewide election decided by 734 votes.

A critical finding of the NC Supreme Court is that the NCSBE refused to take remedial action to contact or correct the registrations of these voters. Begging the Court's indulgence, before rendering a final judgement, amicus urges the Court to

review the appalling details of the NCSBE's lawlessness, as articulated in this party's amicus brief accepted by the NC Court of Appeals. In summary, the conduct of the NCSBE undermined the integrity of the voter rolls and violated the voter registration laws mandated in both state and federal statutes.

## II. NCSBE's FAILURE TO ENFORCE REGISTRATION STANDARDS HARMS PUBLIC TRUST AND VIOLATES FEDERAL MANDATES.

Allowing NCSBE to continue openly defying these statutory obligations sends a clear message: partisan administrators may disregard state and federal election laws without consequence. This is the antithesis of lawful governance and breeds mistrust in electoral outcomes. HAVA and the NVRA were enacted precisely to ensure voter integrity, prevent duplicative or fraudulent registrations, and guarantee that elections reflect the will of lawfully registered voters.

The refusal to enforce basic eligibility standards is not a minor technicality—it is a direct assault on the statutory framework Congress enacted to protect federal elections.

## III. A TARGETED LIST MAINTENANCE REMEDY IS REQUIRED AND LAWFUL.

Case 5:24-cv-00731-M-RJ    Document 127-1    Filed 05/05/25    Page 7 of 10

7

The Court should require the NCSBE to issue a mailing to each voter whose registration lacks the required PII. This mailing must:

1. Be sent via forwardable, first-class mail;
2. Include a pre-addressed, prepaid return envelope;
3. Request the voter provide their state driver's license number or SSN-4;
4. Offer a sworn, notarized affidavit if the voter affirms that they truly do not possess either form of identification;
5. Warn that failure to respond within 30 days *will* result in their removal from the rolls, as described in 52 U.S.C. § 20507(d)(2) and as directed under North Carolina voter list maintenance laws (NCGS §163-14(c1)(2)(a)).
6. Crosscheck all SSNs with all applicable federal agencies, including the Department of Government Efficiency (DOGE) list, reported to contain either counterfeit SSNs or SSNs assigned to persons over 115 years of age, and initiate criminal referrals for any voters using such SSNs.
7. Remove the registrations of all respondents who either request removal or fail to return the reply form prior to the 30-day deadline.

This procedure aligns with and mirrors the NVRA's procedures for verifying lawfully registered voters and for removing potentially ineligible voters while preserving the due-process rights of every voter.

## IV. A SPECIAL MASTER IS NEEDED TO MONITOR NCSBE'S COMPLIANCE.

Given the Board's years of noncompliance and documented delays—such as the six-month lag in correcting its Spanish-language registration forms even after admitting the violation—a Special Master is warranted. A neutral third party, accountable to this Court, is necessary to:

- Ensure timely preparation and mailing of the required notices;
- Monitor voter response and registration updates;
- Verify that voters not responding are lawfully removed;
- Report progress to the Court at fixed intervals.

This level of oversight is essential to prevent future subversion and restore the lawful administration or our elections while ensuring the due-process rights of all voters are faithfully protected.

### REQUEST FOR REMEDY

The undersigned respectfully requests this Court to:

1. Order the NCSBE to initiate immediate list maintenance as outlined above;
2. Enjoin the tabulation of election results that include ballots from non-PII voters until all list maintenance actions are complete;

3. Appoint a Special Master to oversee list maintenance steps to include the mailing, reply-form verification, voter-roll correction process, and retabulated results;

4. Reserve the right to order a new election if the number of removed non-PII votes still exceeds the margin of the election after combining and retabulating all Election Day votes together with all early and absentee votes whose registrations are lawfully completed;

5. Retain jurisdiction to ensure full compliance.

## CONCLUSION

Only decisive judicial intervention will ensure this election and all future elections in North Carolina are conducted in accordance with both state and federal law.

Respectfully submitted,

/s/ Jay N. DeLancy, May 5, 2025

Jay Norman DeLancy
Founder, Voter Integrity Project – NC

296 Fairway Lane
Sanford, NC 27332
919.429.9039 / 919.332.4129
Jay.delancy@gmail.com